IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| REBECCA TERRY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| COUNTY OF MILWAUKEE, | ) | |
| DAVID A. CLARKE, JR., | ) | |
| in his personal and official capacities, | ) | |
| OFFICER BRIAN WENZEL, | ) | |
| JANE AND JOHN DOE, | ) | |
| UNKNOWN EMPLOYEES OF | ) | |
| MILWAUKEE COUNTY JAIL, | ) | |
| JANE AND JOHN DOE, | ) | |
| UNKNOWN JAIL SUPERVISORS, | ) | |
| ARMOR CORRECTIONAL | ) | |
| HEALTH SERVICES | ) | |
| CAROLYN EXUM, MORGAN BEVENUE, | ) | |
| MARGARET HOOVER, | ) | |
| JANE AND JOHN DOE, | ) | |
| UNKNOWN EMPLOYEES OF | ) | |
| ARMOR CORRECTIONAL | ) | |
| HEALTH SERVICES, | ) | |
| JANE AND JOHN DOE, UNKNOWN | ) | |
| ARMOR HEALTHCARE SUPERVISORS | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

1

## COMPLAINT

Plaintiff REBECCA TERRY, and complaining of Defendants, COUNTY OF MILWAUKEE, DAVID A. CLARKE, JR., OFFICER BRIAN WENZEL, JANE AND JOHN DOE, UNKNOWN EMPLOYEES OF MILWAUKEE COUNTY JAIL, JANE AND JOHN DOE, UNKNOWN JAIL SUPERVISORS, JANE AND JOHN DOE, ARMOR CORRECTIONAL HEALTH SERVICES, CAROLYN EXUM, MORGAN BEVENUE, MARGARET HOOVER, JANE AND JOHN DOE, UNKNOWN EMPLOYEES OF ARMOR, & UNKNOWN ARMOR HEALTHCARE SUPERVISORS,  states as follows:

### Introduction

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Rebecca Terry's rights as secured by the United States Constitution.

2.      On or about March 10, 2014, Rebecca Terry was detained in the Milwaukee County Jail and forced to undergo childbirth and delivery in the jail infirmary without medical care.

### Jurisdiction and Venue

3.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

4.      Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all Defendants reside in this judicial district. Further, a substantial part of the events or omissions giving rise to the claim occurred in this district.

2

## Parties

5.      Plaintiff, Rebecca Terry, is a resident of South Milwaukee, Wisconsin, a parent, and a college student. At all relevant times, she was an inmate at the Milwaukee County Jail. Plaintiff was nine months pregnant when she entered Milwaukee County Jail.

6.      The County of Milwaukee is a Wisconsin municipal corporation with its principal place of business in Milwaukee, Wisconsin.

7.      Defendant David A. Clarke, Jr. is the Sheriff of Milwaukee County. In that capacity he is in charge of the Milwaukee County Jail ("MCJ"). By law, custom, and/or delegation, he has policymaking authority over the jail for the actions at issue in this case. He is responsible for ensuring that the policies and practices of the MCJ comply with federal and state requirements for the treatment of detainees. He had personal knowledge of the policy, practice, and widespread custom of providing inadequate medical care at the Milwaukee County jail. He also had personal knowledge of the shackling practices challenged in this case.

8.      Defendant Officer Brian Wenzel was a Milwaukee County Jail correctional officer at all times relevant to this action and was acting under color of law and within the scope of his employment.

9.      Defendants Jane and John Doe, Unknown Employees of Milwaukee County Jail, are current and/or former correctional officers in the jail who at all relevant times were acting under color of law and within the scope of their employment.

3

10.     Defendants Jane and John Doe, Unknown Jail Supervisors at Milwaukee County Jail are current and/or former corrections supervisors in the jail who at all relevant times were acting under color of law and within the scope of their employment.

