UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

_____

REBECCA TERRY,

                Plaintiff,

v.

COUNTY OF MILWAUKEE, DAVID A.
CLARKE, JR., in his personal and official
capacities, OFFICER BRIAN WENZEL, JANE
AND JOHN DOE, UNKNOWN EMPLOYEES
OF MILWAUKEE COUNTY JAIL, JANE AND
JOHN DOE, UNKNOWN JAIL
SUPERVISORS, ARMOR CORRECTIONAL
HEALTH SERVICES, CAROLYN EXUM,
MORGAN BEVENUE, MARGARET
HOOVER, JANE AND JOHN DOE,
UNKNOWN EMPLOYEES OF ARMOR
CORRECTIONAL HEALTH SERVICES,
JANE AND JOHN DOE UKNOWN ARMOR
HEALTHCARE SUPERVISORS,

                Defendants.

Case No.:  17-cv-1112-JPS

---

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO STAY PROCEEDINGS AND DISCOVERY

---

      Defendant Armor Correctional Health Services ("Armor"), by its attorneys, Hinshaw &

Culbertson LLP, submits the following brief in support of their motion to stay proceedings and

discovery.

### INTRODUCTION

      Plaintiff Rebecca Terry ("Ms. Terry") has filed a Section 1983 complaint against the

defendants, asserting *Monell* claims against Milwaukee County and Armor, and deliberate

indifference and other claims against the individual defendants. For the reasons set forth herein,

proceedings and discovery in this matter must be stayed to avoid unfair prejudice that would be

caused due to recent criminal charges against Armor and the impact of the Fifth Amendment if a stay is not implemented.

In the alternative, the *Monell* claims against Armor should be bifurcated from the deliberate indifference and other claims against the individual defendants. In the further alternative, and at a minimum, all discovery related to the issues raised in the criminal charges against Armor should be stayed.

## **BACKGROUND**

## I. **FACTUAL BACKGROUND REGARDING ARMOR**

On February 21, 2018, the Milwaukee County District Attorney's Office issued criminal charges against Armor alleging that it intentionally falsified medical records. (Kugler Decl., Ex. A.) The criminal complaint also indicated the alleged falsified medical records were the result of a pattern and practice of Armor. (Id.) On the same day, Ms. Terry supplemented her Rule 26 initial disclosures to include the criminal charges filed against Armor. (Id.)

Two days later, on February 23, 2018, Ms. Terry served requests for production of documents on all defendants, including the following requests:

1.      All documents reflecting any Milwaukee County or Armor employee's failure to complete scheduled inspections of housing units (including the Special Medical Unit / Infirmary), including but not limited to documents showing discipline, counseling, or performance reviews from March 9, 2009-March 9, 2015.

2.      All documents reflecting any Milwaukee County or Armor employee's failure to complete scheduled sick call, medication administration, medical visits, or wellness checks in housing units (including the Special Medical Unit / Infirmary), including but not limited to documents showing discipline, counseling, or performance reviews from March 9, 2009-March 9, 2015.

…

5.      All Quality Improvement plans and audits (as those term is used at Armor 85) from March 9, 2009-March 9, 2015.

2

6.      All meeting minutes, agendas, roll calls, reports, correspondence or other documents associated with the Quality Improvement Council (as that term is used at MKE 257) from March 9, 2009-March 9, 2015.

…

8.      All documents showing the minimum staffing requirements (as defined by the court monitor in the Christensen case and as that term is used at MKE 268) at Milwaukee County Jail as of March 9, 2014.

9.      All documents showing the vacant healthcare positions at Milwaukee County Jail as of March 9, 2014, including but not limited to any positions listed at Armor 89 which were vacant.

(Kugler Decl., Ex. B.)

Armor's criminal attorney has counseled Armor not to respond to the above-listed document requests on the grounds that responding may tend to incriminate Armor in connection with the criminal prosecution. (Kugler Decl., Ex. C.)

To date, no depositions have taken place in this matter. (Kugler Decl., ¶ 5.) However, Armor anticipates Ms. Terry will request to take depositions of Armor employees. (Id.) Moreover, Armor may present some of its employees as witnesses at trial in this matter and/or seek to utilize declarations from some of its employees at the summary judgment stage. (Id.)

## II.     FACTUAL BACKGROUND REGARDING MS. TERRY

Ms. Terry was booked at Milwaukee County Jail around 6:28 pm on March 9, 2014. (Kugler Decl., Ex. D, Answer to Interrog. No. 8.) The booking note indicates Ms. Terry advised she was on her thirteenth pregnancy, due on March 11, 2014, with no prenatal care, and with daily intravenous heroin use. (Id.) Ms. Terry also advised she had mood and anxiety disorders and had stopped taking her medication. (Id.) Ms. Terry's vital signs were taken and recorded. (Id.) Ms. Terry was sent out to Froedtert Memorial Lutheran Hospital ("Froedtert") for medical clearance. (Id.)

3

Ms. Terry returned from Froedtert on March 10, 2014 at 1:05 am. (Kugler Decl., Ex. D, Answer to Interrog. No. 8.) The nursing note indicates her vitals were stable and Froedtert evaluated her in the Labor and Delivery Room for possible labor and cleared her to return to the jail. (Kugler Decl., Ex. D, Answer to Interrog. No. 8.) It is not noted whether an internal vaginal examination was done, or if Ms. Terry was placed on a fetal monitor to determine the presence of uterine contractions. (Id.)

