IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| REBECCA TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-cv-01112 |
| | ) | |
| COUNTY OF MILWAUKEE, *et al.*, | ) | Hon. J.P. Stadtmueller |
| | ) | |
| Defendants. | ) | JURY TRIAL |
| | ) | DEMANDED |

**PLAINTIFF'S OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Healthcare at the Milwaukee County Jail is abysmal. It was bad before Armor Correctional took over, and it is bad now. In recent years, the poor healthcare has led to babies being born in jail cells, and multiple people dying needlessly. Plaintiff Rebecca Terry was one of the women forced to give birth alone, in her jail cell, as a result of the Defendants' terrible healthcare. She brings a *Monell* claim because what happened to her is part of a much broader pattern and practice of providing substandard, unconstitutional healthcare.

Plaintiff alleges that the failure of correctional officers and medical staff to respond to inmate[1] requests for medical care, or inmates' obvious need for medical care, was the moving force behind the violation of her constitutional rights. Plaintiff's *Monell* allegations are fulsome and are more than adequate to put the County and Armor on notice of her claims. Plaintiff identifies the specific practices at the jail that led to the constitutional violation. And, importantly, Plaintiff further bolsters her allegation that a pattern and practice at the jail is the cause of the inadequate medical care detainees receive by pointing TO a consent decree regarding jail medical care that has been in effect for more than 16 years and which has led to extensive documentation of correctional officers and medical personnel's failure to respond to inmates' medical needs. Plaintiff also supplies at least ten other examples of occasions when the correctional staff and medical staff ignored the requests or obvious need for medical care. Plaintiff alleges far more than Rule 8 requires and the motions for judgment on the pleadings should be denied.

Milwaukee County ("County") and Armor Correctional ("Armor") have moved for judgment on the pleadings as to Plaintiff's *Monell* claim. See Dkt. Nos. 77 & 82. According to Defendants, Ms. Terry's Complaint fails to adequately allege a custom or practice of inadequate

---

[1] Plaintiff uses the terms inmate and detainee interchangeably throughout this memorandum without implying distinctions as to the posture of the individual's criminal case.

medical care because the injury to Ms. Terry—birth unattended by any medical care or even sanitary conditions—is so different from the other tragic medical failures alleged in her complaint. They are wrong. *Monell* pleadings typically are required to include a pattern of other incidents to show that the policymaker was aware of similar constitutional violations, not similar injuries. In other words, the complaint must provide examples of similar unconstitional conduct—ignoring the medical needs of inmates—not a similarity of consequences (such as type or degree of injury). Because binding Seventh Circuit precedent requires only that Plaintiff allege a pattern of conduct that put Plaintiff at risk of constitutional violations, Defendants' arguments about the nature of Plaintiff's injuries are without merit.

### Summary of Plaintiff's Allegations

Plaintiff alleges that her experience of being ignored by correctional staff and medical staff while she gave birth, alone, in a Milwaukee County jail cell, was part of a larger pattern and practice that existed both before and after her experience.

Plaintiff's Complaint summarizes the practices at the jail that have led to the inadequate care:

> Specifically, there exists a widespread practice at Milwaukee County Jail under which Jail employees, including correctional officers and medical personnel, commonly fail or refuse to: (1) properly examine a detainee with a serious medical condition; (2) provide proper medication to a detainee with a serious medical condition; (3) respond to detainees who have requested medical attention or medication or asked to see a doctor; (4) respond to detainees who exhibit obvious signs of a serious medical condition or illness; or (5) adequately staff the jail with correctional and medical personnel necessary to respond to detainee needs.

¶¶75, 80.

Plaintiff's complaint provides a large number of examples of other inmates whose serious medical needs were ignored. *See* Dkt. No 1, Complaint, at ¶ 57 (inmate Virgilio Jimenez died because correctional officers failed to check on inmates every thirty minutes); *id.* at ¶58 (inmate Corey Kleser was denied insulin needed to treat his diabetes); *id.* at ¶59 (inmate Robert Schmidt was denied

medicine needed to prevent painful blood clots); *id.* at ¶60 (inmate Antonio Cowser received no treatment for suicidal ideation and correctional officers did not monitor his activity, resulting in his death); *id.* at ¶61 (inmate Paul Heytens was denied psychotropic medications and correctional officers failed to monitor his activities every thirty minutes, resulting in his suicide); *id.* at ¶63 (inmate Kwame Moore was refused medical care for a pain in his groin which ultimately resulted in removal of the affected testicle); *id.* at ¶64 (inmate Terrill Thomas was ignored by correctional officers and died of dehydration in his jail cell); *id.* at ¶65 (inmate Shade Swayzer was denied medical care and forced to give birth in a cell alone, resulting in the death of her newborn daughter); *id.* at ¶66 (inmate Kristin Fiebrink was suffering from withdrawal symptoms and correctional officers ignored her screams, resulting in her death); *id.* at ¶67 (inmate Michael Madden had a heart condition and heroin addiction and suffered a seizure, but correctional officers refused him medical care and instead dropped him on his head; he died later the same day). These examples show a repeated failure by correctional officers and health care personnel to monitor or respond to inmates.

