IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| REBBECCA TERRY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-01112 |
| | ) | |
| COUNTY OF MILWAUKEE, | ) | |
| RICHARD SCHMIDT in his official capacity, | ) | |
| OFFICER BRIAN WENZEL, | ) | |
| JANE AND JOHN DOE, | ) | |
| UNKNOWN EMPLOYEES OF | ) | |
| MILWAUKEE COUNTY JAIL, | ) | |
| JANE AND JOHN DOE, | ) | |
| UNKNOWN JAIL SUPERVISORS, | ) | |
| ARMOR CORRECTIONAL | ) | |
| HEALTH SERVICES | ) | |
| CAROLYN EXUM, MORGAN BEVENUE, | ) | |
| MARGARET HOOVER, | ) | |
| JANE AND JOHN DOE, | ) | |
| UNKNOWN EMPLOYEES OF | ) | |
| ARMOR CORRECTIONAL | ) | |
| HEALTH SERVICES, | ) | |
| JANE AND JOHN DOE, UNKNOWN | ) | |
| ARMOR HEALTHCARE SUPERVISORS | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

# FIRST AMENDED COMPLAINT

Plaintiff REBECCA TERRY, and complaining of Defendants, COUNTY OF MILWAUKEE, RICHARD SCHMIDT, OFFICER BRIAN WENZEL, JANE AND JOHN DOE, UNKNOWN EMPLOYEES OF MILWAUKEE COUNTY JAIL, JANE AND JOHN DOE, UNKNOWN JAIL SUPERVISORS, JANE AND JOHN DOE, ARMOR CORRECTIONAL HEALTH SERVICES, CAROLYN EXUM, MORGAN BEVENUE, MARGARET HOOVER, JANE AND JOHN DOE, UNKNOWN EMPLOYEES OF ARMOR, & UNKNOWN ARMOR HEALTHCARE SUPERVISORS, states as follows:

## Introduction

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Rebecca Terry's rights as secured by the United States Constitution.

2. On or about March 10, 2014, Rebecca Terry was detained in the Milwaukee County Jail and forced to undergo childbirth and delivery in the jail infirmary without medical care.

## Jurisdiction and Venue

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

4. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, certain Defendants reside in this judicial district. Further, a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Parties

5. Plaintiff, Rebecca Terry, is a resident of South Milwaukee, Wisconsin, a parent, and a college student. At all relevant times, she was an inmate at the Milwaukee County Jail. Plaintiff was nine months pregnant when she entered Milwaukee County Jail.

6. The County of Milwaukee is a Wisconsin municipal corporation with its principal place of business in Milwaukee, Wisconsin.

7. Defendant Richard Schmidt is the Acting Sheriff of Milwaukee County. In that capacity he is in charge of the Milwaukee County Jail ("MCJ"). By law, custom, and/or delegation, he has policymaking authority over the jail for the actions at issue in this case. He is responsible for ensuring that the policies and practices of the MCJ comply with federal and state requirements for the treatment of detainees. He had personal knowledge of the failure to train correctional officers on how to respond to inmate medical needs at the Milwaukee County jail. He also had personal knowledge of the shackling practices challenged in this case.

8. Defendant Officer Brian Wenzel was a Milwaukee County Jail correctional officer at all times relevant to this action and was acting under color of law and within the scope of his employment.

9. Defendants Jane and John Doe, Unknown Employees of Milwaukee County Jail, are current and/or former correctional officers in the jail who at all relevant times were acting under color of law and within the scope of their employment.

10. Defendants Jane and John Doe, Unknown Jail Supervisors at Milwaukee County Jail are current and/or former corrections supervisors in the jail who at all relevant times were acting under color of law and within the scope of their employment.

11. Defendant Armor Correctional Health Services ("Armor") is a corporation headquartered in Florida transacting business in Wisconsin. Armor, pursuant to a contract with Milwaukee County, is a healthcare provider for Milwaukee County Jail. At all times relevant to the events at issue in this case, Armor was responsible for the implementation, oversight, and supervision of healthcare policies and practices at Milwaukee County Jail. As an agent of Milwaukee County, Armor was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including the individual Defendants.

12. Defendant Carolyn Exum was a nurse at Milwaukee County Jail and an employee of Armor. She is sued in her individual capacity. At all times relevant to this lawsuit she was acting under color of law and within the scope of her employment.

