UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

REBECCA TERRY,

        Plaintiff,

v.

COUNTY OF MILWAUKEE,
RICHARD SCHMIDT in his official capacity,
OFFICER BRIAN WENZEL,
JANE AND JOHN DOE,
UNKNOWN EMPLOYEES OF MILWAUKEE
COUNTY JAIL, JANE AND JOHN DOE,
UNKNOWN JAIL SUPERVISORS, ARMOR
CORRECTIONAL HEALTH SERVICES,
CAROLYN EXUM, MORGAN BEVENUE,
MARGARET HOOVER, JANE AND JOHN
DOE, UNKNOWN EMPLOYEES OF ARMOR
CORRECTIONAL HEALTH SERVICES,
JANE AND JOHN DOE, UNKNOWN ARMOR
SUPERVISORS,

        Defendants.

Case No.:  17 CV 01112

---

## ANSWER TO FIRST AMENDED COMPLAINT

NOW COMES the Defendant, Armor Correctional Health Services ("Armor"), by its attorneys, Hinshaw & Culbertson LLP, and as for an Answer to the Plaintiff's First Amended Complaint alleges as follows:

### Introduction

1.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Rebecca Terry's rights as secured by the United States Constitution.

**ANSWER:**   Admit that Plaintiff has brought this lawsuit under 42 U.S.C. § 1983 but deny that Armor deprived Plaintiff of any Constitutional or other rights.

2.      On or about March 10, 2014, Rebecca Terry was detained in the Milwaukee County Jail and forced to undergo childbirth and delivery in the jail infirmary without medical care.

**ANSWER:**   Deny.

## Jurisdiction and Venue

3.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

**ANSWER:**   Admit that Plaintiff seeks to invoke the jurisdiction of this court pursuant to the above-referenced statute. Deny all remaining allegations.

4.      Venue is proper under 28 U.S.C. § 1391(b). On information and belief, certain Defendants reside in this judicial district. Further, a substantial part of the events or omissions giving rise to the claim occurred in this district.

**ANSWER:**   Admit that the events giving rise to the alleged claims took place within the Eastern District and that some of the defendants are located in the Eastern District. Deny all remaining allegations.

## Parties

5.      Plaintiff, Rebecca Terry, is a resident of South Milwaukee, Wisconsin, a parent, and a college student. At all relevant times, she was an inmate at the Milwaukee County Jail. Plaintiff was nine months pregnant when she entered Milwaukee County Jail.

**ANSWER:**   Admit that Ms. Terry was an inmate at the Milwaukee County Jail in March 2014 and was near full term in her pregnancy at that time. Deny knowledge or information sufficient to form a belief as to the truth of all remaining allegations and, therefore, deny same.

6.      The County of Milwaukee is a Wisconsin municipal corporation with its principal place of business in Milwaukee, Wisconsin.

2

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

7. Defendant Richard Schmidt is the Acting Sheriff of Milwaukee County. In that capacity he is in charge of the Milwaukee County Jail ("MCJ"). By law, custom, and/or delegation, he has policymaking authority over the jail for the actions at issue in this case. He is responsible for ensuring that the policies and practices of the MCJ comply with federal and state requirements for the treatment of detainees. He had personal knowledge of the failure to train correctional officers on how to respond to inmate medical needs at the Milwaukee County jail. He also had personal knowledge of the shackling practices challenged in this case.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

8. Defendant Officer Brian Wenzel was a Milwaukee County Jail correctional officer at all times relevant to this action and was acting under color of law and within the scope of his employment.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

9. Defendants Jane and John Doe, Unknown Employees of Milwaukee County Jail, are current and/or former correctional officers in the jail who at all relevant times were acting under color of law and within the scope of their employment.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

302048052v1 1003420

10. Defendants Jane and John Doe, Unknown Jail Supervisors at Milwaukee County Jail are current and/or former corrections supervisors in the jail who at all relevant times were acting under color of law and within the scope of their employment.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

11. Defendant Armor Correctional Health Services ("Armor") is a corporation headquartered in Florida transacting business in Wisconsin. Armor, pursuant to a contract with Milwaukee County, is a healthcare provider for Milwaukee County Jail. At all times relevant to the events at issue in this case, Armor was responsible for the implementation, oversight, and supervision of healthcare policies and practices at Milwaukee County Jail. As an agent of Milwaukee County, Armor was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including the individual Defendants.

