UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

REBECCA TERRY,

    Plaintiff,

v.

COUNTY OF MILWAUKEE, RICHARD R. SCHMIDT, OFFICER BRIAN WENZEL, JANE AND JOHN DOE, UNKNOWN EMPLOYEES OF MILWAUKEE COUNTY JAIL, JANE AND JOHN DOE, UNKNOWN JAIL SUPERVISORS, ARMOR CORRECTIONAL HEALTH SERVICES, CAROLYN EXUM, MORGAN BEVENUE, MARGARET HOOVER,

    Defendants.

Case No.: 17-CV-1112

## DECLARATION OF JOHN MAY, M.D.

STATE OF FLORIDA    )
                                 )SS
MIAMI-DADE COUNTY    )

I, JOHN MAY, M.D., declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the following is true and correct:

1.    My name is John May, M.D., F.A.C.P. I am employed by Armor Correctional Health Services ("Armor") as the Chief Medical Officer ("CMO") and have been since 2004. I am familiar with the above-captioned lawsuit filed by Rebecca Terry ("Ms. Terry") against Armor, among other defendants.

2.    I base this affidavit on my personal knowledge of the facts and circumstances attested to herein and my review of the relevant, regularly kept records of the Milwaukee County

Jail ("MCJ"), including the inmate correctional health care records of Ms. Terry, as well as my knowledge of Armor's policies, procedures, practices and training.

3. In my role as Armor's CMO, I have access to the correctional health care records of Ms. Terry, as regularly kept by Armor at MCJ. I reviewed the correctional health care records maintained by MCJ for Ms. Terry, for the time period at issue in her Amended Complaint. Attached hereto as **Exhibit A** is a true and accurate copy of portions of the complete correctional health care records maintained by Armor at MCJ for Ms. Terry.

4. I am a graduate of the University of Notre Dame and the Stritch School of Medicine at Loyola University. I am board certified in internal medicine. A true and correct copy of my current curriculum vitae is attached hereto as **Exhibit B**.

5. I am the former chair of the American Correctional Association's International Relations Committee; the director of Health through Walls, a non-profit organization providing assistance to prison medical programs in developing countries; and a past board member of the International Corrections and Prison Association.

6. During the course of my career, I have been an advocate for providing appropriate, effective health care for incarcerated people. I have published, researched and lectured on providing care to incarcerated people. My commitment to underserved populations has been recognized with the Public Service Award from the Illinois State Medical Society, the Rosenthal Foundation Award of the American College of Physicians, the Broad Street Pump Award from Physicians for Social Responsibility and the Armond Start Award for Excellence in correctional medicine from the Society for Correctional Physicians.

7. My duties and responsibilities as Armor's CMO primarily include providing help, support, guidance and mentoring to our health care providers to promote delivery of quality

health care to our patients. I communicate with Armor's medical directors, responding to their concerns and providing guidance on how to manage patient health care and treatment. I also collaborate with members of Armor's clinical team in looking for approaches to improve Armor's health care and treatment, policies, guidelines, and practices, and ensuring Armor adapts with the newest developments, findings and challenges in the field. In addition, I visit Armor's various site locations to review medical records firsthand, meet face-to-face with Armor's local health care providers and observe their interactions with patients, and to provide trainings or lectures for team members. I also collaborate with multidisciplinary teams to review Armor's policies, forms, quality improvement data and feedback with Armor's various site locations. Furthermore, I am involved in developing and maintaining Armor's health care policies, practices, procedures, protocol and training.

8. Armor's Policy No. J-G-07, entitled "Pregnancy Management," a true and correct copy of which is attached hereto as **Exhibit C**, was in effect for MCJ medical staff on March 9 to 10, 2014. The policy states patients "over 32 weeks gestation shall be admitted to the infirmary on observation status, or medical housing unit, until evaluated by the Health Care Provider, usually within 24-48 hours," and the Health Care Provider "will then provide further direction/orders [regarding] management and housing of the patient." (Exhibit C, at ARMOR 001113, ¶ 2.)

9. At MCJ, there is no "infirmary." The "special medical unit" or "medical housing unit" ("SMU") is where qualified pregnant inmates are placed for medical observation pursuant to Policy No. J-G-07.

10. Once evaluated by the Health Care Provider, Armor's policy requires the patient's care be managed "per routine clinical guidelines for obstetrical patients (Manual of Obstetrics,

3

Seventh Edition, Lippincott, Williams, and Wilkins), and/or referred to contracted obstetrician."
(Exhibit C, at ARMOR 001114, ¶ 3.)

11. The medical care provided to Ms. Terry on March 9 to 10, 2014 at MCJ was in compliance with Armor's policies, procedures and practices in place for MCJ medical staff, including Policy No. J-G-07 "Pregnancy Management."

12. Had Ms. Terry not delivered within her first three hours in SMU on March 10, 2014, she would have been seen by MCJ medical personnel for her initial pregnancy observation status within her first 24-48 hours of SMU placement, pursuant to Armor policy.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.
Executed on the 30th of June, 2018.

*/s/ John May, M.D.*
John May, M.D.