**HINSHAW**

**ATTORNEYS AT LAW**

100 E. Wisconsin Avenue
Suite 2600
Milwaukee, WI 53202

414-276-6464
414-276-9220 (fax)
**www.hinshawlaw.com**

Mollie T. Kugler
414-225-4814
mkugler@hinshawlaw.com

May 10, 2018

**VIA U.S. MAIL AND EMAIL**
Attorney Theresa Kleinhaus
Loevy & Loevy
311 North Aberdeen, Third Floor
Chicago, IL 60607

   Re: **Rebecca Terry v. Armor, et al.**
     **ED of Wisconsin Case No.: 17-CV-1112**

Dear Attorney Kleinhaus:

   Provided herewith are copies of documents that have been Bates numbered as ARMOR 1112 through 1115. These documents correspond to Armor's response to Request No. 11 within Defendant Armor Correctional's Responses to Plaintiff's First Set of Requests for Production to Healthcare Defendants, dated January 23, 2018. This policy was discussed and requested via your May 7, 2018 email.

   Pursuant to the Court's Protective Order entered on February 1, 2018 (ECF No. 45), these documents have been marked "Confidential."

   Thank you.

         Sincerely,

         HINSHAW & CULBERTSON LLP

         Mollie T. Kugler

MTK:lam

cc: Douglas S. Knott (w/enc.)

THIS HEALTH SERVICES AGREEMENT ("Agreement") between Milwaukee County (hereinafter referred to as the "County'"), and Armor Correctional Health Services, Inc., a Florida corporation, (hereinafter referred to as "Armor" or "Contractor"), is dated for reference purposes as of the 11 day of May 2013. Services under this Agreement shall commence on the 11 day of May 2013.

## WITNESSETH

WHEREAS, pursuant to the Order of the Milwaukee County Circuit Court in the case of Christensen v. Milwaukee County et al., the County is required to enter into this contract to obtain reasonably necessary health care (including medical, dental and mental health services) for detainees and inmates in the physical care, custody and control of the Sheriff at Milwaukee County Jail (hereinafter "Jail") and of the Superintendent at the Milwaukee County House of Correction (hereinafter "HOC"), collectively herein known as the "Facilities"; and

WHEREAS, the Sheriff has responsibility to provide medical care for Inmates in his physical care, custody and control at the Jail and the Superintendent has responsibility to provide medical care for Inmates in his physical care, custody and control at the HOC; and

WHEREAS, references in this Agreement to "Sheriff" or "Superintendent" are understood to constitute a reference to each individual in their responsibility for the provision of medical care to Inmates in the respective Facility identified previously; and

WHEREAS, Armor is in the business of providing correctional health care services and agrees to provide such services for the County under the terms and conditions of this Agreement relative to detainees and inmates in the physical care, custody and control of the Sheriff and Superintendent and housed at the Facilities.

NOW, THEREFORE, in consideration of the premises and the covenants and promises hereinafter made, the parties hereto agree as follows:

## ARTICLE I: HEALTH CARE SERVICES

**1.1. General Engagement; Appointment.** The County hereby engages and appoints Armor to manage the delivery of reasonably necessary health care, including medical, dental and mental health services, to an individual once cleared for admittance by medical and physically booked into one of the Facilities for housing (such individuals being hereinafter referred to in this Agreement as "Inmate," singular or "Inmates," plural), which excludes individuals not housed at the Facilities. Armor accepts such appointment to perform such services in accordance with the terms and conditions of this Agreement. Armor will provide preliminary screening and assessing of an individual's medical condition at the time the individual is being presented for booking into the Facilities, even prior to the completion of the booking process, to determine whether the individual's physical condition is reasonably able to be accommodated within the Facility. An individual shall be medically cleared for booking into the Facilities when medically stabilized

1

ARMOR 00063
EXHIBIT H

and the individual's medical condition no longer requires immediate emergency medical care or outside hospitalization so that the individual can be reasonably housed in the Facilities.

**1.2. Scope of General Services.** The responsibility of Armor for providing health care commences once an individual becomes an Inmate, as defined in Section 1.1 above. Armor has no responsibility and shall not be liable for any health care or costs associated with any individual prior to becoming an Inmate. While Armor has no financial obligation for individuals booked offsite, if the Sheriff notifies a duly appointed member of the on-site Armor staff of any booking performed outside the Facilities, Armor will use reasonable efforts to manage offsite care and reduce offsite costs by providing utilization management for those individuals booked offsite and receiving inpatient care prior to becoming an Inmate.

While an Inmate, Armor shall provide or arrange for on a regular basis, all professional medical, dental, mental health, and related health care and administrative services for each Inmate, including, as Inmate movement allows: a comprehensive health evaluation of each Inmate following booking into the Facilities in accordance with NCCHC Standards, booking/intake health screenings, regularly scheduled sick call, nursing care, general physician and dentist visits, hospitalization, medical specialty services as outlined below, emergency medical care, emergency ambulance services when medically necessary, medical records management, pharmacy services, including HIV medications, medical clearances for intra and inter-agency transfers, food handling and work clearances, continuing care of identified health problems, detoxification, discharge planning, health education and training services, a quality assurance program, administrative support services, and other services, all as more specifically described herein.

**1.3. Specialty Services.** In addition to providing the general services described above, Armor will obtain for Inmates housed at the Facilities special medical services including basic radiology services and laboratory services. Armor will also evaluate the need for and feasibility of providing select onsite specialty services (e.g., Orthopedics) to reduce offsite transports. Specialty services Armor determines to be feasible will be provided onsite. When non-emergency specialty care is required and not provided onsite, Armor will make appropriate off-site arrangements for the rendering of such care, and shall coordinate with the Sheriff for Inmates in the physical care, custody and control of the Sheriff in the Jail and with the Superintendent for Inmates in the physical care, custody and control of the Superintendent in the HOC to provide non-emergency transportation of an Inmate to and from offsite care.

**1.4. Emergency Services.** Armor shall provide emergency medical care, as medically necessary, to Inmates through arrangements to be determined by Armor with local hospitals. Armor shall provide for qualified emergency ambulance transportation services when medically necessary in connection with off-site emergency medical treatment. Additionally, Armor shall provide emergency first aid to correctional staff and visitors to Inmates at the Facilities upon request of the Sheriff or Superintendent or their employees or agents, except when doing so would jeopardize Armor's care to an Inmate. Armor shall not be responsible for payment of emergency and follow-up services and transportation provided to correctional staff or visitors in the event of an emergency.

2

ARMOR 00064
EXHIBIT H

**1.5. Limitations on Medical Services.** Armor will arrange for the admission of any Inmate who, in the opinion of the Armor Medical Director, requires hospitalization. Subject to the limits set forth herein, Armor will be responsible for all Inmate costs associated with hospitalization, off-site and on-site specialty services, inclusive of diagnostic procedures, and emergency transportation services incurred subsequent to becoming an Inmate.

    (a) *"Hospitalization"* refers to those services, which will be rendered in a hospital or medical center. Such services include but are not limited to inpatient hospitalization, physician fees associated with inpatient and/or outpatient care, ambulatory surgery, emergency ambulatory care, diagnostic and therapeutic radiology, pharmacy, laboratory and pathological capabilities, and physical therapy capabilities. Armor will pursue preferred provider contracts/discount agreements with local hospitals to meet the needs of the Sheriff's inmate health care program at the Jail and the Superintendent's inmate health care program at the HOC.

    (b) *"Offsite and specialty medical care"* refers to those services rendered by a medical provider outside the Facilities or by a licensed independent (non-Armor employee) medical specialist coming onsite to provide specialty services.

    (c) For each twelve (12) month period of the Agreement, Armor's total financial liability for costs associated with health care for Inmates relating to hospitalization, emergency transportation, off-site and specialty medical care (as defined above) will be capped as follows:
        (1) Armor's total liability for hospitalization, emergency transportation, off-site and specialty medical costs will be capped at $800,000.00 for each twelve (12) month contract period under this Agreement.
        (2) Any hospitalization, emergency transportation, off-site and specialty medical care costs in excess of $800,000.00 during any twelve (12) month contract period shall be managed and paid by Armor, but shall be promptly reimbursed to Armor by County, as set forth below.
        (3) Should the total hospitalization, emergency transportation, and off-site and specialty medical care costs for any twelve (12) month contract period fall below $800,000.00 after a full reconciliation, Armor will credit 100% of the difference back to the County.

