UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

_____

REBECCA TERRY,

                Plaintiff,

v.

COUNTY OF MILWAUKEE, DAVID A.
CLARKE, JR., in his personal and official
capacities, OFFICER BRIAN WENZEL, JANE
AND JOHN DOE, UNKNOWN EMPLOYEES
OF MILWAUKEE COUNTY JAIL, JANE AND
JOHN DOE, UNKNOWN JAIL
SUPERVISORS, ARMOR CORRECTIONAL
HEALTH SERVICES, CAROLYN EXUM,
MORGAN BEVENUE, MARGARET
HOOVER,

                Defendants.

Case No.: 17-cv-1112-JPS

_____

## DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES' RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

_____

Defendant, Armor Correctional Health Services ("Armor"), hereby submits the following Response to Plaintiff's Statement of Facts:

1.      In March 2014, Ms. Terry was 32 years old and expecting her third child. Ex. 1 (Terry 118), Ex. 2 (Terry Dep.) at 178:9.

**RESPONSE:** **No dispute of material fact.**

2.      On March 9, 2014, she was arrested and taken to the Milwaukee County Jail. Ex. 2 (Terry Dep.) at 40:7-9, 95:13-22.

**RESPONSE:** **No dispute of material fact.**

3.      The Milwaukee County Jail has been under a consent decree since 2001 as a result of, among other things, failing to provide adequate healthcare. *See Christensen v. Sullivan*, 320 Wis. 2d 76, 81, 768 N.W.2d 798, 800 (Wis. 2009).

**RESPONSE: No dispute of material fact.** Ms. Terry fails to cite to particular parts of materials in the record to support this broad and vague proposition. Significantly, the cited published opinion does not provide support showing Milwaukee County Jail is still currently under this same consent decree. Furthermore, the cited opinion does not state that the decree was issued as a result of failure to provide adequate medical care. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support. Armor further objects that Ms. Terry does not actually attach a copy of the consent decree and that this proposed fact is not relevant, and this Court has also found it was not relevant. (Dkt. 127, pp. 8-9, 19-20.) There is no dispute of material fact because the proposed fact should be disregarded.

4.      Armor has been criminally charged or sued by regulators in multiple jurisdictions for its abhorrent practices, including a criminal indictment in Milwaukee County. Ex. 40 (Terry 291-295; Terry 390-400).

**RESPONSE: No dispute of material fact.** This evidence is not admissible, relevant or material to Ms. Terry's claims. The evidence is not admissible for a number of reasons. It is not relevant to the elements or defenses of Ms. Terry's claims because the cited evidence address two different events, where the actions of one occurred in a different jail and jurisdiction, and the actions of both occurred after Ms. Terry's incarceration for unrelated actions. This evidence does not establish a habit and therefore constitutes character evidence which is inadmissible in a civil case. Finally and most significantly, the cited evidence shows an indictment and a stipulation of

2

settlement, neither of which are evidence of guilt (not that guilt in those situations would be relevant or admissible). The stipulation even states at TERRY 000292 ¶ 10:

> This Agreement is not intended for use by any third party in any other action or proceeding and is not intended, and should not .be construed as, an admission of wrongdoing or liability by Armor. The NY AG will not cite the Agreement in any action or proceeding as an admission of Armor's wrongdoing or liability.

The fact that Ms. Terry submitted this is as evidence to support her claim is simply inappropriate and contrary to the stated purposes. This proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it is not relevant, material or admissible. Thus, even if a fact, it is not material. There is no dispute of material fact because the proposed fact should be disregarded or is immaterial.

**Ms. Terry is screened at Milwaukee County Jail.**

5.      Ms. Terry arrived at the Milwaukee County jail no later than 3:22 p.m. on March 9, 2014. Ex. 3 (Armor 37).

**RESPONSE: No dispute of material fact.**

6.      Ms. Terry was screened by a booking nurse, Margie Burton, no later than 6:28 p.m. on March 9, 2014. Ex. 4 (Burton Dep.) at 113:1-13.

**RESPONSE: No dispute of material fact.**

**Ms. Terry Complained to the Booking Nurse of Abdominal Pressure.**

7.      Ms. Terry complained to Burton that she felt pressure in her lower abdomen. Ex. 2 (Terry Dep.) at 98:3-12.

**RESPONSE: No dispute of material fact.**

8.      Nurse Burton documented Ms. Terry's concerns about labor. Ex. 5 (Armor 508).

**RESPONSE: No dispute of material fact.** Ms. Terry fails to cite to evidence in the record supporting her proposed fact. The cited evidence does states nothing about "Ms. Terry's

3

concerns about labor." It is merely a recitation of the Ms. Terry's medical history and vitals, and Ms. Burton's assessment and plan. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support. There is no dispute of material fact because the proposed fact should be disregarded.

9.      The feeling was familiar to Ms. Terry from prior pregnancies as the feeling of the baby "dropping" immediately before labor. Ex. 2 (Terry Dep.) at 101:5-10. There is no dispute of material fact because the proposed fact should be disregarded.

**RESPONSE:  No dispute of material fact.**

10.     Ms. Terry told the booking nurse that her due date was that day. Ex. 2 (Terry Dep.) at 99:9-10.

**RESPONSE:  No dispute of material fact.**

11.     Nurse Burton was concerned about Ms. Terry's condition and so did not place her in cell in the booking area. Ex. 4 (Burton Dep.) 102:21-103:1. Instead, she preferred to have Ms. Terry in an area where her condition could be monitored. Id. at 78:1-10. Ms. Terry was not restrained during this timeframe. Id. at 87:25-88:14.

**RESPONSE:  No dispute of material fact.**

**Ms. Terry is taken to Froedtert Hospital.**

12.     Burton asked for and received permission to send Terry to the hospital, after which two deputies took Ms. Terry to Froedtert Hospital. Ex. 2 (Terry Dep.) 104:6-105:25. She arrived no later than 10:00 p.m. on March 9, 2014. Ex. 6 (Terry 300).

**RESPONSE:  No dispute of material fact.** For the first sentence, Ms. Terry fails to cite to evidence in the record supporting her proposed fact. The cited evidence does not discuss Ms. Burton's request to send Ms. Terry to the hospital whatsoever. As a result, the proposed additional fact in the first sentence should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ.

4

L.R. 56 because it lacks evidentiary support. There is no dispute of material fact in the first sentence because the proposed fact should be disregarded.

13. Plaintiff complained at Froedtert of tightenings in the low belly. Ex. 7 (Terry 311).

**RESPONSE:** **No dispute of material fact.** Ms. Terry fails to cite to evidence in the record supporting this proposed fact because the cited evidence specifically states that "Patient reports pressure low in abdomen," and does not describe the report as a "complaint" or the sensation as "tightenings." As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support. There is no dispute of material fact because the proposed fact should be disregarded.

14. At Froedtert, the health care providers placed a monitor on Ms. Terry's belly and explained that she was having contractions and in the early stages of labor. Ex. 2 (Terry Dep.) at 101:21-24; 103:10-12. Froedtert listed "contractions" as a problem. Exhibit 41 (Armor 316).

**RESPONSE:** **No dispute of material fact.** The medical care actually provided at Froedtert is not material to Ms. Terry's claims against Armor. Notwithstanding, while Ms. Terry so testified in the cited deposition excerpt, the medical record from Froedtert produced by Ms. Terry at Dkt. 182-2 specifically states Froedtert's assessment was that Ms. Terry was "not currently in labor" and "cleared to be transferred to jail." This medical record is relevant to establish the state of mind of Froedtert's staff in their communications to MCJ medical staff about the medical treatment provided to Ms. Terry at Froedtert. The conflict between Ms. Terry's above cited evidence and that which Armor relies on, Dkt. 182-2, is not material, because Armor's evidence establishes a different fact than that of Ms. Terry's. Armor's evidence establishes what was documented in Ms. Terry's medical record and relayed to MCJ medical

staff. Ms. Terry's evidence establishes what she recalls being told by a Froedtert staff member that evening.

As to the second sentence, Ms. Terry fails to cite to evidence in the record supporting this proposed fact because Dkt. 182-41 (Armor 316) is an excerpt from Armor's Receiving and Screening Policy (see Dkt. 182, Kleinhaus Decl.) and does not include anything related to Froedtert's medical record for Ms. Terry. Notwithstanding, while Dkt. 182-8 does recognize that Ms. Terry had intermittent contractions while at Froedtert, it also shows they concluded that she was not currently in labor and cleared to be transferred to jail. Consequently, the second sentence is not material.

15.     Ms. Terry felt her own symptoms were consistent with what she knew to be the early stages of labor. Ex. XX (Terry Dep.) at 103:10-12, 104:12-14.

**RESPONSE: No dispute of material fact.** Ms. Terry did not properly cite specifically to the evidence supporting her proposed fact in violation of Civ. L.R. 56.

16.     The doctor at Froedtert told the female transport deputy from the jail that Ms. Terry was 80 percent effaced and 2 centimeters dilated. Ex. 2 (Terry Dep.) at 117:16-118:1. This statement is consistent with the Froedtert medical records. Ex. 8 (Terry 318).

