UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

_____

REBECCA TERRY,

               Plaintiff,

v.

COUNTY OF MILWAUKEE, DAVID A.
CLARKE, JR., in his personal and official
capacities, OFFICER BRIAN WENZEL, JANE
AND JOHN DOE, UNKNOWN EMPLOYEES
OF MILWAUKEE COUNTY JAIL, JANE AND
JOHN DOE, UNKNOWN JAIL
SUPERVISORS, ARMOR CORRECTIONAL
HEALTH SERVICES, CAROLYN EXUM,
MORGAN BEVENUE, MARGARET
HOOVER,

               Defendants.

Case No.:  17-cv-1112-JPS

_____

**DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES' REPLY TO
PLAINTIFF'S RESPONSE TO ARMOR CORRECTIONAL HEALTH SERVICES'
PROPOSED FINDINGS OF FACT IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT**

_____

      Defendant Armor Correctional Health Services ("Armor") hereby submits the following

Reply to Plaintiff's Response to Armor's Proposed Findings of Fact in Support of Motion for

Summary Judgment.

<u>**JURISIDICTION AND VENUE**</u>

      1.     The Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§

1331 (federal question), 42 U.S.C. § 1983, and the Eighth Amendment.

**PLAINTIFF'S RESPONSE:** Admitted that the Court has subject matter pursuant to 28 U.S.C.
§ 1331. Denied that "the Eighth Amendment" provides subject matter jurisdiction or is otherwise
relevant to the determination of this case.

**ARMOR'S REPLY:** No reply is necessary.

2.     Venue is proper in the Eastern District of Wisconsin as a substantial portion of the events occurred in Wisconsin and the plaintiff is a resident of Wisconsin. (ECF Nos. 1, 129.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

## IDENTITY OF THE PARTIES

3.     The identity of the parties is as alleged in Ms. Terry's Complaint, ECF No. 129 ¶¶ 5-17, except those still denominated as Jane and John Doe, ECF No. 129, ¶¶ 9-10, 15-16.

**PLAINTIFF'S RESPONSE**: Admitted. Plaintiff further adds that she has agreed to voluntarily dismiss Margaret Hoover.

**ARMOR'S REPLY:** No reply is necessary.

## PROPOSED FINDINGS OF FACT

4.     Armor has been under contract with Milwaukee County Jail ("MCJ") to provide health care services for inmates at the jail from May 11, 2013, through the present. (McCreary Decl. Ex. H at ARMOR 00063-89.) Thus, Armor first took over the health care services at MCJ on May 11, 2013. (Id.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

5.     Ms. Terry was arrested and taken for booking at MCJ on March 9, 2014. (ECF No. 129, ¶¶ 18-19.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

302578997v1 1003420

6.     Ms. Terry was first examined at MCJ around 6:00 p.m. that night by Ms. Burton, RN, the evening shift booking nurse. (May Decl. Ex. A at ARMOR 00029; McCreary Decl. Ex. B, Exum Dep. at 26:2-3.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

7.     Ms. Burton noted in Ms. Terry's medical record: "Inmate states she is pregnant[.] She is due 3-11-14[.] She has had no prenatal care since leaving Milwaukee County Jail in 11/2013[.] This is her 13th pregnancy[.] She has had several miscarriages and 1 abortion[.] Inmate states she is currently living in a motel and has been using IV heroin off and on for the last 4 years[.] The last year she has been using daily[.] Inmate states she has a [history] of mood disorder and anxiety[.] She has not taken psych [medication] in over a year[.]" (May Decl. Ex. A at ARMOR 00029.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

8.     Ms. Terry alleges she began to experience labor pains during her booking procedures at MCJ and informed the staff. (ECF No. 129, ¶ 19.) After obtaining all of this information, Ms. Burton consulted an advanced practice provider and received authorization to send Ms. Terry to Froedtert to be cleared for booking. (May Decl. Ex. A at ARMOR 00029; McCreary Decl. Ex. A, Buono Dep. at 58:4-62:5; McCreary Decl. Ex. B, Exum Dep. at 79:5-9.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

9.     Armor requires that patients in labor be transferred to a hospital for delivery. (McCreary Decl. Ex. A. at Buono Dep. 36:15-19; McCreary Decl. Ex. B, Exum Dep. at 67:16-

302578997v1 1003420

68:3, 79:5-9, 110:7-10, 151:16-152:12; McCreary Decl. Ex. C Strehlow Dep. at 69:1-4.) No inmate is housed at MCJ if she is in labor. (Id.)

**PLAINTIFF'S RESPONSE:** Denied. It is undisputed that Ms. Terry was in labor and gave birth in the jail, and other women have given birth at the jail as well. *See, e.g.*, Armor SOF ¶57, below; *see also* Dkt. 174-14 (Avery Dep. at 20:12-20:22) (noting that another women had given birth at the hospital); Dkt. 174-23 (Montano Dep. at 36:13-37:2) (acknowledging another woman gave birth at the jail).

**ARMOR'S REPLY:** Contrary to the FRCP and the ED Local Rules, Ms. Terry fails to cite to evidence to support her dispute or refute Armor's statement of fact, which is about Armor's policy/practice regarding inmates in labor not whether other women unexpectedly gave birth in the jail or in the hospital.

It is undisputed that Ms. Terry was in labor and gave birth in the jail. No evidence shows other "women" have given birth at the jail. Ms. Terry cited to Dkt 174-14, Avery Dep. at 20:12-20:22 to support her claim, but the document filed at this Docket Number is Dr. Buono's deposition and the cited excerpt in her deposition does not discuss this issue at all. To the extent this was a typographical error and Ms. Terry intended to cite to the Avery deposition, the cited excerpt only discusses one other woman who gave birth at the jail, Ms. Swayzer, which occurred after Ms. Terry. (Dkt. No. 175-14, Avery Dep. at 20:12-22.) The other deposition excerpt at Dkt. 174-23, Montano Dep. at 36:13-37:2 only discusses Ms. Terry and Montano also states that she had never seen this happen before Ms. Terry. (Dkt. No. 174-23, Montano Dep. at 35:17-15.) Thus, this fact should be accepted as undisputed by the Court.

10.     MCJ medical staff requested Ms. Terry be transported to Froedtert at around 6:30 p.m. (May Decl. Ex. A at ARMOR 00029.) Ms. Terry was evaluated at Froedtert and then returned to MCJ around 1:00 a.m. on March 10, 2014. (May Decl. Ex. A at ARMOR 00020-21, 00029; McCreary Decl. Ex. G, MKE County 176.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

11.     Froedtert is one of the best hospitals in the Milwaukee area, and is nationally recognized for its quality.[1]

---

[1] Armor respectfully requests this Court take judicial notice of this fact pursuant to Fed. R. Evid. 201(b)(1).
**Plaintiff's Response:** Plaintiff denies that this is the type of fact that the Court may take judicial notice of. Plaintiff further states that Armor does not rely on this proposed fact in its motion for summary judgment.
**Armor's Reply:  No dispute of material fact.** See Armor's Reply to PFOF ¶ 11.