11.     Defendant Armor Correctional Health Services ("Armor") is a corporation headquartered in Florida transacting business in Wisconsin. Armor, pursuant to a contract with Milwaukee County, is a healthcare provider for Milwaukee County Jail. At all times relevant to the events at issue in this case, Armor was responsible for the implementation, oversight, and supervision of healthcare policies and practices at Milwaukee County Jail. As an agent of Milwaukee County, Armor was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including the individual Defendants.

12.     Defendant Carolyn Exum was a nurse at Milwaukee County Jail and an employee of Armor. She is sued in her individual capacity. At all times relevant to this lawsuit she was acting under color of law and within the scope of her employment.

13.     Defendant Morgan Bevenue was a nurse at Milwaukee County Jail and an employee of Armor. She is sued in her individual capacity. At all times relevant to this lawsuit she was acting under color of law and within the scope of her employment.

14.     Defendant Margaret Hoover was a nursing supervisor at Milwaukee County Jail responsible for oversight and supervision of nursing staff at Milwaukee County Jail and an employee of Armor. She is sued in her individual capacity. At all times relevant to this lawsuit she was acting under color of law and within the scope of her employment.

15.     Defendants Jane and John Doe, Unknown Employees of Armor, are current and/or former medical staff in the jail who at all relevant times were acting under color of law and within the scope of their employment.

16.     Defendants Jane and John Doe, Unknown Armor Healthcare Supervisors at Milwaukee County Jail are current and/or former Armor Correctional Healthcare supervisors who at all relevant times were acting under color of law and within the scope of their employment.

17.     Collectively, Defendants Exum, Bevenue, Hoover, and Unknown Employees of Armor and Unknown Armor Healthcare Supervisors are referred to as the "Healthcare Defendants."

**Facts**

18.     On March 9, 2014, Plaintiff was arrested in Franklin, Wisconsin. Plaintiff was nine months pregnant. Her due date was March 10, 2014.

19.     She was taken to Milwaukee County Jail. During her booking procedures, she began to experience labor pains and informed jail staff of that fact. Eventually, she was taken to Froedtert Hospital.

5

20.     Pursuant to a Milwaukee County Jail policy of shackling pregnant inmates in transport to the hospital, Plaintiff was transported in leg-irons, wrist restraints, and a belly-chain.

21.     At the hospital, Plaintiff was also shackled to the hospital bed by one leg iron and one wrist restraint. Two sheriff's deputies were present while she was examined at the hospital.

22.     Froedtert Hospital staff told Milwaukee County deputies that Plaintiff was in labor, but that she could return to the jail.

23.     Milwaukee County deputies brought Plaintiff back to the jail. Plaintiff was transported in leg-irons, wrist restraints, and a belly-chain.

24.     At the jail, Plaintiff informed the correctional officer who was escorting her to the infirmary that based on her prior experiences in childbirth she believed delivery would occur that evening.

25.     Plaintiff was placed in the jail infirmary upon her return from the hospital. Defendant Wenzel was working in the infirmary at that time.

26.     Defendant Wenzel placed Plaintiff in an infirmary cell. The cell was extremely dirty, including a filthy sink, toilet, and floor.

27.     Soon after entering her cell, Plaintiff began experiencing more labor pains, much more intensely and closer together than before.

28.     Plaintiff pushed the button in her cell to ask for assistance.

29.     Defendants ignored her. On information and belief, Defendant Wenzel was at his post, just yards from Plaintiff's cell.

6

30.     Plaintiff vomited and felt her water break. Plaintiff began screaming that her water had broken and asking for help. Defendant Wenzel dismissed her screams with a wave of the hand.

31.     No Healthcare Defendants ever made rounds to check on Plaintiff during her time in the infirmary.

32.     Plaintiff felt increasing labor pains closer together and felt the need to lie down.

33.     Plaintiff continued to scream for help and push a button asking for assistance. Defendants ignored her.

34.     Plaintiff tried to fight the urge to push, hoping help would arrive, and fearing for her child's life. Plaintiff screamed that she felt she had to begin pushing. Defendants ignored her.

35.     After more than three hours in labor, alone in her cell screaming for help, Plaintiff began to push. Blood spurted all over her bed and cell.