At 3:50 am, Ms. Terry's vitals were taken and recorded. (Id.)

At 4:46 am, Officer Wenzel called medical staff to advise Ms. Terry had delivered the baby. (Id.) A medical emergency was called. (Id.)

After Ms. Terry delivered the baby, she and the baby were sent out to Aurora Sinai Medical Center. (ECF No. 1, ¶ 41.) After Aurora Sinai, Ms. Terry returned to Milwaukee County Jail. (Id., ¶ 43.)

## III. FACTUAL BACKGROUND REGARDING DISCOVERY ON *MONELL* CLAIMS AGAINST ARMOR

On December 5, 2017, Ms. Terry served her first set of requests to admit, interrogatories, and requests for production of documents to the healthcare defendants, defined by Ms. Terry as Armor, Defendant Exum, Defendant Bevenue, and Defendant Hoover. (Kugler Decl., Ex. E.) Armor served responses to Ms. Terry's requests to admit on December 15, 2017. (Kugler Decl., Ex. F.) On January 23, 2018, Ms. Terry sent a Rule 37 letter to Armor regarding Armor's responses to Ms. Terry's requests to admit. (Kugler Decl., Ex. G.) After an agreed extension of the response time. Armor served responses to Ms. Terry's interrogatories and requests for production of documents on January 23, 2018. (Kugler Decl., Ex. D.) On January 30, 2018, Ms. Terry sent a Rule 37 letter to Armor regarding Armor's responses to Ms. Terry's requests for

4

production of documents. (Kugler Decl., Ex. H.) On January 31, 2018, Armor served supplemental responses to Ms. Terry's requests to admit. (Kugler Decl., Ex.I.)

## IV. PROCEDURAL BACKGROUND

On August 10, 2017, Ms. Terry filed a Section 1983 complaint against Milwaukee County, the former Milwaukee County Sheriff, several individual correctional officers at Milwaukee County Jail, unknown correctional officers and supervisors, Armor, several individual healthcare service providers, and unknown medical staff and supervisors, asserting the following claims:

**Count I** – deliberate indifference, denial of medical care (against all defendants)

**Count II** – supervisory liability (against Defendant Clarke, Defendant Hoover, and unknown jail supervisors and healthcare supervisors)

**Count III** – failure to intervene (against Defendant Wenzel, Defendant Exum, Defendant Bevenue, Defendant Hoover, and unknown jail employees, jail supervisors, and unknown healthcare supervisors)

**Count IV** – due process, 14th Amendment (against Defendant Clarke and Defendant Milwaukee County)

**Count V** – *respondeat superior* (against Armor)

**Count VI** – indemnification (against Defendant Milwaukee County)

(ECF No. 1.)

Armor moved for judgment on the pleadings as to Count V, *respondeat superior*, and the motion was granted. (ECF Nos. 35-36, 41.)[1] Thus, the sole remaining claim against Armor is Count I, deliberate indifference to medical needs. (ECF Nos. 1, 41.)

In particular, the deliberate indifference claim against Armor is a *Monell* claim regarding its policies and practices. Ms. Terry asserts as follows, in pertinent part:

---

[1] None of the Doe defendants have been identified, and the time period for service under Fed. R. Civ. P. 4(m) has passed. Armor intends to move to dismiss the Doe defendants pursuant to Fed. R. Civ. P. 12(b)(5).

5

11.     Defendant Armor Correctional Health Services ("Armor") is a corporation headquartered in Florida transacting business in Wisconsin. Armor, pursuant to a contract with Milwaukee County, is a healthcare provider for Milwaukee County Jail. At all times relevant to the events in this case, Armor was responsible for the implementation, oversight, and supervision of healthcare policies and practices at Milwaukee County Jail. As an agent of Milwaukee County, Armor was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including the individual Defendants.

…

73.     Plaintiff's injuries were proximately caused by policies and practices of Defendants.

…

77.     At all times relevant to the events at issue in this case, Defendant Armor contracted with the Milwaukee County to provide healthcare to detainees housed at Milwaukee County Jail, including Plaintiff. As the provider of healthcare services to detainees at Milwaukee County Jail, Armor was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical care to detainees in Milwaukee County Jail custody.

78.     Prior to the events giving rise to Plaintiff's lawsuit, Defendant Armor had notice of policies and widespread practices by medical personnel at Milwaukee County Jail pursuant to which detainees like Plaintiff with serious medical conditions were routinely denied medical care and evaluation, and access to medical care and evaluation, and exposed to unreasonable risks of harm. In Milwaukee County Jail detainees with clear symptoms of serious medical conditions who ask for medical care or to see a doctor are routinely delayed or completely ignored.

79.     Despite knowledge of these problematic policies and practices, Defendant Armor did nothing to ensure that inmates at Milwaukee County Jail received adequate medical care and access to medical care, thereby acting with deliberate indifference.