Plaintiff also alleges how (in addition to the understaffing) this widespread practice of ignoring inmate medical needs was permitted to flourish: the County and Armor failed to adequately train, supervise, and control correctional officers and medical personnel. *Id.* at ¶¶76, 81 In addition, Plaintiff also provides direct allegations—by referring to the *Christensen* consent decree governing medical care at the jail—that explain the causal link between the inadequate medical care and practices at the jail. *Id.* at ¶¶47-49. Plaintiff alleges that in the years leading up to Plaintiff's experience at the jail, the medical monitor for the consent decree documented the inadequate medical care at the jail, explained that correctional officers ignore detainees' medical needs, and warned that the jail was understaffed. *Id.* at ¶¶50-54. Plaintiff alleges that even sixteen years since the decree was entered, the consent decree remains in force because the jail is not in substantial compliance with its provisions. *Id.* at ¶55. Plaintiff explains that the medical monitor's findings

"demonstrate[] the Defendants' pattern of deliberate indifference [to] inmates' medical needs." *Id.* at ¶56.

And in addition to the allegations in the Complaint, a recent deposition revealed that the County and Armor have a widespread practice of allowing inmates to re-enter the jail after returning from the hospital without proper documentation of their condition or required follow-up care, as was the case when Rebecca Terry was returned to the jail from the hospital before she gave birth.[2] That particular pattern of accepting inmates without proper documentation from the hospital existed long before Rebecca Terry entered the jail, and it continued after she left, despite the fact that Armor's written policy expressly prohibited inmates from being re-admitted to the jail without proper documentation from the hospital, given the obvious medical risks in doing so.

## LEGAL STANDARD

Rule 12(c) "permits a party to move for judgment after the complaint and answer have been filed by the parties." *Buchanan–Moore v. Cnty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir.2009). "A motion for judgment on the pleadings is governed by the same standard[ ] as a motion to dismiss for failure to state a claim under Rule 12(b)(6)," *Adams v. City of Indianapolis,* 742 F.3d 720, 727–28 (7th Cir. 2014). In order to survive a Rule 12 (b) (6) or 12 (c) motion, the complaint state a claim that is plausible on its face. *Vinson v. Vermilion Cnty., Ill.,* 776 F.3d 924, 928 (7th Cir.2015); *see Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Adams,* 742 F.3d at 728. When determining the sufficiency of a complaint under the plausibility standard, courts accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. *See Forgue v. City of Chicago,* 873 F.3d 962, 966 (7th Cir. 2017); *Roberts v. City of Chicago,* 817 F.3d 561, 564 (7th Cir.

---

[2] Although this specific factual allegation in support of her *Monell* claim was not pled, plaintiffs are permitted to provide additional factual allegations in responding to motions attacking the sufficiency of the pleadings. *See Geinosky v. City of Chicago,* 675 F.3d 743, 745 (7th Cir. 2012); *see also Adedeji v. Cobble,* 10 C 0892, 2013 WL 449592, at *2 (N.D. Ill. Feb. 5, 2013) ("plaintiff may supplement existing claims with additional factual allegations in the response to the motion to dismiss as long as the new facts are consistent with the original claims made in the complaint").

2016). There is no heightened pleading standard for civil rights claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) *citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164 (1992).

To state a claim for relief against a municipality under § 1983, a plaintiff must adequately allege that "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). *See also Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017) (*en banc*) (noting that this is a non-exclusive list of ways to prove a *Monell* claim).

## ARGUMENT

### I. Plaintiff's *Monell* Allegations Satisfy the Requirements of Federal Rule of Civil Procedure 8.

#### A. Plaintiff's Allegations Give Rise to an Inference of Liability Under *Monell* and Adequately Alert Defendants to the Claims Against Them.

Plaintiff has pled facts consistent with the second approach, alleging a widespread custom or practice of unconstitutional conduct to which policymakers have acquiesced. A municipality is liable if their officials knew of a widespread practice presenting an obvious risk of harm but failed to correct it. *Glisson*, 849 F.3d at 379 (*en banc*) (citing *Monell*, 436 U.S. at 690-91); *Daniel v. Cook County*, 833 F.3d 728, 735 (7th Cir. 2016); *Davis v. Carter*, 452 F.3d 686, 691-92 (7th Cir. 2006). At the pleading stage, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread that it was a custom. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Ms. Terry has satisfied Rule 8's pleading standard for a *Monell* claim by pleading "factual content" that allows the Court to draw the reasonable inference that the County and Armor

maintained a policy, custom, or practice of failing to adequately respond to detainee medical needs and that policy, custom, or practice caused Ms. Terry's injury. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). This is not a high bar. *White,* 829 F.3d at 843-44. In *White,* the court considered a complaint that alleged an officer's misconduct was "[i]n accordance with a widespread practice of the police department of the City of Chicago," and further alleged that the constitutional injury was caused by a standard form used by the department over and over again, and the Court concluded that the allegations were sufficient to plausibly state a *Monell* claim. *Id.* at 844. The court held that "White was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process." *Id.* citing *Jackson v. Marion Cnty.,* 66 F.3d 151, 152-53 (7th Cir. 1995).