13. Defendant Morgan Bevenue was a nurse at Milwaukee County Jail and an employee of Armor. She is sued in her individual capacity. At all times relevant to this lawsuit she was acting under color of law and within the scope of her employment.

14. Defendant Margaret Hoover was a nursing supervisor at Milwaukee County Jail responsible for oversight and supervision of nursing staff at Milwaukee County Jail and an employee of Armor. She is sued in her individual capacity. At all times relevant to this lawsuit she was acting under color of law and within the scope of her employment.

15. Defendants Jane and John Doe, Unknown Employees of Armor, are current and/or former medical staff in the jail who at all relevant times were acting under color of law and within the scope of their employment.

16. Defendants Jane and John Doe, Unknown Armor Healthcare Supervisors at Milwaukee County Jail are current and/or former Armor Correctional Healthcare supervisors who at all relevant times were acting under color of law and within the scope of their employment.

17. Collectively, Defendants Exum, Bevenue, Hoover, and Unknown Employees of Armor and Unknown Armor Healthcare Supervisors are referred to as the "Healthcare Defendants."

## Facts

18. On March 9, 2014, Plaintiff was arrested in Franklin, Wisconsin. Plaintiff was nine months pregnant. Her due date was March 10, 2014.

19. She was taken to Milwaukee County Jail. During her booking procedure, she began to experience labor pains and informed jail staff of that fact. Eventually, she was taken to Froedtert Hospital.

20. Pursuant to a Milwaukee County Jail policy of shackling pregnant inmates in transport to the hospital, Plaintiff was transported in leg-irons, wrist restraints, and a belly-chain.

21. At the hospital, Plaintiff was also shackled to the hospital bed by one leg iron and one wrist restraint. Two sheriff's deputies were present while she was examined at the hospital.

22. Froedtert Hospital staff told Milwaukee County deputies that Plaintiff was in labor, but that she could return to the jail.

23. Milwaukee County deputies brought Plaintiff back to the jail. Plaintiff was transported in leg-irons, wrist restraints, and a belly-chain.

24. At the jail, Plaintiff informed the booking nurse that the hospital staff had said that she was in labor. Plaintiff also informed the correctional officer who was escorting her to the infirmary that based on her prior experiences in childbirth she believed delivery would occur that evening.

25. The Healthcare Defendants did not receive adequate medical information from Froedtert Hospital about Plaintiff's medical condition.

26. In fact, Plaintiff was returned to the jail without any information about the medical evaluation that had occurred at Froedtert Hospital (besides what Plaintiff told the booking nurse, Defendant Exum, who dismissed her explanation that she was in labor). Specifically, Plaintiff returned with no documents explaining that her cervix was two centimeters dilated and 80% effaced (meaning the cervix

6

had thinned to 20% of its normal thickness in preparation for delivery) and that she was having uterine contractions.

27. Armor's written policy stated that when inmates return from the hospital, they could not be admitted to the jail without written documentation of treatment and necessary follow-up recommendations from the hospital, but the well-known, widespread practice among healthcare providers at the jail, including both Armor and MCJ employees, was to allow inmates to be booked into the jail without such documentation..

28. As Dr. Shansky, the court-ordered medical monitor for the Milwaukee County Jail, pointed out in 2013 when reviewing nurses' documentation of inmates sent out of the jail for emergency services: "[I]n most of the notes, there was no discussion of the content of the services provided offsite indicating that the receiving nurse or clinician had in fact seen the required emergency room report or discharge summary."

29. Dr. Shansky went on to recommend in 2013 that Armor and Milwaukee County "insure that the required offsite service paperwork returns" when a patient returned from the emergency department and "insure that there is a nursing note documenting the status of the patient upon return, any relevant findings and/or recommendations from the offsite."

30. Armor, Milwaukee County, and employees of Armor and Milwaukee County were well-aware of the practice of admitting inmates to the jail without adequate documentation of the treatment and necessary follow-up

recommendations. For example, the Medical Director at MCJ discussed the issue of inadequate documents from the emergency room "with everybody." The Director of Nursing at the jail has explained that inmates were admitted without adequate medical documentation "all the time" and that this practice was "widely known."