**ANSWER:** Admit that Armor is a corporation with its principal office in Miami Florida and that Armor transacts business in Wisconsin. Further admit that Armor provided healthcare services to inmates at the Milwaukee County Jail pursuant to a contract with Milwaukee County. Deny all remaining allegations in this paragraph.

12. Defendant Carolyn Exum was a nurse at Milwaukee County Jail and an employee of Armor. She is sued in her individual capacity. At all times relevant to this lawsuit she was acting under color of law and within the scope of her employment.

**ANSWER:** Deny that Ms. Exum was an Armor employee at the time relevant to this lawsuit, admit that she was a nurse at the Milwaukee County Jail and deny knowledge or information sufficient to form a belief as to the truth of any remaining allegations and, therefore, deny same.

302048052v1 1003420

13.     Defendant Morgan Bevenue was a nurse at Milwaukee County Jail and an employee of Armor. She is sued in her individual capacity. At all times relevant to this lawsuit she was acting under color of law and within the scope of her employment.

**ANSWER:**     Deny that Ms. Bevenue was an employee of Armor, admit that she was a nurse at the Milwaukee County Jail and deny knowledge or information sufficient to form a belief as to the truth of any remaining allegations and, therefore, deny same.

14.     Defendant Margaret Hoover was a nursing supervisor at Milwaukee County Jail responsible for oversight and supervision of nursing staff at Milwaukee County Jail and an employee of Armor. She is sued in her individual capacity. At all times relevant to this lawsuit she was acting under color of law and within the scope of her employment.

**ANSWER:**     Deny that Ms. Hoover was an employee of Armor, admit that she was a nursing supervisor at the Milwaukee County Jail and deny knowledge or information sufficient to form a belief as to the truth of any remaining allegations and, therefore, deny same.

15.     Defendants Jane and John Doe, Unknown Employees of Armor, are current and/or former medical staff in the jail who at all relevant times were acting under color of law and within the scope of their employment.

**ANSWER:**     Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

16.     Defendants Jane and John Doe, Unknown Armor Healthcare Supervisors at Milwaukee County Jail are current and/or former Armor Correctional Healthcare supervisors who at all relevant times were acting under color of law and within the scope of their employment.

302048052v1 1003420

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

17. Collectively, Defendants Exum, Bevenue, Hoover, and Unknown Employees of Armor and Unknown Armor Healthcare Supervisors are referred to as the "Healthcare Defendants."

**ANSWER:** Deny that any answer is required as no allegation of fact is made; to the extent an answer is required, deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

**Facts**

18. On March 9, 2014, Plaintiff was arrested in Franklin, Wisconsin. Plaintiff was nine months pregnant. Her due date was March 10, 2014.

**ANSWER:** Admit Plaintiff was arrested in Franklin, Wisconsin on the date alleged; deny knowledge or information sufficient to form a belief as to the truth of all remaining allegations and, therefore, deny same.

19. She was taken to Milwaukee County Jail. During her booking procedure, she began to experience labor pains and informed jail staff of that fact. Eventually, she was taken to Froedtert Hospital.

**ANSWER:** Admit Plaintiff was taken to the Milwaukee County Jail and to Froedtert Hospital; deny all remaining allegations.

20. Pursuant to a Milwaukee County Jail policy of shackling pregnant inmates in transport to the hospital, Plaintiff was transported in leg-irons, wrist restraints, and a belly-chain.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

302048052v1 1003420

21.	At the hospital, Plaintiff was also shackled to the hospital bed by one leg iron and one wrist restraint. Two sheriff's deputies were present while she was examined at the hospital.

**ANSWER:**	Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

22.	Froedtert Hospital staff told Milwaukee County deputies that Plaintiff was in labor, but that she could return to the jail.

**ANSWER:**	Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

23.	Milwaukee County deputies brought Plaintiff back to the jail. Plaintiff was transported in leg-irons, wrist restraints, and a belly-chain.

**ANSWER:**	Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

24.	At the jail, Plaintiff informed the booking nurse that the hospital staff had said that she was in labor. Plaintiff also informed the correctional officer who was escorting her to the infirmary that based on her prior experiences in childbirth she believed delivery would occur that evening.