    (d) *Aggregate Reconciliation* - Following the completion of each 12 month contract period (running from the date Armor commences provision of healthcare services at the Facilities), Armor shall submit documentation showing the amount Armor has paid for hospitalization, emergency transportation, and off-site and specialty medical care during the past 12 month contract period. Any amount under or over the $800,000.00 shall be invoiced/credited as set forth below. Armor will provide supporting documentation along with an invoice/credit. Because Armor can't always control when third party providers bill for services, once this initial documentation has been provided, Armor shall thereafter submit quarterly additional documentation showing any additional amounts paid for the ended 12 month period, along with an invoice/credit to be paid/credited as set forth below. If under the cap, Armor shall credit the County on the

3

ARMOR 00065

EXHIBIT H

next monthly invoice (if the contract is still active), or submit a check to the County for the amount below the cap. If over the cap, the County shall reimburse Armor for this excess amount within 45 days of receipt of invoice. Armor will provide to the County any requested supporting cost information in Armor's possession.

(e) In the event this Agreement is terminated early, this $800,000.00 annual aggregate cap will be prorated.

**1.6. Exceptions to Treatment.** Armor shall not be financially responsible for the cost of any health care services provided to any individual prior to becoming an Inmate as defined in Section 1.1, above.

(a) Armor shall not be financially responsible for significant increased costs associated with changes in Inmate movement, facility layout, changes in applicable standards in the delivery of healthcare (e.g., NCCHC, ...), court orders, increased wage rates due to labor strikes, walk out, sit in or the like, directives of court monitors, changes in treatment standards which are not FDA approved at the start date of this Agreement or are not part of Armor's written medical protocols. Should any new diagnostic test be mandated and approved in relation to community health care standards for treatment and/or required by Armor's Medical Director as necessary for the treatment of Inmates housed at the Facilities, and the cost of such treatment, in total aggregate, would exceed 1% of the annual base compensation for the then current twelve (12) month period under the term of this Agreement, then the County and Armor shall negotiate for additional compensation due Armor for all actual expenses incurred from newly mandated changes in treatment standards.

(b) Armor shall provide prenatal, delivery and postpartum health care services to pregnant Inmates, but health care services provided to an infant following birth will not be the responsibility of Armor. Armor shall not be responsible for the costs of or furnishing of any abortions, unless medically necessary.

(c) To comply with NCCHC standards, Armor will not be responsible for any medical testing or obtaining samples, which are forensic in nature.

**1.7. Inmates Outside the Facilities.** Health care services are only for Inmates. Inmates on any sort of temporary release (authorized or unauthorized) from the Facilities, including, but not limited to, Inmates temporarily released for the purpose of attending funerals or other family emergencies, Inmates on escape status, Inmates on pass, parole or supervised custody who do not sleep in the Facilities at night, will not be included in the daily population count, and will not be the financial responsibility of Armor with respect to any claim, liability, cost or expense for the payment or furnishing of health care services required while not in the Facilities. Armor is responsible to provide reasonably necessary care to Inmates while in the Facilities, but the cost of medical services provided to Inmates who become ill or are injured while on temporary release will not be the financial responsibility of Armor after their return to the Facilities. This relates solely to the costs associated with the particular illness or injury incurred while on such

4

ARMOR 00066
EXHIBIT H

temporary release. The cost of medical services for other illnesses and injuries will be the responsibility of Armor.

(a) Inmates from the Facilities transferred to the custody of other police or other penal jurisdictions are likewise excluded from the population count and are not the responsibility of Armor for the furnishing or payment of health care services.

**1.8. Elective Medical Care.** Armor will not be responsible for providing elective medical care to Inmates. For purposes of this Agreement, "elective medical care" means medical care, which, if not provided, would not, in the opinion of Armor's Medical Director, cause the Inmate's health to deteriorate or cause definite harm to the Inmate's well-being. Such decisions concerning medical care shall be consistent with applicable laws and general NCCHC standards. In the event of a dispute between Armor's Medical Director and the Sheriff or Superintendent regarding elective medical care, Armor will state in writing to the Sheriff or Superintendent reasons why the medical care is being denied. If the Sheriff or Superintendent determines that the medical care being sought or recommended is medically necessary rather than elective medical care, the determination of the Sheriff or the Superintendent shall be final and binding on Armor, and the Sheriff or Superintendent shall pay for the costs of such care and release and indemnify Armor from and against any claims arising from or relating to the Sheriff's or Superintendent's determination. Any referral of Inmates for elective medical care shall be reviewed and approved by the Sheriff or Superintendent prior to the provision of such services.

**1.9. Transportation Services.** To the extent any Inmate requires off-site non-emergency health care treatment for which Armor is obligated to provide under this Agreement, the Sheriff or Superintendent shall provide such transportation as reasonably available. When medically necessary, Armor shall arrange all emergency ambulance transportation of Inmates in accordance with this Agreement.

**1.10. HIV and Other Illnesses; Testing.** Armor will administer Inmate testing in accordance with NCCHC standards and as otherwise deemed medically necessary by Armor's Medical Director.

**1.11. Pharmacy.** Armor shall provide pharmacy services management, including providing and administering medicines, including prescribed drugs to the Inmates. Armor shall use best efforts to utilize the current formulary schedule to dispense pharmaceuticals to Inmates within a reasonable time period, not to exceed 24 hours from the time the prescription or order was written to start. Armor shall pay the cost for all pharmacy, subject to the total annual pharmacy limit set forth below.

5

EXHIBIT H

Armor's total liability for pharmacy costs will be limited to $990,000.00 for each twelve (12) month period under this Agreement. Should the total pharmacy cost exceed $990,000.00, the County shall reimburse Armor the excess. Should the total pharmacy cost be less than $990,000.00, Armor shall credit the County the difference. Following the end of the 12 month period, Armor shall submit an invoice showing actual pharmacy paid by Armor. Any credit to the County shall be reflected on an Armor invoice within 30 days, and any excess shall be reimbursed by the County to Armor within 45 days of receipt of invoice receipt.

The formulary schedule will be reviewed on an annual basis.

## ARTICLE II: MENTAL HEALTH SERVICES

**2.01. Continuation of Care.** Armor will use reasonable effort to facilitate continuation of care and facilitate placement in the community upon release for inmates with diagnosed mental health issues, when security provides reasonable advance notice of release.

## ARTICLE III: PERSONNEL

**3.1. Staffing.** Armor shall provide select medical, dental, mental health, technical and support personnel for the rendering of health care services to Inmates at the Facilities as described in this Agreement. The chart attached as Exhibit A includes the agreed-upon staffing matrix showing overall staffing and the staffing Armor will use to provide the health care and support services required by the Facilities for an average daily inmate population of 2500 Inmates.

(a) The County of Milwaukee (County) shall provide those positions indicated in Exhibit A. The County shall backfill all County employees, provide professional liability insurance for County employees, defend and indemnify Armor for any and all claims, suits, allegations and complaints arising out of the acts or omissions of County employees, unless such act or omission was the direct result of an Armor directive. The County shall set and pay all County employee wages, set and provide all County employee benefits, manage all collective bargaining matters with County employees and handle every other obligation and task associated with hiring, retaining, promoting (County employee promotions and demotions must be done within the framework of only County employee filled positions and Armor will then fill any vacation position as set forth in section 3.4, below), demoting, disciplining and firing County employees. The County shall manage all County employee relations and grievances, pay all monies or benefits due any County employee as a result of any County employee grievance, and indemnify and defend and hold harmless Armor from and against any and all such grievances, except where Armor is proven, in a court of competent jurisdiction, to be at fault.

(b) *Armor's only obligations* for County employees shall be to: (1) set their work schedules, (2) include them in all Armor onsite training, (3) set their job expectations and, (4) exercise administrative supervision and clinical oversight over County

6

ARMOR 80068
EXHIBIT H

employees necessary to ensure the strict fulfillment of the obligations contained in this Agreement.

(c) Should the inmate population exceed 2600, or fall below 2400, for three consecutive monthly averages, then both parties agree to review staffing. If staffing changes are required to properly care for the changed population, the County and Armor shall agree upon revised compensation required to provide the revised staffing.