**RESPONSE: No dispute of material fact**. The first sentence is supported by inadmissible hearsay, Ms. Terry's self-serving testimony that some non-party made a specific statement to another non-party, and therefore should be disregarded. The evidence cited to support the second sentence does not establish that a doctor stated this information to the female transport deputy, but only shows that Froedtert's staff determined Ms. Terry was 80 percent effaced and two centimeters dilated. As a result, this proposed additional fact should be

disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support. There is no dispute of material fact because the proposed fact should be disregarded.

17. Dilated two centimeters means the cervix has expanded in diameter two centimeters: 80% effaced means cervix has thinned by 20%: Ex. 9 (Mayo Clinic, Cervical effacement and dilation, Mayo Clinic, *available at* https://www.mayoclinic.org/healthy-lifestyle/labor-and-delivery/multimedia/cervical-effacement-and-dilation/img-20006991 (last accessed September 21, 2018)).[1]

**RESPONSE:** **No dispute of material fact.**

18. Dilation and effacement of the cervix are part of the process of childbirth. *Id.*

**RESPONSE:** **No dispute of material fact.**

19. Froedtert determined that it was appropriate to release Ms. Terry from the hospital, with the belief that she "[w]ill get prenatal care through the Jail." Ex. 41 (Armor 316). She was then released from the hospital, with a doctor telling a jail deputy that Ms. Terry was in the beginning stages of labor. Ex. 2 (Terry Dep.) at 132:11-132:21.

**RESPONSE:** **No dispute of material fact.** In the first sentence, Ms. Terry fails to cite to evidence in the record supporting the proposed fact because Ex. 41 (Armor 316) (Dkt. 182-41) is an excerpt from Armor's Receiving and Screening Policy (see Dkt. 182, Kleinhaus Decl.) and does not include anything relating to "Froedtert's" determinations, or those of its staff, why it was appropriate to release Ms. Terry from the hospital. Because this proposed fact lacks evidentiary support, it should be disregarded. Even if Ms. Terry has evidence to support this proposed fact, it is not relevant or material to her claims against Armor. For the second sentence, Armor repeats its objection that the proposed fact is based on evidence which is inadmissible

---

[1] Plaintiff requests that the Court take judicial notice of this article.

hearsay and should be also disregarded. See Armor's Response to ¶ 16, above. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support. There is no dispute of material fact because the proposed fact should be disregarded.

20.     The doctor told the deputy that Ms. Terry could remain in that stage or her labor could progress very quickly. Ex. 2 (Terry Dep.) at 124:22-125:17.

**RESPONSE: No dispute of material fact**. Ms. Terry failed to cite to admissible evidence in the record to support her proposed fact because the cited evidence is inadmissible hearsay. See Armor's Response to ¶ 16, above. Even if Ms. Terry has evidence to support this proposed fact, it is not relevant or material to her claims against Armor. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and is not relevant or material. There is no dispute of material fact because the proposed fact should be disregarded.

21.     Dr. Buono testified that Ms. Terry was not having contractions when she was at the hospital, based on his assumption that the hospital had checked for contractions. Ex. 15 (Buono Dep.) at 71:23-73:19

**RESPONSE: No dispute of material fact.** Ms. Terry fails to cite to evidence that supports her proposed fact. Contrary to Ms. Terry's statement, Dr. Buono's deposition testimony confirms and explains why she concluded Ms. Terry was not in active labor at the time, which is also supported by Armor's interrogatory response. Dkt. 167-1, Buono Dep. 84:14-85:7; see also Dkt. 167-5, Interrogatory No. 8; Dkt.178 ¶ 16, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶ 16). As a result, this proposed additional fact should be disregarded pursuant to

Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support. There is no dispute of material fact because the proposed fact should be disregarded.

22.     A woman in labor at the jail is unusually vulnerable as compared to a woman laboring at home because the woman at the jail cannot call 911 on her own. Ex. 10 (Exum Dep.) at 82:24-83:6; Rea Report at 8.

**RESPONSE:  No dispute of material fact.** Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. It is also immaterial insofar as Armor was never aware Ms. Terry was in labor in the jail until after she gave birth.

**Defendant Exum Was Aware of Plaintiff's Serious Medical Needs.**

23.     Ms. Terry returned from Froedtert Hospital to the jail at approximately 1:00 a.m. of March 10. Ex. 10 (Exum Dep.) at 135:19-23.

**RESPONSE:  No dispute of material fact.**

24.     Ms. Terry returned to the jail with only the most basic of paperwork. Dr. Buono, describes the paperwork that Froedtert provided Ms. Terry with as "goofy," and explains that Froedtert sent no notes of what they had done. Ex. 15 (Buono Dep.) at 73:2-73:4. The paperwork that Ms. Terry was sent back with did not say what tests had been done or what condition Ms. Terry was in. Ex. 10 (Exum Dep.) at 76:3-76:9; *see also* Ex. 42 (MKE 101-104).

**RESPONSE:  No dispute of material fact.**

25.     The standard of care required Armor to obtain detailed information about Ms. Terry's condition upon her return to the jail or, in the alternative, to ensure that she was seen by a healthcare professional at regular intervals. Ex. 11 (Rea Report) at 6-7. The standard of care also "required that Milwaukee County Jail insist on obtaining information from Froedtert Hospital,

including information about the signs and symptoms of progressing labor, when Ms. Terry should return (for example if contractions became regular and more intense) or if she experiences rupture of membranes (which in lay terms is water breaking), where she should have been housed, who should be looking over her and how often, and when her next OB exam should have been." Ex. ___ (Farah Report) at 2.

  **RESPONSE: Disputed, but not material.** Armor does not dispute that the standard of care required Armor to obtain information about Ms. Terry's condition upon her return to the jail and that she be seen by a healthcare professional at regular intervals, but disputes the standard of care required "insist on obtaining information from Froedtert Hospital, including information about the signs and symptoms of progressing labor, when Ms. Terry should return (for example if contractions became regular and more intense) or if she experiences rupture of membranes (which in lay terms is water breaking), where she should have been housed, who should be looking over her and how often, and when her next OB exam should have been." Ms. Terry's proposed fact amounts to a legal conclusion regarding the standard for constitutional care of late term pregnant inmates and should therefore be disregarded. Both experts lack foundation for these opinions. Specifically, no foundation establishes Froedtert staff had knowledge of all the housing options at MCJ or the level of care available in any particular housing unit. Furthermore, Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. The medical care provided to Ms. Terry was in compliance with Armor's policies, procedures and practices pertaining to pregnant inmates and she would have been seen by MCJ advanced medical care personnel at least within her first 24-48 hours but more likely by the morning of March 10, 2014. (See Dkt.

178 ¶¶ 51-52, 67-68, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 51-52, 67-68.) Furthermore, Armor believed Ms. Terry was being rounded on every thirty minutes by a correctional officer who was trained to watch for and respond to medical emergencies. (See Dkt. 178 ¶¶ 54-56, 69-70, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 54-56, 69-70.) To the extent Ms. Terry's proposed fact amounts to a disagreement in treatment, her proposed fact is not material because an inmate's disagreement with medical professionals about treatment needs is not a cognizable Eighth Amendment claim under the deliberate indifference standard. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). In addition, Ms. Terry's proposed fact is not material because the issue is whether Armor had a widespread practice of unconstitutional conduct of allowing inmates into the jail without discharge summaries—not what the best practices might be relative to Ms. Terry. These opinions are relevant only for negligence, which is based upon the standard of care, not to the *Monell* claim pled against Armor. Moreover, Ms. Terry fails to properly cite with specificity to the evidence on which she relies. As a result the proposed additional fact is arguably disputed, but not material.

26. If the jail "had received the documents from Froedtert Hospital they would have seen that Ms. Terry was already having contractions, was 80% effaced, and 2 centimeters dilated." Ex. 11 (Rea Report) at 7.

**RESPONSE: No dispute of material fact.** Rea and Ms. Terry fail to cite to any evidence that the documents would have been drafted and received by Armor before Ms. Terry gave birth. The undisputed fact is the paperwork was not completed until after Ms. Terry gave birth. (Dkt. 182-42, at MKE County 101; Dkt. 177 ¶¶ 59, 65-66.) As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it

302600319v1 1003420

lacks evidentiary support and is not relevant or material. There is no dispute of material fact because the proposed fact should be disregarded.

27. Given the limited information that Armor had, Ms. Terry should have been observed by a healthcare professional every thirty minutes. Ex. 20 (Farah Report) at 3.