302578997v1 1003420

**PLAINTIFF'S RESPONSE:** Denied on the ground that Armor has failed to provide any record cites to support this proposed factual finding.

**ARMOR'S REPLY: No dispute of material fact.** Fed. R. Evid. 201(b)(1) authorizes courts to take judicial notice of a fact that is not subject to reasonable dispute because it "is generally known within the trial court's territorial jurisdiction." Armor submits that this proposed fact is generally known within the territorial jurisdiction of the U.S. District Court for the Eastern District of Wisconsin. To the extent this Court disagrees, Armor concedes the prestige of the hospital at which Ms. Terry was medically cleared by specialists of labor prior to being booked at the Milwaukee County Jail is not material to whether her medical care by Armor at the jail was constitutional.

12.    When Ms. Terry returned to MCJ, Ms. Carolyn Exum, RN, was working as the night shift booking nurse. (May Decl. Ex. A at ARMOR 00020-21; McCreary Decl. Ex. B, Exum Dep. at 8:22-9:8, 21:18-22:13, 75:23-77:2, 79:10-25.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

13.    Ms. Exum had received notice of Ms. Terry's status from the evening nursing shift. (McCreary Decl. Ex. B, Exum Dep. at 78:23-79:9.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

14.    Ms. Exum reviewed the documents sent by Froedtert staff back with Ms. Terry upon her discharge, which were generic documents stating "no new orders" and included instructions to follow up with an obstetrician. (May Decl. Ex. A at ARMOR 00020-21; McCreary Decl. Ex. A, Buono Dep. at 71:1-18; McCreary Decl. Ex. B, Exum Dep. at 76:5-12, 85:9-10.) There was no description of Ms. Terry's treatment or Froedtert staff's conclusions. (Id.)

**PLAINTIFF'S RESPONSE:** Denied as to the first sentence on the ground that the cited material does not support the proposition for which it is cited. ARMOR 20 does not say anything about hospital paperwork, and ARMOR 21 says that Ms. Terry was returned from the hospital "with no new orders." It does not say that her discharge paperwork said "no new orders." The cited testimony similarly does not support the proposition that Ms. Terry returned with paperwork saying that "no new orders" had been issued. Admitted as to the second sentence.

**ARMOR'S REPLY: No dispute of material fact.** For the first sentence, Armor concedes Ms. Terry is correct that the cited material does not support that the documents sent by Froedtert staff back with Ms. Terry upon her discharge stated "no new orders." However, the remainder of Armor's proposed fact is properly supported by evidence. Ms. Terry otherwise fails to cite to evidence to support her dispute or refute Armor's statement of fact. Specifically, Ms. Exum's deposition transcript at Dkt. 174-10, Exum Dep. 76:5-9 states:

> When she initially came back, she didn't have the paperwork that we needed, the discharge paperwork saying what they did and didn't do. She had a generic form that just said that she was discharged and she needed to follow up with her OB.

Then, Ms. Exum's deposition transcript at Dkt. 174-10, Exum Dep. 85:8-9 states Ms. Terry came back with paperwork with discharge information that stated "Follow up with your OB." To discern the full context of the cited excerpt, Armor clarifies that it is explained at Dkt, 174-10, Exum Dep. 84:5-85:18. Armor's proposed fact is further supported Ms. Terry's Statement of Facts ("TSOF") and cited support in Dkt. 179, ¶ 24. No reply is necessary as to the second sentence.

15.     Inmates returning to MCJ from a hospital without substantive paperwork was a recurrent issue. (McCreary Decl. Ex. A, Buono Dep. 62:17-63:15; McCreary Decl. Ex. C, Strehlow Dep. 117:23-123:25.) Armor personnel had taken measures before Ms. Terry was incarcerated to encourage Froedtert, and other area hospitals, to send discharge summaries and instructions with inmates cleared to return to MCJ, through meetings and tours with hospital representatives to educate the hospital personnel about Armor's need for proper substantive medical records. (McCreary Decl. Ex. A, Buono Dep. 62:17-67:3; McCreary Decl. Ex. C, Strehlow Dep. 119:11-123:25.)

**PLAINTIFF'S RESPONSE:** Admitted as to the first sentence. Plaintiff objects to the second sentence on relevance grounds and further denies the statement on the grounds that the cited deposition excerpts do not support the proposition. Much of the cited portion of Dr. Buono's deposition does not say anything about discussions with hospitals about providing proper paperwork. The closest she comes to discussing the topic is when she says "We had actually had a meeting, I think with Aurora, though, about the paperwork." McCreary Decl. Ex. A, Buono Dep. 65:11-65:12. She does not say that the meeting definitely occurred. Nor does she say what the meeting was about, if it occurred at all, beyond the general topic of "paperwork." In the cited portion of Ms. Strehlow's deposition, she is unable to state whether she began having those purported conversations with hospitals before Ms. Terry gave birth in the jail. *See* McCreary Decl. Ex. C, Strehlow Dep. 120:19-120:23.

302578997v1 1003420

**ARMOR'S REPLY:** No reply is necessary for the first sentence. For the second sentence: Armor's proposed statement of fact is relevant and material to Ms. Terry's claims because it shows that Armor's personnel were not ignoring or consciously disregarding circumstances when inmates returned to the jail without paperwork—it supports Armor's defense that it was not deliberately. *Miranda v. County of Lake*, No. 17-1603, 2018 U.S. App. LEXIS 22229, at *30–33 (7th Cir. Aug. 10, 2018) (outlining a two-part test that the plaintiff must establish: (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly (something akin to reckless disregard) and (2) the defendant's conduct was objectively unreasonable). Ms. Terry fails to cite to evidence to support her dispute or refute Armor's statement of fact. Contrary to Ms. Terry's position, the cited evidence does in fact support Armor's proposed statement of fact. Dr. Buono's cited testimony specifically states at Dkt. 174-14, Buono Dep., on page 65:

1 A    My job, though, is to hunt down that paperwork.

2 Q    Was this problem something you ever discussed with

3       Dr. Gable?

4 A    I have discussed it with everybody.

5 Q    During the time that you worked at Armor in the

6       Milwaukee County Jail, did you ever see any

7       improvement in solving that problem?

8 A    It would improve and then get worse and improve

9       and get worse.

10     We had actually had a meeting, I

11     think with Aurora, though, about the paperwork.

12     We had also had a meeting with someone from the ER

13     at Froedtert to make them understand what the SMU

14     is and where they are sending a patient back to.

15     We actually had them come into the SMU, and I

16     showed them, this is the SMU. You're thinking

17     that we have a hospital in here. We don't. This

18     is a jail, not a hospital.

19 Q   Around when in your time at Armor did you have the

Froedtert folks come for the on-site visit?

21 A    I don't recall exactly but it was before this

22      case.