36.     Plaintiff's son emerged from the birth canal and was making choking sounds and appeared blue in the face. Plaintiff was terrified her son could not breathe and was unsure how to help him. In desperation, she reached into his throat to clear his airway herself.

37.     Defendant Wenzel finally looked into Plaintiff's cell and called for help.

38.     Certain Healthcare Defendants arrived in Plaintiff's cell. They expressed shock at the blood all over the cell and refused to cut the baby's umbilical cord.

39. Emergency medical staff began to arrive in the cell. Plaintiff passed in and out of consciousness.

40. Plaintiff was wheeled out of the infirmary on a stretcher to an ambulance, with her baby still connected to her via umbilical cord. The baby's head was wrapped in bloody paper towels.

41. Plaintiff was taken to Sinai Hospital where she and her child received post-partum care.

42. Plaintiff was shackled to her hospital bed with one wrist restraint and one leg restraint throughout her one week of post-partum care, pursuant to the policy of the Milwaukee County Jail.

43. Eventually, Plaintiff returned to the jail. Plaintiff did not receive adequate medical care after returning to the jail, such as timely post-partum medical visits and medical treatment.

44. As a result of Defendants' misconduct, Plaintiff suffered extreme distress and fear during childbirth.

45. Plaintiff has suffered and continues to suffer nightmares, flashbacks, extreme distress, fear, humiliation, sadness and anger as a result of Defendants' actions.

### The County of Milwaukee & Armor Engage in A Pattern of Deliberate Indifference to Detainee Medical Needs

46. Tragically, the physical and mental anguish endured by Plaintiff due to the complete lack of medical care by Defendants has become an all-too-frequent occurrence at the Milwaukee County Jail.

8

47.     In 2001, Milwaukee County entered into a consent decree governing medical care at the jail pursuant to *Christensen v. Sullivan*, Milwaukee County Circuit Court Case No. 1996-CV-1835.

48.     The Decree identified several requirements for the jail, including requirements related to women's health and medical emergencies at the jail.

49.     Under the consent decree, Dr. Ronald Shansky was appointed as the Medical Monitor of the jail and has published reports documenting deficiencies at the jail.

50.     Over several years, including in the years leading up to Plaintiff's horrific experience at the jail, Dr. Shansky has repeatedly documented the inadequate medical and correctional staffing at the jail.

51.     Dr. Shansky has explained again and again that as a result of inadequate staffing at the jail and inadequate monitoring of detainee medical needs, detainees do not receive the care they need and suffer severe delays in receiving care.

52.     Dr. Shansky also explained that correctional officers choose to ignore symptoms reported by detainees, causing a further break-down in the provision of medical care at the jail.

53.     Despite Dr. Shansky's repeated admonitions that staffing is inadequate to meet medical needs, the jail has failed to comply with his recommendations.

54.     Dr. Shansky's reports put Defendants on notice about the pattern of inadequate care, inadequate access to care, and inadequate staffing at the jail.

55.     Sixteen years after it was originally entered, the consent decree remains in force because the jail is not in substantial compliance with its provisions.

56.     In addition to Dr. Shansky's findings, a pattern of medical emergencies and deaths at the jail also demonstrates the Defendants' pattern of deliberate indifference inmates' medical needs.

57.     On March 3, 2009, Virgilio Jimenez died in his cell at the House of Corrections, which was then under the supervision of Defendant Clarke. According to the policy in place at the time, correctional officers were required to check on inmates every thirty minutes. However, despite the fact that Mr. Jimenez missed breakfast and did not get out of bed earlier that morning during a search, correctional officers failed to conduct the required check-ins. Mr. Jimenez's body was discovered in his cell later that morning, more than six hours after he was last seen alive.

58.     In April 2009, Corey Kleser, an inmate at the Milwaukee County Jail, filed a federal lawsuit alleging that he was a Type I Diabetic and was denied proper medical care, including insulin, for a period of more than three months.

59.     In October 2009, Robert Schmidt was detained in Milwaukee County jail and denied medical care, including his prescribed medication for a blood disorder for more than ten days, causing a severe and painful blood clot.