80.     Specifically, there exist policies or widespread practices at Milwaukee County Jail pursuant to which: (1) medical staff fail to properly examine a detainee with a serious medical condition; (2) medical and correctional staff fail to respond or respond inadequately to detainees who have requested medical attention or medication, or asked to see a doctor; (3) medical and correctional staff fail to respond or respond inadequately to detainees who exhibit obvious signs of a serious medical condition; (4) medical staff fail to provide timely healthcare to detainees; and/or (5) adequately staff the jail with the medical personnel necessary to respond to detainee needs.

301282602v1 1003420

81.     These policies and widespread practices were allowed to flourish because Defendant Armor, which directs the provision of health care services at Milwaukee County Jail, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendant Armor violated Plaintiffs rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

82.     The above-described policies and widespread practices, so well settled as to constitute de facto policy at Milwaukee County Jail, were able to exist and thrive because Defendant Armor was deliberately indifferent to the problem, thereby effectively ratifying it.

83.     Plaintiff's injuries were caused by employees of the Milwaukee County Jail and Armor, including but not limited to the individually named Defendants who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

(ECF No. 1.)

Thus, Ms. Terry's *Monell* claim against Armor centers on the following broad theories: (1) Armor had a widespread custom or practice whereby its employees were deliberately indifferent to the constitutional rights of inmates, including Ms. Terry; (2) Armor failed to adequately staff the jail; and (3) Armor failed to adequately train its staff. (Id.)

## LEGAL STANDARD

## I.     STAYING CIVIL ACTIONS PENDING CRIMINAL ACTIONS

It is well-established that district courts have "discretionary authority to stay a civil proceeding pending the outcome of a parallel criminal case when the interest of justice so requires." *Estate of Gaither v. D.C.*, Case No. 03-1458 (CKK), 2005 U.S. Dist. LEXIS 35426, *6-7 (D.D.C. Dec. 2, 2005) (*citing United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970)). "The ultimate question, therefore, is whether the court should exercise its discretion in order to avoid placing the defendants in the position of having to choose between risking a loss in their civil cases by invoking their Fifth Amendment rights, or risking conviction of their criminal cases by

7

waiving their Fifth Amendment rights and testifying in the civil proceedings." *Cruz v. County of Dupage*, Case No. 96-C-7170, 1997 U.S. Dist. LEXIS 9220, at \*3-4 (N.D. Ill. June 27, 1997); *Jones v. City of Indianapolis*, 216 F.R.D. 440, 441 (S.D. Ind. June 27, 2003);

As a result, many district courts in the Seventh Circuit have expressed a strong desire to stay civil litigation in order to avoid unfair prejudice to defendants when criminal actions are pending. *See e.g., Salcedo v. City of Chi.,* Case No. 09-CV-05354, 2010 U.S. Dist. LEXIS 67991, at \*5-11 (N.D. Ill. July 8, 2010); *United States v. All Meat & Poultry Prods.*, Case No. 02-C-5145, 2003 U.S. Dist. LEXIS 17677, at \*3-16 (N.D. Ill. Oct. 2, 2003). Many district courts have explained that the "strongest case for granting a stay is where a party under criminal investigation is required to defend a civil proceeding involving the same subject matter." *See All Meat & Poultry Prods.*, 2003 U.S. Dist. LEXIS 17677, at \*11; *Hollinger Int'l, Inc. v. Hollinger, Inc.*, Case No. 04-C-698, 2008 U.S. Dist. LEXIS 3289, at \*9 (N.D. Ill. Jan. 16, 2008); *see also Cruz*, 1997 U.S. Dist. LEXIS 9220, at \*4-5 (*citing SEC v. Dresser Industries, Inc*., 628 F.2d 1368, 1375-76 (D.C. Ct. App. 1980)); *Jones*, 216 F.R.D. at 451,

Without a stay of the civil proceedings, individuals are faced with the prejudicial dilemma of surrendering their Fifth Amendment rights against self-incrimination, or not testifying and risking the possibility of adverse inferences being taken from the assertion of those Fifth Amendment rights. *See e.g., Chagolla v. City of Chi.,* 529 F. Supp. 2d 941, 947 (N.D. Ill. 2008) ("In the Court's experience, it is not at all rare for a person faced with criminal charges or a pending investigation to invoke the privilege even though he may have done nothing wrong, out of an abundance of caution prompted by a careful criminal defense lawyer.").

In deciding whether to stay a civil proceeding where a similar criminal action is brought before the completion of the civil proceeding, courts balance the interest of the plaintiff, the

defendant, and the public. *See Chagolla*, 529 F. Supp. 2d at 945. In making this determination, a court may consider the following non-exhaustive factors:

> (1) whether the two actions involve the same subject matter;
>
> (2) whether the two actions were brought by the government;
>
> (3) the posture of the criminal proceeding;
>
> (4) the effect on the public interest at stake if a stay were to be issued;
>
> (5) the interest of the plaintiffs in proceeding expeditiously with this litigation and the potential prejudice to the plaintiffs of a delay; and
>
> (6) the burden that any particular aspect of the proceedings may impose on defendants.

*Cruz*, 1997 U.S. Dist. LEXIS 9220, at *5-6; *see also Chagolla*, 529 F. Supp. 2d at 945.