After *White,* numerous cases in this Circuit demonstrate that, at the pleading stage, the Plaintiff need only allege that the constitutional violation she suffered was one of a larger pattern. *McDonald v. Obaisi*, No. 16-CV-5417, 2017 WL 4046351, at *4 (N.D. Ill. Sept. 13, 2017) (allegation that plaintiff received inadequate medical care caused by nine enumerated widespread customs and practices was sufficient to satisfy Rule 8); *Stokes v. Ewing*, No. 16 C 10621, 2017 WL 2224882, at *4 (N.D. Ill. May 22, 2017) (plaintiff's allegations that he was falsely arrested pursuant to a "custom, practice, and policy" that "promoted illegal arrests of innocent individuals" sufficient to survive a motion to dismiss under *White*); *Williams v. City of Chicago*, No. 16-CV-8271, 2017 WL 3169065, at *9 (N.D. Ill. July 26, 2017) (plaintiff's allegations of a pattern or practice of ignoring complaints of discrimination are enough to survive a motion to dismiss); *Kerlin v. Chicago Board of Elections*, No. 16-cv-74242017 WL 1208520, at *6–7 (N.D. Ill. Apr. 3, 2017) (relying on *White* and denying motion to dismiss where plaintiffs identified a specific constitutional deprivation of their right to vote and alleged a "pervasive and widespread de facto policy, practice, and procedure of willfully disregarding citizens' right to vote"); *Zinn v. Village of Sauk Village*, 2017 WL 783001 (N.D. Ill. Mar. 1, 2017)

(holding that plaintiffs sufficiently pled a *Monell* claim under *White* where plaintiffs alleged that they suffered a constitutional deprivation "pursuant to [defendant village's] widespread practice of illegally and unconstitutionally seizing private property" and charging monetary fees for its return); *Brainer v. Dart,* No. 16 CV 6013, 2018 WL 1519154, at *6 (N.D. Ill. Mar. 28, 2018) (allegation of widespread practice of failure to train, discipline, and supervise jail guards was sufficient even if it did not identify other instances of constitutional violations).

Like the plaintiff in *White* (who referenced the standard police form in his complaint), Ms. Terry's complaint references direct evidence of a pattern of unconstitutional conduct: she refers directly to the findings of the medical monitor for the consent decree stating that correctional officers ignore the needs of detainees. Dkt. No. 1, Complaint at ¶¶47-55. References in a complaint to official reports explaining the pattern of constitutional violations are also sufficient to support allegations of a widespread practice. *See, Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) ("In particular, not only has Plaintiff alleged his own Fourth Amendment excessive force injury, but he has also alleged that the Police Accountability Task Force Report and January 2017 DOJ Report highlight the deficiencies in relation to the CPD's use of excessive force that are sufficiently similar to Plaintiff's excessive force allegations—raising a reasonable inference that he is not alone in suffering constitutional injuries resulting from this alleged practice or custom."); *Listenbee v. City of Harvey*, No. 11 C 03031, 2013 WL 5567552, at *4 (N.D. Ill. Oct. 9, 2013) (DOJ report submitted as part of plaintiff's response to the motion to dismiss provided direct evidence in support of the allegation of widespread practice).

Moreover, Plaintiff's complaint alleges a wide pattern of Defendants ignoring detainee medical care, by citing ten other such occasions. Dkt. 1 ¶¶57-67. This level of pleading far exceeds the level of detail that the Seventh Circuit held was sufficient in *White.*

Plaintiff alleges that instead of responding to medical monitor's warning that correctional officers ignore the medical needs of detainees—by providing additional training to correctional officers and medical staff—the County instead acquiesced to the custom and practice of ignoring medical needs. Dkt. No 1 ¶¶ 48-55, 76 & 81. This, too, gives rise to an inference of liability. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029–30 (7th Cir. 2006) (a municipality's failure to train officers in response to repeated complaints of constitutional violations can give rise to *Monell* liability) *citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989); *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997) (a municipality would also be deliberately indifferent if it failed to provide further training after learning of a pattern of constitutional violations involving the exercise of police discretion); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (same).