31. Despite this knowledge, Defendants did not heed Dr. Shansky's warning.

32. Defendants did not send Plaintiff back to the hospital for observation or continue to observe and monitor Plaintiff's condition until information from the hospital could be obtained. Rather, Defendants acted in accord with the widespread practice of booking inmates into the jail without adequate information from the hospital.

33. As a result of the widespread practice of failing to obtain medical documentation from hospitals, Defendants did not ensure that Plaintiff received the necessary observation and monitoring of her labor, including transfer to the hospital for delivery.

34. Instead, Plaintiff was booked into the jail. Plaintiff was taken to the jail infirmary or Special Medical Unit ("SMU") and placed in an isolation unit.

35. The cell was extremely dirt, including a filthy sink, toilet, and floor.

36. Defendant Wenzel was working in the infirmary at that time. Defendant Wenzel had not received any training on how to respond to inmate medical needs.

37. Soon after entering her cell, Plaintiff began experiencing more labor pains, much more intensely and closer together than before.

38. Plaintiff pushed the button in her cell to ask for assistance.

39. Defendants ignored her. Defendant Wenzel was at his post, just yards from Plaintiff's cell.

40. Plaintiff vomited and felt her water break. Plaintiff began screaming that her water had broken and asking for help. Defendant Wenzel dismissed her screams with a wave of the hand.

41. No Healthcare Defendants ever made rounds to check on Plaintiff during her time in the infirmary. Nor did any Armor policy or nursing policy require the healthcare defendants to check on women in the late stages of pregnancy in the jail.

42. Plaintiff felt increasing labor pains closer together and felt the need to lie down.

43. Plaintiff continued to scream for help and push a button asking for assistance. Defendants ignored her.

44. Plaintiff tried to fight the urge to push, hoping help would arrive, and fearing for her child's life. Plaintiff screamed that she felt she had to begin pushing. Defendants ignored her.

45. After more than three hours in labor, alone in her cell screaming for help, Plaintiff began to push. Blood spurted all over her bed and cell.

46. Plaintiff's son emerged from the birth canal and was making choking sounds and appeared blue in the face. Plaintiff was terrified her son could not breathe and was unsure how to help him. In desperation, she reached into his throat to clear his airway herself.

47. Defendant Wenzel finally looked into Plaintiff's cell and called for help.

48. Certain Healthcare Defendants arrived in Plaintiff's cell. They expressed shock at the blood all over the cell and refused to cut the baby's umbilical cord.

49. Emergency medical staff began to arrive in the cell. Plaintiff passed in and out of consciousness.

50. Plaintiff was wheeled out of the infirmary on a stretcher to an ambulance, with her baby still connected to her via umbilical cord. The baby's head was wrapped in bloody paper towels.

51. Plaintiff was taken to Sinai Hospital where she and her child received post-partum care.

52. Plaintiff was shackled to her hospital bed with one wrist restraint and one leg restraint throughout her one week of post-partum care, pursuant to the policy of the Milwaukee County Jail.

53. Eventually, Plaintiff returned to the jail. Plaintiff did not receive adequate medical care after returning to the jail, such as timely post-partum medical visits and medical treatment.

54. As a result of Defendants' misconduct, Plaintiff suffered extreme distress and fear during childbirth.

55. Plaintiff has suffered and continues to suffer nightmares, flashbacks, extreme distress, fear, humiliation, sadness and anger as a result of Defendants' actions.

### Count I – 42 U.S.C. § 1983
### Deliberate Indifference – Denial of Medical Care
### (All Defendants)

56. Each paragraph of this Complaint is incorporated as if restated fully herein.

57. As described more fully above, Defendants had notice of Plaintiff's medical needs and the seriousness of her medical needs, and knew the unreasonable risk of harm to Plaintiff and her child if she did not receive appropriate medical care. Despite that knowledge, Defendants failed to provide her with proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

58. As a result of the unjustified and unconstitutional conduct of Defendants, Plaintiff experienced pain, suffering, and emotional distress.

59. Defendants were deliberately indifferent to Plaintiff's objectively serious medical needs, exposed her and her child to an unreasonable risk of harm, and their actions were undertaken intentionally, with malice, willfulness, and/or reckless indifference to the rights of others.