**ANSWER:**	Deny.

25.	The Healthcare Defendants did not receive adequate medical information from Froedtert Hospital about Plaintiff's medical condition.

**ANSWER:**	Deny.

26.	In fact, Plaintiff was returned to the jail without any information about the medical evaluation that had occurred at Froedtert Hospital (besides what Plaintiff told the booking nurse, Defendant Exum, who dismissed her explanation that she was in labor).

302048052v1 1003420

Specifically, Plaintiff returned with no documents explaining that her cervix was two centimeters dilated and 80% effaced (meaning the cervix had thinned to 20% of its normal thickness in preparation for delivery) and that she was having uterine contractions.

**ANSWER:**   Deny.

27.   Armor's written policy stated that when inmates return from the hospital, they could not be admitted to the jail without written documentation of treatment and necessary follow-up recommendations from the hospital, but the well-known, widespread practice among healthcare providers at the jail, including both Armor and MCJ employees, was to allow inmates to be booked into the jail without such documentation.

**ANSWER:**   Admit Armor had a written policy, the contents of which speak for themselves, but deny any practice to allow inmates to be booked into the jail without adequate documentation or information, specifically deny any wrongdoing and that lack of strict adherence to a policy establishes deliberate indifference.

28.   As Dr. Shansky, the court-ordered medical monitor for the Milwaukee County Jail, pointed out in 2013 when reviewing nurses' documentation of inmates sent out of the jail for emergency services: "[I]n most of the notes, there was no discussion of the content of the services provided offsite indicating that the receiving nurse or clinician had in fact seen the required emergency room report or discharge summary."

**ANSWER:**   Admit Dr. Shansky authored reports that speak for themselves but deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

29.   Dr. Shansky went on to recommend in 2013 that Armor and Milwaukee County "insure that the required offsite service paperwork returns" when a patient returned from the

302048052v1 1003420

emergency department and "insure that there is a nursing note documenting the status of the patient upon return, any relevant findings and/or recommendations from the offsite."

**ANSWER:**    Admit Dr. Shansky authored reports that speak for themselves but deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

30.    Armor, Milwaukee County, and employees of Armor and Milwaukee County were well-aware of the practice of admitting inmates to the jail without adequate documentation of the treatment and necessary follow-up recommendations. For example, the Medical Director at MCJ discussed the issue of inadequate documents from the emergency room "with everybody." The Director of Nursing at the jail has explained that inmates were admitted without adequate medical documentation "all the time" and that this practice was "widely known."

**ANSWER:**    Admit the Medical Director and Director of Nursing at MCJ have offered testimony in this case that speaks for itself, deny any allegations inconsistent with such testimony, deny any practice to allow inmates to be booked into the jail without adequate documentation or information, specifically deny any wrongdoing and that lack of strict adherence to a policy establishes deliberate indifference. Deny all other allegations in this paragraph.

31.    Despite this knowledge, Defendants did not heed Dr. Shansky's warning.

**ANSWER:**    Deny.

32.    Defendants did not send Plaintiff back to the hospital for observation or continue to observe and monitor Plaintiff's condition until information from the hospital could be obtained. Rather, Defendants acted in accord with the widespread practice of booking inmates into the jail without adequate information from the hospital.

9

**ANSWER:**   Deny.

33.   As a result of the widespread practice of failing to obtain medical documentation from hospitals, Defendants did not ensure that Plaintiff received the necessary observation and monitoring of her labor, including transfer to the hospital for delivery.

**ANSWER:**   Deny.

34.   Instead, Plaintiff was booked into the jail. Plaintiff was taken to the jail infirmary or Special Medical Unit ("SMU") and placed in an isolation unit.

**ANSWER:**   Admit Plaintiff was booked into the jail and taken to the Special Medical Unit. Deny all remaining allegations in this paragraph.

35.   The cell was extremely dirty, including a filthy sink, toilet, and floor.

**ANSWER:**   Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

36.   Defendant Wenzel was working in the infirmary at that time. Defendant Wenzel had not received any training on how to respond to inmate medical needs.

**ANSWER:**   Admit Defendant Wenzel was working in the Special Medical Unit; deny the remaining allegations in this paragraph.