(d) In the event the Facilities operations or processes change impacting Armor's delivery of medical care and performance under this Agreement, Armor reserves the right to and may provide for additional health care staffing beyond the positions noted in the attached Exhibit A, incorporated herein, in order to perform the necessary health care services as required under this Agreement. Should additional health care staffing be required, Armor also reserves the right to review the base compensation and, with the County's participation and approval, which shall not be unreasonably withheld, make necessary adjustments in base compensation in order to accommodate any additional staff positions which may be needed.

**3.2. Staffing Withholds.** There shall be no staffing withholds, penalties or liquidated damages for the first 90 days of the contract period. Thereafter, if total paid monthly full time equivalents (FTE's) falls below 95% of total Armor FTE's in Exhibit A, the County may apply staffing withholds as follows: once total paid Armor FTE's in any month fall below 95% of total monthly Armor FTE's in the staffing set forth in Exhibit A, for each Armor FTE below 95% of total contract Armor FTE's, the County may deduct from its monthly payment to Armor at 100% of the average hourly rate for the position. In all cases, employees may be used to cover like positions when their credentials equal or exceed the credentials required for such position (e.g., RN's for LPN's). Armor will provide the County or its representative with a monthly contract staffing compliance report showing all contract positions relative to the staffing matrix. The report shall list all contract positions and the individual by name providing the service, hours each individual worked, to include paid time off, in relation to the total contract FTE's (Armor's and County's) required for that period. The staffing compliance report will be due no later than fifteen days following each monthly pay period.

**3.3. Licensure, Certification and Registration of Personnel.** All personnel provided or made available by Armor to render services hereunder shall be licensed, certified or registered, as appropriate, in their respective areas of expertise as required by applicable Wisconsin law. Each license or certification shall be on file at a central location as mutually agreed upon.

**3.4. Hiring of County Medical and Mental Health Staff.** As County employees terminate employment at the Facilities for any reason, Armor shall hire replacement staff and that replacement staff shall be employees of Armor. Armor will hire properly qualified replacement staff and negotiate fair and reasonable wages. As employees are hired by Armor under this section, the Parties shall amend the attached staffing matrix and base compensation, below, to include the additional Armor employees and reasonable costs associated therewith.

**3.5. Sheriff's and Superintendent's Satisfaction with Health Care Personnel.** Sheriff and Superintendent reserve the right to approve or reject in writing, for any lawful reason, any and all

Case 2:17-cv-01112-JPS   Filed 08/31/18   Page 8 of 28   Document 167-8

ARMOR 00069

EXHIBIT H

Armor personnel or any independent contractor, subcontractors or assignee of Armor assigned to this contract. Additionally, Sheriff or Superintendent may deny access or admission to Facilities at any time for such personnel. Such access will not unreasonably be withheld by Sheriff or Superintendent. Sheriff and Superintendent will require and be responsible for criminal background checks and initial drug testing of all Armor personnel, at County's expense, prior to any such personnel's initiation of recurring services.

If the Sheriff or Superintendent becomes dissatisfied with any personnel provided by Armor hereunder, or by any independent contractor, subcontractors or assignee of Armor, Armor, in recognition of the sensitive nature of correctional services, shall, following receipt of written notice from the Sheriff or Superintendent of the grounds for such dissatisfaction, exercise its best efforts to resolve the problem. If the problem is not resolved to the Sheriff's or Superintendent's reasonable satisfaction, Armor shall remove or shall cause to be removed any employee, agent, independent contractor, subcontractor, or assignee about whom the Sheriff or Superintendent has expressed dissatisfaction. Should removal of an individual become necessary, Armor will be allowed a reasonable time from date of removal to find an acceptable replacement, without penalty or prejudice to the interests of Armor.

**3.6. Use of Inmates in the Provision of Health Care Services.** Inmates shall not be employed or otherwise engaged by either Armor or the Sheriff or Superintendent in the direct rendering of any health care services. Upon prior written approval of the Sheriff or Superintendent, Inmates may be used in positions not involving the rendering of health care services directly to Inmates.

**3.7. Subcontracting and Delegation.** In order to discharge its obligations hereunder, Armor will engage certain health care professionals as independent contractors rather than as employees. The Sheriff or Superintendent may request to approve such professionals, but approval will not be unreasonably withheld. Subject to the approval described above, the Sheriff and Superintendent consent to such subcontracting or delegation. As the relationship between Armor and these health care professionals will be that of independent contractor, Armor will not be considered or deemed to be engaged in the practice of medicine or other professions practiced by these professionals. Armor will not exercise control over the manner or means by which these independent contractors perform their professional medical duties. However, Armor shall exercise administrative supervision and clinical oversight over such professionals necessary to ensure the strict fulfillment of the obligations contained in this Agreement. For each agent and subcontractor, including all medical professionals, physicians, dentists and nurses performing duties as agents or independent contractors of Armor under this Agreement, Armor shall obtain proof that there is in effect a professional liability or medical malpractice insurance policy, as applicable coverage for each health care professional identified herein, in an amount of at least one million dollars per occurrence/three million dollars annual aggregate limit. As requested by the Sheriff or Superintendent, Armor will make available copies of subcontractor agreements providing service under the Agreement.

**3.8. Affirmative Action** Armor will undertake an affirmative action program at Facilities as required by 14 CFR Part 152, Subpart E, to insure that no person shall on the grounds of race, creed, color, national origin, or sex be excluded from participating in any employment activities covered in 14 CFR Part 152, Subpart E. Armor assures that no person shall be excluded on these grounds from participating in or receiving the services or benefits of any program or activity

Case 2:17-cv-01112-JPS   Filed 08/31/18   Page 9 of 28   Document 90070   ARMOR-90070

EXHIBIT H

covered by this subpart. Armor will require that its covered suborganizations provide assurances that they similarly will undertake affirmative action programs and that they will require assurances from their suborganizations, as created by 14 CFR Part 152, Subpart E, to the same effect.

**3.9 Non-Discrimination, Equal Employment Opportunity and Affirmative Action Programs** In the performance of work under this Contract, Armor shall not discriminate against any employee or applicant for employment because of race, color, national origin, age, sex, or handicap, which shall include, but not be limited to, the following:

> Employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeships. Armor will post in conspicuous places, available for employees and applicants for employment, notices to be provided by County, setting forth the provisions of the non-discriminatory clause.

> Armor agrees to strive to implement the principles of equal employment opportunity through an effective Affirmative Action program, and made a part of this Contract. The program shall have as its primary objective to staff the very best qualified person for each position, and then, when and where possible without negatively impacting this first objective, to increase the utilization of women, minorities and handicapped persons, and other protected groups, at all levels of employment, in all divisions of Armor's Milwaukee County work force, where these groups may have been previously under-utilized and under-represented. Armor also agrees that in the event of any dispute as to compliance with the aforestated requirements, it shall be the disputing party's responsibility to show that Armor has not met all such requirements.

> When a violation of the non-discrimination, equal opportunity or Affirmative Action provisions of this section has been determined by a court of competent jurisdiction, Armor shall immediately be informed of the violation and directed to take all action necessary to halt the violation, as well as such action as may be necessary to correct, if possible, any injustice to any person adversely affected by the violation, and immediately take steps to prevent further violations.

If, after notice of a violation to Armor, further violations of this section are proven in a court of competent jurisdiction during the term of the Contract, County may terminate the Contract without liability for the uncompleted portion or any materials or services purchased or paid for by Armor for use in completing the Contract, or it may permit Armor to complete the Contract, but, in either event, Armor shall be ineligible to bid on any future contracts let by County.

## ARTICLE IV: ACCREDITATION

**4.1. Obligation of Armor.** Armor's services shall be designed to meet the National Commission on Correctional Health Care for Jails (NCCHC) standards in place at the commencement of this Agreement. While Armor will design their care to comply with NCCHC standard, if there is a material change in NCCHC standards resulting in additional costs to Armor, the County agrees to pay such documented additional costs. Armor will cooperate fully with the County in all efforts to maintain formal accreditation of the Facilities' health care program. Armor will be responsible for the payment of the fees for maintaining or renewing NCCHC accreditation, except any fees incurred due to non-Armor failures.