**RESPONSE: Disputed, but not material**. Ms. Terry's proposed fact amounts to a legal conclusion regarding the standard for constitutional care of late term pregnant inmates and should therefore be disregarded. In addition, Ms. Terry's proposed fact is vague because it broadly refers to the "limited information that Armor had." Armor had obtained oral information that Ms. Terry was monitored on a machine for labor and cleared of labor by Froedtert's staff, who determined she was not in active labor. (See Dkt. 178 ¶¶ 30-34, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 30-34; see also Dkt. 182-8 (TERRY 000318)). No information had been written down at Froedtert documenting what was relayed orally to Ms. Exum; the discharge paperwork did not exist when Ms. Terry returned to MCJ or for hours after she delivered. (Dkt. 182-42, at MKE County 101; Dkt. 177 ¶¶ 59, 65-66.) MCJ medical staff made informed objectively reasonable decisions based on sufficient information even though it was not written down. (See Dkt. 178 ¶¶ 30-40, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 30-40). The medical care provided to Ms. Terry was in compliance with Armor's policies, procedures and practices pertaining to pregnant inmates and she would have been seen by MCJ advanced medical care personnel at least within her first 24-48 hours but more likely by the morning of March 10, 2014. (See Dkt. 178 ¶¶ 51-52, 67-68, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 51-52, 67-68.) Furthermore, Armor believed Ms. Terry was being rounded on every thirty minutes by a correctional officer who was trained to watch for and respond to medical emergencies. (See Dkt. 178 ¶¶ 54-56, 69-70, and Armor's

Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 54-56, 69-70.) To the extent Ms. Terry's proposed fact amounts to a disagreement in treatment, her proposed fact is not material because an inmate's disagreement with medical professionals about treatment needs is not a cognizable Eighth Amendment claim under the deliberate indifference standard. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Ms. Terry's proposed additional fact is also not relevant or material because the proposed opinion only goes to negligence, not to deliberate indifference or Ms. Terry's *Monell* claim against Armor. As a result the proposed additional fact is not material, but is arguably disputed.

28.     Defendant Exum was responsible for evaluating Ms. Terry before she was admitted back into the jail. Ex. 10 (Exum Dep.) at 76:17-77:2. Defendant Exum had access to the medical information Nurse Burton documented about Plaintiff, including that she was nine months pregnant, her due date was quickly approaching and was sent to the hospital because she might be in labor. Id. at 138:15-23;79:1-9.

**RESPONSE:  No dispute of material fact.**

29.     Defendant Exum noted that Ms. Terry was at risk of early labor. Ex. 12 (Armor 24). Exum acknowledges that an inmate who is in the early stages of labor should not be sent back to the jail, given that "they can't pick up a phone and say 'I'm in labor' in jail, versus at home you can pick up a phone and call 911." Ex. 10 (Exum Dep.) at 83:4-83:6.

**RESPONSE:  No dispute of material fact.**

30.     Dr. Buono testified that that pregnancy is "a difficult thing" and is "one of the most unpredictable things." Ex. 15 (Buono Dep.) at 88:5-88:8.

**RESPONSE:  No dispute of material fact.**

31.     Ms. Terry told Defendant Exum that she was experiencing pressure at the bottom of her stomach. Ex. 10 (Exum Dep.) at 136:14-18, Ex. 13 (Armor 500).

**RESPONSE:  No dispute of material fact.**

32.      Defendant Exum believed that because of Ms. Terry's history of opiate abuse she could suddenly go into labor, Ex. 10 (Exum Dep.) at 137:23-138:2, and that she was at risk of early labor. Ex. 12 (Armor 24).

**RESPONSE:  No dispute of material fact.**

33.     Ms. Terry told Defendant Exum that the healthcare providers at Froedtert said she was in labor. Ex. 10 (Exum Dep.) 81:2-11.

**RESPONSE:  No dispute of material fact.**

34.     Defendant Exum did not credit Ms. Terry's statement that she learned at Froedtert that she was in labor. Ex. 10 (Exum Dep.) 81:20-25.

**RESPONSE:  No dispute of material fact.**

35.     Instead, Defendant Exum told Dr. Buono the exact opposite: that Ms. Terry was told by the physicians at the hospital "You're not in labor, come back when you're in labor." Ex. 15 (Buono Dep.) 74:12-24.

**RESPONSE:  No dispute of material fact.** Ms. Terry's proposed fact misrepresents the evidence, suggesting that Ms. Exum only told Dr. Buono the exact opposite of Ms. Terry's statement. Ms. Exum called Dr. Buono twice to discuss Ms. Terry and they discussed more than that single sentence. No evidence affirmatively establishes that Ms. Exum did not relay Ms. Terry's statement to Dr. Buono—the lack of evidence is not evidence. The cited evidence only shows Dr. Buono's testimony regarding what Nurse Exum told her was relayed by the nurse from Froedtert; it is not a complete recitation of what was discussed while they were on the phone

during either conversation. Contrary to Ms. Terry's proposed fact, the evidence shows Dr. Buono was aware that Ms. Terry denied feeling contractions while she was examined by Nurse Exum in the prebooking/booking assessment. (See Dkt. 178 ¶¶ 16-34, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 16-34.) Nevertheless, this proposed fact is not material because Ms. Exum and Dr. Buono made their medical decisions on much more information than what Ms. Terry told them. (See Dkt. 178 ¶¶ 16-45, 47-54, 56, 67-70, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 16-45, 47-54, 56, 67-70.) As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. There is no dispute of material fact because the proposed fact should be disregarded.

36.     Ms. Terry was admitted back into the jail and sent to an isolation unit in the Special Medical Unit ("SMU,") which Dr. Buono acknowledges was not appropriate for a pregnant woman. Ex. 15 (Buono Dep.) at 76:7-11.

**RESPONSE:** **No dispute of material fact.** Ms. Terry fails to cite evidence that supports her proposed fact because it does not establish that Ms. Terry was placed in an isolation unit in the SMU. Nevertheless, this proposed fact is not material because Ms. Terry was placed in the unit with the highest level of observation at MCJ in which she was to be observed every thirty minutes by a correctional officer. (Dkt. 178 ¶¶ 49-56, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 49-56.) As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. There is no dispute of material fact because the proposed fact should be disregarded.

302600319v1 1003420

302600319v1 1003420

**Plaintiff Continued to Report Her Concerns That Labor Was Progressing**

37.     After Ms. Terry spoke with Defendant Exum, another correctional officer—now known to be Officer Amika Avery—spoke with her. Ex. 16 (Avery Dep.) at 19:17-20:4.

**RESPONSE: No dispute of material fact**. The evidence Ms. Terry cites to support her proposed fact does not establish that Ms. Terry spoke with Officer Avery, but only that Officer Avery does not remember talking to Ms. Terry at 19:17-18.

38.     Ms. Terry told Officer Avery that was in pain and that she was "going to have this baby pretty quick," and indicated that she was not just going through normal growing pains. Ex. 2 (Terry Dep.) at 137:8-16.

**RESPONSE: No dispute of material fact.** The evidence Ms. Terry cites to support her proposed fact does not establish that the correctional officer she spoke with was Officer Avery.

**Defendant Bevenue was Aware of Plaintiff's Serious Medical Needs.**

39.     On the evening of March 9 and early hours of March 10, 2014, Defendant Bevenue was assigned as SMU nurse, and she was responsible for care of inmates in the SMU. Ex. 17 (Bevenue Dep.) at 15:23-16:1.

**RESPONSE: No dispute of material fact.** The evidence that Ms. Terry cites does not support her proposed fact because it does not address that Ms. Bevenue was assigned as SMU nurse on March 9 and 10th of 2014 or which role the responsibilities discussed were related to.

40.     Bevenue did not know whether she worked for Armor or for Milwaukee County. Ex. 17 (Bevenue Dep.) at 50-51.

**RESPONSE: No dispute of material fact.**

41.     As the SMU nurse, Defendant Bevenue was responsible for knowing the medical conditions of inmates in the SMU. *Id.*

302600319v1 1003420

302600319v1 1003420

**RESPONSE: No dispute of material fact.** The evidence Ms. Terry cites does not support her proposed fact. The proposed fact misrepresents the duties of Ms. Bevenue as the SMU nurse. (Dkt. 178 ¶ 51, 67, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 51, 67.) As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support. No dispute of material fact exists because the proposed fact should be disregarded.

42.     Defendant Bevenue's work station was in the clinic across the hall from the SMU. Ex. 17 (Bevenue Dep.) 32:19-21

**RESPONSE: No dispute of material fact.**

43.     It would take thirty seconds or perhaps a minute to get from the clinic where Bevenue's work station was to SMU where Ms. Terry was housed. Ex. 18 (Shanahan Dep.) 51:16-20.

**RESPONSE: No dispute of material fact.**

44.     The booking nurse, in this case Defendant Exum, was charged with calling the SMU nurse, Defendant Bevenue with information about inmates at the SMU. Ex. 10 (Exum Dep.) 72:23-73:11; 65:17-20.

**RESPONSE: No dispute of material fact.** The evidence Ms. Terry cites in support does not establish the proposed fact. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support. No dispute of material fact exists because the proposed fact should be disregarded.

45.     Defendant Exum informed Defendant Bevenue that Ms. Terry had been sent to the hospital for labor pains earlier in the evening. Ex. 10 (Exum Dep.) 92:1-16 (Exum told either nurse supervisor or infirmary nurse). Cf. Ex. 19 (Hoover Dep.) at 36:19-37:9 (Exum did not

inform Hoover, the nurse supervisor, that Ms. Terry was pregnant and being placed in the SMU; Exum would have informed the SMU nurse who would have told Hoover).