23 Q    Before this incident with Ms. Terry?

24 A    Yes.

25 Q    Okay.

It is not material whether Armor had taken measures with other hospitals before Ms. Terry was incarcerated, because the evidence explicitly shows they had done so through meetings and tours of the SMU with Froedtert, which is the hospital that failed to provide the discharge summary for Ms. Terry. Dr. Buono's testimony at Dkt. 174-14, Buono Dep., at 64:15-24 and 66:1-3 makes clear that the problem she discussed with Froedtert was when it sent inmates back without proper paperwork. Thus, this fact should be accepted as undisputed by the Court.

16.     Next, Ms. Exum performed the "prebooking" examination of Ms. Terry promptly upon her return from Froedtert, which included checking her vitals, listening to her heart and lungs and asking specific questions. (May Decl. Ex. A at ARMOR 00021, 00024; McCreary Decl. Ex. B, Exum Dep. at 55:25-56:17, 80:15-18.) She found Ms. Terry's vitals stable and not indicative of active labor. (Id.; McCreary Decl. Ex. E, Armor Correctional Health Services Resp. to Pl.'s First Set of Interrog., No. 8.)

**PLAINTIFF'S RESPONSE:** Admitted other than the statement that Exum found Ms. Terry's vitals "not indicative of active labor." The cited evidence does not support that contention. The deposition transcript excerpt does not discuss active labor. The cited interrogatory response states that the vitals Exum found are not indicative of active labor, but they do not say that Exum made a determination that Ms. Terry was not in active labor. Moreover, the interrogatory response refers to vitals being taken at 3:50 a.m., and Ms. Terry disputes that her vitals were taken at 3:50 a.m. Exum testified that she did not take Ms. Terry's vitals at 3:50 a.m., McCreary Decl. Ex. B, Exum Dep. 155:1-157:24, and Armor has consistently taken the position that no medical personnel saw Ms. Terry between the time she was sent to the SMU and when she delivered her baby hours later.

**ARMOR'S REPLY: No dispute of material fact.** No reply is necessary except for the statement that Exum found Ms. Terry's vitals "not indicative of active labor. This statement is not material because of the surrounding context. First, Ms. Terry admitted in her deposition that symptoms changed approximately 45 minutes after being placed in the SMU and that is when she began pushing the emergency light for help; she did not dispute that fact here. See Dkt. 178, pp. 13-14, Response to PFOF ¶ 59. Second, Ms. Terry's medical records from Froedtert, which

Ms. Terry obtained, produced during discovery, and relied on in her additional proposed facts, confirm that Froedtert concluded she was not in active labor. See Reply to PFOF ¶ 31 below; Dkt. 179 TSOF ¶ 16; Dkt. 182-8 TERRY 000318. Third, Dr. Buono's deposition testimony confirms and explains why Ms. Terry was not in active labor at the time, regardless of whether Ms. Exum reached that conclusion herself, which is supported by the cited interrogatory response. *See* Dkt. 174-14, Buono Dep. at 84:14-85:7. Dr. Buono explained women are in active labor when they undergo approximately one contraction every two minutes, and Ms. Terry denied contractions while in booking. (Id.)

Finally, whether or not Ms. Terry's vitals were taken at 3:50 a.m. is not relevant or material to the prebooking examination performed by Ms. Exum and the findings that she reached. Armor has not relied on this piece of evidence in its proposed findings of fact or in summary judgment briefing, nor has Ms. Terry raised it as such in her proposed findings of fact and it is therefore not part of the summary judgment record and requires no reply. Ms. Terry cites to no evidence to support her dispute or refute Armor's proposed fact. As a result, this fact should be accepted as undisputed.

17. Ms. Exum asked Ms. Terry how she felt and checked Ms. Terry's abdomen for contractions. (McCreary Decl. Ex. B, Exum Dep. at 80:15-24.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

18. Ms. Exum had been trained in treating pregnant inmates, including how to detect contractions. (McCreary Decl. Ex. B, Exum Dep. at 42:2-43:14.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

19. Ms. Exum did not detect any contractions. (McCreary Decl. Ex. B, Exum Dep. at 80:25-81:1.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

20. Ms. Exum also asked Ms. Terry whether she had any contractions. (McCreary Decl. Ex. B, Exum Dep. at 88:18-20.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

9

21.     During Ms. Exum's assessment, Ms. Terry denied having contractions. (May

Decl. Ex. A at ARMOR 00021; McCreary Decl. Ex. B, Exum Dep. at 88:18-20.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

22.     Ms. Terry told Ms. Exum she had "pressure at the bottom," nothing more. (Id.)

Ms. Terry did not complain about abdominal pain at all. (Id.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

23.     Ms. Exum asked Ms. Terry about the tests Froedtert performed and the results.

(McCreary Decl. Ex. B, Exum Dep. at 81:2-5.)

**PLAINTIFF'S RESPONSE:** Denied. The cited deposition transcript does not support this
broad proposition. Rather, the excerpt states only that the hospital put her on a machine and told
her she was in labor. It does not support a broader statement that "Exum asked Ms. Terry about
the tests Froedtert performed and the results."

**ARMOR'S REPLY: No dispute of material fact.** The deposition transcript Armor cites in
support of this proposed fact specifically states:

> 2 Q     Did you have conversation with Ms. Terry about what
>
> 3       they did at the hospital? What the medical staff at
>
> 4       the hospital did?
>
> 5 A     Yes.
>
> …

(Dkt. 174-10, Exum Dep. at 81:2-5.) Armor clarifies that the proposed fact was set forth to
establish that Ms. Exum discussed with Ms. Terry the medical treatment provided by the medical
staff at Froedtert, which is supported by the record. Ms. Terry cites to no evidence that supports
her denial or refutes Armor's proposed fact, and therefore this fact should be accepted as
undisputed.

24.     Ms. Terry responded that Froedtert "put her on the machine, and then … they told

her she was in labor." (McCreary Decl. Ex. B, Exum Dep. at 81:7-9.)

302578997v1 1003420

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary

25.    Ms. Exum asked Ms. Terry why Froedtert sent her back if she was in labor, to which she responded, "Because they just sent [me] back." (McCreary Decl. Ex. B, Exum Dep. at 81:9-11.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

26.    Ms. Exum did not discuss Froedtert's care with Ms. Terry after that, because Ms. Exum "knew the hospital would not have sent [Ms. Terry] back if she was in labor, because that would be negligent." (McCreary Decl. Ex. B, Exum Dep. at 81:12-25.)

**PLAINTIFF'S RESPONSE:**   Admitted that Exum made this statement in her deposition. Denied that it is admissible to show that Exum actually knew what the hospital had done. Ms. Exum's subjective belief about what the hospital had done is speculation.

**ARMOR'S REPLY: No dispute of material fact.** Ms. Terry has introduced no evidence supporting her dispute or refuting Armor's proposed fact. Her denial simply does not address the fact proposed. The evidence supporting this proposed fact is not speculation because it is Ms. Exum's own testimony about her own subjective beliefs, notice or state of mind. Furthermore, Ms. Terry's objections to this proposed fact contradict her lack of objections to PFOF ¶ 27, *See* Dkt. 178, p. 7, as well as one of her key response arguments that Ms. Exum and Dr. Buono relied on what they were told by the Froedtert nurse. As a result, this fact should be accepted as undisputed.