10

60. In January 2011, Antonio Cowser was booked into Milwaukee County jail and told correctional officers he was suicidal. Despite his clear medical needs, Mr. Cowser received no medical treatment for his suicidal ideation. Over the course of 13 days, he committed suicide by starving and dehydrating himself, and no correctional officer or medical staff person intervened.

61. In 2011, Paul Heytens committed suicide in Milwaukee County Jail cell after he was denied his prescribed psychotropic medication and correctional officers failed to monitor his activities. Despite rules requiring correctional officers to conduct 30 minute checks on inmates, Mr. Heytens' body was not found for more than 11 hours after he hanged himself.

62. Unfortunately, the pattern of denial of medical care has continued since Plaintiff's experiences at the jail.

63. In October 2014, inmate Kwame Moore suffered intense sudden pain in his groin, consistent with testicular torsion. Mr. Moore complained to jail and Armor staff about the debilitating pain. Yet jail and Armor employees refused his requests for medical care. By the time Mr. Moore received medical care the following day, it was necessary to remove the affected testicle.

64. In April 2016, Terrill Thomas was detained at Milwaukee County Jail and suffering from bipolar disorder. Correctional officers shut off water to Thomas' cell. Thomas died in his cell seven days later because of dehydration.

65. In July 2016, Shade Swayzer was detained at Milwaukee County Jail and was nearly nine months pregnant. Like Plaintiff, Ms. Swayzer went into labor

11

at the Milwaukee Countjy jail and was denied medical care. Tragically, Ms. Swayzer's daughter, Laliah, did not survive the ordeal and died shortly after her birth at the jail.

66.    In August 2016, Kristin Fiebrink was detained at Milwaukee County Jail having recently used heroin and alcohol. On the night of August 27, 2016. Ms. Fiebrink screamed for help in her cell, but correctional officers ignored her pleas. She was found dead in her cell the following morning.

67.    In October 2016, Michael Madden was detained at Milwaukee County Jail and suffering from a heart condition and a heroin addiction. He suffered a seizure that rendered him unconscious, but jail correctional officers still failed to provide him medical care, and instead picked Mr. Madden up and dropped him on his head. Mr. Madden died later that evening.

68.    These injuries and deaths did not occur in isolation from each other. The County of Milwaukee and Armor Correctional Health Services have consistently failed to provide adequate medical care for the detainees at the jail.

**Count I – 42 U.S.C. § 1983**
**Deliberate Indifference – Denial of Medical Care**
**(All Defendants)**

69.    Each paragraph of this Complaint is incorporated as if restated fully herein.

70.    As described more fully above, Defendants had notice of Plaintiff's medical needs and the seriousness of her medical needs, and knew the unreasonable risk of harm to Plaintiff and her child if she did not receive

appropriate medical care. Despite that knowledge, Defendants failed to provide her with proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

71.     As a result of the unjustified and unconstitutional conduct of Defendants, Plaintiff experienced pain, suffering, and emotional distress.

72.     Defendants were deliberately indifferent to Plaintiff's objectively serious medical needs, exposed her and her child to an unreasonable risk of harm, and their actions were undertaken intentionally, with malice, willfulness, and/or reckless indifference to the rights of others.

73.     Plaintiff's injuries were proximately caused by policies and practices of Defendants.

74.     By March 2014, Defendant Clarke was on notice of a widespread practice at the Milwaukee County Jail of ignoring the serious medical needs of detainees like Plaintiff, thereby exposing them to unreasonable risks of harm. In the Milwaukee County Jail detainees with clear symptoms of serious medical illness, injury, or conditions who ask for medical care or to see a doctor are routinely delayed or completely ignored.

75.     Specifically, there exists a widespread practice at Milwaukee County Jail under which Jail employees, including correctional officers and medical personnel, commonly fail or refuse to: (1) properly examine a detainee with a serious medical condition; (2) provide proper medication to a detainee with a serious medical condition; (3) respond to detainees who have requested medical attention or

medication or asked to see a doctor; (4) respond to detainees who exhibit obvious signs of a serious medical condition or illness; or (5) adequately staff the jail with correctional and medical personnel necessary to respond to detainee needs.