## II. *MONELL* CLAIMS

The elements of a *Monell* claim are "(1) the deprivation of a constitutional right; (2) that action was taken pursuant to a custom, policy or practice of the local government unit; and (3) that such action was the cause of the deprivation." *See Gaughan v. Crawford*, Case No. 05-C-4664, 2008 U.S. Dist. LEXIS 107910, at *6 (N.D. Ill. July 24, 2008) (*citing Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)); *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2009) ("A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority.") (same).[2] Thus, Armor can be liable for a *Monell* claim only

---

[2] Armor does not dispute that Ms. Terry can bring a *Monell* claim against it as a contractor of Milwaukee County.

9

if there is a determination that Ms. Terry's constitutional rights were deprived or, stated differently, that an unconstitutional act occurred.

Moreover, *Monell* claims are dependent on the outcome of claims against individual defendants under some, but not all, circumstances. One of the predominate cases on this issue is ***Thomas***, in which the Seventh Circuit evaluated the Supreme Court's decision in ***Los Angeles v. Heller***, 475 U.S. 796, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986). *See **Thomas***, 604 F.3d at 304-305. In ***Thomas***, the Seventh Circuit explained the rule set forth in ***Heller*** as follows: "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." 604 F.3d at 305. The Seventh Circuit also established a three-factor test to determine whether *Monell* liability depends on the liability of individual defendants: (1) the nature of the constitutional violation that the plaintiff alleges; (2) the theory of municipal liability that supports the *Monell* claims; and (3) the defenses the individuals asserted. ***Id***. However, certain *Monell* claims are dependent on the outcome of claims against individual defendants as a matter of law, including *Monell* claims alleging failure to train. *See **Jenkins v. Bartlett***, 487 F.3d 482, 492 (7th Cir. 2007) ("A municipality will be held liable for the violation of an individual's constitutional rights for failure to train adequately its officers only when the inadequacy of training amounts to deliberate indifference to the rights of the individuals with whom the officers came into contact."); ***Sallenger v. City of Springfield***, 630 F.3d 499, 504-05 (7th Cir. 2010); ***Demouchette v. Dart***, Case No. 09-C-6016, 2011 U.S. Dist. LEXIS 15690, at *12-13 (N.D. Ill. Feb. 16, 2011); ***Estate of Robinson ex rel. Irwin v. City of Madison***, Case No. 15-CV-502-JDO, 2017 U.S. Dist. LEXIS 20733, at *76-77 (W.D. Wis. Feb. 13, 2017).

301282602v1 1003420

## III. BIFURCATION

Rule 42(b), which governs bifurcation, permits district courts to order a separate trial of one or more separate issues or claims for three reasons: (1) for convenience, (2) to avoid prejudice, or (3) to expedite and economize. *See* Fed. R. Civ. P. 42(b). Only one of the criteria set forth in Rule 42(b) needs to be satisfied for a court to bifurcate. *See **Treece v. Hochstettler***, 213 F.3d 360, 365 (7th Cir. 2000). The importance of encouraging bifurcation "where experience has demonstrated its worth" is widely recognized. *See **Jones v. City of Chicago***, Case No. 98-C-5418, 1999 U.S. Dist. LEXIS 3358, at *5 (N.D. Ill. March 10, 1999) (*citing* Fed. R. Civ. P. 42(b) advisory committee notes).

This standard is applicable when a Section 1983 complaint is brought and *Monell* claims are involved. *See, e.g., **Demouchette***, 2011 U.S. Dist. LEXIS 15690, at *6-7; ***Allison v. Gallagher***, Case No. 10-C-6887, 2012 U.S. Dist. LEXIS 144138, at *3 (N.D. Ill. Oct. 5, 2012) ("Motions to bifurcate *Monell* claims are now commonplace…."). In every case, but particularly when *Monell* claims are at issue, the decision on whether to bifurcate "does not stem so much from the nature of the cause of action as from a careful consideration of the specific facts that support a plaintiff's claims." ***Demouchette***, 2011 U.S. Dist. LEXIS 15690, at *10.

## IV. STAYING DISCOVERY

Rule 26(c)(1) provides, in pertinent part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense … including … forbidding inquiry into certain matters, or limiting the scope of discovery to certain matters…." Fed. R. Civ. P. 26(c)(1)(D). Rule 26(c) allows courts "to control the sequence and scope of discovery." ***Lopez v. City of Chicago***, Case No. 01-C-1823, 2002 U.S. Dist. LEXIS 3458, at *8 (N.D. Ill. March 1, 2002).

11

301282602v1 1003420

<u>**ARGUMENT**</u>

I.    **THE PROCEEDINGS AND DISCOVERY IN THIS MATTER MUST BE STAYED PENDING RESOLUTION OF THE CRIMINAL CHARGES AGAINST ARMOR.**

In the case at bar, balancing the relevant factors supports a stay of proceedings and discovery, pending resolution of the criminal charges against Armor.