### B. Defendants' Arguments that the Complaint is Both Overbroad and Also Lacks Sufficient Details Fail.

Given the extensive detail in Plaintiff's Complaint (which goes beyond what Rule 8 requires), Defendants cannot plausibly argue they have not been given sufficient notice of Plaintiff's claims. Indeed, the Defendants do not appear to seriously suggest otherwise. Instead, they complain that Ms. Terry's *Monell* claims are impermissibly "overbroad" because they include a "litany of allegations" Dkt. 82 at 11. But a "litany of allegations" is not a flaw in notice pleading. To the contrary, the litany of allegations show Defendants exactly what was wrong with their conduct.

Amor's complaint that "Ms. Terry's allegations encompass the entirety of Armor's operations at Milwaukee County Jail" is not well taken. Dkt. 82 at 12. Armor essentially argues that it is immune from being held liable for constitutional violations because the care it provides is so poor in so many areas. That is not the law. If Armor fails in many different ways and each of these ways is a colorable moving force behind the violation of Ms. Terry's rights, there is nothing that prevents Plaintiff from alleging that each of Armor's failures constituted a custom of constitutional violations.

In other words, the complaint is not deficient or "overbroad" because it alleges that the jail and Armor ignored medical needs in several different contexts, all of which, taken together, resulted in inadequate medical care. *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016) (where an institution suffers from systemic problems that cause delays and confusion in the provision of healthcare plaintiff may allege that the system of diffuse responsibility itself demonstrates deliberate indifference to the inmates' health needs as a matter of official custom, policy, or practice).

Beyond saying that Plaintiff's complaint includes too many allegations, Defendants assert that "the required level of factual specificity rises with the complexity of the claim" Dkt. No. 77 at 10; Dkt. No. 82 at 4 *citing McCauley v. City of Chi.,* 671 F.3d 611, 616 (7th Cir. 2011). The *Monell* theories advanced in Ms. Terry's complaint are quite straightforward. In *McCauley*, the Seventh Circuit held that the plaintiff had not alleged sufficient facts to give rise to an inference of unlawful conduct because the theory underlying the claim was somewhat opaque: the plaintiff brought an equal protection claim and a corresponding *Monell* claim alleging that the Chicago Police Department did not do enough to protect victims of domestic victims. *Id.* at 613. That claim ran directly into a problem: no duty exists to create special police protection for a certain category of the public (domestic violence victims), but rather only to provide equal protection among all citizens. *Id.* at 618. In that particular circumstance, the plaintiff's complaint failed to plead the type of facts that would allow for an inference of unlawful conduct because there is nothing unlawful about failing to provide special treatment to a certain category of individuals. 671 F.3d at 618–19. In other words, the claim in *McCauley* lacked factual specificity because it proposed a novel legal (and legally unsupported) theory for a *Monell* claim. At bottom, Ms. Terry makes a straightforward claim that correctional officers and medical staff ignore detainee medical needs and that caused the constitutional violation at issue here.

Contrary to Defendants' assertions, Plaintiff's allegations are not so vague that the Defendants are not properly on notice. For example, Armor points to *Chapporo v. Powell*, but the allegations in that case were far more vague than those in Ms. Terry's complaint. Dkt. No. 82 (at 8. In *Chapporo*, the plaintiff asserted that "general lawlessness among CPD officers caused the violations surrounding his arrest." *Chaparro v. Powell*, No. 07 C 5277, 2008 WL 68683, at *3 (N.D. Ill. Jan. 2, 2008). He provided no facts to show that link and the policy he alleged was "nebulous" about any connection to his own constitutional violation. Here, Plaintiff does far more than allege "general lawlessness" caused the constitutional violations. Rather she enumerates specific aspects of the policy of inadequate medical care. Dkt. No. 1 at ¶75 & ¶80 (medical staff fail to examine detainees with a serious medical condition, medical staff and correctional staff fail to respond for requests for medical treatment, medical and correctional staff fail to respond to detainees in obvious need of medical care, medical staff fail to provide timely healthcare and/or the County and Armor fail to adequately staff the jail with medical personnel). She explains that this pattern of constitutional violations has played out in numerous incidents at the jail, including those documented by the medical monitor of the consent decree. *Id.* at ¶¶46-67. Unlike a reference to an amorphous "code of silence," Plaintiff has spelled out her claims in great detail.

Nor are Plaintiff's allegations about precisely how the pattern of misconduct plays out conclusory. *Cf. Payne v. Cty. of Cook*, No. 15 C 3154, 2016 WL 1086527, at *18 (N.D. Ill. Mar. 21, 2016) (plaintiff used impermissibly conclusory terms such as ""[t]he City of Chicago has a practice of condoning police misconduct and not disciplining officers who engage in misconduct."). Plaintiff here has not alleged merely "misconduct" but has instead enumerated how the policy and practice of inadequate medical care plays out. Dkt. No. 1 at ¶75 & ¶80.