60. Plaintiff's injuries were proximately caused by policies and practices of Defendants.

61. At all times relevant to the events at issue in this case, Defendant Armor contracted with the Milwaukee County to provide healthcare to detainees housed at Milwaukee County Jail, including Plaintiff. As the provider of healthcare services to detainees at Milwaukee County Jail, Armor was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical care to detainees in Milwaukee County Jail custody.

62. Armor and Milwaukee County had a widespread practice of sending inmates to the hospital for medical evaluation and then admitting the inmates to the jail without receiving adequate information from the hospital about the patient.

63. In Ms. Terry's case, the medical director never received medical information from the hospital explaining that Ms. Terry'd cervix was two centimenters dilated and 80% effaced and that she was experiencing uterine contractions, information which would have allowed the medical director to make an adequate plan for treatment and observation. For example, an adequate plan may have included a nurse checking on the progress of Ms. Terry's labor to inquire whether the contractions were closer together and whether Ms. Terry was in increasing pain. That information would have led to Plaintiff being taken to the hospital to give birth. Instead Plaintiff was admitted to the jail and placed in an isolation unit alone.

64. Armor and Milwaukee County failed to train correctional officers on how to respond to inmate medical emergencies, including recognizing medical

12

emergencies, signs and symptoms of acute conditions, and procedures for referring inmates to health staff. As a result, Defendant Wenzel, who was not a medical professional, received no training on when to call for medical assistance for Ms. Terry or other inmates in crisis.

65. Armor's contract with Milwaukee County required it to provide education to correctional officers in accord with accrediting agencies.

66. The National Commission on Correctional Health Care (NCCHC) provides accreditation standards for jails and prisons. NCCHC standards require health training for correctional officers so that the officers can recognize when to refer an inmate to a qualified health care professional. NCCHC requires such training because correctional officers are often the first staff members to encounter inmate health needs. In fact, correctional officers may ignore inmate shouting unless they are trained that such requests indicate a medical need, not poor inmate behavior.[1]

67. Armor also failed to develop an observation policy or nursing protocol for inmates in the late stages of pregnancy or in labor, such as a policy requiring nurses to check on laboring inmates frequently.

68. Prior to the events giving rise to Plaintiff's lawsuit, Defendant Armor had notice of widespread practice of admitting inmates to the facility who had been taken to the hospital and returned to the jail without sufficient medical information

---

[1] See, e.g., Jacob Carpenter, *Inmate's dehydration death came after litany of errors, policy violations, ex-2nd-in command says,* MILWAUKEE JOURNAL SENTINEL, Apr. 26, 2017 *available at* https://www.jsonline.com/story/news/investigations/2017/04/26/jail-video-terrill-thomas-case-overwritten-not-destroyed-investigator-says/100935844/ (correctional officers ignored an inmate who shouted incoherently for days before his death due to dehydration at Milwaukee County Jail).

about their medical serious conditions, the obvious need for training of correctional officers on how to respond to inmate medical needs, and the need for a nursing protocol regarding inmates in labor.

69. Prior to events giving rise to Plaintiff's lawsuit, Defendant Milwaukee County had notice of the obvious need to train correctional officers on how to respond to inmate medical needs.

70. In this way, Defendants Armor and Milwaukee County violated Plaintiff's rights by maintaining practices and policies that were the moving force driving the foregoing constitutional violations.

71. The above-described policies and widespread practices, so well settled as to constitute de facto policy at Milwaukee County Jail, were able to exist and thrive because Armor and Milwaukee County were deliberately indifferent to the problem, thereby effectively ratifying it.

72. Plaintiff's injuries were caused by employees of the Milwaukee County Jail and Armor, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

### Count II - 42 U.S.C. § 1983
### Supervisory Liability
### (Unknown Jail Supervisors, Unknown Healthcare Supervisors, & Defendant Hoover)

73. Each Paragraph of this Complaint is incorporated as if restated fully herein.

74. As described more fully above, Unknown Jail Supervisors, Unknown Healthcare Supervisors, and Defendant Hoover were responsible for ensuring that detainees at the Milwaukee County Jail received constitutionally adequate care and access to medical care.

75. Unknown Healthcare Supervisors and Defendant Hoover knew or reasonably should have known of the widespread practice of admitting inmates to the facility who had been sent to the hospital and returned without adequate medical information, the obvious need for training of correctional officers on how to respond to inmate medical needs, and the failure to create a policy regarding inmates in the late stage of pregnancy or in labor.