37.   Soon after entering her cell, Plaintiff began experiencing more labor pains, much more intensely and closer together than before.

**ANSWER:**   Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

38.   Plaintiff pushed the button in her cell to ask for assistance.

**ANSWER:**   Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

10

39.     Defendants ignored her. Defendant Wenzel was at his post, just yards from Plaintiff's cell.

**ANSWER:**     Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

40.     Plaintiff vomited and felt her water break. Plaintiff began screaming that her water had broken and asking for help. Defendant Wenzel dismissed her screams with a wave of the hand.

**ANSWER:**     Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

41.     No Healthcare Defendants ever made rounds to check on Plaintiff during her time in the infirmary. Nor did any Armor policy or nursing policy require the healthcare defendants to check on women in the late stages of pregnancy in the jail.

**ANSWER:**     Deny.

42.     Plaintiff felt increasing labor pains closer together and felt the need to lie down.

**ANSWER:**     Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

43.     Plaintiff continued to scream for help and push a button asking for assistance. Defendants ignored her.

**ANSWER:**     Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same; specifically deny Defendants ignored her.

44.     Plaintiff tried to fight the urge to push, hoping help would arrive, and fearing for her child's life. Plaintiff screamed that she felt she had to begin pushing. Defendants ignored her.

302048052v1 1003420

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same; specifically deny Defendants ignored her.

45. After more than three hours in labor, alone in her cell screaming for help, Plaintiff began to push. Blood spurted all over her bed and cell.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

46. Plaintiff's son emerged from the birth canal and was making choking sounds and appeared blue in the face. Plaintiff was terrified her son could not breathe and was unsure how to help him. In desperation, she reached into his throat to clear his airway herself.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

47. Defendant Wenzel finally looked into Plaintiff's cell and called for help.

**ANSWER:** Admit Defendant Wenzel called for help. Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

48. Certain Healthcare Defendants arrived in Plaintiff's cell. They expressed shock at the blood all over the cell and refused to cut the baby's umbilical cord.

**ANSWER:** Admit some Healthcare Defendants responded and arrived at Plaintiff's cell. Admit a healthcare provider decided to clamp not cut the baby's umbilical cord. Deny all remaining allegations.

49. Emergency medical staff began to arrive in the cell. Plaintiff passed in and out of consciousness.

12

**ANSWER:** Admit Emergency Medical Services arrived. Deny knowledge or information sufficient to form a belief as to the truth of all the remaining allegations and, therefore, deny same.

50. Plaintiff was wheeled out of the infirmary on a stretcher to an ambulance, with her baby still connected to her via umbilical cord. The baby's head was wrapped in bloody paper towels.

**ANSWER:** Deny.

51. Plaintiff was taken to Sinai Hospital where she and her child received post-partum care.

**ANSWER:** Admit.

52. Plaintiff was shackled to her hospital bed with one wrist restraint and one leg restraint throughout her one week of post-partum care, pursuant to the policy of the Milwaukee County Jail.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

53. Eventually, Plaintiff returned to the jail. Plaintiff did not receive adequate medical care after returning to the jail, such as timely post-partum medical visits and medical treatment.

**ANSWER:** Deny.

54. As a result of Defendants' misconduct, Plaintiff suffered extreme distress and fear during childbirth.

**ANSWER:** Deny.

55. Plaintiff has suffered and continues to suffer nightmares, flashbacks, extreme distress, fear, humiliation, sadness and anger as a result of Defendants' actions.

302048052v1 1003420

**ANSWER:** Deny.

**Count I – 42 U.S.C. § 1983**
**Deliberate Indifference – Denial of Medical Care**
**(All Defendants)**

56.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Armor restates and incorporates by references its answers to each paragraph of the complaint.

57.     As described more fully above, Defendants had notice of Plaintiff's medical needs and the seriousness of her medical needs, and knew the unreasonable risk of harm to Plaintiff and her child if she did not receive appropriate medical care. Despite that knowledge, Defendants failed to provide her with proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

**ANSWER:** Deny.

58.     As a result of the unjustified and unconstitutional conduct of Defendants, Plaintiff experienced pain, suffering, and emotional distress.