9

ARMOR 00071
EXHIBIT H

Any deficiency in Armor's performance of health care services under this Agreement resulting in notice from any regulatory or accrediting organization shall be rectified immediately, provided that such a breach is directly attributed to Armor's acts or omissions, including Armor's employees, agents (County employees shall not be deemed agents of Armor under the terms of this Agreement) and subcontractors. Failure to rectify any such deficiency within a thirty (30) day cure period may result in the County, in its sole discretion, terminating this Agreement. If this Agreement is, at any time, entered into for a minimum total of 24 months from start, Armor shall seek NCCHC accreditation after the first year of this Agreement. Once accreditation is obtained, Armor shall maintain accreditation during any subsequent term of this Agreement. If Armor's acts or omissions, and not those of County employees, fails to so maintain accreditation, and such is solely due to Armor's failure to comply with NCCHC standards, then Armor will pay a penalty of Twenty-five Thousand Dollars ($25,000.00) to the County as liquidated damages.

## ARTICLE V: EDUCATION

**5.1. Inmate and Staff Education.** Armor shall conduct an ongoing health education program for Inmates at the Facilities with the objective of raising the level of Inmate health and health care. Armor staff will provide relevant training to the Sheriff's and Superintendent's staff as required by accrediting bodies. Armor will also work with the Sheriff and Superintendent to provide correctional staff with health care training as desired by the Sheriff or Superintendent and as Armor is able to accommodate without jeopardizing the quality of Inmate care.

**5.2. Medical Services Staff Education.** Armor will require that its medical, professional and para-professional staff receive all necessary and requisite legal and statutorily mandated in-service, annual or proficiency training and other such professional or para-professional education and training programs needed to provide current proficiency in the professional's or para-professional's particular medical discipline or specialty. County shall ensure the same for County employees. County employees shall be invited to attend any Armor training provided onsite at the Facilities and Armor employees shall be invited to any training provided onsite at the Facilities for County employees. Armor shall have no obligations for costs associated with CME, licensing, certification, recertification or training for County employees.

## ARTICLE VI: REPORTS AND RECORDS

**6.1. Medical Records.** Armor shall cause and require to be maintained a complete and accurate medical record for each Inmate receiving health care services from Armor. Each medical record will be the property of the County and such records shall be maintained by Armor in accordance with applicable laws, NCCHC standards. The medical records shall be kept separate from the Inmate's confinement record. A complete legible copy of the applicable medical record shall be available, within a reasonable time, to the Sheriff or Superintendent and will, with reasonable notice, be available to accompany each Inmate who is transferred from the Facilities to another location for offsite services or transferred to another institution. Medical records shall be kept confidential. Subject to applicable law regarding confidentiality of such records, Armor shall comply with Wisconsin law and the Sheriff's or Superintendent's policy with regard to access by Inmates and Facilities staff to medical records. No information contained in the medical records

EXHIBIT H

shall be released by Armor except as directed by the Sheriff's or Superintendent's policy, by a court order, or otherwise in accordance with applicable law. Armor shall provide all medical records, forms, jackets, and other materials necessary to maintain the medical records. Armor shall provide an electronic medical record (EMR) software program for a one-time payment of $206,075.00. If the County extends this agreement for an additional one year term, or longer, Armor shall rebate the EMR fee of $206,075.00 to County within 30 days after such extension. Armor will provide customized EMR software of Armor's choosing that incorporates Armor's policies in use at the Facilities, server, terminals, printers, scanners and interfaces. County will provide the cabling, routers and connections needed in the Facilities to connect the EMR. Armor and County shall work together to toward the successful preparation and installation of the EMR. Upon the expiration or termination of this Agreement, the functional EMR and all medical records shall become the property of the County, and the County shall assume payment of the monthly per inmate fee for the EMR of $1.50 per Inmate per day, if County desires to retain the EMR. Armor will use reasonable effort to allow the County to continue to utilize such EMR on the same terms and conditions applicable to Armor. The EMR will be customized with Armor forms, policies and procedures. The County may continue to use such forms, policies and procedures, but hereby acknowledges such are proprietary; therefore, the County shall keep such forms, policies and procedures exclusively within the Sheriff's and Superintendent's Offices and associated County departments that have a need to know.

**6.2. Regular Reports by Armor to the Sheriff and Superintendent.** Armor shall make available to the Sheriff and Superintendent, on a date and in a form mutually acceptable to Armor and the Sheriff and Superintendent, monthly and annual reports relating to services rendered under this Agreement.

**6.3. Third Party Reimbursement.** Armor will seek and obtain from Inmates information concerning any health insurance the Inmate might have that would cover offsite services managed by Armor. Armor will instruct offsite providers to bill third party insurance first. After seeking payment from available third party insurance, Armor will process the remaining claim for payment consideration. Armor shall provide the County with periodic reports when such credits are applied. Armor and the County specifically understand that Medicaid and Medicare may not be available third party sources, and, to the extent required by law, Armor's policies strictly forbid asking about Medicaid/Medicare and providing any Medicaid/Medicare information to any provider where such coverage is not allowed. Armor shall follow the patient Protection and Affordable Care Act (PPACA) as it develops. As it becomes applicable to Inmates, Armor will cooperate with County to obtain any costs savings available under the PPACA.

**6.4. Inmate Information.** Subject to the applicable Wisconsin law, in order to assist Armor in providing the best possible health care services to Inmates, the Sheriff and Superintendent will provide Armor with information pertaining to Inmates that Armor and the Sheriff and Superintendent mutually identify as reasonable and necessary for Armor to adequately perform its obligations hereunder.

**6.5. Armor Records Available to the Sheriff or Superintendent with Limitations on Disclosure.** With reasonable notice, Armor shall make available to the Sheriff or Superintendent,

11

ARMOR 00073

EXHIBIT H

at the Sheriff's or Superintendent's request, all records, documents and other papers relating to the direct delivery of health care services to Inmates hereunder. The Sheriff and Superintendent understand that many of the systems, methods, procedures, written materials and other controls employed by Armor in the performance of its obligations hereunder are proprietary in nature and will remain the property of Armor. Information concerning such may not, at any time, be used, distributed, copied or otherwise utilized by the Sheriff or Superintendent, except in connection with the delivery of health care services hereunder, and as permitted or required by law, unless such disclosure is approved in advance in writing by Armor.

**6.6. Sheriff's and Superintendent's Records Available to Armor with Limitations on Disclosure.** During the term of this Agreement and for a three years thereafter, the Sheriff and Superintendent shall provide Armor, at Armor's request, Sheriff's and Superintendent's records relating to the provision of health care services to Inmates as may be reasonably requested by Armor or as are pertinent to the investigation or defense of any claim related to Armor's conduct. Consistent with applicable law, the Sheriff and Superintendent will make available to Armor such records as are maintained by the Sheriff or Superintendent, hospitals and other outside health care providers involved in the care or treatment of Inmates (to the extent the Sheriff or Superintendent has access to those records) as Armor may reasonably request. Any such information provided by the Sheriff or Superintendent to Armor that the Sheriff or Superintendent considers confidential and clearly labeled confidential shall be kept confidential by Armor and shall not, except as may be required by law, be distributed to any third party without the prior written approval of the Sheriff or Superintendent.

**6.7. Public Record Law.** In the event that Armor should assert any proprietary or confidential status to any of its systems, methods, procedures or written materials and other controls employed by Armor in the performance of its obligation pursuant to this Agreement, then Armor shall assess such claim on its own, and shall defend and hold harmless the County, the County's employees, officers, appointees and agents against all liabilities for Armor's failure to comply with the requirements of the law with regard to the release of records.

**6.8. HIPAA Compliance.** To the extent HIPAA applies to Armor, Armor shall comply with those requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and amendments relating to Armor's responsibilities pursuant to this Agreement.