**RESPONSE: No dispute of material fact.** Ms. Terry misrepresents the evidence. The evidence Ms. Terry cites for the first sentence does not support the proposed fact, but only shows that Ms. Exum either spoke to the nurse supervisor or the infirmary nurse, she is not sure which person she spoke with. The evidence cited in Ex. 19 shows that Ms. Hoover was not informed by Ms. Exum about Ms. Terry. The evidence does not show, however, that Ms. Bevenue was informed. As mentioned above, the absence of evidence is not proof an affirmative fact. Contrary to Ms. Terry's proposed fact, additional evidence shows that Ms. Bevenue does not remember whether she was told that a pregnant woman was admitted to the SMU and she proceeds to explain that she was not on the floor when Ms. Terry was admitted to the SMU and so there was no way to contact her directly about Ms. Terry's placement. (Dkt. 182-17, Bevenue Dep. at 15:3-22:13.) Contrary to this statement, Ms. Terry already admitted that Ms. Exum called the nursing supervisor. (Dkt. 177 at ¶ 63.) As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support. No dispute of material fact exists because the proposed fact should be disregarded.

46.     Information about Ms. Terry, including the fact that she was sent to the hospital for concerns about labor, would also have been documented on the "report board" which Bevenue would have had in her possession. Ex. 10 (Exum Dep.) 72:12-24.

**RESPONSE: No dispute of material fact.** Ms. Terry fails to cite to evidence supporting her proposed fact that Bevenue had information about Ms. Terry in her possession. To the contrary, the evidence establishes Ms. Bevenue did not have information about Ms. Terry in her possession. (Dkt. 182-17 Bevenue Dep. at 15:3-22:13.) As a result, this proposed additional fact

should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support. No dispute of material fact exists because the proposed fact should be disregarded.

47.     Defendant Bevenue was responsible for checking on Ms. Terry when she was first admitted to the SMU and for checking on her thereafter during her shift. Ex. 19 (Hoover Dep.) 52:18-53:15; Ex. 18 (Shanahan Dep.) 35:7-16 (typically nurses visited the SMU much more often than other housing units and spoke with officers about inmate medical conditions). Bevenue entered the SMU multiple times during her shift. Ex. 17 (Bevenue Dep.) 20:19-21:8.

**RESPONSE: No dispute of material fact.** Ms. Terry fails to cite to evidence supporting her proposed fact. To the contrary, the undisputed evidence shows that Ms. Bevenue, as the nurse assigned to SMU, was responsible for checking on patients at the beginning of the shift and then determined, based upon their conditions, how often to check on them for the duration of the shift. (Dkt. 178 ¶ 51, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶ 51.) The SMU nurse would also check on patients before the end of the shift. (Id.) Bevenue, however, was not responsible for checking on patients when they are first admitted to the SMU and Ms. Terry's cited evidence does not establish otherwise. Ms. Hoover's deposition testimony is unclear about which employee to whom she is referring, as it could be either the booking nurse or the SMU nurse. Nevertheless, whether Bevenue entered the SMU multiple times during her shift is not material because the evidence shows she was not in the SMU from the time Ms. Terry was placed there until after she gave birth. Dkt. 182-17, Bevenue Dep. 15:3-22:13; Dkt. 182-27. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. No dispute of material fact exists because the proposed fact should be disregarded.

302600319v1 1003420

48.    Defendant Bevenue completed rounds that night and may have entered the SMU. Ex. 17 (Bevenue Dep.) at 20:13-22:17, 31:19-32:1f.

**RESPONSE:  No dispute of material fact.**

49.    Reasonable, professional, trained nurse charged with a patient's care, and aware that a patient was nine months pregnant and had been complaining of symptoms consistent with labor, would have checked on Ms. Terry at least every 30 minutes. Ex. 20 (Farah Report) at 2.

**RESPONSE:  Disputed, but not material**. Ms. Terry's proposed fact amounts to a legal conclusion regarding the standard for constitutional care of late term pregnant inmates and should therefore be disregarded. In addition, it assumes facts not in evidence: "that Ms. Terry had been complaining of symptoms consistent with labor." The evidence shows Ms. Terry had not been complaining of contractions or pain (Dkt. 178 ¶¶ 16-29, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 16-29), that she had been cleared of labor by the specialists at the Labor and Delivery department at Froedtert (see Dkt. 178 ¶¶ 10-12, 30-34, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 10-12, 30-34; Dkt. 182-8 (TERRY 000318)), and she herself admits that her symptoms did not change until after she was placed in the SMU (Dkt. 178 ¶ 59, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶ 59). The medical care provided to Ms. Terry was in compliance with Armor's policies, procedures and practices pertaining to pregnant inmates and she would have been seen by MCJ advanced medical care personnel at least within her first 24-48 hours but more likely by the morning of March 10, 2014. (See Dkt. 178 ¶¶ 51-52, 67-68, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 51-52, 67-68.) Furthermore, Armor believed Ms. Terry was being rounded on every thirty minutes by a correctional officer who was trained to watch for and respond to medical emergencies. (See Dkt. 178 ¶¶ 54-56, 69-70, and Armor's Reply to Plaintiff's

302600319v1 1003420

Resp. to Armor's Proposed Fact ¶¶ 54-56, 69-70.) To the extent Ms. Terry's proposed fact amounts to a disagreement in treatment, her proposed fact is not material because an inmate's disagreement with medical professionals about treatment needs is not a cognizable Eighth Amendment claim under the deliberate indifference standard. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Furthermore, Ms. Terry's proposed additional fact is not relevant or material because the proposed opinion only addresses negligence, not deliberate indifference or Ms. Terry's *Monell* claim against Armor. As a result the proposed additional fact is arguably disputed, but more likely not material.

**Ms. Terry is taken to the Special Medical Unit (SMU).**

50.　　Ms. Terry was placed in the Special Medical Unit (SMU). Ex. 2 (Terry Dep.) at 137:18-21.

**RESPONSE: No dispute of material fact.**

51.　　The County policy on the Special Medical Unit explains that inmates are placed there so they can be "closely monitored by jail medical staff." Ex. 21 (Terry 20052-20055).

**RESPONSE: No dispute of material fact.**

**Defendant Wenzel Was Aware of Plaintiff's Serious Medical Needs.**

52.　　Defendant Wenzel was the correctional officer assigned to the SMU that evening. Ex. 22 (Transcript of the Deposition of Brian Wenzel) at 153:2-3, Ex. 26 (March 7, 2014 Employee Activity Documentation for Brian Wenzel).

**RESPONSE: No dispute of material fact.**

53.　　The SMU had room for up to 11 inmates at a time. Ex. 22 (Wenzel Dep.) at 39:6-9. Ms. Terry was the sixth inmate to be housed there. Ex. 22 (Wenzel Dep.) at 100:8-10.

**RESPONSE: No dispute of material fact.**

54.     Ms. Terry was placed in cell three, the cell directly across from Wenzel's desk. Ex. 23 (Wenzel Dep Exhibit 2 (Diagram)); Ex. 22 (Wenzel Dep.) at 54:20-22 (cell three); Ex. 24 (Photograph from Special Medical Unit).

**RESPONSE: No dispute of material fact.**

55.     All of cell three was visible from outside the cell door of cell three. Ex. 19 (Hoover Dep.) at 81:1-4.

**RESPONSE: No dispute of material fact.**

56.     It is possible to hear inmates from outside the cell door of cell three. Ex. 19 (Hoover Dep.) at 81:7-11.

**RESPONSE: No dispute of material fact.**

57.     Wenzel's sole responsibility during his shift was to walk through the SMU periodically and check on the inmates. Ex. 22 (Wenzel Dep.) at 60:4-7. Wenzel spent most of the night reading the newspaper and watching TV. Ex. 2 (Terry Dep.) at 159:20-160:7, Ex. 22 (Wenzel Dep.) 59:24-60:22.

**RESPONSE: No dispute of material fact.** Armor notes that the evidence Ms. Terry cites also shows Officer Wenzel had other responsibilities during his shift as the SMU correctional officer which are not included in her description of his "sole responsibility," including communicating information to "appropriate channels." (Dkt. 182-22, Wenzel Dep. at 60:8-13).

58.     Lieutenant Montano informed Wenzel that Plaintiff was pregnant. Ex. 22 (Wenzel Dep.) at 35:9-14.

**RESPONSE: No dispute of material fact.**

59. Defendant Wenzel knew that Plaintiff had been taken to Froedtert Hospital for signs of active labor. Ex. 22 (Wenzel Dep.) 36:6-8.

**RESPONSE:** **No dispute of material fact.**

60. Wenzel worked in the SMU alone. Ex. 22 (Wenzel Dep.) at 121:18. Armor considered placing a nurse in the SMU, but never did so. Ex. 4 (Burton Dep.) at 76:3-5; 77:3-6.

**RESPONSE:** **No dispute of material fact.** For the first sentence, Ms. Terry fails to cite evidence that supports her proposed fact. For the second sentence, Ms. Terry fails to cite admissible evidence to support her proposed fact, because the testimony she relies on for this fact is based on inadmissible hearsay. Furthermore, whether Armor considered but never placed a nurse in the SMU is immaterial to the claims made against Armor.