27.    Dr. Buono agreed that if Ms. Terry had been in active labor at Froedtert, then Froedtert should have kept her. (McCreary Decl. Ex. A, Buono Dep. at 84:7-19.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

28.    Ms. Exum then called the MCJ Medical Director employed by Armor, Dr. Buono, at approximately 1:15 a.m. after performing the pre-booking examination, and requested direction on how to proceed with Ms. Terry. (May Decl. Ex. A at ARMOR 00021, 00024;

McCreary Decl. Ex. A, Buono Dep. at 14:10-17; McCreary Decl. Ex. B, Exum Dep. at 81:14-18, 136:24-137:7.)

**PLAINTIFF'S RESPONSE**: Admitted.

**ARMOR'S REPLY:** No reply is necessary.

29.     Dr. Buono instructed Ms. Exum to call Froedtert for an oral report on the tests and care provided to Ms. Terry and follow up with written records later. (May Decl. Ex. A at ARMOR 00021, 00024.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

30.     Ms. Exum spoke with a Froedtert labor and delivery nurse at approximately 1:20 a.m., who informed her that Froedtert believed Ms. Terry was there for clearance to rule out labor, they put Ms. Terry on "the machine" to monitor her and the baby, and they found Ms. Terry was not in labor, which was why they sent Ms. Terry back to MCJ. (May Decl. Ex. A at ARMOR 00021, 00024; McCreary Decl. Ex. B, Exum Dep. at 83:14-84:9.) The Froedtert nurse also informed Ms. Exum that Ms. Terry's medical records were not ready, but the doctor would be asked to complete and fax them to MCJ. (Id.)

**PLAINTIFF'S RESPONSE:** Plaintiff objects to Armor's reliance on the purported statements of an unnamed Froedtert nurse on hearsay grounds.

**ARMOR'S REPLY: No dispute of material fact.** Ms. Terry has introduced no evidence supporting her dispute or refuting Armor's proposed fact. Armor is not relying on this information for the truth of what is being reported. Armor is relying on it to show Ms. Exum and Dr. Buono's state of mind regarding whether they acted recklessly, purposefully or knowingly with respect to Ms. Terry's serious medical needs. Armor also relies on it to show Ms. Exum is reporting a conversation in which she learned what was done and what was concluded, which is a factor in determining the objective reasonableness of Ms. Exum's and Dr. Buono's conduct. Therefore this is not hearsay under Fed. R. Evid. 801(c). Their states of mind are relevant, admissible and material to show they lacked the culpable states of mind required for a deliberate indifference claim, which requires that they actually conclude Ms. Terry was at substantial risk of serious harm and consciously chose to disregard the risk. *Miranda*, 2018 U.S. App. LEXIS 22229, at *30–33; *Farmer*, 511 U.S. at 837; *Higgins*, 178 F.3d at 511. Their notice or states of

302578997v1 1003420

mind are also relevant to show that they responded reasonably and constitutionally to the risk of which they were aware. *Gayton*, 593 F.3d at 620. As a result, this fact should be accepted as undisputed.

31.    Although MCJ medical staff did not have access to Ms. Terry's Froedtert medical records at the time, they confirmed Froedtert concluded Ms. Terry was not in labor. (McCreary Decl. Ex. F at TERRY 000318.)

**PLAINTIFF'S RESPONSE:** Plaintiff objects to Armor's reliance on a purported statement from Froedtert to Armor that Ms. Terry was not in labor based on hearsay grounds.

**ARMOR'S REPLY: No dispute of material fact.** Ms. Terry has introduced no evidence supporting her dispute or refuting Armor's proposed fact. Armor's proposed fact and supporting evidence are not hearsay because they fit into the exception for records of a regularly conducted activity under Fed. R. Evid. 803(6), which Ms. Terry obtained, produced during discovery, and relied on in her additional proposed facts. See Dkt. 179, TSOF ¶ 16; Dkt. 182-8 TERRY 000318. This objection also contradicts Ms. Terry's position in Dkt. 178, p. 8, Response to PFOF ¶ 32, in which she does not raise this objection for documents simultaneously produced by Ms. Terry in discovery. In fact, Ms. Terry herself relies on this document in her proposed additional fact at TSOF ¶ 16. Ms. Terry has waived her objections to this document. This proposed fact shows the specialists at Froedtert's labor and delivery department concluded Ms. Terry was not in labor. As a result, this fact should be accepted as undisputed.

32.    Ms. Terry's Froedtert medical records document how she was "relaxed" and even sleeping while being monitored for three hours to determine if she was in labor. (McCreary Decl. Ex. F, at TERRY 000308-313.) The records also document she was instructed at discharge about the signs of early labor, given time to ask questions when she verbalized her understanding and denied any further concerns. (Id.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

33.    Ms. Exum called Dr. Buono again and relayed the information from her call with Froedtert's labor and delivery nurse: Ms. Terry was cleared for return to MCJ and "not in labor." (McCreary Decl. Ex. A, Buono Dep. at 71:5-75:11; McCreary Decl. Ex. B, Exum Dep. at 90:18-91:16.)

13

**PLAINTIFF'S RESPONSE:** Plaintiff objects to Armor's reliance on statements from unidentified Froedtert personnel as hearsay.

**ARMOR'S REPLY: No dispute of material fact.** Armor is not relying on this information for the truth of what is being reported. Armor is relying on it to show Ms. Exum and Dr. Buono's state of mind regarding whether they acted recklessly, purposefully or knowingly with respect to Ms. Terry's serious medical needs. Armor also relies on it to show Ms. Exum is reporting a conversation in which she learned what was done and what was concluded, which is a factor in determining the objective reasonableness of Ms. Exum's and Dr. Buono's conduct. Therefore this is not hearsay under Fed. R. Evid. 801(c). Their states of mind are relevant, admissible and material to show they lacked the culpable states of mind required for a deliberate indifference claim, which requires that they actually conclude Ms. Terry was at substantial risk of serious harm and consciously chose to disregard the risk. *Miranda*, 2018 U.S. App. LEXIS 22229, at *30–33; *Farmer*, 511 U.S. at 837; *Higgins*, 178 F.3d at 511 Ms. Terry has introduced no evidence supporting her dispute or refuting Armor's evidence. As a result, this fact should be accepted as undisputed.

34. Based upon Ms. Exum's examination of and history from Ms. Terry and the information from Froedtert, Dr. Buono allowed Ms. Terry to be booked into MCJ. (McCreary Decl. Ex. A, Buono Dep. at 73:18-75:22.)

**PLAINTIFF'S RESPONSE:** Plaintiff objects to Armor's reliance on the purported statements of an unnamed Froedtert nurse on hearsay grounds.