76.     This widespread practice is allowed to flourish because Defendant Clarke, as Sheriff, directly encourages and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control correctional officers and medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff. In this way, the Sheriff violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

77.     At all times relevant to the events at issue in this case, Defendant Armor contracted with the Milwaukee County to provide healthcare to detainees housed at Milwaukee County Jail, including Plaintiff. As the provider of healthcare services to detainees at Milwaukee County Jail, Armor was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical care to detainees in Milwaukee County Jail custody.

78.     Prior to the events giving rise to Plaintiff's lawsuit, Defendant Armor had notice of policies and widespread practices by medical personnel at Milwaukee County Jail pursuant to which detainees like Plaintiff with serious medical conditions were routinely denied medical care and evaluation, and access to medical

14

care and evaluation, and exposed to unreasonable risks of harm. In Milwaukee County Jail detainees with clear symptoms of serious medical conditions who ask for medical care or to see a doctor are routinely delayed or completely ignored.

79. Despite knowledge of these problematic policies and practices, Defendant Armor did nothing to ensure that inmates at Milwaukee County Jail received adequate medical care and access to medical care, thereby acting with deliberate indifference.

80. Specifically, there exist policies or widespread practices at Milwaukee County Jail pursuant to which: (1) medical staff fail to properly examine a detainee with a serious medical condition; (2) medical and correctional staff fail to respond or respond inadequately to detainees who have requested medical attention or medication, or asked to see a doctor; (3) medical and correctional staff fail to respond or respond inadequately to detainees who exhibit obvious signs of a serious medical condition; (4) medical staff fail to provide timely healthcare to detainees; and/or (5) adequately staff the jail with the medical personnel necessary to respond to detainee needs.

81. These policies and widespread practices were allowed to flourish because Defendant Armor, which directs the provision of health care services at Milwaukee County Jail, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendant Armor violated Plaintiff's

15

rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

82.     The above-described policies and widespread practices, so well settled as to constitute de facto policy at Milwaukee County Jail, were able to exist and thrive because Defendant Armor was deliberately indifferent to the problem, thereby effectively ratifying it.

83.     Plaintiff's injuries were caused by employees of the Milwaukee County Jail and Armor, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

## Count II - 42 U.S.C. § 1983
## Supervisory Liability
## (Defendant Clarke, Unknown Jail Supervisors, Unknown Healthcare Supervisors, & Defendant Hoover)

84.     Each Paragraph of this Complaint is incorporated as if restated fully herein.

85.     As described more fully above, Defendant Clarke, Unknown Jail Supervisors, Unknown Healthcare Supervisors, and Defendant Hoover were responsible for ensuring that detainees at the Milwaukee County Jail received constitutionally adequate care and access to medical care.

86.     Defendant Clarke, Unknown Jail Supervisors, Unknown Healthcare Supervisors, and Defendant Hoover knew or reasonably should have known of a widespread pattern of inadequate medical care, inadequate access to medical care, and inadequate correctional and medical staffing at the jail.

16

87.     Defendant Clarke, Unknown Jail Supervisors, Unknown Healthcare Supervisors, and Defendant Hoover approved, condoned and/or turned a blind eye to or purposely ignored the pattern of inadequate medical care, inadequate access to medical care, and inadequate correctional and medical staffing at the jail.

88.     Defendant Clarke, Unknown Jail Supervisors, Unknown Healthcare Supervisors, and Defendant Hoover were aware of the risk of harm posed by the pattern of inadequate medical care, inadequate access to medical care, and inadequate correctional and medical staffing at the jail.

89.     As a result of the misconduct described in this Count, Plaintiff suffered damages, including but not limited to physical and emotional distress and anguish.