First, the pending criminal proceeding against Armor concerns the same facts as Ms. Terry's new theory of *Monell* liability against Armor. The supplementation of Ms. Terry's initial disclosures and Ms. Terry's recent document requests demonstrate Ms. Terry and her counsel intend to pursue a claim in this case that Armor falsified medical records. Consequently, while this action is broader in scope than the criminal complaint against Armor, there is no question the subject matter of this lawsuit is sufficiently intertwined with the criminal case. *See e.g., **Bruner Corp. v. Balogh**,* 819 F. Supp. 811, 814 (E.D. Wis. 1993) ("[T]he subject matter is sufficiently intertwined for the Court to conclude that there exists more than a "possibility" that [the defendant's] testimony could "aid in" the state prosecution against him"); ***Mr. Dee's, Inc. v. Int'l Outsourcing Servs., LLC***, Case No. 08-C-457, 2008 U.S. Dist. LEXIS 93726, at *4 (E.D. Wis. November 03, 2008) ("A simple review of the amended complaint reveals that testimony and discovery from the Individual Defendants are likely to be instrumental to [the corporate defendant's] defense"). Moreover, given the close relationship between the pending criminal charges against Armor and Plaintiff's new theory of *Monell* liability, it is likely that Plaintiff will seek to use other events as evidence to support her *Monell* claim against Armor. *See **Chagolla***, 529 F. Supp. 2d at 946 (explaining that the close relationship between the civil and criminal matters weighs in favor of a stay in light of the "the potential that [the plaintiff] might seek to use other similar events as evidence to support his claims against the individual defendants and the near-certainty that he will attempt to use other similar events to support his *Monell* claim").

301282602v1 1003420

Accordingly, the close relationship between pending criminal charges and this lawsuit weighs in favor of a stay.

Second, the posture of the criminal proceeding weighs in favor of a stay because the criminal proceeding against Armor is ongoing. *See e.g.*, **Tostado v. Jackson**, Case No. 10-CV-1162, 2011 U.S. Dist. LEXIS 56144, at *6 (E.D. Wis. May 25, 2011) ("[t]he criminal case is ongoing against defendant Jackson, suggesting that a stay would be appropriate"); **Salcedo**, 2010 U.S. Dist. LEXIS 67991, at *8-9 (same); **All Meat & Poultry Prods.**, 2003 U.S. Dist. LEXIS 17677, at *9 (same).

Third, the public's interest supports a stay. While the public has an interest in prompt disposition of civil litigation, including this case, the public also has an interest in ensuring a criminal investigation can proceed untainted by and without interference from civil litigation. *See* **Salcedo**, 2010 U.S. Dist. LEXIS 67991, at *9-10 ("The public has an interest in ensuring that a criminal investigation can proceed untainted by civil litigation and this interest weighs in favor of a stay."); **Tostado**, 2011 U.S. Dist. LEXIS 56144, at *8 (explaining that interference with the prosecution of the defendant "could arise if civil discovery, including sworn testimony, is elicited while the criminal charges are still pending" and finding that factor favored a stay).

Fourth, the potential delay of the proceedings in this case will not cause significant prejudice to Ms. Terry. Although it is not known when the criminal complaint against Armor will be resolved, a stay in this case will only result in some delay to Ms. Terry. Moreover, while a plaintiff's interest in a timely resolution of her claims is an important consideration, many district courts in the Seventh Circuit have found the Fifth Amendment to be the paramount consideration. *See e.g.,* **Hollinger**, 2008 U.S. Dist. LEXIS 3289, at *12-13 ("The Court appreciates this stay will result in some inconvenience and delay to Plaintiffs. Nonetheless, the

13

Fifth Amendment is the more important consideration."); *Tostado*, 2011 U.S. Dist. LEXIS 56144, at *10; *Chagolla*, 529 F. Supp. 2d at 948.

Finally, Armor's interests and defense in this lawsuit will be severely harmed if a stay is not granted. *See, e.g., Hollinger*, 2008 U.S. Dist. LEXIS 3289, at *9 ("The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter."). Given the pending criminal proceeding, Armor itself has been counseled not to respond to pending document requests. (Kugler Decl., Ex. C.) Moreover, no prudent Armor witness would testify without criminal counsel and advice regarding his or her rights under the Fifth Amendment. Accordingly, Armor's key officers and employees will likely assert the privilege out of an abundance of caution. *See Chagolla*, 529 F. Supp. 2d at 945 ("Given that state of affairs, it is highly unlikely that any criminal defense attorney worthy of that title would allow any of the individual defendants to testify or answer discovery or the complaint in the present case. In short, the likelihood is overwhelming that if forced to choose between claiming the privilege and answering discovery or the complaint, each of the individual defendants will elect to claim the privilege . . . ."). Thus, if this case continues, Armor will be unable to mount an effective defense, suffering irreparable harm as a result. *See e.g., Mr. Dee's*, 2008 U.S. Dist. LEXIS 93726, at *5 (explaining that the corporate defendant "needs information from the Individual Defendants to mount an effective defense"); *All Meat & Poultry Prods.*, 2003 U.S. Dist. LEXIS 17677, at *12-13 ("In such instances as here, where the indicted individual defendants appear to be the central figures in both the civil and criminal proceedings, courts have determined that the better course is to enter a stay as to all defendants").

The above factors, and in particular Armor's interests and the significant burden Armor will face absent a stay, favor granting Armor's motion to stay this proceeding.

301282602v1 1003420

## II. IN THE ALTERNATIVE, BIFURCATION OF THE *MONELL* CLAIMS AGAINST ARMOR AND MILWAUKEE COUNTY IS WARRANTED AND NECESSARY.