*Arita v. Wexford Health Sources* is likewise distinguishable because the plaintiff there did not "provide any facts, general or specific, regarding the experiences of other Sheridan inmates with respect to Wexford's provision of medical care." *Arita*, No. 15-CV-01173, 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016). The *Anita* court distinguished the allegations in that case from those cases "involving allegations of a series of bad acts giving rise to an inference of a policy, practice, or custom of deliberate indifference." *Id.* Here, unlike in *Anita*, Plaintiff has alleged numerous other instances of inadequate medical care caused by failure to monitor or respond to inmates and even included facts about the pattern of deficiencies established under the consent decree. *See generally*, Dkt. No. 1 at ¶¶ 47-67.

Finally, it bears noting that Ms. Terry's pleading burden is commensurate with the amount of information available to her; she is not expected to plead facts that are not accessible to her without discovery. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 528–29 (7th Cir. 2015). At this stage she "need only **allege** a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists." *Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (emphasis in the original).[3] Plaintiff does more than enough "by way of factual content to 'nudg[e]' [her] claim' of a pattern and practice of ignoring inmate medical detainees 'across the line from conceivable to plausible.' " *Iqbal,* 556 U.S. at 683 (quoting *Twombly,* 550 U.S. at 570). The motions should be denied.

---

[3] To the extent that the Court believes Ms. Terry's complaint does not allege sufficient facts in support of a custom or practice, those claims should be dismissed without prejudice and she should be permitted to file an amended complaint. *See Bogie v. Rosenberg,* 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible.").

## II.   Plaintiff Adequately Pleads Similar Unconstitutional Conduct That Amounted to a Custom and Posed a Risk of Harm to Plaintiff.

Defendants assert that the ten other instances of inadequate medical care that Plaintiff cites in her complaint are not similar enough to her own injury to make out a *Monell* claim. Dkt. No. 78 at 14-16, Dkt. 82 at 13-15 (distinguishing the medical condition Plaintiff suffered from those of the other detainees mentioned in the complaint). Not so. Plaintiff is not required to allege facts that result in similar injuries to detainees; she is required to allege incidents that are caused by the same or similar unconstitutional conduct and which give rise to an inference that a larger custom or practice existed. Put simply, Plaintiff does not have to allege that even one other (let alone several other) women were forced to give birth alone in the Milwaukee County Jail because of the County and Armor's customs of ignoring serious medical needs. Rather, she need only allege that the County and Armor were on notice of the risk that her medical needs would be ignored.

The purpose of allegations of a custom or pattern in a *Monell* claim is to demonstrate that the municipality was on notice of a pattern of behavior by its employees which carried the risk of harm to the plaintiff. *Thomas v. Cook County*, 604 F.3d 293, 298-300, 303 (7th Cir. 2010) (to prevail on a *Monell* claim, the plaintiff in an inadequate medical care case had to demonstrate that policymakers were aware of the risk posed by the custom of delaying medical care in the jail); *see also Davis v. Carter*, 452 F.3d at 694 (in a case alleging inadequate medical care in a jail, plaintiff could establish a custom or practice by producing "competent evidence tending to show a general pattern of repeated behavior" by the county jail caused the constitutional violation). There is no requirement, however, that the repeated behavior by the municipality's employees result in injury to any other inmate, let alone that the inmates must suffer the same injury. The Seventh Circuit explained this concept in *Davis*:

Cook County also argues that the plaintiff cannot establish a widespread custom or practice because she failed to identify any other incarcerated individuals who had suffered from lack of methadone treatment. This argument, however, fails to appreciate the difference between showing repeated past bad *acts* versus repeated past *injuries*. To establish a widespread custom or policy, the plaintiff here was not required to show that Cook County's alleged repeated pattern of delay (*i.e.,* its alleged past "bad acts") actually caused pain and suffering to other inmates in need of medical intervention (*i.e.,* repeated past injuries). Instead, it was enough to provide competent evidence tending to show that Cook County routinely failed to provide methadone to inmates for several days.

*Davis*, 452 F.3d at 695 (emphasis in original) (internal citations omitted); *see also Daniel*, 833 F.3d at 734 (plaintiff need only allege systemic failures such as deficiencies in staffing or procedures exist and did not have to allege that any other inmate suffered an injury).

Likewise, Plaintiff is not required to allege that the widespread practice of ignoring detainee medical needs caused other women to give birth alone in a Milwaukee County jail cell. Rather, it is enough for her to allege a widespread practice—as seen both through the *Christensen* decree and the ten other examples of medical crises at the jail—existed and put Defendants on notice of the risk of harm to Plaintiff.