76. Unknown Jail Supervisors knew or should have known about the obvious need to train correctional officers on how to respond to inmate medical needs.

77. Unknown Jail Supervisors, Unknown Healthcare Supervisors, and Defendant Hoover approved, condoned and/or turned a blind eye to or purposely ignored the widespread practice of admitting inmates to the facility who had been sent to the hospital and returned without adequate medical information about serious medical conditions, the obvious need to train correctional officers on how to respond to inmate medical care, and the failure to create a policy on how medical staff should care for laboring inmates.

78. Unknown Jail Supervisors, Unknown Healthcare Supervisors, and Defendant Hoover were aware of the risk of harm posed by the widespread practice

15

of admitting inmates without adequate medical information, the absence of adequate training for correctional officers on responding to inmate medical needs, and the failure to create a policy regarding laboring inmates.

79. As a result of the misconduct described in this Count, Plaintiff suffered damages, including but not limited to physical and emotional distress and anguish.

### Count III - 42 U.S.C. § 1983
### Failure to Intervene
### (Defendants Wenzel, Exum, Bevenue, Hoover, Unknown Jail Employees, Unknown Jail Supervisors, & Unknown Healthcare Supervisors)

80. Each paragraph of this Complaint is incorporated as if restated fully herein.

81. As described more fully above, one or more Defendants had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above but failed to do so.

82. Defendants' failures to act were intentional, done with malice, and/or done with reckless indifference to Plaintiff's rights.

83. As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she suffered injuries, including pain, suffering, and emotional distress.

84. Plaintiff's injuries were caused by employees of the Milwaukee County Jail and Armor, who acted pursuant to the policies and practices described more fully above.

## Count IV—42 U.S.C. § 1983
## Due Process – 14th Amendment
## (County of Milwaukee)

85. Each paragraph of this Complaint is incorporated as if fully restated herein.

86. Defendants County of Milwaukee violated the liberty interest in bodily integrity of Plaintiff through the shackling policy. The County exposed Plaintiff to unreasonable risks of harm through the shackling policy. Defendant County used unreasonable force against Plaintiff because of the shackling policy. Defendant County was deliberately indifferent to the serious, obvious medical needs of Plaintiff.

87. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and was objectively unreasonable.

88. The misconduct described above was undertaken pursuant to the policy and practice of the Milwaukee County Jail in that: As a matter of both policy and practice, the Milwaukee County Jail directly encourages, and therefore is the moving force behind, the very type of misconduct at issue here—shackling women during prenatal and post-partum care.

89. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish, as well as physical pain and suffering, and exposure to unreasonable risks of harm.

## Count VI—Indemnification

### (County of Milwaukee)

90. Each of the foregoing paragraphs is incorporated as if fully stated herein.

91. Wisconsin law, Wisc. Stat. §895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

92. Defendants Wenzel, Schmidt, Jane and John Doe, unknown employees of Milwaukee County Jail, and Jane and John Doe, unknown supervisors at the Milwaukee County Jail, were employees of the County of Milwaukee, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, REBECCA TERRY, respectfully requests that this Court enter judgment in her favor and against Defendants, COUNTY OF MILWAUKEE, ACTING SHERIFF RICHARD SCHMIDT, OFFICER BRIAN WENZEL, JANE AND JOHN DOE, UNKNOWN EMPLOYEES OF MILWAUKEE COUNTY JAIL, JANE AND JOHN DOE, UNKNOWN JAIL SUPERVISORS, ARMOR CORRECTIONAL HEALTH SERVICES , CAROLYN EXUM, MORGAN BEVENUE, MARGARET HOOVER, JANE AND JOHN DOE, UNKNOWN EMPLOYEES OF ARMOR, JANE AND JOHN DOE, UNKNOWN HEALTHCARE SUPERVISORS, awarding compensatory damages and attorneys' fees, as well as punitive damages against the Defendant Officers in their individual capacities, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, REBECCA TERRY, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

<u>/s/ Theresa Kleinhaus</u>
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Scott Rauscher
Theresa Kleinhaus
Aisha N. Davis
LOEVY & LOEVY
311 North Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900