**ANSWER:** Deny.

59.     Defendants were deliberately indifferent to Plaintiff's objectively serious medical needs, exposed her and her child to an unreasonable risk of harm, and their actions were undertaken intentionally, with malice, willfulness, and/or reckless indifference to the rights of others.

**ANSWER:** Deny.

60.     Plaintiff's injuries were proximately caused by policies and practices of Defendants.

**ANSWER:** Deny.

14

61.     At all times relevant to the events at issue in this case, Defendant Armor contracted with the Milwaukee County to provide healthcare to detainees housed at Milwaukee County Jail, including Plaintiff. As the provider of healthcare services to detainees at Milwaukee County Jail, Armor was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical care to detainees in Milwaukee County Jail custody.

**ANSWER:**     Admit Armor had a contract with Milwaukee County, the requirements of which speak for themselves, and deny all allegations inconsistent with this contract.

62.     Armor and Milwaukee County had a widespread practice of sending inmates to the hospital for medical evaluation and then admitting the inmates to the jail without receiving adequate information from the hospital about the patient.

**ANSWER:**     Deny.

63.     In Ms. Terry's case, the medical director never received medical information from the hospital explaining that Ms. Terry's cervix was two centimeters dilated and 80% effaced and that she was experiencing uterine contractions, information which would have allowed the medical director to make an adequate plan for treatment and observation. For example, an adequate plan may have included a nurse checking on the progress of Ms. Terry's labor to inquire whether the contractions were closer together and whether Ms. Terry was in increasing pain. That information would have led to Plaintiff being taken to the hospital to give birth. Instead Plaintiff was admitted to the jail and placed in an isolation unit alone.

**ANSWER:**     Deny.

64.     Armor and Milwaukee County failed to train correctional officers on how to respond to inmate medical emergencies, including recognizing medical emergencies, signs and

302048052v1 1003420

symptoms of acute conditions, and procedures for referring inmates to health staff. As a result, Defendant Wenzel, who was not a medical professional, received no training on when to call for medical assistance for Ms. Terry or other inmates in crisis.

**ANSWER:**   Deny.

65.    Armor's contract with Milwaukee County required it to provide education to correctional officers in accord with accrediting agencies.

**ANSWER:**   Admit Armor had a contract with Milwaukee County, the requirements of which speak for themselves, and deny all allegations inconsistent with this contract.

66.    The National Commission on Correctional Health Care (NCCHC) provides accreditation standards for jails and prisons. NCCHC standards require health training for correctional officers so that the officers can recognize when to refer an inmate to a qualified health care professional. NCCHC requires such training because correctional officers are often the first staff members to encounter inmate health needs. In fact, correctional officers may ignore inmate shouting unless they are trained that such requests indicate a medical need, not poor inmate behavior.[1]

**ANSWER:**   Admit the NCCHC provides accreditation standards for jail and prisons, the contents of which speak for themselves, and deny all allegations inconsistent with these standards. Deny all remaining allegations in this paragraph.

---

[1] See, e.g., Jacob Carpenter, *Inmate's dehydration death came after litany of errors, policy violations, ex-2nd-in command says*, MILWAUKEE JOURNAL SENTINEL, Apr. 26, 2017 available at https://www.jsonline.com/story/news/investigations/2017/04/26/jail-video-terrill-thomas-case- overwritten-not-destroyed-investigator-says/100935844/ (correctional officers ignored an inmate who shouted incoherently for days before his death due to dehydration at Milwaukee County Jail).

302048052v1 1003420

67. Armor also failed to develop an observation policy or nursing protocol for inmates in the late stages of pregnancy or in labor, such as a policy requiring nurses to check on laboring inmates frequently.

**ANSWER:** Deny.

68. Prior to the events giving rise to Plaintiff's lawsuit, Defendant Armor had notice of widespread practice of admitting inmates to the facility who had been taken to the hospital and returned to the jail without sufficient medical information about their medical serious conditions, the obvious need for training of correctional officers on how to respond to inmate medical needs, and the need for a nursing protocol regarding inmates in labor.

**ANSWER:** Deny.

69. Prior to events giving rise to Plaintiff's lawsuit, Defendant Milwaukee County had notice of the obvious need to train correctional officers on how to respond to inmate medical needs.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

70. In this way, Defendants Armor and Milwaukee County violated Plaintiff's rights by maintaining practices and policies that were the moving force driving the foregoing constitutional violations.