## ARTICLE VII: SECURITY

**7.1. General.** Armor, the Sheriff and the Superintendent understand that adequate security services are necessary for the safety of the agents, employees and subcontractors of Armor as well as for the security of the Inmates and the Sheriff's and Superintendent's staff, consistent with the correctional setting. The Sheriff and Superintendent will take all reasonable measures to provide sufficient security to enable Armor, County and their personnel, to safely and adequately provide the health care services described in this Agreement. Armor, County and their staff and personnel, understand that the Facilities in which services will be rendered are detention Facilities and that working in such Facilities involves inherent dangers. Armor, County and their staff and personnel further understand that the Sheriff and Superintendent cannot guarantee anyone's safety in the Facilities and nothing herein shall be construed to make the Sheriff and

Case 2:17-cv-01112-JPS    Filed 08/31/18    Page 13 of 28    Document 25-7

ARMOR 00074

EXHIBIT H

Superintendent, their officers or employees a guarantor of the safety of Armor or County employees, agents or subcontractors.

(a) In the event that any recommendation by Armor for particular health services for any Inmate or transfers to a medical Facilities should not be implemented and carried due to acts or omissions of the Sheriff or Superintendent, Armor will be released from professional liability for any damages resulting from any such decision on the part of the Sheriff or Superintendent, as long as the recommendation was made in writing.

**7.2. Loss of Equipment and Supplies.** The County shall not be liable for loss of or damage to equipment and supplies of Armor, its agents, employees or subcontractors unless such loss or damage was caused by the negligence of the County or its employees.

**7.3. Security During Transportation Off-Site.** The Sheriff or Superintendent will provide security as necessary and appropriate in connection with the transportation of any Inmate between the Facilities and any other location for off-site services as contemplated herein.

## ARTICLE VIII: OFFICE SPACE, EQUIPMENT, INVENTORY AND SUPPLIES

**8.1. General.** The Sheriff and Superintendent agree to provide Armor with office space at the Facilities, the use of the equipment (including office furniture) currently being used at the Facilities to provide health care services to Inmates, and utilities (such as electricity, local phone and water) sufficient to enable Armor to perform its obligations hereunder. Armor will supply and be responsible for payment of long distance telephone carrier services and minor equipment (less than $500 purchase price) within the Facilities for use of its personnel. The County will provide necessary maintenance and housekeeping of the office space at the Facilities. Armor agrees it has inspected the Facilities and medical office space at the Facilities and that such space and the Facilities can be utilized to perform the obligations required under this Agreement.

**8.2. Delivery of Possession.** The Sheriff and Superintendent will provide to Armor, beginning on the date of commencement of this Agreement, possession and control of all medical and office equipment and supplies that are the County's property, in place at the Facilities health care units. At the termination of this or any subsequent Agreement, Armor will return to the County possession and control of all County owned equipment, in working order, reasonable wear and tear excepted, which were in place at the Facilities' health care unit prior to the commencement of services by Armor under this Agreement.

**8.3. Maintenance and Replenishment of Equipment.** Armor will maintain all Armor owned equipment in working order and County shall maintain all County owned equipment in working order during the term of this Agreement. The County shall provide all reasonably required medical equipment with a value of $501 or greater, necessary to provide health care services in the Facilities. Armor shall at its sole expense purchase all required medical and office equipment not provided by County to perform services pursuant to this agreement with a per item cost of $500 or less. At the conclusion of the initial term and any renewal terms of this Agreement all equipment purchased by Armor may be purchase by the County for the then current market price less 10%. If the Agreement with Armor is terminated prior to the initial contract term and

13

ARMOR 00075
EXHIBIT H

extensions, the County will be provided the opportunity to purchase the equipment at the current market price. Prior to the start of the initial contract period, the County shall provide Armor with a complete listing of all equipment within the medical units that will be available for Armor to use.

**8.4. General Maintenance Services.** The Sheriff and Superintendent will provide for each Inmate receiving health care services at the Facilities the same services provided by the Sheriff and Superintendent to all other Inmates at the Facilities including, but not limited to, daily housekeeping services, dietary services, building maintenance services, personal hygiene supplies and services, and linen supplies.

**8.5. Supplies.** Armor warrants and represents that the quality and quantity of supplies on hand during this Agreement will be sufficient to enable Armor to perform its obligations hereunder, barring a significant deviation from standard usage (e.g., riot, natural disaster). Armor shall be responsible, at its sole expense, to purchase any and all additional office supplies needed, from time to time, to provide health services to the Inmates pursuant to the provisions of this Agreement.

**8.6. Biohazardous Waste.** Armor shall be responsible, at its sole cost, for the proper disposal of all biohazardous medically generated waste occurring at the Facilities during the term of this Agreement.

**8.7. Software and Electronic Information.** All software programs and other information technology purchased or developed by Armor and used in its performance of this Agreement are proprietary to and/or the property of Armor. The County shall not have any right, title or interest, in or to such property, except as otherwise provided in this paragraph. At the expiration or termination of this Agreement, Armor will allow the County to continue using Armor's EMR as long as the County pays the EMR provider's monthly per inmate fee. If the County does not wish to continue utilizing Armor's EMR software, Armor shall provide the County with all Inmate data that has been stored electronically, in a relational database utilizing Sequel or Oracle and a PDF electronic copy of Inmates medical records as well as a hard copy paper record and shall ensure that all paper Inmate medical records and electronic documents are complete and accurate.

## ARTICLE IX: TERM AND TERMINATION OF AGREEMENT

**9.1. Term.** This Agreement will be effective at 12:01 a.m. on May 11, 2013, as to the providing of services hereunder. The initial term of this Agreement shall be one (1) year. Subject to Section 8.2, this Agreement may be extended upon mutual agreement of the parties, executed no less than ninety (90) days prior to the expiration of the term for five (5) additional one (1) year terms pursuant to the terms of this Agreement. This Agreement may also be revised and extended as otherwise mutually agreed upon by the parties.

14

ARMOR_00076

EXHIBIT H

**9.2. Termination.** This Agreement may be terminated as provided in this Agreement or as follows:

(a) Termination by Agreement. In the event that County and Armor mutually agree in writing, this Agreement may be terminated on the terms and date stipulated therein.

(b) Termination for Default. In the event the County or Armor shall give notice to the other that such other party has materially defaulted in the performance of any of its material obligations hereunder and such default shall not have been cured within thirty (30) days following the giving of such notice in writing, the party giving the notice shall have the right immediately to terminate this Agreement.

(c) Unrestricted right of termination. The County further reserves the right to terminate this Contract at any time for any reason by giving Armor thirty (30) days' written notice by Certified Mail of such termination. In the event of said termination, Armor shall reduce its activities hereunder as mutually agreed to, upon receipt of said notice. Upon said termination, Armor shall be paid for all services rendered through the date of termination.

(d) Annual Appropriations and Funding. Both parties acknowledge that the performance of this Agreement and payment for medical services to Armor pursuant to this Agreement is predicated on the continued annual appropriations by the Board of Supervisors of Milwaukee County to meet the medical needs of the Inmates in the facilities and the Sheriff's and Superintendent's ability to perform under this Agreement.

(e) Armor may terminate if the County falls more than 15 days behind on timely payment to Armor. Armor may also terminate without cause by providing the County with no less than 180 days advance written notice.

**9.3. Responsibility for Inmate Health Care.** Upon termination of this Agreement, all of Armor's responsibility for providing health care services to all Inmates, including Inmates receiving health care services at sites outside the Facilities, will terminate.

**9.4. Owner of Documents Upon Early Termination.** Upon early termination of this Agreement prior to its expiration, copies of all finished or unfinished documents, studies, correspondence, reports or other products prepared by Armor for County shall be provided to the County.

## ARTICLE X: COMPENSATION

**10.1. Base Compensation.** For each twelve (12) month period under the initial term of this Agreement, the base monthly compensation shall be invoiced in advance of the month in which services are provided. The County shall pay the base monthly compensation invoice within 45 days of receipt of said invoice. All monthly adjustments (e.g., withholds, per diems) shall be invoiced or credited, as the case may be, the following month. In the event this Agreement should terminate or be amended on a date other than the end of any calendar month, compensation to Armor will be prorated accordingly based on the fractional portion of the month

Case 2:17-cv-01112-JPS   Filed 08/31/18   Page 16 of 28   Document 57   ARMOR 00077

EXHIBIT H

during which Armor actually provided services. Any properly submitted invoice not paid within 30 days from receipt shall accrue interest at 1.5% per month until paid in full.