61. Defendant Wenzel testified that he could have clicked twice in the electronic jail log to indicate he had completed an inspection without actually having completed the inspection. Ex. 22 (Wenzel Dep.) 158:12-16.

**RESPONSE:** **No dispute of material fact.**

**Defendant Wenzel's Failure to Complete Inspections**

62. On January 1, 2014 MCJ informed correctional officers that they were failing to conduct adequate inspections. Ex. 25 (MKE 214-218) at 1.

**RESPONSE:** **No dispute of material fact.**

63. Wenzel himself failed to complete inspections just days before the Terry incident. Ex. 26 (MKE 225) (Discipline for failure to complete inspections).

**RESPONSE:** **No dispute of material fact.**

64. Wenzel received an award for his handling of Ms. Terry's situation. Ex. (MKE County 224).

**RESPONSE: No dispute of material fact.** Ms. Terry fails to specifically cite to evidence that supports this proposed fact.

65. The only record of Wenzel's alleged inspections to check on inmates was a computer log filled out by Wenzel. Ex. 22 (Wenzel Dep.) at 114:2-8.

**RESPONSE: No dispute of material fact.**

66. Each of Wenzel's entries shows him starting and completing every single inspection, every thirty minutes, all night long, in under a minute. Ex. 27 at MKE 179.

**RESPONSE: No dispute of material fact.**

67. Completing even one inspection in less than a minute is highly unlikely. Ex. 18 (Shanahan Dep.) at 43:18-24.

**RESPONSE: Not material to the claims made against Armor.** It is undisputed the healthcare staff understood a correctional officer was assigned to the SMU 24/7 and was expected to conduct rounds of each SMU inmate every 30 minutes. (See Dkt. 182-22, Wenzel Dep. 60:15-22.)

68. Although the SMU was equipped with cameras, the jail failed to maintain them and all four were broken on the evening on March 9-10, 2014. Ex. 22 (Wenzel Dep.) at 74:8-25.

**RESPONSE: No dispute of material fact.**

**Ms. Terry's Contractions Become Unbearable; Defendants Ignore Her Calls for Help.**

69. After Ms. Terry was placed in a cell at the SMU, her contractions got stronger and closer together. Ex. 2 (Terry Dep.) at 153:1-2.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

70.     When Ms. Terry's pain became unbearable, she began pressing a call button on the wall to ask for help. Ex. 2 (Terry Dep.) at 153:1-8.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

71.     The call button was a cord connected to the wall which is long enough to go to the bed. Ex. 2 (Terry Dep.) at 156:4-15. Ms. Terry was pressing the tip of the button. *Id.*

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

72.     Ms. Terry attempted to talk to Officer Wenzel and it appeared that he could hear her. Ex. 2 (Terry Dep.) at 157:10-20.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

73.     Ms. Terry yelled for help. Ex. 2 (Terry Dep.) at 159:22-160:7. Defendant Wenzel was watching television. *Id.* He waved her off and ignored her. *Id.*;163:11-13.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

74.     Ms. Terry pounded on the window and yelled on at least three occasions to get help. Ex. 2 (Terry Dep.) 158:20-22; 162:8-13; 164:6-7.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

75.     Other inmates in the SMU heard loud screaming throughout the night. Ex. 28 (Olszewski Dep) at 11:6-11:17.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

76.     Ms. Terry could see Defendant Wenzel at his desk in the SMU. Ex. 2 (Terry Dep.) 159:20-160:7.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

77.     Defendant Bevenue was either making rounds—including the SMU—or across the hall from Ms. Terry, about 15-20 feet away. Ex. 17 (Bevenue Dep.) at 20:17-18, 22:11-17.

**RESPONSE: No dispute of material fact.** Ms. Terry fails to cite to evidence that supports her proposed fact. Contrary to Ms. Terry's proposed fact, the evidence shows Ms. Bevenue did not enter the SMU after Ms. Terry was placed therein, until she was responding to Ms. Terry's medical emergency. Dkt. 182-17, Bevenue Dep. 15:3-22:13; Dkt. 182-27. Moreover, Ms. Terry's proposed fact below at ¶ 78 contradicts her own proposed fact here at ¶ 77, and reinforces this fact is not in dispute. Moreover, it is not material because Armor believed Ms. Terry was being rounded on every thirty minutes by a correctional officer who was trained to watch for and respond to medical emergencies. (See Dkt. 178 ¶¶ 54-56, 69-70, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 54-56, 69-70.) As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. No dispute of material fact exists because the proposed fact should be disregarded.

78.     Medical staff never inquired about the inmates in the SMU while Wenzel was there. Ex. 22 (Wenzel Dep.) at 59:17-20.

**RESPONSE: No dispute of material fact.**

**Ms. Terry's Labor Progresses Without Any Medical Assistance**

79.     At some point, Ms. Terry felt the urge to take off her pants and underpants. Ex. XX (Terry Dep.) at 160:15-18.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response. Ms. Terry fails to specifically cite to the record to support her proposed fact.

80.     Ms. Terry felt her water break. Ex. 2 (Terry Dep.) at 160:18-20. She started screaming again. Ex. 2 (Terry Dep.) at 160:20-21.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

81.     Ms. Terry felt like she needed to lie down and tried to breathe through her contractions. Ex. 2 (Terry Dep.) at 160:22-161:4.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

82.     Ms. Terry continued screaming from her bed consistently. Ex. 2 (Terry Dep.) at 164:7-9. She was screaming "is somebody going to help me, please I need help," or words to that effect up until the point she was pushing. Ex. 2 (Terry Dep.) at 164:9-11.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

83.     At some point Ms. Terry screamed that she "couldn't hold it anymore and needed to push," or words to that effect. Ex. 2 (Terry Dep.) at 164:2-21.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

84.     When Ms. Terry was pushing, she saw "an explosion of blood." Ex. 2 (Terry Dep.) at 166:22-23. She screamed that there was blood. *Id.* at 167:2-3.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

85.     Ms. Terry began screaming "the baby is here, the baby is here, please help me, help me." Ex. 2 (Terry Dep.) at 167:6-7.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

86.     Ms. Terry stopped screaming because she noticed that the baby was shaking, turning blue, and making a gurgling noise. Ex. 2 (Terry Dep.) at 167:8-11.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

87.     Ms. Terry was concerned that the baby couldn't breathe. Ex. 2 (Terry Dep.) at 167:11-12. Ms. Terry stuck her finger down his throat to clear the mucus out. *Id.* at 167:16-18.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

88.      Ms. Terry held the baby for a little while—at least 10 or 15 minutes—and then Officer Wenzel finally came to the door. Ex. 2 (Terry Dep.) at 167:20-21; 173:9-13.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

89.     Defendants Exum and Bevenue came to the cell. MKE 12. They refused to cut the umbilical cord. Ex. 2 (Terry Dep.) at 168:2-14.

**RESPONSE:** **No dispute of material fact.**

90.     Ms. Terry was transferred to Sinai Hospital. Ex. 2 (Terry Dep.) at 174:24-175:3.

**RESPONSE:  No dispute of material fact.**

91.     No investigation of the incident involving Ms. Terry was ever conducted, but Wenzel received a commendation. Ex. 2 (Terry Dep.) 106:21-107:13, Ex. 22 (Wenzel Dep.) at 65:4-24.

**RESPONSE:  No dispute of material fact.**

### Background Information: the Process of Childbirth

92.     Childbirth occurs in three consecutive stages. The first stage consists of the latent phase and the active phase. During the latent phase cervical change is gradual and labor contractions can be either regular or irregular in their timing. The latent phase lasts until about 5cm of dilation. The active phase then begins around 6cm dilation and is characterized as rapid cervical change. On average it is 1.5cm of change per hour in a woman who has previously had a baby. As labor progresses through the latent and active phases uterine contractions become more regular, closer together, more intense, and last longer. Ex. 20 (Farah Report) at 1.

**RESPONSE:  No dispute of material fact.**

93.     The second stage of labor begins when the cervix is fully dilated and the mother starts expulsive efforts to birth her baby. This stage ends with delivery of the newborn. Ex. 20 (Farah Report) at 1.

**RESPONSE:  No dispute of material fact.**

94.     The third stage of labor is the time between delivery of the newborn to delivery of the placenta which can take up to 30 minutes when delivery is passively managed. Passive management means without manipulation of the uterus or umbilical cord. Ex. 20 (Farah Report) at 2.

**RESPONSE:  No dispute of material fact.**

302600319v1 1003420

**Defendants Exum and Bevenue Acted Contrary to Nursing Standards**

95.     The standard of care required Defendant Exum to consider Ms. Terry's statement that she was in labor and to create a treatment or observation plan based on this information. Ex. 11 (Rea Report) at 6.