**ARMOR'S REPLY: No dispute of material fact.** Armor is not relying on this information for the truth of what is being reported. Armor is relying on it to show Ms. Exum and Dr. Buono's state of mind regarding whether they acted recklessly, purposefully or knowingly with respect to Ms. Terry's serious medical needs. Armor also relies on it to show Ms. Exum is reporting a conversation in which she learned what was done and what was concluded, which is a factor in determining the objective reasonableness of Ms. Exum's and Dr. Buono's conduct. Therefore this is not hearsay under Fed. R. Evid. 801(c). Their states of mind are relevant, admissible and material to show they lacked the culpable states of mind required for a deliberate indifference claim, which requires that they actually conclude Ms. Terry was at substantial risk of serious harm and consciously chose to disregard the risk. *Miranda*, 2018 U.S. App. LEXIS 22229, at *30–33; *Farmer*, 511 U.S. at 837; *Higgins*, 178 F.3d at 511. Ms. Terry has introduced no evidence supporting her dispute or refuting Armor's evidence. As a result, this fact should be accepted as undisputed.

35. In making her decision, Dr. Buono understood Froedtert personnel would not "clear" a patient who needed to be admitted to the hospital, including a patient in active labor.

(McCreary Decl. Ex. A, Buono Dep. at 84:14-85:9.)

302578997v1 1003420

**PLAINTIFF'S RESPONSE:** Plaintiff objects to this paragraph on the grounds that Dr. Buono's purported understanding of Froedtert's decision-making is speculation.

**ARMOR'S REPLY: No dispute of material fact.** The evidence supporting this statement of fact is not speculation because it is Dr. Buono's own testimony about her own beliefs, or put another way, her professional opinion. Her beliefs are not subjective, but based on her knowledge, training and experience as the medical director of Armor and a licensed physician. Notwithstanding, Dr. Buono's state of mind is relevant, admissible and material to show she did not act knowingly, purposefully or even recklessly. Furthermore, Ms. Terry's objections to this proposed fact contradict her lack of objections to Dkt. 178, p. 7, Response to PFOF ¶ 27 and is consequently waived. Ms. Terry has introduced no evidence supporting her dispute or refuting Armor's evidence. As a result, this fact should be accepted as undisputed.

36. In addition, Dr. Buono ordered Ms. Exum to continue following up with Froedtert to obtain Ms. Terry's written medical records. (McCreary Decl. Ex. A, Buono Dep. at 64:4-67:3, 72:1-75:11.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

37. If a patient returned to MCJ for booking without proper paperwork from a hospital and was medically stable, Dr. Buono preferred the patient be booked into MCJ and placed in the Special Medical Unit ("SMU") where the inmate could be monitored to ensure patient safety and good care while the MCJ medical staff located the inmate's medical records. (McCreary Decl. Ex. A, Buono Dep. at 64:4-65:1, 92:12-95:7.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

38. In her professional experience, Dr. Buono found that inmates may end up being transported back and forth multiple times between the hospital and MCJ if they were not booked for lack of proper paperwork. The hospital does not have to accept the inmate again without a new medical concern, and Dr. Buono lacked authority to simply release the inmate. (Id.)

**PLAINTIFF'S RESPONSE:** Admitted.

302578997v1 1003420

**ARMOR'S REPLY:** No reply is necessary.

39.     Dr. Buono also concluded, based upon her professional knowledge and experience, that sending an inmate back and forth to the hospital due to lack of paperwork is not in the best medical interest of the patient. (Id.)

**PLAINTIFF'S RESPONSE:** Denied. Nothing in the record suggests that Dr. Buono made a determination as to whether Ms. Terry should be admitted into the jail or returned to the hospital.

**ARMOR'S REPLY: No dispute of material fact.** Ms. Terry fails to cite to evidence to support her dispute or refute Armor's statement of fact, which is about Dr. Buono's professional medical opinion about the safety of sending inmates back to the hospital when they lack paperwork. As a result, this fact should be accepted as undisputed.

40.     Dr. Buono has found, in her professional experience, it is better to have the patient in the jail where MCJ medical staff are available, rather than in a transport vehicle. (Id.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

41.     While Ms. Exum made the phone calls, Ms. Terry sat in the prebook area with a correctional officer present, across a counter from Ms. Exum. (McCreary Decl. Ex. B, Exum Dep. at 85:19-86:7.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

42.     Once Dr. Buono ordered Ms. Terry booked into MCJ, Ms. Exum performed the "booking" assessment of Ms. Terry. (McCreary Decl. Ex. B, Exum Dep. at 86:8-23.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

43.     After an inmate is accepted from the "prebook" assessment, the booking nurse conducts a full "booking" assessment, including the height, weight, another set of vitals, a head

to toe assessment of an inmate. (McCreary Decl. Ex. B, Exum Dep. at 104:16-105:5.) The nurse also asks the inmate a series of questions, which can take about 20 minutes. (Id.)

**PLAINTIFF'S RESPONSE:** Admitted as to the first sentence. Denied as to the second sentence because the cited deposition excerpt states that the entire assessment may take 20 minutes, not that the series of questions alone takes that long.

**ARMOR'S REPLY: No dispute of material fact.** No reply is necessary for the first sentence. Ms. Terry's dispute about the second sentence is not material.

44.     For Ms. Terry, the examination also included monitoring to ensure she was not having contractions. (McCreary Decl. Ex. B, Exum Dep. at 104:23-25.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

45.     From her return to MCJ through completion of her booking, Ms. Terry never complained to Ms. Exum about abdominal pain and Ms. Exum never observed Ms. Terry experiencing abdominal pain. (McCreary Decl. Ex. B, Exum Dep. 88:1-20.)

**PLAINTIFF'S RESPONSE:** Denied. Ms. Terry testified that she was in pain at Froedtert, and that the pain did not change when she returned to the jail, and a reasonable jury could conclude that she told Exum about her pain. Terry Dep. at 149:23-150: 10.

**ARMOR'S REPLY: No dispute of material fact.** To support her denial, Ms. Terry cites to her deposition testimony responding to an inquiry whether her pain had changed from Froedtert till arriving at the SMU, to which she responds "Not that she remembers." Ms. Terry has already admitted in Dkt. 178, p. 11, Response to PFOF ¶ 46 that she has no memory of the booking process. Consequently, she lacks sufficient foundation to create a dispute of fact about anything that occurred during the booking process, let alone whether she felt any pain. Ms. Terry also says in her deposition at Dkt. 182-2, Terry Dep. 138:4-22 that she only felt sore when leaving Froedtert and at Dkt. 182-2, Terry Dep. 121:15-122:3 that she does not remember feeling cramping, contracting, leaking of fluids or bleeding etc. as of 10 PM at Froedtert. Thus, the record shows that the sensations she felt when she left Froedtert were not painful and that that sensation did not change when she returned to the jail, at least while she was in booking. Ms. Terry fails to cite to evidence to support her denial or refute Armor's statement of fact. As a result, this fact should be accepted as undisputed.

46.     Ms. Terry has no memory of the booking process after returning from Froedtert, or of speaking with Ms. Exum, the MCJ booking nurse. (ECF No. 135-1, Terry Dep. 103:17-24, 136:24-137:8, 139:14-23, 143:14-145:7.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

47.     After booking, Ms. Terry was placed in SMU pursuant to Armor's policy of placing women in late stages of pregnancy initially in SMU. (McCreary Decl. Ex. A, Buono Dep. at 75:14-76:1; McCreary Decl. Ex. B, Exum Dep. at 91:10-14; May Decl. ¶¶ 8-9, 11; May Decl. Ex. C.)