## Count III - 42 U.S.C. § 1983
## Failure to Intervene
### (Defendants Wenzel, Exum, Bevenue, Hoover, Unknown Jail Employees, Unknown Jail Supervisors, & Unknown Healthcare Supervisors)

90.     Each paragraph of this Complaint is incorporated as if restated fully herein.

91.     As described more fully above, one or more Defendants had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above but failed to do so.

92.     Defendants' failures to act were intentional, done with malice, and/or done with reckless indifference to Plaintiff's rights.

93. As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she suffered injuries, including pain, suffering, and emotional distress..

94. Plaintiff's injuries were caused by employees of the Milwaukee County Jail and Armor, who acted pursuant to the policies and practices described more fully above.

## Count IV—42 U.S.C. § 1983
## Due Process – 14th Amendment
## (Defendants Clarke and County of Milwaukee)

95. Each paragraph of this Complaint is incorporated as if fully restated herein.

96. Defendants County of Milwaukee and Sheriff Clarke violated the liberty interest in bodily integrity of Plaintiff through the shackling policy. The County and Sheriff Clarke exposed Plaintiff to unreasonable risks of harm through the shackling policy. Defendants County and Sheriff Clarke used unreasonable force against Plaintiff because of the shackling policy. Defendants County and Sheriff Clarke were deliberately indifferent to the serious, obvious medical needs of Plaintiff.

97. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and was objectively unreasonable.

98. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, the County of Milwaukee, is liable for their actions.

18

99.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Milwaukee County Jail in the manner described more fully above.

100.    As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish, as well as physical pain and suffering, and exposure to unreasonable risks of harm.

101.    The misconduct described above was undertaken pursuant to the policy and practice of the Milwaukee County Jail in that: As a matter of both policy and practice, the Milwaukee County Jail directly encourages, and therefore is the moving force behind, the very type of misconduct at issue here—shackling women during prenatal and post-partum care.

### Count V – State Law Claim
### Respondeat Superior[1]
### (Armor Correctional Health Services)

102.    Each paragraph of this Complaint is incorporated as if restated fully herein.

103.    In committing the acts alleged in the preceding paragraphs, the Healthcare Defendants were employees and agents of Defendant Armor, acting at all relevant times within the scope of their employment.

104.    Defendant Armor is liable as principal for all torts committed by their agents.

---

[1] Plaintiff includes this claim in order to preserve the argument that corporations are subject to liability for their employees' civil rights violations under a respondeat superior theory. *See Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

19

## Count VI—Indemnification
## (County of Milwaukee)

105. Each of the foregoing paragraphs is incorporated as if fully stated herein.

106. Wisconsin law, Wisc. Stat. §895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

107. Defendants Wenzel, Clarke, Jane and John Doe, unknown employees of Milwaukee County Jail, and Jane and John Doe, unknown supervisors at the Milwaukee County Jail, were employees of the County of Milwaukee, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, REBECCA TERRY, respectfully requests that this Court enter judgment in her favor and against Defendants, COUNTY OF MILWAUKEE, DAVID A. CLARKE, JR., OFFICER BRIAN WENZEL, JANE AND JOHN DOE, UNKNOWN EMPLOYEES OF MILWAUKEE COUNTY JAIL, JANE AND JOHN DOE, UNKNOWN JAIL SUPERVISORS, ARMOR CORRECTIONAL HEALTH SERVICES , CAROLYN EXUM, MORGAN BEVENUE, MARGARET HOOVER, JANE AND JOHN DOE, UNKNOWN EMPLOYEES OF ARMOR, JANE AND JOHN DOE, UNKNOWN HEALTHCARE SUPERVISORS, awarding compensatory damages and attorneys' fees, as well as punitive damages against the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff, REBECCA TERRY, hereby demands a trial by jury pursuant to

Federal Rule of Civil Procedure 38(b) on all issues so triable.


RESPECTFULLY SUBMITTED,



/s/ Theresa Kleinhaus

Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Scott Rauscher
Theresa Kleinhaus
Aisha Davis
LOEVY & LOEVY
311 North Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900