In the alternative, bifurcation of the *Monell* claims against Armor is warranted and necessary. Bifurcation of Ms. Terry's *Monell* claims against Armor will promote efficiency and economy for both the parties and the court (the first and third factors). Moreover, bifurcation will protect Armor from unfair prejudice and will not prejudice Ms. Terry (the second factor).

### A. Bifurcation will protect Armor from undue prejudice and will not prejudice Ms. Terry.

On one hand, bifurcation will protect Armor from a significant risk of undue prejudice. The potential for prejudice to individual defendants due to evidence that plaintiffs will use to prove *Monell* claims is well-recognized by courts in the Seventh Circuit. See, e.g., ***Demouchette***, 2011 U.S. Dist. LEXIS 15690, at \*31 (noting that "without bifurcating the *Monell* claims under these facts, the individual defendants could face unusual difficulty in distinguishing their own acts that allegedly violated Plaintiff's constitutional rights from evidence that would be introduced to support claims against the County"); ***Ojeda-Beltran v. Lucio***, Case No. 07-C-6667, 2008 U.S. Dist. LEXIS 54116, at \*8 (N.D. Ill. July 16, 2008) ("As demonstrated by Plaintiffs' complaint and discovery requests, Plaintiffs intend to prove their *Monell* claim, at least in part, through the introduction of evidence regarding alleged acts of police misconduct committed by non-party officers. We think a substantial risk exists that such evidence would be prejudicial to Defendant Officers in their attempts to defend themselves against Plaintiffs' claims and conclude that bifurcation of the *Monell* claim is a proper means to combat this potential prejudice.").

No Armor employees have been named as individual defendants in the case at bar. However, as set forth above with respect to Armor's motion to stay proceedings and discovery,

Armor will be significantly prejudiced in its ability to defend the subject case if the case is not stayed, and bifurcation is not granted.

Moreover, there is no prejudice to Plaintiff from permitting bifurcation. To this end, other courts that have evaluated motions to bifurcate *Monell* claims have recognized that plaintiffs are not prejudiced by bifurcation, as it merely postpones, and does not prevent, pursuit of the *Monell* claims. *See, e.g., Ojeda-Beltran*, 2008 U.S. Dist. LEXIS 54116, at *8-9 ("Our decision to bifurcate at this stage in no way denies Plaintiffs their opportunity to pursue all of their claims, including the *Monell* claim…. although Plaintiffs may desire to pursue all of their claims at once, we see no evidence that litigating them separately will be detrimental to Plaintiffs' chances of success on any of their claims.").

## B.     Bifurcation will promote efficiency and economy for the parties and the Court.

Moreover, bifurcation will promote efficiency and economy for the parties on several grounds. *See* Fed. R. Civ. P. 42(b). First, bifurcation is warranted based on the discovery burden associated with the *Monell* claims. It is well-established *Monell* discovery imposes a significant burden on the producing party because it is extremely time consuming and, thus, costly. *See, e.g., Medina*, 100 F. Supp. 2d at 895 (recognizing "discovery relating to the municipality's policies and practices … can add significant time, effort, and complications to the discovery process"); *Demouchette*, 2011 U.S. Dist. LEXIS 15690, at *19 ("*Monell* discovery can add significant time, effort, and complications to the discovery process, …..");  *Wilson v. City of Chicago*, Case No. 07-C-1682, 2008 U.S. Dist. LEXIS 60658, at *6 (N.D. Ill. July 24, 2008) ("The Court is well aware that *Monell* discovery can represent a significant expenditure of time"); *Price v. Kraus*, Case No. 2:15-CV-331-PRC, 2016 U.S. Dist. LEXIS 11190, at *5 (N.D. Ind. Feb. 1, 2016)

301282602v1 1003420

(indicating that "the discovery of *Monell* claims 'can add significant time, effort, and complications to the discovery process'") (citations omitted).[3]

This case is no exception. To date, Ms. Terry has requested the following documents from Armor, in pertinent part:

> REQUEST NO. 1: All Documents and Communications, including any physical evidence, which related to, support and/or rebut any of the allegations or claims in Plaintiff's Complaint, including documents the County may rely upon to support any Answer, Affirmative Defense, or Responses to Interrogatories.
>
> …
>
> REQUEST NO. 11: All policies, orders, manuals, procedural guides, training guidelines or materials, rules, or practices, relating in any way to the following subjects for the time period March 9, 2009 – March 9 2015:
>
> a.    Access of inmates to medical treatment;
> b.    Provision of medical care to inmates and detainees;
> c.    Communication and coordination between jail staff and medical staff;
> d.    Access of inmates and detainees to medical care outside of Milwaukee County Jail;
> e.    Coordination with hospitals for treatment and care for inmates and detainees; and
> f.    Staffing of medical personnel at Milwaukee County Jail.
>
> REQUEST NO. 12: All Documents relating to the administration of health care services at Milwaukee County Jail, including but not limited to, complete and unredacted contracts for services, training records of health care providers, evaluations of health care providers, qualifications of health care providers, professional or internal discipline of health care providers, staff listings, staff evaluations, staff training, staff discipline, procedures for obtaining medical services and documents relating to the provision of medical services (including but not limited to administration of medication) to Milwaukee County jail detainees from March 9, 2009 to March 9, 2015.
>
> REQUEST NO. 13: All Documents relating to any and all complaints by detainees or any other person alleging inadequate medical care, denial of medical care, or denial of medication at Milwaukee County Jail from March 9, 2009 – March 9, 2015.