The Seventh Circuit's holdings in *Davis* and *Daniel* are entirely in keeping with *Connick v. Thoompson* and its progeny. *Cf.* Dkt. 78 at 14; Dkt. 82 at 13. In *Connick,* the Supreme Court held that a pattern of similar constitutional violations is typically necessary to show that the policymaker was aware of the risk of harm and deliberately indifferent to it. *Connick v. Thompson*, 563 U.S. 51, 54 (2011). There the plaintiff alleged that the prosecutors in a criminal case failed to disclose a crime lab report which was exculpatory, in violation of *Brady v. Maryland. Id.* at 54, 55. The plaintiff's *Monell* theory was that the district attorney had failed to train his subordinates on their disclosure obligations under *Brady. Id.* at 56-57. Although the plaintiff was not proceeding on a widespread practice theory to place the prosecutor on notice of the problem—he was proceeding on the theory that the need for training was "so obvious" that no such pattern would be necessary—the court still

commented on what the allegations of a widespread practice are meant to do. The court noted that the four previous *Brady* violations from the decade before plaintiff's trial were insufficient to put the prosecutor on notice of the risk of harm because the nature of the violations was factually distinct. *Id.* at 62-63 ("None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind. Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation.") Nothing in *Connick* suggests that the plaintiff needed to provide a pattern of similar injuries—i.e., other individuals who also spent significant time in prison because of *Brady* violations. It is the similarity of the constitutional violation that counts, not the type of injuries that might result. *See Woodward v. CMS*, 368 F.3d 917, 929 (7th Cir. 2004) (healthcare corporation could not plausibly argue it was entitled to "one free suicide" because the relevant pattern for liability purposes was the notice of constitutional violations, not a pattern of previous suicides at the facility).

Gill v. City of Milwaukee* also does not change the result here.  *Cf.* Dkt. No. 78 at 12; Dkt. No. 82 at 13. In *Gill,* the plaintiff alleged that Milwaukee Police officers committed constitutional violations when they coerced a confession from him. 850 F. 3d 335, 338, 399, 344.  The Seventh Circuit held that he had not sufficiently alleged a pattern to support a *Monell* claim. *Id.* ("[The Complaint] does not provide examples of other Milwaukee police officers taking actions similar to those complained of here. More importantly, it does not plausibly allege that such examples exist."). *Id.* The Seventh Circuit did not require that the plaintiff to allege a pattern of similar injuries. *Id.*

Here, Plaintiff has adequately alleged that other inmates' medical needs were ignored and that this custom and practice put the policymakers on notice that she was at a risk of harm. Inmates who suffered death, loss of a testicle, lack of access to crucial medication, all have the necessary

element in common with Terry: they suffered a constitutional violation when correctional officers of medical staff ignored their serious medical needs.

Defendants point to *Foy v. City of Chicago*, but that case is inapposite. Dkt. No. 78 at 16; Dkt No. 82 at 15 citing *Foy v. City of Chicago*, No. 15 C 3720, 2016 WL 2770880, at *8 (N.D. Ill. May 12, 2016). In *Foy*, the plaintiff simply stated that a series of inmates had died in custody without explaining how their deaths were caused by an unconstitutional custom or practice. *Id.* at 8. Here, each instance in Plaintiff's complaint includes information about how the County and Armor's custom caused the injury. Dkt. No. 1 ¶¶57-67 (explaining how in each instance the needs of the detainee were ignored by correctional and medical staff at the jail). All of the practices that Plaintiff alleges formed the widespread custom or practice are closely related to Plaintiff's own experience and closely related to one another—each involves correctional or medical staff simply ignoring a request for medical care. *See id.* ¶¶75, 80. Likewise, all of the similar instances of inadequate care that she cites in her complaint involve not simply unfortunate medical emergencies, but instances where the correctional and medical staff simply ignored the medical needs of the inmates, causing pain, removal of body parts, and death. ¶¶57-67. *Cf Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (dismissing a complaint that alleged customs and policies of such far-reaching misconduct as failure to train on report writing, false police reports, encouraging officers to engage in cover ups of "excessive force, false arrest, and other unconstitutional misconduct," failure to control use of firearms, encouraging officers to lie, detaining witnesses who were not suspected of any crime, and excessive force). The pattern here is straightforward: a detainee at Milwaukee County Jail requests medical attention or obviously needs medical attention and correctional staff and/or medical staff ignore the request or obvious need. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (if the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible to infer that there is a policy at work).

In sum, Plaintiff has enumerated practices which all center around the failure to monitor inmates' need for medical care, provided other examples where inmates were harmed by these practices, and cited to a pattern of deficiencies recognized in the consent decree, Plaintiff's allegations are not so overbroad as to fail to provide proper notice to the County and Armor under Rule 8.