**ANSWER:** Deny.

71. The above-described policies and widespread practices, so well settled as to constitute de facto policy at Milwaukee County Jail, were able to exist and thrive because Armor and Milwaukee County were deliberately indifferent to the problem, thereby effectively ratifying it.

302048052v1 1003420

**ANSWER:**   Deny.

72.   Plaintiff's injuries were caused by employees of the Milwaukee County Jail and Armor, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

**ANSWER:**   Deny.

### Count II - 42 U.S.C. § 1983
### Supervisory Liability
### (Unknown Jail Supervisors, Unknown Healthcare Supervisors, & Defendant Hoover)

73.   Each Paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**   Armor restates and incorporates by references its answers to each paragraph of the complaint.

74.   As described more fully above, Unknown Jail Supervisors, Unknown Healthcare Supervisors, and Defendant Hoover were responsible for ensuring that detainees at the Milwaukee County Jail received constitutionally adequate care and access to medical care.

**ANSWER:**   Deny.

75.   Unknown Healthcare Supervisors and Defendant Hoover knew or reasonably should have known of the widespread practice of admitting inmates to the facility who had been sent to the hospital and returned without adequate medical information, the obvious need for training of correctional officers on how to respond to inmate medical needs, and the failure to create a policy regarding inmates in the late stage of pregnancy or in labor.

**ANSWER:**   Deny.

76.   Unknown Jail Supervisors knew or should have known about the obvious need to train correctional officers on how to respond to inmate medical needs.

**ANSWER:**   Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

77.     Unknown Jail Supervisors, Unknown Healthcare Supervisors, and Defendant Hoover approved, condoned and/or turned a blind eye to or purposely ignored the widespread practice of admitting inmates to the facility who had been sent to the hospital and returned without adequate medical information about serious medical conditions, the obvious need to train correctional officers on how to respond to inmate medical care, and the failure to create a policy on how medical staff should care for laboring inmates.

**ANSWER:**     Deny.

78.     Unknown Jail Supervisors, Unknown Healthcare Supervisors, and Defendant Hoover were aware of the risk of harm posed by the widespread practice of admitting inmates without adequate medical information, the absence of adequate training for correctional officers on responding to inmate medical needs, and the failure to create a policy regarding laboring inmates.

**ANSWER:**     Deny.

79.     As a result of the misconduct described in this Count, Plaintiff suffered damages, including but not limited to physical and emotional distress and anguish.

**ANSWER:**     Deny.

### Count III - 42 U.S.C. § 1983
### Failure to Intervene
### (Defendants Wenzel, Exum, Bevenue, Hoover, Unknown Jail Employees, Unknown Jail Supervisors, & Unknown Healthcare Supervisors)

80.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Armor restates and incorporates by references its answers to each paragraph of the complaint.

302048052v1 1003420

81. As described more fully above, one or more Defendants had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above but failed to do so.

**ANSWER:** Deny.

82. Defendants' failures to act were intentional, done with malice, and/or done with reckless indifference to Plaintiff's rights.

**ANSWER:** Deny.

83. As a direct and proximate result of Defendants' misconduct, Plaintiff's rights were violated and she suffered injuries, including pain, suffering, and emotional distress.

**ANSWER:** Deny.

84. Plaintiff's injuries were caused by employees of the Milwaukee County Jail and Armor, who acted pursuant to the policies and practices described more fully above.

**ANSWER:** Deny.

### Count IV—42 U.S.C. § 1983
### Due Process – 14th Amendment
### (County of Milwaukee)

85. Each paragraph of this Complaint is incorporated as if fully restated herein.

**ANSWER:** Armor restates and incorporates by references its answers to each paragraph of the complaint.

86. Defendants County of Milwaukee violated the liberty interest in bodily integrity of Plaintiff through the shackling policy. The County exposed Plaintiff to unreasonable risks of harm through the shackling policy. Defendant County used unreasonable force against Plaintiff because of the shackling policy. Defendant County was deliberately indifferent to the serious, obvious medical needs of Plaintiff.