(a)    For the first twelve (12) month period of the initial term of this Agreement, based on Armor staffing of 45.3 FTE and all other services set forth herein, the County shall pay to Armor the base price sum of $9,092,361.00 (inclusive of the $206,075.00 for EMR) for an average daily inmate resident population up to 2500, payable in twelve (12) equal monthly installments of $757,696.75. For each Inmate in excess of 2600 average daily inmate resident population, the County shall pay Armor a per diem of $1.44. For each Inmate below 2400 average daily inmate resident population, Armor shall credit County a per diem of $1.44.

(b)    In addition to the base price sum above, County shall pay Armor a one-time start-up fee of $50,000. Armor shall invoice this start-up fee and County shall pay within 45 days from receipt.

(c) The Parties hereto acknowledge there may be legal and/or public challenges to the implementation of Armor services called for under this Agreement. Should Armor be required to suspend, in whole or in part, or terminate services due to such challenge, or otherwise at the request of the County, the County shall pay Armor all actual costs incurred up to the date services are suspended or terminated. Should Armor recommence services (in whole or in part) after services have been suspended (in whole or in part) or terminated, the County shall pay Armor's actual startup costs incurred to resume provision of services. Armor shall invoice County for such actual costs together with reasonable supporting documentation.

**10.2. Inmate Population.** The average daily inmate resident population shall be based upon the midnight count taken each day. The average daily inmate resident population counts are added for each day of the month and divided by the number of days in the month to determine the average monthly inmate population. The excess, if any, over the inmate population caps will be multiplied by the per diem rate and the number of days in the month to arrive at the increase in compensation payable to Armor for the month.

(a)    Should the Sheriff or Superintendent designate any other facility requiring the provision of health care services by Armor, the parties agree to negotiate the additional staff and compensation prior to Armor commencing services at the newly designated facility.

**10.3. Compensation for Subsequent Periods.** After the first twelve (12) month period, pricing will be adjusted based on the mutual written agreement of the County and Armor.

**10.4. Failure to Perform/Reimbursement.** For any services required to be performed by Armor under this Agreement, but that are performed by the County due to Armor's failure to perform, Armor shall reimburse County for those expenses and such expenses shall be reduced from the monthly payment due Armor under this Agreement.

16

ARMOR-00078
EXHIBIT H

## 10.5. Penalties.

I. Penalties to which Armor is subject are as follows (excluding acts and omissions of County employees, unless directed by Armor to so act):

    (a) The parties agree that no penalty shall be applied during the first 90 days following commencement of services under this Agreement.

    (b) Armor shall not be liable for a penalty when Armor's failure arises as a result of any reason beyond its control, including but not limited to physical facility limitations, strikes or labor disputes, inmate disturbances, acts of God, failure of County to fulfill County responsibilities under this Agreement, or any other similar causes beyond the reasonable control of Armor.

    (c) The County may assess Armor, on a monthly basis, a fine of One Hundred Fifty and 00/100 Dollars ($150.00) for each Inmate History and Physical Examination not completed within the required fourteen (14) days after the day of booking. This fine will not be assessed if Armor's staff does not have reasonable access to any inmate in order to complete the history or examination.

    (d). The County may assess Armor, on a monthly basis, a fine of One Hundred Fifty and 00/100 Dollars ($150.00) for each intake screening not initiated within 60 minutes of notification and reasonable opportunity to complete.

    (e). The County may assess Armor, on a monthly basis, a fine of One Hundred Fifty and 00/100 Dollars ($150.00) for each hospital readmission deemed not to be medically necessary by a competent correctional healthcare physician.

    (f) The County may assess Armor, on a monthly basis, a fine of One Hundred Fifty and 00/100 Dollars ($150.00) for each Armor subcontractor invoice not paid within 45 days of receipt of a clean invoice, unless the County has failed to timely pay Armor as set forth herein.

II. Penalties to which the County is subject are as follows:

    (a) Should the County terminate this Agreement during the initial 12 month term of this Agreement for any reason, other than failure of Armor to fulfill its obligations hereunder, County shall reimburse Armor for all actual expenses that are "above contract" (meaning costs incurred by Armor due to early termination by County and not factored into the pricing set forth in this Agreement)

## 10.6. Inmates from Other Jurisdictions.
Medical care rendered within the Facilities to Inmates from other jurisdictions housed in the Facilities pursuant to contracts between the Sheriff or Superintendent and such other jurisdictions will be the responsibility of Armor. Armor will arrange medical care that cannot be rendered in the Facilities, but Armor shall have no financial responsibility for such offsite services.

## 10.7. Responsibility for Work Release Inmates.
Notwithstanding any other provisions of this Agreement to the contrary, both parties agree that Inmates assigned to the work release program who are not housed at the Jail are personally responsible for the costs of any medical services provided to them. Armor may assist with arranging the necessary medical transportation for

17

Inmates participating in the work release program who are not housed at the Jail to obtain medical care.

**10.8. Changes in the Law.** If any statute, rule or regulation is passed or any order, legal mandate or decree issued or any statute or guideline adopted which materially increases the cost to Armor of providing health care services pursuant to this Agreement, Armor and the County will mutually agree on additional compensation to be paid by the County to Armor as a result of such changes.

## ARTICLE XI: LIABILITY AND RISK MANAGEMENT

Armor agrees to evidence and maintain proof of financial responsibility to cover costs as may arise from claims of tort, statutes and benefits under Workers' Compensation laws and/or vicarious liability arising from employees, board, or volunteers. Such evidence shall include insurance coverage for Worker's Compensation claims as required by the State of Wisconsin, Commercial General Liability (which includes board, staff, and volunteers), Automobile Liability and Professional Liability in the minimum amounts listed below.

Automobile insurance that meets the minimum limits as described in the Agreement is required for all vehicles (owned, non-owned, and/or hired). In addition, if any employees of Armor use their personal vehicles to transport County employees, representatives or clients, or for any other purpose related to the Agreement, those employees shall have Automobile Liability Insurance providing the same liability limits as required herein through any combination of employee Automobile Liability and employer Automobile or General Liability Insurance which in the aggregate provides liability coverage, while employee is acting as agent of employer, on the employee's vehicle in the same amount as required of Armor.

Armor shall maintain Professional Liability coverage as listed below.

It being further understood that failure to comply with insurance requirements might result in suspension or termination of the Agreement.

| Type of Coverage | Minimum Limits |
|---|---|
| **Wisconsin Workers' Compensation** or Proof of all States Coverage | Statutory |
| **Employers' Liability** | $100,000/$500,000/$100,000 |
| **Commercial General Liability** Bodily Injury & Property Damage Incl. Personal Injury, Fire, Legal Contractual & Products/Completed Operations | $1,000,000 – Per Occurrence $1,000,000 – General Aggregate |

18

ARMOR 00080
EXHIBIT H

**Automobile Liability**
Bodily Injury & Property Damage                    $1,000,000 Per Accident
All Autos – Owned, Non-Owned
and/or Hired

Uninsured Motorists                                 Per Wisconsin Requirements

**Professional Liability**
To include Certified/Licensed Mental               $1,000,000 Per Occurrence
Health and Licensed Physician or                   $5,000,000 Annual Aggregate
any other qualified healthcare provider
as required by State Statute

Should the statutory minimum limits change, it is agreed the minimum limits stated
herein shall automatically change as well and the County shall automatically reimburse
Armor for the associated increase premium.

Milwaukee County shall be named as an "additional insured" on Armor's Certificate of
Insurance for general liability, and automobile insurance. Milwaukee County must be
afforded a thirty day (30) written notice of cancellation or non-renewal. Disclosure must
be made of any non-standard or restrictive additional insured endorsement. Certificates
indicating the above coverages shall be submitted to the County.

If Armor's Professional Liability insurance is underwritten on a Claims-Made basis, the
Retroactive date shall be prior to or coincide with the date of this Agreement, the
Certificate of Insurance shall state that *professional malpractice or errors and omissions
coverage, if the services being provided are professional services* coverage is Claims-
Made and indicate the Retroactive Date. Armor shall maintain coverage for the duration
of this agreement and for five (5) years following the completion of this agreement.

It is also agreed that on Claims-Made Professional Liability policies, either Armor or
County may invoke the tail option on behalf of the other party and that the Extended
Reporting Period premium shall be paid by the County.

Binders are acceptable preliminarily during the provider application process to evidence
compliance with the insurance requirements.