**RESPONSE: Disputed, but not material.** Ms. Terry's proposed fact amounts to a legal conclusion regarding the standard for constitutional care of late term pregnant inmates and should therefore be disregarded. Furthermore, Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. Ms. Terry fails to cite to evidence supporting her claim that Ms. Exum did not consider Ms. Terry's statement; rather, Ms. Exum considered her statement and found it incredible. (Dkt. 178 ¶¶ 23-26, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 23-26.) Nevertheless, the evidence shows Ms. Terry had not been complaining of contractions or pain (Dkt. 178 ¶¶ 16-29, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 16-29), that she had been cleared of labor by the specialists at the Labor and Delivery department at Froedtert (see Dkt. 178 ¶¶ 10-12, 30-34, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 10-12, 30-34; Dkt. 182-8 (TERRY 000318)), and she herself admits that her symptoms did not change until after she was placed in the SMU. (Dkt. 178 ¶ 59, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶ 59). In addition,  The medical care provided to Ms. Terry was in compliance with Armor's policies, procedures and practices pertaining to pregnant inmates and she would have been seen by MCJ advanced medical care personnel at least within her first 24-48 hours but more likely by the morning of March 10, 2014. (See Dkt. 178 ¶¶ 51-52, 67-68, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 51-52, 67-68.) Furthermore, Armor believed Ms. Terry was being rounded on every thirty

30

302600319v1 1003420

minutes by a correctional officer who was trained to watch for and respond to medical emergencies. (See Dkt. 178 ¶¶ 54-56, 69-70, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 54-56, 69-70.) To the extent Ms. Terry's proposed fact amounts to a disagreement in treatment, her proposed fact is not material because an inmate's disagreement with medical professionals about treatment needs is not a cognizable Eighth Amendment claim under the deliberate indifference standard. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Furthermore, Ms. Terry's proposed additional fact is not relevant or material because the proposed opinion only addresses negligence, not deliberate indifference or Ms. Terry's *Monell* claim against Armor. As a result the proposed additional fact is arguably disputed, but not material.

96.     According to the Wisconsin Chapter N 6: Standards of Practice for registered Nurses and Licensed Practical Nurses it is the nurse's responsibility to have adequate information regarding their patient in order to be able to carry out nursing care regarding assessment, planning, intervention, and evaluation. Ex. 20 (Farah Report) at 3.

**RESPONSE:** **No dispute of material fact.**

97.     Plaintiff's labor expert, Erin Farah, opines that standard of care required the jail to insist on obtaining information from Froedtert Hospital, including information about the signs and symptoms of progressing labor, when Ms. Terry should return to the hospital (for example if contractions became regular and more intense) or if she experiences rupture of membranes (which in lay terms is water breaking), where she should have been housed, who should be looking over her and how often, and when her next OB exam should have been. Ex. 20 (Farah Report) at 2-3.

**RESPONSE: Disputed, but not material.** Armor does not dispute that the standard of care required the jail to insist on obtaining some information from Froedtert Hospital, but not "where she should have been housed, who should be looking over her and how often, and when her next OB exam should have been. Ms. Terry's proposed fact amounts to a legal conclusion regarding the standard for constitutional care of late term pregnant inmates and should therefore be disregarded. In addition, it assumes facts not in evidence: "that Ms. Terry had been complaining of symptoms consistent with labor." The evidence shows Ms. Terry had not been complaining of contractions or pain (Dkt. 178 ¶¶ 16-29, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 16-29), that she had been cleared of labor by the specialists at the Labor and Delivery department at Froedtert (see Dkt. 178 ¶¶ 10-12, 30-34, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 10-12, 30-34; Dkt. 182-8 (TERRY 000318)), and she herself admits that her symptoms did not change until after she was placed in the SMU (Dkt. 178 ¶ 59, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶ 59). The medical care provided to Ms. Terry was in compliance with Armor's policies, procedures and practices pertaining to pregnant inmates and she would have been seen by MCJ advanced medical care personnel at least within her first 24-48 hours but more likely by the morning of March 10, 2014. (See Dkt. 178 ¶¶ 51-52, 67-68, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 51-52, 67-78.) Furthermore, Armor believed Ms. Terry was being rounded on every thirty minutes by a correctional officer who was trained to watch for and respond to medical emergencies. (See Dkt. 178 ¶¶ 54-56, 69-70, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 54-56, 69-70.) To the extent Ms. Terry's proposed fact amounts to a disagreement in treatment, her proposed fact is not material because an inmate's disagreement with medical professionals about treatment needs is not a cognizable Eighth Amendment claim

302600319v1 1003420

under the deliberate indifference standard. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Farah's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. Finally, Ms. Terry's proposed additional fact is not relevant or material because the proposed opinion only provides evidence of the standard of care which is relevant for negligence, but not a *Monell* claim. As a result the proposed additional fact is arguably disputed, but not material.

98.     The standard of care required the healthcare staff at MCJ to obtain information from the staff at Froedtert about Ms. Terry's symptoms, determine the medical significance of these symptoms, determine how often Ms. Terry should be observed by healthcare staff, and determine what signs or symptoms would indicate a return trip to the hospital was necessary. The standard of care required the healthcare staff to obtain sufficient information to create a treatment plan for Ms. Terry. Ex. 11 (Rea Report) at 7.

**RESPONSE: Disputed, but not material.** Armor does not dispute that the standard of care required the jail to insist on obtaining pertinent information from Froedtert Hospital, but not "how often Ms. Terry should be observed by healthcare staff, and determine what signs or symptoms would indicate a return trip to the hospital was necessary." Ms. Terry's proposed fact amounts to a legal conclusion regarding the standard for constitutional care of late term pregnant inmates and should therefore be disregarded. Furthermore, Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. In addition, it assumes facts not in evidence: "that Ms. Terry had been complaining of symptoms consistent with labor." The evidence shows Ms. Terry had not been complaining of contractions or pain (Dkt. 178 ¶¶ 16-29, and Armor's Reply to Plaintiff's

Resp. to Armor's Proposed Fact ¶¶ 16-29), that she had been cleared of labor by the specialists at the Labor and Delivery department at Froedtert (see Dkt. 178 ¶¶ 10-12, 30-34, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 10-12, 30-34; Dkt. 182-8 (TERRY 000318)), and she herself admits that her symptoms did not change until after she was placed in the SMU (Dkt. 178 ¶ 59, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶ 59). Furthermore, the undisputed evidence shows Ms. Exum called Froedtert and obtained information about what was done to assess whether Ms. Terry was in labor, Froedtert's ultimate conclusion that she was not in labor, and Froedtert determination that she was cleared to return to MCJ. (Dkt. 178 ¶ 30, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶ 30.) The medical care provided to Ms. Terry was in compliance with Armor's policies, procedures and practices pertaining to pregnant inmates and she would have been seen by MCJ advanced medical care personnel at least within her first 24-48 hours but more likely by the morning of March 10, 2014. (See Dkt. 178 ¶¶ 51-52, 67-68, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 51-52, 67-68.) Furthermore, Armor believed Ms. Terry was being rounded on every thirty minutes by a correctional officer who was trained to watch for and respond to medical emergencies. (See Dkt. ¶¶ 54-56, 69-70, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 54-56, 69-70.) To the extent Ms. Terry's proposed fact amounts to a disagreement in treatment, her proposed fact is not material because an inmate's disagreement with medical professionals about treatment needs is not a cognizable Eighth Amendment claim under the deliberate indifference standard. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). As a result the proposed additional fact is arguably disputed, but more likely not material.

99.     If Nurse Exum or Dr. Buono had received the documents from Froedtert Hospital they would have seen that Ms. Terry was already having contractions, was 80% effaced, and 2 centimeters dilated. Ex. 20 (Farah Report) at 2-3.

**RESPONSE: No dispute of material fact.** However, this assumes a fact which is impossible to establish. Specifically, the undisputed facts demonstrate the medical record was not created until after Ms. Terry gave birth. (See Dkt. 166-1, May Decl. Ex. A at ARMOR 00021; Dkt. 177 ¶¶ 59, 65-67.)

100.     In the absence of the information, the standard of care required the providers to observe Ms. Terry frequently until they obtained additional information. Ex. 11 (Rea Report) at 7. Ms. Farah opines that a reasonably trained healthcare professional would have assessed and evaluated Ms. Terry every 30 minutes, at minimum, to ensure her safety and the safety of her unborn child. Ex. 20 (Farah Report) at 3.

**RESPONSE: Disputed, but not material.** Ms. Terry's proposed fact amounts to a legal conclusion regarding the standard for constitutional care of late term pregnant inmates and should therefore be disregarded. Furthermore, Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. In addition, it assumes facts not in evidence: "that Ms. Terry had been complaining of symptoms consistent with labor." Furthermore, Ms. Terry's proposed additional fact is not relevant or material because the proposed opinion only provides evidence of the standard of care which is relevant for negligence, but not a *Monell* claim. The evidence shows Ms. Terry had not been complaining of contractions or pain (Dkt. 178 ¶¶ 16-29, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 16-29), that she had been cleared of labor

by the specialists at the Labor and Delivery department at Froedtert (see Dkt. 178 ¶¶ 10-12, 30-34, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 10-12, 30-34; Dkt. 182-8 (TERRY 000318)), and she herself admits that her symptoms did not change until after she was placed in the SMU (Dkt. 178 ¶ 59, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶ 59). The medical care provided to Ms. Terry was in compliance with Armor's policies, procedures and practices pertaining to pregnant inmates and she would have been seen by MCJ advanced medical care personnel at least within her first 24-48 hours but more likely by the morning of March 10, 2014. (See Dkt. 178 ¶ 51-52, 67-68, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 51-52, 67-68.) Furthermore, Armor believed Ms. Terry was being rounded on every thirty minutes by a correctional officer who was trained to watch for and respond to medical emergencies. (See Dkt. 178 ¶¶ 54-56, 69-70, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 54-56, 69-70.) To the extent Ms. Terry's proposed fact amounts to a disagreement in treatment, her proposed fact is not material because an inmate's disagreement with medical professionals about treatment needs is not a cognizable Eighth Amendment claim under the deliberate indifference standard. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). As a result the proposed additional fact is arguably disputed, but more likely not material.