**PLAINTIFF'S RESPONSE:** Denied. A reasonable jury could find that Armor did not enact that policy. *See* Terry SOF ("TSOF") ¶¶ 105-107.

**ARMOR'S REPLY: Disputed.** Ms. Terry fails to cite to evidence that supports her denial or refutes Armor's proposed fact for the reasons explained in Armor's Response to Plaintiff's Additional Proposed Findings of Fact, which Armor incorporates herein. Briefly summarized, her additional proposed fact in "TSOF" ¶ 105 is simply incorrect. Her additional proposed fact at "TSOF" ¶ 106 is based on Rea's *ipse dixit* statements and thus lack foundation. Finally, her additional proposed fact at "TSOF" ¶ 107 depends on a misrepresentation of the substance of Ms. Strehlow's deposition testimony. As a result, this fact should be accepted as undisputed.

48.     Dr. Buono considered Ms. Terry a high risk patient because she was in her 13th pregnancy, received no prenatal care during this pregnancy, she was due in about a week, she abused IV heroin and she complained of a pressure sensation when she first arrived. (McCreary Decl. Ex. A, Buono Dep. at 59:13-60:25.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

49.     SMU was and is the highest level of inmate observation at MCJ. (McCreary Decl. Ex. A, Buono Dep. 67:13-20.)

**PLAINTIFF'S RESPONSE:** Admitted.

302578997v1 1003420

**ARMOR'S REPLY:** No reply is necessary.

50. The nursing station was located in the clinic across the hall from SMU. (McCreary Decl. Ex. A, Buono Dep. at 68:8-20; McCreary Decl. Ex. B, Exum Dep. at 25:1-11.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

51. The nurse assigned to SMU usually checked on patients at the beginning of the shift and then determined, based upon their conditions, how often to check on them for the duration of the shift. (McCreary Decl. Ex. B, Exum Dep. at 33:10-35:4.) The SMU nurse would also check on patients before the end of the shift. (McCreary Decl. Ex. N, at Bevenue Dep. 16:1-25.) Accordingly, Ms. Terry would have been seen by the SMU nurse working the third shift, Nurse Bevenue, before the end of her shift at 7:00 a.m. on March 10, 2014, if she had not gone into labor before the end of Ms. Bevenue's shift. (Id.)

**PLAINTIFF'S RESPONSE:** Admitted as to the first two sentences. Plaintiff objects to the third sentence on the ground that whether Ms. Terry would have been seen by Ms. Bevenue is speculation.

**ARMOR'S REPLY: No dispute of material fact.** No reply is necessary for the first two sentences. For the third sentence: This dispute is not material. Ms. Bevenue testified that she would have seen Ms. Terry in the SMU before the end of her shift if she had not delivered at 4:30 a.m. or 4:45 a.m. See Dkt. 182-17, Bevenue Dep. 85:12-18. Ms. Terry does not cite to evidence to support her dispute or to refute Armor's proposed fact. As a result, this fact should be accepted as undisputed.

52. As the Medical Director, Dr. Buono made rounds in SMU on a daily basis, usually in the morning. (McCreary Decl. Ex. A, Buono Dep. 20:13-24.)

**PLAINTIFF'S RESPONSE:** Denied. Dr. Buono testified that she made daily rounds during the week, but that nurse practitioners made the rounds on the weekends. *See* McCreary Decl. Ex. A, Buono Dep. 20:13-21:1.

**ARMOR'S REPLY: No dispute of material fact.** Armor concedes that Ms. Terry accurately presents the evidence in her denial. However, Ms. Terry's dispute regarding who rounded on the weekends is not material, because March 10, 2014 was a Monday and Dr. Buono therefore would

have rounded on Ms. Terry in the morning. As a result, this modified fact should be accepted as undisputed.

53.     The SMU correctional officer wrote down every time anyone entered SMU, including MCJ medical staff. (McCreary Decl. Ex. B, Exum Dep. at 35:14-20.)

**PLAINTIFF'S RESPONSE:** Admitted that Exum made this statement, but denied that she provided an adequate foundation to prove that the statement is true. (See ECF No. 167-7, McCreary Decl. Ex. G at MKE County 179.)

**ARMOR'S REPLY: No dispute of material fact.** Armor does not dispute Ms. Terry's objection, but instead adds that the log activity system provided at Dkt. 167-7, p. 2 provides sufficient support for the proposed fact.

54.     If an inmate in SMU needed care, the inmate could activate a call light, which lit up outside the cell, allowing the SMU correctional officer to answer the call light and contact the nurse at the clinic. (McCreary Decl. Ex. B, Exum Dep. at 36:10-37:9.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

55.     Ms. Terry was escorted to SMU and arrived around 1:45 a.m. (McCreary Decl. Ex. D, Wenzel Dep. at 53:5-8.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

56.     Inspections were made of the SMU inmates, including Ms. Terry, by the SMU correctional officer, Officer Wenzel, on March 10, 2014, at 1:57 a.m., 2:27 a.m., 2:57 a.m., 3:11 a.m., 3:41 a.m., 3:57 a.m. and 4:27 a.m. (McCreary Decl. Ex. G, at MKE County 179.) An inspection of the SMU inmates was conducted by another correctional officer, who remembers it was very quiet, at 3:27 a.m. (Id.; McCreary Decl. Ex. I, Smith Dep. at 11:1-13:21.) A further inspection of the SMU inmates was conducted at 4:40 a.m., by Lt. Montano. (Id.)

**PLAINTIFF'S RESPONSE:** Denied as to the inspections purportedly conducted by Wenzel. During his deposition, he testified that he must have "double clicked" to record his purported

302578997v1 1003420

inspections, meaning that he logged the start and end of his inspections simultaneously, calling into question whether he actually conducted any inspections. *See* TSOF ¶¶ 61-68.

**ARMOR'S REPLY: No dispute of material fact.** Whether or not Officer Wenzel actually performed the activities he was required to perform and claims to have performed is not material to Ms. Terry's claims against Armor. Armor also adds that Ms. Terry admitted that Montano did a supervisory round 4:41 a.m. on March 10, 2014. (Dkt. No. 177, ¶¶ 106-107.)

57.    At approximately 4:46 a.m. on March 10, 2014, an MCJ nurse answered a call from Officer Wenzel, informing her that Ms. Terry "had delivered the baby," "the baby was out" and medical staff was needed. (May Decl. Ex. A at ARMOR 00022; McCreary Decl. Ex. B, Exum Dep. at 144:12-145:7.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

58.    Officer Wenzel called for help as soon as he became aware of her medical emergency. (McCreary Decl. Ex. D, Wenzel Dep. at 94:7-96:5, 101:4-8.)

**PLAINTIFF'S RESPONSE:** Denied. A reasonable jury could find that Mr. Wenzel knew that Ms. Terry was facing a medical emergency for hours, while she cried and screamed for help. *See also* TSOF ¶¶52-76.