---

[3] *Monell* discovery also creates a burden on the non-producing individual defendants, who must review the documents produced.

301282602v1 1003420

REQUEST NO. 14: All Documents relating to the Reports on Settlement Agreement in the Christensen Case Milwaukee authored by Dr. Ronald Shansky as a result of the consent decree in Christensen, et al. v. Sullivan, et al., No. 96-cv-001835. This Request includes the Reports and any Documents and Communications related to the Reports.

REQUEST NO. 15: All Documents comprising Communications of any kind relating to the shackling of Plaintiff by Defendants, including but not limited to memos, letters, faxes, e-mails, reports, etc. This Requests includes, but is not limited to: (a) all Communications between the Defendants, and County employees relating to the allegations in Plaintiff's Complaint; and (b) all Communications with any witnesses to the events described in the complaint.

(Kugler Decl., Ex. E.) Armor provided written responses and produced responsive documents, and Ms. Terry sent a Rule 37 letter regarding those responses and responsive documents. (Kugler Decl., Exs. D and H.) The Rule 37 letter states, in pertinent part, as follows:

Armor also objects that subpart (b) of Plaintiff's [Request No. 11] – which requests policies related to "provision of medical care to inmates and detainees" – is overbroad. Subpart (b) is requesting information relevant and proportional to Plaintiff's *Monell* claim against Armor, as detailed in Plaintiff's Complaint. [citations omitted] Plaintiff has reviewed Armor's answer, and, in response, Plaintiff requests the following policies attached as Appendix A. …[4]

Request No. 12 is both relevant and proportional, as it was tailored to obtain documents necessary for Plaintiff's *Monell* claim, as detailed in Plaintiff's Complaint …. Plaintiff narrows her request to include all responsive documents from May 2013 through April 2014. As a point of clarification, Plaintiff is seeking evaluations of health care providers, staff listings, staff evaluations, staff training, and staff discipline. For example, this would include the health care service audits containing "documentation of deficiencies [and] plans for correction of deficiencies." …

In response to Request No. 13, Armor objects, stating that it will limit its production based on time and the substance of the grievance, and claiming that Plaintiff's request is "unduly burdensome." This is insufficient and invalid. Courts in this Circuit have repeatedly allowed request tailored to elicit *Monell* discovery, like Plaintiff's, to include *all* complaints and lawsuits within a given period of time. [citations omitted] As such, and taking into account when Armor's contract with Milwaukee County Jail began, Plaintiff seeks all complaints by detainees or any other person alleging inadequate medical care, denial of medical care, or

---

[4] The citations are to the **Castillo**, **Tanner**, **Medina**, and **Grayson** cases, all discussed below.

18

denial of medication at Milwaukee County Jail from May 1, 2013 through April 1, 2014. …

(Kugler Decl., Ex. H.) The Rule 37 letter shows conclusively that Ms. Terry intends to seek broad discovery regarding her *Monell* claims against Armor.[5] (Id.)

In addition, the four cases Ms. Terry cites in her Rule 37 letter to Armor regarding Armor's responses to her first set of requests for production of documents support Armor's position in this motion. In two of the cases, ***Castillo v. City of Chicago*** and ***Tanner v. City of Waukegan***, the courts determined the *Monell* discovery burden to be a motivating factor in granting the defendants' motions to bifurcate. *See Castillo*, Case No. 11-C-7359, 2012 U.S. Dist. LEXIS 66591, at *7-8 (N.D. Ill. May 11, 2012) (granting bifurcation) (explaining that discovery requests "relating to generalized" policies and practices "place significant burdens on the discovery process"); ***Tanner***, Case No. 10-C-1645, 2011 U.S. Dist. LEXIS 16025, at *23 ("*Monell* discovery can be appropriate and even necessary to a plaintiff's claims under Rule 26 and still impose significant burdens on a municipality under Rule 42(b).") (explaining that although the court had granted the plaintiff's motion to compel, which involved requests for production including requests for "all documents related to allegations of police misconduct, as well as documents concerning the investigations and discipline related to such conduct," among other things, the significant burden of the discovery weighed in favor of granting the defendant's motion to bifurcate). In the third, ***Medina v. City of Chicago***, the court declined to bifurcate at the time the decision was issued but deferred discovery on the *Monell* claims until after

---

[5] Ms. Terry has also directed requests for admission and interrogatories to Armor. (Kugler Decl., Ex. E.) Ms. Terry and Armor have been engaged in a dispute over the sufficiency of Armor's responses to the requests to admission. (Kugler Decl., Exs. F, G, I.) The dispute centers on the fact that most of the requests are complex as directed to Armor, a corporation responsible only for *Monell* claims. Armor has made a good faith effort to provide appropriate responses, subject to necessary qualifications. The dispute over the sufficiency of Armor's responses to the requests to admit also demonstrates the discovery burden associated with *Monell* claims.