To the extent that Defendants may argue that the correctional staff and medical staff in Plaintiff's ten illustrations ignored serious medical needs of detainees in different ways (refusing medication vs. refusing water vs. refusing an ambulance to the hospital), that argument does not pass muster either. Even at summary judgment, the Seventh Circuit has not required a pattern of exactly analogous constitutional violations in order to demonstrate municipal liability. Instead, it has required a widespread pattern of harms stemming from a common source—*i.e.*, a common policymaking failure. *See, e.g., King v. Kramer*, 680 F.3d 1013, 1020-21 (7th Cir. 2012) (evidence that private healthcare provider's practice was to take inmates off a medication without physician supervision was sufficient to show a pattern without reference to a specific type of medication or ailment); *see also Piercy v. Warkins*, 14 CV 7398, 2017 WL 1477959, at *12 (N.D. Ill. Apr. 25, 2017) (denying summary judgment where Plaintiff in medical deliberate indifference case alleged that defendant "had a widespread practice of providing inadequate medical care to WCJ inmates—in essence, Plaintiff claims that ACH would cut corners in all aspects of providing care"). And, as discussed above even in the absence of exactly analogous prior incidents, a municipality can be liable for the obvious consequences of its inaction. *See Woodward*, 368 F.3d at 929. This case meets that standard as well. Plaintiff has plausibly pled sufficient facts indicating a custom of constitutional violations to survive the motions for judgment on the pleadings.[4]

---

[4] Defendants also mention that one incident in Plaintiff's complaint took place at the House of Corrections while it was under the control of the Milwaukee County Sheriff. Dkt. No 78 at 15, Dkt. No. 82 at 15-16. That is because events at the House of Corrections could place the policymaker—the sheriff—on notice of the risk

Finally, Defendants take issue with the timing of certain incidents alleged in Plaintiff's Complaint. Specifically, the Milwaukee County Defendants note that Plaintiff "makes no distinction between events occurring before or after…Armor contracted to 'direct the provision of health care services at the jail." Dkt. No. 78. But Milwaukee County's duty to provide constitutionally adequate medical care was not diminished by its choice to hire a private healthcare corporation. *King*, 680 F.3d at 1020 ("The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services."). Nor, contrary to Defendants' claim, does the fact that Ms. Terry's Complaint refers to certain incidents that post-date her own experience mean that her complaint is insufficient. Dkt. No. 78 at 18-19; Dkt. No. 82 at 16. The Defendants point to *Calusinski v. Kruger* (Dkt. No 78 at 18l; Dkt. No. 82 at 16), but *Calusinsksi* simply concluded that a magistrate judge did not abuse her discretion in excluding a single instance of later alleged misconduct. 24 F.3d 931, 936 (7th Cir. 1994). Nothing in *Calusinski* forecloses Plaintiff from relying on episodes that took place after her experience to make out a *Monell* claim. Incidents post-dating a particular case are probative of the policies and practices that were in place at the time of the incident, and they are evidence of policymakers' deliberate indifference. *Sherrod v. Berry*, 827 F.2d 195, 205 (7th Cir 1987), *vacated on other grounds*, 835 F.2d 1222 (7th Cir. 1988) (admission of evidence of post-incident events upheld on appeal); *Hoskins v. City of Milwaukee*, 994 F.Supp.2d 972, 981 (E.D. Wis. 2014) (a pleading including similar instances of misconduct without reference to the time they took place could adequately make out a *Monell* claim); *Karney v. City of Naperville*, No. 15 C 4608, 2016 WL 6082354, at *11 (N.D. Ill. Oct. 18, 2016) (later occurring incidents can be indicative of the existence of a pre-existing practice

---

of harm to plaintiff. The location of the constitutional violation has no bearing on the analysis. This would be analogous to a municipality arguing that the actions of a police officer at one station could not be considered as part of an alleged improper practice that also involved officers at other police stations in the same department. What matters is whether the unconstitutional conduct by County and Armor employees was the same.

or custom.); *Paroubek v. Friddle*, No. 86 C 7534, 1987 WL 7818, at \*2 (N.D. Ill. Mar. 11, 1987) (acts showing the existence of previous *or similar* incidents involving the plaintiff or others with similar experiences sufficient to make out a *Monell* claim) (emphasis supplied). In sum, Plaintiff must identify evidence that the County and Armor's failures were a policy and not a random event and subsequent events can certainly provide proof of that. *Thomas*, 604 F.3d at 303.

### III.    The Acting Sheriff Has Been Substituted for Clarke By Operation of Law.

For claims against Clarke in his official capacity, he has already been substituted as a matter of law, even if there is not an order to that effect. *See* Fed. R. Civ. P. 25(d).

### IV.    Plaintiff Does Not Object to Dismissal of the Supervisory Liability Claims Against Clarke

Plaintiff agrees to the dismissal of claims against Clarke in his personal capacity.

### V.    The Milwaukee County Defendants' Request that *Monell* Discovery Be Limited Must Be Denied

Milwaukee County requests that the Court limit discovery on Plaintiff's *Monell* claim. Dkt. No. 78 at 23-24. This request is without merit for several reasons. First, it does not suggest a rational organizing principle by which to limit discovery. Instead, it improperly seeks to impose the burden to craft a discovery solution on the Court. Second, it attempts to limit Plaintiff's theory of *Monell* liability to Armor rather than the County with no evidentiary support for greatly limiting the County's potential exposure. Finally, it asks to be relieved from responding to discovery that the Court has already ordered be produced, without even acknowledging the Court's order compelling production. For all of these reasons, the Court should deny the request.