302048052v1 1003420

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

87. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and was objectively unreasonable.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

88. The misconduct described above was undertaken pursuant to the policy and practice of the Milwaukee County Jail in that: As a matter of both policy and practice, the Milwaukee County Jail directly encourages, and therefore is the moving force behind, the very type of misconduct at issue here -- shackling women during prenatal and post-partum care.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

89. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish, as well as physical pain and suffering, and exposure to unreasonable risks of harm.

**ANSWER:** Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

### Count VI - Indemnification
### (County of Milwaukee)

90. Each of the foregoing paragraphs is incorporated as if fully stated herein.

**ANSWER:** Armor restates and incorporates by references its answers to each paragraph of the complaint.

21

91.     Wisconsin law, Wisc. Stat. §895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

**ANSWER:**    Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

92.     Defendants Wenzel, Schmidt, Jane and John Doe, unknown employees of Milwaukee County Jail, and Jane and John Doe, unknown supervisors at the Milwaukee County Jail, were employees of the County of Milwaukee, who acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:**    Deny knowledge or information sufficient to form a belief as to the truth of all these allegations and, therefore, deny same.

## AFFIRMATIVE DEFENSES

AS AND FOR SEPARATE AFFIRMATIVE DEFENSES, this Defendant alleges as follows:

1.     Plaintiff fails to state a claim upon which relief may be granted against this Defendant.

2.     This Defendant is not a proper party to this action.

3.     This Defendant was not deliberately indifferent to a serious medical need, nor does it have *Monell* liability. As such, Plaintiff's claims must be dismissed.

4.     This Defendant acted in good faith at all times and is entitled to immunity.

5.     Defendant's liability, if any, is subject to a maximum total recovery of $50,000.00 pursuant to § 893.80(3), Wis. Stats., or otherwise under Wisconsin law.

6.     Plaintiff's claims are barred for failure to comply with the Notice of Claim and Notice of Injury provisions of §893.80(1), Wis. Stats.

302048052v1 1003420

7.      Plaintiff may have failed to exhaust her administrative remedies before filing this suit.

8.      Ms. Terry may have been negligent with respect to her own well-being.

9.      Plaintiff's condition is the result of pre-existing injury or natural disease progression beyond the control of, and unrelated to, the acts, omissions, or conduct of this Defendant.

10.      Ms. Terry may have failed to mitigate her damages.

11.      Plaintiff's alleged injuries and/or damages are the result of superseding and/or intervening factors.

12.      Plaintiff's alleged damages are the result of the negligence of third parties for whom this answering Defendant has no right or obligation to control and on whose behalf this answering Defendant is not obligated to pay damages.

13.      Plaintiff may have filed to name all necessary and indispensable parties.

14.      Plaintiff lacks standing to assert some or all of the claims asserted.

15.      Any and all damages are barred by and contrary to public policy.

16.      Plaintiff's claim for emotional distress damages is limited by law and must be accompanied by actual physical injury which may be lacking.

17.      Plaintiff cannot recover punitive damages against this Defendant.

18.      This Defendant is not jointly and severally liable for the claimed damages.

19.      This Defendant incorporates by reference all defenses set forth under Rule 12 of the Federal Rules of Civil Procedure.

20.      This Defendant reserves all other affirmative defenses should any be validated through discovery and specifically denies it is liable to Plaintiff for any alleged damages.

302048052v1 1003420

21.     This Defendant incorporates by reference, as though fully set forth here, all affirmative defenses pled by other parties.

**WHEREFORE**, this Defendant demands judgment dismissing all claims alleged against her on the merits and with prejudice, and with fees, costs and disbursements and such further relief as the Court deems equitable.

**THIS DEFENDANT DEMANDS A JURY TRIAL.**

Dated this 26th day of June, 2018.

/s/ Mollie T. Kugler
Michael P. Russart
State Bar No. 1023128
Mollie T. Kugler
State Bar No. 1093318
Paige L. McCreary
State Bar No. 1114252
Attorneys for Defendants Armor Correctional
Health Services
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue
Suite 2600
Milwaukee, WI 53202
Telephone  414-276-6464
Fax  414-276-9220
E-mail(s):
mrussart@hinshawlaw.com
mkugler@hinshawlaw.com
pmccreary@hinshawlaw.com

302048052v1 1003420