All coverages shall be placed with an insurance company approved by the State of Wisconsin
and rated "A" per Best's Key Rating Guide. Additional information as to policy form,
retroactive date, discovery provisions and applicable retentions, shall be submitted to County,
if requested, to obtain approval of insurance requirements. Any deviations, including use of
purchasing groups, risk retention groups, etc., or requests for waiver from the above
requirements shall be submitted in writing to the Milwaukee County Risk Manager for
approval prior to the commencement of activities under the contract.

19

EXHIBIT H

Milwaukee County Risk Manager
Milwaukee County Courthouse – Room 302
901 N. 9th St.
Milwaukee, WI 53233

The insurance requirements contained within this agreement are subject to periodic review and adjustment by the County Risk Manager. Changes and adjustments resulting in a change in cost to Armor shall be reimbursed by the County.

## ARTICLE XII: MISCELLANEOUS

**12.1. Independent Contractor Status.** The parties acknowledge that Armor is an independent contractor and that all medical care decisions will be the sole responsibility of Armor. Nothing in this Agreement is intended, nor shall they be construed to create an agency relationship, an employer/employee relationship, a joint venture relationship, joint employer or any other relationship allowing the County to exercise control or direction over the manner or method by which Armor, its employees, agents, assignees or its subcontractors perform hereunder. If Armor is held to be a joint employer of County employees for any reason, the County shall defend, indemnify and hold harmless Armor for any and all costs and damages resulting there from, except for costs and damages directly arising from Armor's direct negligence or intentional wrongful acts.

**12.2. Badges and/or Visitor Passes.** All Armor employees will wear identification badges at all times in a visible manner. Armor shall return identification badges and/or visitor passes immediately after an employee's, subcontractor's, independent contractor's or per diem employee's resignation, removal, termination, or reassignment..

**12.3. Subcontracting.** Any subcontract shall include the obligations contained in this Agreement, and shall not relieve Armor of its obligation to provide the services and be bound by the requirements of this Agreement. The County and Armor each binds itself, its successors, assigns and legal representatives to the other party hereto and to the successors, assigns and legal representatives of such other party in respect to all covenants, agreements and obligations contained herein.

**12.4. Notice.** Unless otherwise provided herein, all notices or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given when delivered according to this section. Delivery shall be by overnight courier or certified or registered mail, return receipt requested postage prepaid, and addressed to the appropriate party at the following address:

Notice to Sheriff   Notice to Armor

20

ARMOR 00082

Case 2:17-cv-01112-JPS   Filed 08/31/18   Page 21 of 28   Document 167-8

EXHIBIT H

Richard Schmidt
Inspector
Milwaukee County Jail
949 North 9th Street
Milwaukee, WI 53233

Bruce Teal, CEO  and
Kenneth Palombo, COO
Armor Correctional Health
Services Inc.
4960 S.W. 72nd Ave, Suite 400
Miami, Florida 33155

Notice to Superintendent

Notice to Milwaukee County

Michael Hafemann
Superintendent, HOC
8885 S. 68th St.
Franklin, WI. 53132

Don Tyler
Director, DAS
901 N. 9th St. Room 308
Milwaukee, WI. 53233

Or to such other respective addresses as the parties may designate to each other in writing
from time to time.

**12.5. Entire Agreement.** This Agreement and exhibits attached specifically incorporated herein constitute the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof. No modifications or amendments to this Agreement shall be binding upon the parties unless the same is in writing and signed by the respective parties hereto. All prior negotiations, requests for proposal, proposals, agreements and understandings with respect to the subject matter of this Agreement are superseded hereby.

**12.6. Amendment.** This Agreement may be amended or revised only in writing and signed by all parties.

**12.7. Mediation of Disputes.** Prior to bringing any lawsuit under this Agreement, the parties hereto agree to submit any and all disputes to pre-suit mediation under the Wisconsin Rules for Certified and Court-Appointed Mediators and the Wisconsin Rules of Civil Procedure, together with the rules of the American Arbitration Association or the Foundation for Dispute Resolution. The parties agree to share equally the cost of the mediation.

**12.8. Waiver of Breach.** The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

**12.9. Other Contracts and Third-Party Beneficiaries.** The parties agree that they have not entered into this Agreement for the benefit of any third person or persons, and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third party beneficiaries hereof.

21

ARMOR 00083

EXHIBIT H

**12.10. Severability.** In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of the Agreement, which shall remain in full force and effect and enforceable in accordance with its terms.

**12.11. Force Majeure.** Neither party shall be held responsible for any delay or failure in performance (other than payment obligations) to the extent that such delay or failure is caused by, without limitation, acts of nature, acts of public enemy, fire, explosion, government regulation, civil or military authority, acts or omissions of carriers or other similar causes beyond its control.

**12.12. Default.** Unless Armor's performance is specifically exempted by this Agreement, County shall be entitled to a credit or reimbursement for any reasonable cost the County incurs for any medical services required to be performed by Armor when and to the extent that Armor shall fail to perform (excluding failures caused by County employees) and a thirty (30) day cure period has passed. The credit or reimbursement provided for in this section shall not be deemed to be the sole remedy of the County and the County is otherwise entitled to seek all other lawful remedies the County is entitled to under this Agreement, including any and all damages stemming from the failure of Armor to pay as is required under this Agreement.

**12.13. Permits and License.** Armor acknowledges that it will maintain all relevant permits and licenses required for Armor to perform the services required by this Agreement, except those required and held by the County (e.g., pharmacy) or required of County employees. This will include, but not be limited to licenses and permits for radiology (as allowed by law). Armor shall ensure that all individuals or entities performing the services required under this Agreement, excluding County employees but including Armor employees, agents, assignees, subcontractors or independent contractors shall be appropriately licensed, registered or certified as required by applicable law. Armor and the County shall notify the County of any revocation, suspension, termination, expiration, restrictions, etc., of any required license, registration or certification of any individual or entity to perform the services herein specified.

**12.14. Liaison.** The Sheriff or Superintendent or their designees (so designated in writing by the Sheriff and Superintendent) shall be the liaison with Armor for each Facility.

**12.15. Authority.** Each party hereto expressly represents and warrants that the person executing this Agreement is the legal, valid and binding representative of each party.

**12.16. County's Correctional Healthcare Advocate.** The County may designate a Correctional Health Care Monitor who will be its representative and who shall require Armor to meet all contract requirements; monitor Armor's compliance and any corrective action to resolve areas of non-compliance or deficiencies; recommend liquidated damages/penalties based on non-compliance and as set forth within this Agreement; and facilitate any dispute resolution.

**12.17. Appearances.** Armor's representatives shall cooperate with the County as necessary for required court appearances related to medical services at the Facilities, which Armor staff time shall be counted toward hours worked.

22

ARMOR 00084

**EXHIBIT H**

**12.18. Civic Groups.** Upon mutual agreement of the County and Armor, Armor shall discuss the services provided under this Agreement with local civic groups or visiting officials.

**12.19. Facilities.** The Sheriff and Superintendent may prohibit entry to any Facilities or remove from Facilities any of Armor's subcontractors, independent contractors or employees who do not perform their duties in a professional manner, who violate the security regulations and procedures of the Sheriff or Superintendent, or who present a security risk or threat as determined in the sole discretion of the Sheriff or Superintendent. The Sheriff and Superintendent reserve the right to search any person, property or article entering any Facilities. Armor's employees, independent contractors, and subcontractors, their desks, lockers, personal effects, and vehicles parked in the premises are subject to search at any time. Sheriff and Superintendent reserve the right to require drug and alcohol testing of independent contractors or employees for due cause at the expense of the Sheriff or Superintendent.

**12.20. Computer Security.** Armor shall use its best efforts to ensure that any of its actions do not corrupt or infect any of County's computer equipment, computer software, data files, or databases. Any costs to the County for corruption and infection due to Armor employees' use thereof will be borne by Armor.

**12.21. Media Requests.** If media requests are received, Armor may be responsible for responding to the media after coordinating its response with Sheriff's or Superintendent's Public Information Office.

**12.22. Emergency Notification.** Armor shall promptly notify the Sheriff or Superintendent of any unusual illnesses, any emergency care, any Inmate death, and any potential media concern.