### Milwaukee County and Armor Had a Widespread Practice of Admitting Patients to the Jail Without Adequate Medical Information.

101.    Dr. Buono and Director of Nursing Strehlow each testified that patients regularly returned to the jail from the hospital without adequate documentation from the hospital about their condition. Court-appointed monitor Dr. Shansky identified this same problem in one of his reports. Ex. 29 (Shansky Report) at MKE 282-283, Ex. 15 (Buono Dep.) at 24:1-22.

302600319v1 1003420

**RESPONSE:** **No dispute of material fact.** Ms. Terry fails to cite to any evidence that supports her proposed fact. Particularly, the Shansky Report cited addresses Shansky's recommendation that the software for medical records be updated and does not address a need for adequate documentation from hospitals. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. No dispute of material fact exists because the proposed fact should be disregarded.

102.    Receiving Screening Policy J-E-02 states that inmates admission on return to the facility from the hospital was predicated upon receipt of written documentation of treatment and necessary follow –up recommendations. Ex. 30 (Receiving Screening Policy) at 2 (Armor 231).

**RESPONSE:** **No dispute of material fact.**

103.    Dr. Buono and Director of Nursing Strehlow each testified that patients regularly returned to the jail from the hospital without adequate documentation from the hospital about their condition. Strehlow testified that this happened "all the time." Ex. 14 (Strehlow Dep.) at 117-118. So too did Dr. Buono. Ex. 15 (Buono Dep.) at 24:1-24:22; 62-67. Court-appointed monitor Dr. Shansky had noted that inmates were routinely accepted back into the jail without proper documentation from the hospital, and recommended that jail staff receive medical records from hospital so that they would know what treatments the hospital provided. Ex. XX (Shansky Report) at MKE282-283; see also Ex. 11 (Rea Report) at 8.

**RESPONSE:** **No material dispute of fact.** Regarding Ms. Terry's proposed facts surrounding Dr. Shansky's report, however, lack sufficient evidence to support those proposed facts. Specifically, the Shansky Report cited addresses his recommendation that the software for medical records be updated and does not address a need for adequate documentation from

302600319v1 1003420

hospitals. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. Furthermore, Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. No dispute of material fact exists because the proposed fact should be disregarded.

104.    Armor's own written policy recognizes the danger in back into the jail [sic] without knowing what exactly they were treated for, what procedures were done, and what follow-up plan the hospital has put in place. See Ex. 30 (Armor 231).

**RESPONSE: No material dispute of fact.** Ms. Terry fails to cite evidence to support her proposed fact, because the policy does not recognize a "danger," but simply declares what the policy is for receiving screening of an inmate returning from the emergency department. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. The evidence actually shows the contrary, that it is not always better to have the written documentation first because what really matters is getting the information. (Dkt. 182-14, Strehlow Dep. 121:9-123:25. No dispute of material fact exists because the proposed fact should be disregarded.

**No policy on pregnant inmates existed.**

105.    No specific healthcare protocol or policy on inmates in the late stages of pregnancy or in labor existed. Ex. 11 (Rea Report) at 9.

**RESPONSE: Dispute.** Ms. Terry's proposed fact is inappropriate and simply incorrect. The undisputed evidence shows Armor did have a policy which existed and was effective at the time of Ms. Terry's incarceration. (See Dkt. 178 ¶ 67 (citing May Decl. 8-11; May Decl. Ex. C at ARMOR 001112-001115), and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶

38

67). Furthermore, Ms. Terry's cited evidence lacks foundation for Rea to state an opinion about Armor's internal operations and whether its policies were effective and complied with. Furthermore, Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. Ms. Terry shows no evidence refuting Dr. May's sworn statement that the policy in effect in March 2014. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. No dispute of material fact exists because the proposed fact should be disregarded.

106.    Such a policy is necessary because pregnancy is an area of medical practice which many practitioners (and lay people) believe they understand, but which actually requires additional training. In this case, Dr. Buono and Nurse Exum seemed to believe that Ms. Terry simply could not be in labor because if she were, the hospital would have admitted her. That type of misconception is common when practitioners create opinions outside their area of specialty (emergency medicine and/or labor and delivery do not appear to be areas of specialty for Dr. Buono or Nurse Exum). Practitioners of correctional medicine require policies. Ex. 11 (Rea Report) at 9-10.

**RESPONSE:** **No material dispute of fact.** Ms. Terry fails to cite to specific admissible evidence to support this proposed fact as to the first sentence, when discussing Dr. Buono and Nurse Exum's beliefs in the second sentence and in the conclusory third sentence. Importantly, Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipse dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. As a result, this proposed

additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. No dispute of material fact exists because the proposed fact should be disregarded.

107. Indeed, Dr. Buono acknowledged that pregnancy is "one of the most unpredictable things" in medicine. Ex. 15 (Buono Dep.) at 88:7-88:8. Strehlow testified that there was no policy directing that pregnant women be placed in the SMU. Ex. 14 (Strehlow Dep.) at 25:20-26:2. Nurse Rea opines that "it does not appear this [purported pregnancy] policy was ever implemented," as evidenced by the fact that it "is dated 2009 and Armor did not obtain the [jail] contract until 2013," and by the fact that "testimony of nursing staff also did not demonstrate any training related to pregnancy, delivery or postpartum care by Armor." Ex. 11 (Rea Report) at 9.

**RESPONSE: No dispute of material fact.** Ms. Terry fails to cite to evidence to support her proposed facts in both her second and third sentence. Ms. Terry misstates the evidence supported by Strehlow's deposition, which actually states the following:

20 Q   Were pregnant women automatically placed in the SMU

21      while you worked at the Milwaukee County Jail?

22 A   I mean that's a very broad statement, so I'm going

23      to say no. I mean there could be people who arrive

24      who aren't pregnant or who don't know that they're

25      pregnant. There could be somebody who's extremely

1       pregnant. So that's not a yes or no question. I'm

2       sorry.

3 Q    So at some point -- is there a point in a woman's

4       pregnancy where she is placed in the SMU

302600319v1 1003420

5        automatically while you worked at the Milwaukee

6        County Jail?

7 A    It's physician ordered based essentially. They --

8        we report to the doctor the facts that we have, and

9        then the doctor makes that decision.

10 Q   Was it common in your experience for pregnant women

11      at some late stage in their pregnancy to be placed

12      in the SMU?

13 A   Yes.

Dkt. 182-14, Strehlow Dep. at 25:20-26:13. She never testifies that "there was no policy directing that pregnant women be placed in the SMU." In addition, Rea lacks foundation to establish an opinion or state a fact on this topic. To prove this point, she is simply wrong when she states "testimony of nursing staff also did not demonstrate any training related to pregnancy, delivery or postpartum care by Armor." Dkt. 182-11, p. 10. That proposed fact is contradicted in Dkt. 178 ¶ 18 which states Ms. Exum had been trained in treating pregnant inmates, including how to detect contractions, a fact which Ms. Terry did not dispute. This proposed fact is based on evidence from Ms. Exum's deposition testimony stating she received training related to pregnancy and pregnant inmates from the female nurse practitioner on what to do, where the OB kit was, if she thought someone was in labor, how to count contractions and similar topics. (Dkt. 167-2, McCreary Decl. Ex. B, Exum Dep. 42:4-10.) Furthermore, Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. Ms. Terry presents no evidence to refute Dr. May's sworn statement that this policy was in effect in March of 2014. As a result, this proposed additional fact should

302600319v1 1003420

be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. No dispute of material fact exists because the proposed fact should be disregarded.

**Plaintiff was restrained pre and post-partum.**

108.    While Ms. Terry was at Froedtert hospital for prenatal care she was restrained to the hospital bed with one wrist restraint and one leg iron. Ex. XX (MKE 180).

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

109.    The jail did not have an infirmary. Ex. 15 (Buono Dep.) at 23:4-23:7.

**RESPONSE: No dispute of material fact.**

110.    A formal policy for treatment of pregnant and laboring women is required, "with training for staff on the policy," because pregnancy and labor is "an area of medical practice which many practitioners (and lay people) believe they understand, but which actually requires additional training." Ex. 11 (Rea Report) at 9.

**RESPONSE: Disputed, but not material.** Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. These opinions are relevant only for negligence, which is based upon the standard of care, not to the *Monell* claim pled against Armor. As a result the proposed additional fact is arguably disputed, but not material.