**ARMOR'S REPLY: No dispute of material fact.** Whether or not Officer Wenzel actually performed the activities he was required to perform and claims to have performed is not material to Ms. Terry's claims against Armor.

59.    Ms. Terry claims her symptoms changed approximately 45 minutes after arriving in SMU and she began pushing the emergency light with no response from the CO. (ECF No. 135-1, Terry Dep. 152:4-168:1.) She claims pounding on the window of the door to her cell at least three times. (Id.) She claims repeatedly screaming for help. (Id.) She claims her water broke in the cell. (Id.) She claims the correctional officer in the SMU ignored her yells, pounding and screams, waving her off with the shake of his hand. (Id.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

21

60.     Ms. Terry delivered her baby within three hours of arriving in SMU. (McCreary

Decl. Ex. A, Buono Dep. at 83:24-85:7.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

61.     Within minutes of Officer Wenzel's call, a medical emergency was initiated, 911

was called and MCJ nurses responded to provide medical care for Ms. Terry and her baby. (May

Decl. Ex. A at ARMOR 00020, 00022.)

**PLAINTIFF'S RESPONSE:** Admitted in part. Plaintiff denies that the cited evidence supports
the broad proposition that "MCJ nurses responded to provide medical care for Ms. Terry and her
baby." She further states that they refused to provide certain care, such as cutting the umbilical
cord. *See* TSOF ¶ 89.

**ARMOR'S REPLY: No dispute of material fact.** Ms. Terry's denial is improper based on the
evidence cited. Specifically, Dkt. 166-1 at ARMOR 00022 (filed under seal) describes the
medical care that MCJ nurses provided for Ms. Terry and her baby.

The only evidence Ms. Terry cites in in support of her dispute in TSOF ¶ 89 is her
deposition testimony that Nurses Exum and Bevenue declined to cut her umbilical cord.
However, that evidence does not refute the proposed fact and is not material to her claims against
Armor. As a result, this fact should be accepted as undisputed.

62.     At approximately 4:50 a.m., Ms. Exum responded to SMU with MCJ Nursing

Supervisor Ms. Hoover, running from the first floor to the second floor, entering SMU and Ms.

Terry's unit, and finding Ms. Terry with her baby. (May Decl. Ex. A at ARMOR 00022;

McCreary Decl. Ex. B, Exum Dep. at 105:17-108:9.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

63.     Upon entering Ms. Terry's unit, Ms. Exum observed Ms. Terry was responsive,

and her baby was covered in blood and meconium and experiencing mild respiratory distress.

(May Decl. Ex. A at ARMOR 00022; McCreary Decl. Ex. B, Exum Dep. at 107:2-109:25.) Ms.

Exum immediately retrieved the OB kit and suctioned the baby nasally and orally. (Id.) She

302578997v1 1003420

applied the OB clamp to the umbilical cord. (Id.) She and others moved the baby to Ms. Terry's stomach and applied oxygen to the baby. (May Decl. Ex. A at ARMOR 00021-00022.) Ms. Terry and her baby were covered with extra sheets. (Id.) Ms. Terry's vitals were taken. (Id.) Ms. Exum explained to Ms. Terry that no doctor was available to pull out her afterbirth, but that EMS was on the way. (Id.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

64.     At approximately 4:59 a.m., EMS arrived and shortly thereafter left with Ms. Terry and her baby. (May Decl. Ex. A at ARMOR 00023.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

65.     Ms. Exum called Aurora Sinai Medical Center's Labor and Delivery unit ("Aurora Sinai") so they could prepare for Ms. Terry's arrival. (Id.)

**PLAINTIFF'S RESPONSE:** Denied. When asked at her deposition whether she called the hospital where Ms. Terry was sent after giving birth, Exum replied "No, because I didn't know what hospital they was taking her to." McCreary Decl. Ex. B, Exum Dep. at 162:12-162:16). Moreover, the cited document, ARMOR 00023, does not support the proposition for which it is cited. ARMOR 00023 includes a notation that Exum called Aurora Sinai and that "report was given for mom and baby," but it does not say when she made that call or whether she gave a report or received a report from the hospital. Moreover, as noted above, Exum denies making that call.

**ARMOR'S REPLY: No dispute of material fact.**

66.     At Aurora Sinai, Ms. Terry was treated for a peritoneal tear from the delivery. (McCreary Decl. Ex. F TERRY 103.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

67.     The medical care provided to Ms. Terry on March 9, 2014 through March 10, 2014 by MCJ medical staff was in compliance with Armor's policies, procedures and practices

pertaining to pregnant inmates, including Policy No. J-G-07 "Pregnancy Management." (May

Decl. ¶¶ 8-11; May Decl. Ex. C at ARMOR 001112-001115.) Armor's Policy No. J-G-07

"Pregnancy Management," pertaining to pregnant inmates was produced in discovery on May

10, 2018. (McCreary Decl. Ex. H at 1 "(Letter to Attorney Kleinhaus regarding production of

Armor Policy".)

**PLAINTIFF'S RESPONSE:** Plaintiff objects to this paragraph because "MCJ medical staff" is
not defined. Assuming that the term is meant to include anyone other than correctional officers,
denied. Armor permitted Ms. Terry to be admitted into the jail upon return from Froedtert
hospital without proper paperwork, in violation of its written policy but in compliance with its
widespread practice. *See* TSOF ¶¶24, 101-104. Moreover, there is evidence in the record
showing that Nurse Bevenue ignored Ms. Terry despite knowing that she had a serious medical
need, or at a minimum that Bevenue recklessly disregarded that Ms. Terry had a serious medical
need. *See* TSOF ¶¶39-49. Likewise, there is evidence in the record that Defendant Exum was
aware of Plaintiff's serious medical need and recklessly disregarded it. *See* TSOF ¶¶23-36.

**ARMOR'S REPLY: No dispute of material fact.** Ms. Terry improperly makes a legal
conclusion in her denial by characterizing an activity as a "widespread practice." The evidence
Ms. Terry cites to support her proposed fact regarding Nurse Bevenue fails to provide that
support or refute Armor's claims, as described in Armor's responses to TSOF ¶¶39, 41, 44, 45-
49. Ms. Terry also fails to cite evidence that supports her claims regarding Ms. Exum or refute
Armor's proposed fact or Dr. May's sworn statement that the policy was in effect in March 2014,
as described in Armor's responses to TSOF ¶¶ 35-36. In addition, Dr. Buono testified that Armor
protocols for women in late stage pregnancy was to place them in SMU. (Dkt. 167-1 Buono Dep.
73:18-75:22; ¶ 34 above.) Notwithstanding, Ms. Terry's cited evidence simply does not address
the validity of Armor's proposed fact regarding compliance with its policies pertaining to
pregnant inmates. Ms. Terry failed to provide any evidence supporting her denials and refuting
Armor's proposed fact. As a result, this fact should be accepted as undisputed.

68.     Had Ms. Terry not delivered within her first three hours in SMU on March 10,

2014, she would have been seen by MCJ advanced medical care personnel for her initial

pregnancy observation status within her first 24-48 hours of SMU placement to determine her

plan of care, pursuant to Armor policy. (May Decl. ¶ 12.)