19

301282602v1 1003420

discovery on the individual officer claims was completed, indicating the motion to bifurcate would be reassessed at that time. *See* 100 F. Supp. 2d at 898. Finally, in the fourth, ***Grayson v. City of Aurora***, which was a decision on a motion to compel, not a motion to bifurcate or stay discovery, the court recognized in its decision that "liberal discovery does not mean unlimited discovery, and Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and dictate its sequence." Case No. 13-C-1705, 2013 U.S. Dist. LEXIS 177933, at *6 (N.D. Ill. Dec. 19, 2013) (internal citations omitted).

Second, bifurcation will promote judicial economy. *See **Ojeda-Beltran***, U.S. Dist. LEXIS 54116, at *7 n.1 (recognizing that the *Monell* discovery would require significant resources by the parties and the court) ("We also believe that bifurcation promotes judicial economy by avoiding these potentially unnecessary resource expenditures.").

Third, bifurcation is appropriate because adjudication of the individual claims will determine the disposition of part, or all, of the *Monell* claims. Armor recognizes that, with deliberate indifference claims, the *Monell* claims are not dependent on the outcome of claims against individual defendants as a matter of law, and rather, the three factors set forth in *Thomas* must be applied. *See **Demouchette***, 2011 U.S. Dist. LEXIS 15690, at *9-12. However, Ms. Terry's failure to train allegations, which are part of her *Monell* claim against Armor and Milwaukee County, are dependent on the outcome of Mr. Terry's claims against the individual defendants. *See **Id***.; *see also **Jenkins***, 487 F.3d at 492.

In ***Demouchette v. Dart***, the Northern District of Illinois considered a motion to bifurcate in a case where, like here, the *Monell* claims were for deliberate indifference through custom and practice and for failure to train. 2011 U.S. Dist. LEXIS 15690, at *12-13. While the plaintiff argued against bifurcation with reference to the *Thomas* factors, the court determined that

because the plaintiff's *Monell* claims included failure to train, not all of the plaintiff's *Monell* claims were independent of those asserted against the individual defendants. *Id*. Ultimately, the court determined that the *Thomas* factors did not preclude bifurcation, noting, importantly, that the other considerations for bifurcation – namely discovery burdens and the prejudice to the parties – are the primary concerns of Rule 42(b), with prejudice as the "most important consideration." *Id*. at *18-19 (*citing Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 621 (N.D. Ill. 2000)). The court granted the motion to bifurcate. *Id*. at 35.

Moreover, courts have recognized that bifurcation may end the litigation of *Monell* claims on a practical basis, even if it does not legally dispose of those claims. *See, e.g., Clarett*, 2011 U.S. Dist. LEXIS 690, at *7 (recognizing that, after completing discovery on the individual claims, the parties may be in a position to resolve the case through settlement, which would save the parties considerable efforts); *Allison*, 2012 U.S. Dist. LEXIS 144138, at *7 ("[T]he Court recognizes the toll that *Monell* discovery sometimes takes on § 1983 litigation, as well as on the parties' willingness and ability to settle claims that otherwise may well lend themselves to resolution short of trial. Because litigation of *Monell* claims often is labor intensive for attorneys, lawyer and client sometimes find themselves at odds over the relative cost-benefit analysis when considering settlement offers after engaging in extensive *Monell* discovery. These concerns are widely shared among judges.").

## C.    IF THE COURT DECLINES TO STAY PROCEEDINGS AND DISCOVERY, BIFURCATION IS NECESSARY.

Thus, if the Court determines a stay of proceedings and discovery, pending resolution of the criminal charges against Armor, is not warranted, the Court should bifurcate the *Monell* claims against Armor.

301282602v1 1003420

### III. IN THE FURTHER ALTERNATIVE, AND AT A MINIMUM, DISCOVERY RELATED TO THE ISSUES RAISED IN THE CRIMINAL CHARGES AGAINST ARMOR SHOULD BE STAYED.

If the Court determines neither a stay of proceedings and discovery nor bifurcation is warranted (which Armor disputes), Armor requests, as alternative and minimum relief, that discovery related to the issues raised in the criminal charges against Armor should be stayed. Permitting discovery to proceed on these issues would be an inefficient use of resources. Armor employees will not answer any questions about alleged falsifying medical records pending the outcome of the criminal charges. This will waste both parties and the Court's resources. On this basis, the court should exercise its discretion and control over the scope and sequence of discovery to stay discovery on the issues raised in the criminal charges against Armor.

### <u>CONCLUSION</u>

For the reasons set forth herein, Armor's motion to stay proceedings and discovery should be granted. In the alternative, Armor's motion to bifurcate should be granted. In the further alternative, and at a minimum, all discovery related to the issues raised in the criminal charges against Armor should be stayed.

301282602v1 1003420

Dated 5th day of March, 2018.

/s/ Mollie T. Kugler
Michael P. Russart
State Bar No. 1023128
Mollie T. Kugler
State Bar No. 1093318
Attorneys for Defendant Armor Correctional
Health Services
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue
Suite 2600
Milwaukee, WI 53202
Phone No.  414-276-6464
Fax No.  414-276-9220
E-mail Address(es):
mrussart@hinshawlaw.com
mkugler@hinshawlaw.com

23

301282602v1 1003420