The County's proposed limitation on discovery—based on type of injury (unmedicated and unsanitary childbirth) rather than by type of constitutional violation—is a nonstarter. Dkt. No. 78 at 23. As explained above, Plaintiff's burden is not to show that other women gave birth alone at the jail, but to show, through a pattern of constitutional violations, that the County was on notice of the

risk of harm to Plaintiff. Accordingly, the Milwaukee County Defendants' proposal is not workable because it does not allow Plaintiff to obtain the evidence necessary to prove her claim.

Moreover, as explained in Plaintiff's Motion for Sanctions, Dkt. 101, the Milwaukee County Defendants have already helped themselves to a complete stay of *Monell* discovery. It would be inequitable to further limit discovery under these circumstances. At any rate, it is inefficient for the Court to craft a limitation on discovery since the parties are much closer to the facts and better suited to determine what discovery they need to meet their respective burdens. For example, the County lists a hosts of subject areas it believes the Court should shield from discovery—mental health assessments, dental care, vision care, hearing assessments, diabetic management, chronic care, specialist visits—but Plaintiff has not even asked for discovery on those topics. Dkt. No. 78 at 24. It would make little sense for the Court to spend time trying to fashion a discovery solution before the parties have even discussed what evidence they need.

The Court should also reject the Milwaukee County Defendants' suggestion to limit the temporal scope of the *Monell* discovery. The County apparently believes that Plaintiff is not entitled to six years-worth of documents from the jail because her own horrific experience there was only three hours. Dkt. No. 78 at 24. But the length of time it takes to inflict a constitutional injury has no bearing on what *Monell* discovery is available (if it were, there would be no *Monell* discovery at all in a police shooting case that elapsed in a matter of seconds). Simply put: for Plaintiff to show a widespread practice at the jail, she needs a sufficient number of data points to do so. *See Jackson v. Marion County,* 66 F.3d 151, 152 (7th Cir.1995) (policymaker's knowledge of the risk of harm may be imputed from a sufficient number of constitutional violations). Ms. Terry is not less entitled to the evidence necessary to prove her claim because Defendants were able to injure her so swiftly.

The Milwaukee County Defendants also seek an Order relieving them their duties to respond to discovery requests that this Court has already ordered them to respond to. Dkt. No. 78

at 24 (listing discovery requests in Plaintiff's First Set of Requests for Production) *Cf.* Dkt. Nos. 49, 51, 59 (ordering the Milwaukee County Defendants to respond to Plaintiff's First Set of Requests for Production). Yet they never even explain that they have already been ordered to respond to these requests. An unacknowledged second bite at the apple is not warranted here, especially since counsel for the Milwaukee County Defendants apparently not even mentioned the Court's order compelling the *Monell* discovery to his clients yet—*see* Dkt. No. 59 & Dkt. No. 102 at ¶6. The Milwaukee County Defendants have been ordered to produce the *Monell* discovery and, rather than move the Court to reconsider that order, have *sub silentio* requested a protective order to undo the Court's previous order. The request is procedurally improper and should be denied on that basis.

The County also requests that the Court limit the relevant *Monell* time period to only the time period after Armor took over healthcare at the jail. However, as discussed above, the County's obligation to provide constitutionally adequate medical care did not start or end when Armor took over. *See King*, 680 F.3d at 1017. Although the Milwaukee Defendants claim that as a factual matter "structure and responsibilities at the jail" changed when Armor took over (Dkt. No. 78 at 26), Plaintiff, and this Court, are not required to accept that representation merely based on Defendants say-so. Simply put, because Defendants have refused to provide the necessary, Court-ordered discovery on the *Monell* claims thus far (*See* Dkt. No 101), Plaintiff is in no position to even evaluate whether she could consider limiting the relevant *Monell* time period to the time after Armor took over at the jail. Accordingly, the Milwaukee County Defendants' request to limit the *Monell* time period should be denied.

## CONCLUSION

Because Plaintiff has adequately pled facts giving rise to an inference that the County and Armor acquiesced in a pattern and practice of ignoring inmate medical needs, the motions for

judgment on the pleadings should be denied. Likewise, the Milwaukee County Defendants are not entitled for a limitation on *Monell* discovery and that request should be denied as well.

Respectfully submitted,

/s/ Theresa Kleinhaus

Arthur Loevy
Jon Loevy
Scott Rauscher
Theresa Kleinhaus
Aisha N. Davis
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Theresa Kleinhaus, an attorney, certify that on April 12, 2018 I caused the foregoing **Omnibus Response to Defendants' Motions for Judgment on the Pleadings** to be filed via the Court's CM/ECF electronic filing system, which effected service on all counsel of record.

/s/ Theresa Kleinhaus
Theresa Kleinhaus
*One of Plaintiff's Attorneys*