**12.23. Infection Control.** Armor shall implement an infection control program which includes but is not limited to concurrent surveillance of staff and Inmates, prevention techniques, treatment, and reporting of infections in accordance with local, state and federal laws, OSHA and Governing Standards.

**12.24. Inmate Grievances, Complaints.** Inmate complaints or grievances regarding services under this Agreement shall be forwarded to the Armor's Health Services Administrator or designee who shall promptly review the complaint or grievance, gather all information concerning the complaint or grievance, and take appropriate action in accordance with the Sheriff's or Superintendent's grievance procedures. Armor shall respond to all Inmate complaints or grievances concerning services under this Agreement within seventy-two (72) hours of Armor's receipt of such complaint or grievance.

**12.25. Utilization Review.** Armor shall implement and operate a Utilization Review Program for the County.

**12.26. Comprehensive Quality Improvement.** Armor shall develop a comprehensive quality improvement program of regularly scheduled audits of all Inmate health care services provided under the Agreement, documentation of deficiencies, and plans for correction of deficiencies. The quality improvement plan shall include a provision for program and contract monitoring

23

ARMOR 00085
EXHIBIT H

(peer review) by one or more "outside" detention health care consultant(s) on an annual basis.
The results of the outside consultant's review(s) shall be shared with the County and available for
NCCHC review accreditation. Armor shall bear all costs associated with the outside consultants.

**12.27. Emergency Medical Disaster Plan.** Subject to the approval of the Sheriff and
Superintendent, Armor shall maintain procedures from the start date of this Agreement for the
delivery of medical services in the event of a disaster, including but not limited to, fire, tornado,
hurricane, epidemic, riot, strike or mass arrests. Such procedures shall be maintained and/or
modified by Armor's Medical Director working closely with the Sheriff's and Superintendent's
staff and may include:

    (a) Communications system;
    (b) Recall of key staff;
    (c) Assignment of health care staff;
    (d) Establishment of command post;
    (e) Safety and security of the patient and staff areas;
    (f) Use of emergency equipment and supplies to include automatic external defibrillators
       (AED's);
    (g) Establishment of a triage area;
    (h) Triage procedures;
    (i) Medical records-Identification of injured

**12.28 Indemnity.** Each party agrees to indemnify, defend and hold harmless, the other (the
indemnified party), and their agents, officers and employees, from and against all loss or expense
including costs and attorney's fees (for attorneys provided by or approved by Armor), by reason
of liability for damages including suits at law or in equity, caused by the indemnifying party's
wrongful, intentional, or negligent act or omission, or its (their) agents which may arise out of or
are connected with the activities covered by this Agreement.

**12.29 County ownership of Data.** Upon completion of the work or upon termination of the
contract, it is understood that any reports, information and data, given to or prepared or
assembled by Armor under this Contract shall not be made available to any individual or
organization by Armor without the prior written approval of the County. No reports or
documents produced in whole or in part under this Contract shall be the subject of an application
for copyright by or on behalf of the Armor.

**12.30 Records and Audits** Pursuant to §56.30(6)(d) of the Milwaukee County Code of
Ordinances, Armor shall allow Milwaukee County, the Milwaukee County Department of Audit,
or any other party the Milwaukee County may name, when and as they demand, to audit,
examine and make copies of records in any form and format, meaning any medium on which
written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved,
regardless of physical form or characteristics, which has been created or is being kept by Armor,
including not limited to, handwritten, typed or printed pages, maps, charts, photographs, films,
recordings, tapes (including computer tapes), computer files, computer printouts and optical
disks, and excerpts or transcripts from any such records or other information directly relating to
matters under this Agreement, all at cost to Milwaukee County, unless such request is
unreasonable, in which case Armor shall provide a cost to comply. Any subcontracting by
Armor in performing the duties described under this contract shall subject the subcontractor
and/or associates to the same audit terms and conditions as Armor. Armor (or any subcontractor)

Case 2:17-cv-01112-JPS   Filed 08/31/18   Page 25 of 28   Document ARMOR 00086

EXHIBIT H

shall maintain and make available to Milwaukee County the aforementioned audit information for no less than five years after the conclusion of each contract term.

**12.31 Assignment** This Contract shall be binding upon and inure to the benefit of the parties and their successors and assigns; provided, however, that neither party shall assign its obligations hereunder without the prior written consent of the other, which consent shall not be unreasonably withheld

    **12.32 Prohibited practices** Armor hereby attests that it is familiar with Milwaukee County's Code of Ethics which states, an officer, or employee or his immediate family, may not solicit or receive anything of value pursuant to an understanding that such officer's or employee's vote, official actions or judgment would be influenced thereby."

**12.33 Christensen Decree** All terms and conditions of the Christensen Decree existing at the time this contract is commenced must be met or exceeded and maintained through the entire term of the contract and subsequent extensions, unless such Decree is terminated earlier.

**12.34 Authority** This Agreement shall be interpreted and enforced under the laws and jurisdiction of the State of Wisconsin. This Agreement constitutes the entire understanding between the parties and is not subject to amendment unless agreed upon in writing by all parties hereto. Armor acknowledges and agrees that it will perform its obligations hereunder in compliance with all applicable state, local or federal law, rules, regulations and orders.

**12.35 Authorization** The County has executed this Contract pursuant to the Order of the Milwaukee County Circuit Court. _____ _____

    IN WITNESS WHEREOF, the parties hereto have executed this Contract on the day, month and year first above written.

SHERIFF

_Richard R. Schmitt_ 05/10/13
David A. Clarke, Jr., Sheriff   Date
Milwaukee County Sheriff's Office

ARMOR

_Kenneth Palombo_ 5/10/13
Kenneth Palombo   Date

_Michael Hafemann_ 5/10/13
Michael Hafemann, Superintendent  Date
House of Correction

ARMOR 00087

EXHIBIT H

<u>Contract for Inmate Health Services for</u>
<u>Milwaukee County</u>

Don Tyler, Director     5/10/13
Department of Administrative Services     Date

Approved for Execution:

By Corporation Counsel    5/10/13     Mark A. Grady
Deputy           Date         Name          Date

26

ARMOR 00088

EXHIBIT H

## Exhibit A

The Positions identified below with "ARMOR" to the side are included in the
45.3 FTE noted in Armor's Base Compensation set forth in section 10.1(a).
The remaining positions shall be filled in accordance with section 3.4.

INSERT NEW MATRIX IDENTIFYING COUNTY AND ARMOR EMPLOYEES

| Total Hours and FTEs by Position | | | |
|---|---|---|---|
| POSITION | Hrs/Wk | FTE | |
| Health Services Administrator | 40 | 1.00 | ARMOR |
| Medical Director | 40 | 1.00 | ARMOR |
| Physician | 60 | 1.50 | ARMOR |
| ARNP | 480 | 12.00 | 4.1 FTE ARMOR |
| Director of Nursing | 40 | 1.00 | |
| Assistant Director of Nursing | 40 | 1.00 | ARMOR |
| RN-Quality Assurance | 40 | 1.00 | |
| RN-Infection Control | 40 | 1.00 | |
| RN-Staff Development | 80 | 2.00 | |
| RN-Supervisor | 260 | 6.50 | 3.5 FTE ARMOR |
| RN | 1,240 | 31.00 | 14.2 FTE ARMOR |
| LPN | 1,040 | 26.00 | 6.5 FTE ARMOR |
| CMA | 240 | 6.00 | |
| Unit Clerk | 200 | 5.00 | 2 FTE ARMOR |
| Administrative Assistant | 80 | 2.00 | 2 FTE ARMOR |
| Medical Records Supervisor | 40 | 1.00 | |
| Medical Records Clerk | 360 | 9.00 | |
| Chief Psychiatrist | 40 | 1.00 | |
| Psychiatrist | 60 | 1.50 | |
| Director of Mental Health Services | 40 | 1.00 | ARMOR |
| Psychologist | 40 | 1.00 | |
| Psychiatric Social Worker | 480 | 12.00 | 6 FTE ARMOR |
| Case Management | 120 | 3.00 | 2 FTE ARMOR |
| RN-MH | 80 | 2.00 | |
| Dentist | 40 | 1.00 | |
| Dental Assistant | 40 | 1.00 | |
| Total Hours/FTE | 5,260 | 131.60 | |

27

EXHIBIT H