111.    In Ms. Terry's care, medical professionals at the jail mistakenly assumed "that Ms. Terry simply could not be in labor because if she were, the hospital would have admitted here." Ex. 11 (Rea Report) at 9. Nurse Rea further explains that this "type of misconception is common when practitioners create opinions outside their area of specialty," which was the case

here, as no evidence suggests that Dr. Buono or Nurse Strehlow were pregnancy specialists. Ex. 11 (Rea Report) at 9-10.

**RESPONSE: No dispute of material fact.** Ms. Terry fails to cite to evidence showing that MCJ medical professionals' assumption was mistaken. Furthermore, Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. As a result, this proposed additional fact should be disregarded pursuant to Fed. R. Civ. P. 56 and Civ. L.R. 56 because it lacks evidentiary support and it is not material. No dispute of material fact exists because the proposed fact should be disregarded.

112.    Armor's failure to maintain a policy regarding the treatment of pregnant and laboring women did not meet the standard of care. Ex. 11 (Rea Report) at 10.

**RESPONSE: Disputed, but not material**. Ms. Terry's proposed fact is not based on fact but on a conclusory statement. Furthermore, Rea fails to cite to any treatise or other scientific evidence to support the above contentions. (See Dkt. 182-11, pp. 10-11). Rea's *ipsi dixit* statements lack foundation and, consequently, are inadmissible to establish an opinion or state a fact on this topic. Armor maintained a policy regarding the treatment of pregnant and laboring women, which did meet the standard of care. (See Dkt. 178 ¶ 67 (citing Dkt. 166, May Decl. ¶¶ 8-11; Dkt.166-3, May Decl. Ex. C at ARMOR 001112-001115), and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶ 67). Ms. Terry refers to the policy throughout her Response. Furthermore, Ms. Terry's proposed fact amounts to a legal conclusion regarding the standard for constitutional care of late term pregnant inmates and should therefore be disregarded. MCJ medical staff made informed reasonable decisions based on sufficient information even though it

was not written down. (See Dkt. 178 ¶¶ 30-40, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 30-40). The medical care provided to Ms. Terry was in compliance with Armor's policies, procedures and practices pertaining to pregnant inmates and she would have been seen by MCJ advanced medical care personnel at least within her first 24-48 hours but more likely by the morning of March 10, 2014. (See Dkt. 178 ¶¶ 51-52, 67-68, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 51-52, 67-68.) Furthermore, Armor believed Ms. Terry was being rounded on every thirty minutes by a correctional officer who was trained to watch for and respond to medical emergencies. (See Dkt. 178 ¶¶ 54-56, 69-70, and Armor's Reply to Plaintiff's Resp. to Armor's Proposed Fact ¶¶ 54-56, 69-70.) To the extent Ms. Terry's proposed fact amounts to a disagreement in treatment, her proposed fact is not material because an inmate's disagreement with medical professionals about treatment needs is not a cognizable Eighth Amendment claim under the deliberate indifference standard. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). As a result the proposed additional fact is likely not material, but is arguably disputed.

113.    While Ms. Terry was at Froedtert hospital two deputies were present. Ex. 31 (Terry 313).

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

114.    Ms. Terry was hospitalized after the birth of her child for three days. Ex. 32 (Terry 102).

**RESPONSE: No dispute of material fact.**

115.    During the entirety of Ms. Terry's post-partum care at Sinai hospital she was restrained to the hospital bed with one wrist restraint and one leg iron. Ex. 34 (Logbook).

302600319v1 1003420

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

116.   Plaintiff was monitored by one and sometimes two sheriff's deputies for the entirety of her hospital stay. Ex. 33 (Terry 125, 370, 422).

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

117.   No deputy ever requested that a supervisor remove the restraints. Ex. 34 (Logbook).

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

118.   Plaintiff's medical condition, criminal charges, and criminal history were never evaluated in order to determine whether or not to shackle her. Ex. 35 (Nyklewicz Dep.) at 38:22-39:2, 19:13-17 (explaining that there is no individualized assessment of any hospitalized detainee prior to shackling).

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

119.   No deputy documented any unruly behavior by Ms. Terry or any need for discipline or restraint. Ex. XX (Log books showing continuous entries of "10-49"); Ex. 36 (Freuck Dep.) at 42:17-20 (10-49 is code for telling dispatch everything is ok); Id. at 83:11-84:23.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

## MCJ's Blanket Shackling Policy

120.     Milwaukee County Jail has a blanket policy of shackling all pregnant women without any individualized determinations. Specifically, Milwaukee County Jail's written policy regarding shackling of hospitalized detainees says "Inmates in the hospital will be restrained by a handcuff and leg iron attached to the side rail the bed. Prior to the inmate being removed from the bed for any reason, leg irons should be applied to both ankles. Once the legs are secure the unsecured hand is placed in a belly chairs cuff. The secured hand is removed from the cuff securing the hand to the bed rail and placed in the remaining belly chain cuff. All cuffs are double locked. A second officer must be preset anytime an inmate is removed from the bed until the inmate is resecured to the hospital bed." Ex. 37 (Terry 20925).

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

121.     There was no specific policy in place regarding the shackling of pregnant, laboring, or post- partum inmates at the time of Plaintiff's incarceration. Ex. 35 (Nyklewicz Dep.) at 18:10-13.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

122.     The written policy regarding shackling of hospitalized detainees contains no exception for medical professionals to request that the restraints be removed. Ex. 37 (Terry 20925). The written policy also does not state that guards may call a supervisor to request that the shackles be removed.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

123.    According to the County, the only reason for the policy of shackling hospitalized detainees is to prevent escape. Ex. 35 (Nyklewicz Dep.) at 33:7-35:22.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

124.    At Aurora Hospital, plaintiff was lying in bed, nauseous and vomiting, recovering from a traumatic experience giving birth. Ex. 2 (Terry Dep. at 176:19-177:18).

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

125.    As the testimony of Deputy Freuck and the logbook make clear, Ms. Terry was a threat to no one. Ex. 36 (Freuck Dep.) at 25:15-26:3; Ex. 34 (Logbook).

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

126.    The shackling policy was applied uniformly to all detainees in the hospital. Ex. 38 (Clarke Dep.) at 77:19-23.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

127.    No individualized assessment of an inmate's security or flight risk is performed prior to shackling. Ex. 35 (Nyklewicz Dep.) at 38:22-39:2; Ex. 36 (Freuck Dep.) at 84:24-85:17.

**RESPONSE:** **Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

128.    No evaluation of an inmate's medical condition is performed prior to shackling. Ex. 35 (Nyklewicz Dep.) at 19:13-17.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

129.    During the hospital watch, the deputies are armed with firearms, a Taser, and pepper-spray, among other items. Ex. 38 (Clarke Dep.) at 126:22-25.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

130.    During the hospital watch, the deputies are able to communicate directly with supervisor via radio and report on their activities or any problems. Ex. 36 (Freuck Dep.) at 56:14-15; Ex. 39 (Hospital Watch Policy) (Terry 20923-20931).

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

131.    If necessary, jail supervisors can send additional deputies to perform the hospital watch and will do so if an inmate is unshackled. Ex. 35 (Nyklewicz Dep.) at 35:9-36:1; Ex. 38 (Clarke Dep.) at 33:20-34:6. In Plaintiff's case, more than one deputy was present at certain points. Ex. XX (Terry 370).

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

132.    It is against the standard of care to shackle a woman during the postpartum period while they are recuperating. The American College of Obstetricians and Gynecologists is clear on this ill- advised practice which is documented in their committee opinion from November 2011. The Association of Women's Health, Obstetric and Neonatal Nurses also provides a statement against the practice. Ex. 20 (Farah Report) at 4.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

133.    Shackling post-partum inmates does not meet national correctional healthcare standards because of the dangers to the patient's physical and mental health, including the likelihood that shackles will reduce mobility, increase risks of falls, create undue pressure on the abdomen, and make healing mothers more uncomfortable and in pain. The American Correctional Association and American Medical Association agree that restraints should not be applied to pregnant women universally. Instead, women in childbirth or recovering from childbirth should be subject to the least restrictive means of control. Ex. 11 (Rea Report) at 10.

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

134.    Restraining post-partum inmates does not meet national correctional healthcare standards because of the dangers to the patient's physical and mental health, including the likelihood that shackles will reduce mobility, increase risks of falls, create undue pressure on the abdomen, and make healing mothers more uncomfortable and in pain. Ex. 11 (Rea Report at 10).

**RESPONSE: Not material to Ms. Terry's claims against Armor.** Armor defers to the Milwaukee County defendants' response.

Dated this 28th day of September, 2018.

302600319v1 1003420

302600319v1 1003420

*/s/ Paige L. McCreary*

Michael P. Russart
State Bar No. 1023128
Mollie T. Kugler
State Bar No. 1093318
Paige L. McCreary
State Bar No. 1114252
Attorneys for Defendant Armor Correctional
Health Services
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue
Suite 2600
Milwaukee, WI 53202
Phone No. 414-276-6464
Fax No. 414-276-9220
E-mail Address(es):
mrussart@hinshawlaw.com
mkugler@hinshawlaw.com
pmccreary@hinshawlaw.com

50