**PLAINTIFF'S RESPONSE:** Denied on the ground that May's declaration as to what would
have happened with respect to Ms. Terry's care is speculative, and on the ground that a
reasonable jury could find that Armor did not enact that policy. TSOF ¶¶ 105-107.

**ARMOR'S REPLY: No dispute of material fact.** Ms. Terry fails to cite to evidence to support
her dispute or refute Armor's statement of fact, which is about what Armor's policy required

regarding medical care for late stage pregnant inmates. Dr. May is the Chief Medical Officer of Armor and has been since 2004, whose job responsibilities include improving Armor's policies, guidelines, and practices. (Dkt. No. 166 at ¶¶ 1, 7, Declaration of John May, M.D.) Dr. May therefore has personal knowledge about Armor's policy and how it is carried out. Therefore no speculation is involved in his statement providing the evidentiary support regarding how the policy would have been carried out. In addition, Dr. Buono testified that she usually made rounds in the morning during weekdays, and so she would have rounded on Ms. Terry that morning. See Dkt. 178, p. 12 and Armor's Reply to Plaintiff's Response PFOF ¶ 52, above.

69.     Correctional officers were trained to identify and respond to medical emergencies through a combined effort by both Milwaukee County and Armor. (McCreary Decl. Ex. I, Smith Dep. at 19:23-21:18; McCreary Decl. Ex. J, Elliott Dep. at 9:14-24, 24:21-38:25; McCreary Decl. Ex. K, Green Dep. at 6:7-8:6; McCreary Decl. Ex. L, Poetz Dep. at 9:1-17; McCreary Decl. Ex. G, at MKE County 1264, 1272, 1275, 1277, 1281-1289, 1293-1299, 1315-1317, 1372, 2131-2132, 2135-2138, 2672-2673, 2700-2703.) The correctional officers received training by Milwaukee County at the Academy upon being hired, which provided general training for jail health care, communicating with medical staff, identifying inmate distress, supervising special needs inmates, crisis intervention. (McCreary Decl. Ex. J, Elliott Dep. at 9:14-24, 24:21-38:25.) The correctional officers also received annual training and training via roll call reminders. (Id.) Armor provided training on suicidal inmates, suicide prevention and special management (mentally ill patients), mental health and psych social workers. (McCreary Decl. Ex. I, Smith Dep. at 19:23-21:18; McCreary Decl. Ex. J, Elliott Dep. at 9:14-24, 24:21-38:25; McCreary Decl. Ex. K, Green Dep. at 6:7-8:6; McCreary Decl. Ex. L, Poetz Dep. at 9:1-17.) In fact, Officer Wenzel received training on March 7, 2013, which covered "KEY POINT: Never ignore an inmate's request to be seen during sick call, or take it upon yourself to determine that any request is invalid or that the inmate need not be seen." (McCreary Decl. Ex. G, at MKE County 1275). Officer Wenzel's training documents were produced in discovery on April 16, 2018. (McCreary Decl. Ex. G, at 1-12, Request No. 5 "Milwaukee County's Third Supplemental Responses".)

302578997v1 1003420

**PLAINTIFF'S RESPONSE:** As to the first sentence, denied in part. Specifically, Ms. Terry denies that Armor provided training for correctional officers as to how they should respond to medical emergencies. Denied as to the second statement because the cited evidence does not support the proposition that "correctional officers" received the training discussed in that sentence. Rather, it supports that proposition that one particular officer testified that she received that training, though she did not remember details. Admitted as to the third and fourth sentences. Denied as to the statement in the fifth sentence that Officer Wenzel received training on March 7, 2013 because the cited evidence does not support that proposition. MKE County 1275 has a date of March 7, 2013 printed on the page, but it does not say or suggest in any way that Officer Wenzel received the training that day. Plaintiff further objects to that statement on relevance grounds, as Ms. Terry has not claimed that she requested to be seen at sick call. Denied as to the sixth statement, which states that "Officer Wenzel's training documents were produced in discovery on April 16, 2018." The cited response, which actually appears at McCreary Decl. Ex. G at 41 of 50 (using ECF page numbers), states that Milwaukee County was producing certain personal files that Wenzel kept at his house. The response, which is not made under oath and does not include a declaration from Wenzel himself, does not purport to provide all of Officer Wenzel's training documents.

**ARMOR'S REPLY: No dispute of material fact.** This is not material because Ms. Terry's claim against Armor for failure to train correctional officers was waived. To the extent Ms. Terry still seeks to rely on those allegations to support her two remaining *Monell* theories against Armor, Ms. Terry's objections are not well founded. Notwithstanding, Armor points out that Ms. Terry has waived her objections to the facts that correctional officers received training on recognizing and responding to medical emergencies by admitting that Officers Wenzel, Shanahan, Avery and Elliott received training on recognizing and responding to medical needs for inmates. (Dkt. No. 177, ¶¶ 154-166.)

70.     If a correctional officer had ignored an inmate's screaming and pounding on a cell door over an extended period of time, those acts or omissions were not a matter of training, but a failure to perform. (McCreary Decl. Ex. M, Retired Milwaukee County Sheriff's Office Inspector Bailey Dep. 4:23-5:19.)

**PLAINTIFF'S RESPONSE:** Plaintiff objects to this statement as a hypothetical, rather than a statement of fact. Moreover, as explained in Plaintiff's brief in opposition to Defendants' motions for summary judgment, she is no longer pursuing a theory of liability based on failure-to-train correctional officers.

**ARMOR'S REPLY: No dispute of material fact.** This is not material because Ms. Terry's claim against Armor for failure to train correctional officers was waived. To the extent Ms. Terry still seeks to rely on those allegations to support her two remaining *Monell* theories against Armor, Ms. Terry's objections is not based in law or any applicable rules and she cites to no evidence to support her dispute or refute Armor's proposed fact.

302578997v1 1003420

71.      Dr. Buono was deposed in this lawsuit on April 25, 2018. (McCreary Decl. Ex. A,

Buono Dep. at 1.)

**PLAINTIFF'S RESPONSE**: Admitted.

**ARMOR'S REPLY:** No reply is necessary.

72.      Ms. Exum was deposed in this lawsuit on March 19, 2018. (McCreary Decl. Ex.

B, Exum Dep. at 1.)

**PLAINTIFF'S RESPONSE:** Admitted.

**ARMOR'S REPLY:** No reply is necessary.

Dated this 28th day of September, 2018.

*/s/ Paige L. McCreary*

Michael P. Russart
State Bar No. 1023128
Mollie T. Kugler
State Bar No. 1093318
Paige L. McCreary
State Bar No. 1114252
Attorneys for Defendant Armor Correctional
Health Services
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue
Suite 2600
Milwaukee, WI 53202
Phone No.  414-276-6464
Fax No.  414-276-9220
E-mail Address(es):
mrussart@hinshawlaw.com
mkugler@hinshawlaw.com
pmccreary@hinshawlaw.com

302578997v1 1003420