REBECCA TERRY,

        Plaintiff,

v.

COUNTY OF MILWAUKEE, et al.

        Defendants.

Case No.: 17-cv-1112-JPS

---

**COUNTY DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

Defendants Milwaukee County, Acting Sheriff Richard Schmidt, Officer Brian Wenzel, Carolyn Exum, R.N., and Morgan Bevenue, R.N., and Margaret Hoover, R.N., (collectively, "the County Defendants")[1], by their attorneys, submit the following in reply to Plaintiff's Omnibus Response in Opposition to Defendants' Motions for Summary Judgment.

## I.    <u>INTRODUCTION</u>

Seeking to avoid dismissal, Plaintiff proffers an account of events that bears no credible relationship to the medical and testimonial evidence. She premises her opposition to summary judgment on the baseless assertion she was "in labor" upon return to the Jail after medical clearance by Froedtert Hospital specialists. <u>See</u>, <u>e.g.</u>, Pl.'s Resp. (Doc. No. 180), *passim*. This claim is a contrivance of counsel that is unsupported by any competent medical evidence.

Plaintiff concedes that the Froedtert obstetric specialists—whose stated objective in assessing her was "r/o [rule out] labor"—did, in fact, determine she was "not currently in labr [sic]." <u>See</u> Pl.'s Resp. to County Defendants' Proposed Findings of Fact, ("PRCDFOF") (Doc.

---

[1] Plaintiff has not opposed the County Defendants' motion for dismissal of all claims against Sheriff Schmidt and Ms. Hoover.

No. 177), ¶¶ 33, 36-37.  Plaintiff concedes she was stable, with no immediate medical needs at the time of her discharge from Froedtert.  Id., ¶¶ 67-68.  Having admitted the accuracy of those medical conclusions, it is perplexing that Plaintiff nevertheless bases her opposition on the claim she was in labor on her return to the Jail and so required urgent attention.

While Plaintiff is entitled to reasonable inferences from the evidence, she may not fabricate medical facts and rest her arguments on a medical conclusion that is precisely the opposite of the medical fact she has conceded.  Scott v. Harris, 550 U.S. 372, 380 (2007) (holding that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); Whitehead v. Burnside, 403 Fed. App'x. 401, 403 (8th Cir. 2010) (finding that where "the contemporaneous medical records and opinions of the examining medical doctors show[ed] that [plaintiff's] purported evidence was baseless," there was no genuine issue of material fact for a jury.).  She cannot admit she was not in labor, yet argue the individual defendants were indifferent to the fact that she was in labor.[2]  Plaintiff's

---

[2] Revealing the source of her baseless contention, Plaintiff argues that "Plaintiff's own testimony is competent evidence that she was in labor." Doc. No. 180 at 8.  She is wrong.  Plaintiff is not a qualified medical expert and cannot offer testimony to contradict the medical opinion of the Froedtert physicians.  Nor would her erroneous report of her condition to a nurse at the Jail be competent evidence that she was in labor.  Her lay opinion is not sufficient to create an issue of material fact as to her medical condition and needs at the time of her admission to the Jail.  See Whitehead, 403 Fed. App'x. at 401, 403 ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records."); Williams v. Rodriguez, 509 F. 3d 392 (7th Cir. 2007) (finding that the only evidence of a serious medical condition was the plaintiff's own self-serving statements and that medical records failed to substantiate his claim); Dulany v. Carnahan, 132 F.3d 1234 (8th Cir. 1997) (affirming summary judgment on the basis that plaintiffs "fail[ed] to rebut the verified medical evidence"); Scott v. Astrue, 730 F. Supp. 2d 918 (C.D. Ill. 2010) (holding a treating doctor's opinion was not entitled to controlling weight since it was "only based on the subjective self-serving statements made by Plaintiff without any clinical or medical corroboration.").

argument is beyond a credible interpretation of the evidence; it is an astounding misrepresentation of undisputed medical evidence and an obvious ploy.[3] See Adikes v. S.H. Kress & Co., 398 U.S. 144 (1980) (only reasonable inferences should be drawn). Such unfounded arguments of counsel do not suffice to meet Plaintiff's burden of demonstrating the existence of a material fact for trial. Williams, 509 F. 3d at 402 (holding plaintiff's self-serving statements of medical condition insufficient where medical records failed to substantiate his claim).

Plaintiff's arguments in support of her Monell claims are similarly lacking in plausibility and fall short of creating a triable issue. Acknowledging that Plaintiff presented at the Jail with written discharge instructions and that Froedtert's Discharge Summary, when completed, made no special recommendations for Plaintiff's care (Doc. No. 177, ¶¶ 38-39, 67-68), she nevertheless asserts that a failure to obtain "adequate paperwork" was an egregious error and so obvious and repetitive as to constitute an unconstitutional policy choice by the County. See Doc. No. 180 at 19-26. Similarly, Plaintiff acknowledges Armor's "detailed policy" on care of pregnant women (id. at 29), but claims the County was aware of an unconstitutional "gap" in that policy and made a deliberate policy choice to provide poor care. See id. at 26-29. Plaintiff has fallen well short of even pleading her claims adequately, much less demonstrating credible evidence of unconstitutional policy **choices** by County policymakers. See Order of June 4, 2018 Granting Judgement on Pleadings (Doc. No. 127), citing Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 675 (7th Cir. 2012) (plaintiff must establish that custom is "so entrenched and well-known as to carry the force of policy").

---

[3] Notably, neither of Plaintiff's nursing experts gave an opinion that she was actually in labor on discharge from Froedtert Hospital. See Doc. Nos. 182-11, 182-20. Plaintiff concedes the physicians who actually examined her determined she was not in labor. See Doc. No. 177, ¶¶ 36-37. Defendants' obstetrician expert, Dr. Dolan, has opined that Plaintiff was not in labor on discharge from the Hospital or arrival at the Jail. See Dolan Report at 4, ¶¶ 9, 10 (Exhibit 51).

Finally, Plaintiff asserts that the County deprived her of due process and exerted excessive force by failing to create an exception to its restraint policy for her while she was hospitalized for opioid withdrawal. See Doc. No. 180 at 29-34. She ignores the plain language of the County's policy and fails to address the ample evidence that she presented a flight risk. Id. Plaintiff concedes that neither she nor a medical provider asked that the restraints be removed or expressed concern for their use until she retained her current counsel. See Doc. No. 177, ¶¶ 153, 169. She offers no evidence of an intent to punish, but argues that mere application of restraints – without harm or discomfort – can be "demeaning" and excessive. See Doc. No. 180 at 31, 33-34. Plaintiff's arguments, if accepted, would stretch constitutional protections to unprecedented lengths.

## II.     PLAINTIFF'S MISSTATEMENTS OF FACT

In an effort to avoid summary judgment, Plaintiff takes egregious liberties with the record including blatant mischaracterizations of testimony. Rather than respond individually to Plaintiff's consistent attempts to mislead in this reply, the County Defendants refer the Court generally to their Response to Plaintiff's Statement of Fact and will instead address only those factual issues most necessary for the Court to make its determination of the instant motion.

## III.     ARGUMENT

### A.  Count I – Deliberate Indifference

#### 1.   Plaintiff has not demonstrated an issue of material fact as to her Count I claims against Nurse Exum and Nurse Bevenue.

Plaintiff acknowledges Miranda v. Cnty. of Lake, 900 F.3d 335, 2018 U.S. App. LEXIS 22229 (7th Cir. 2018), in passing but fails to address the elements of proof required by the Seventh Circuit. In Miranda, the Court of Appeals relied on Gordon v. Cty. of Orange, 888 F.3d 1118, 1124-25 (9th Cir. April 30, 2018), where the court discussed the proof required under the objective reasonableness standard in a medical context. The Gordon court stated:

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case. The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment. Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard.

888 F.3d at 1124-25 (internal quotations and citations omitted).

Plaintiff cannot meet her burden of demonstrating that the individual defendants' conduct was objectively unreasonable.

### a. Plaintiff cannot demonstrate she had a serious medical need

Plaintiff cites <u>Webb v. Jessamine County Fiscal Court</u>, 802 F. Supp. 2d 870 (E.D. Ky. 2011) in support of her claim that she had a serious medical need. Based on <u>Webb</u>, she argues that jail officials are placed on notice of a serious medical need when a nine months pregnant inmate experiences signs of labor. Unlike Plaintiff, the inmate in <u>Webb</u> complained of sharp back pain; severe cramping, *i.e.*, contractions; vaginal discharge; discharge of her cervical mucus plug, and her water breaking. <u>See</u> <u>id.</u> at 875-76, 880-81. Plaintiff has admitted she did not experience contractions following her return to the Jail until after she arrived on the SMU, much less the sure signs of impending delivery evidenced in <u>Webb</u>. Further, the inmate in <u>Webb</u> had been refused medical treatment despite her repeated complaints. <u>Id.</u> at 876. In the instant matter, Plaintiff was sent to Froedtert Hospital for hours of testing and observation and was returned after providers there determined she was not in labor. As such, Plaintiff cannot demonstrate she experienced a serious medical need prior to her arrival on the SMU as there were no signs she was progressing

towards delivery, was determined by Froedtert physicians to not be in labor, and has admitted she did not experience contractions on her return to the Jail until after she was placed on the SMU.

### b. Plaintiff has failed to demonstrate Nurse Exum or Nurse Bevenue was objective unreasonable

In order for the individual defendants to have acted purposefully, knowingly, or recklessly, in violation of the Fourteenth Amendment, they must have intentionally placed Plaintiff in a circumstance where the conditions "put the Plaintiff at substantial risk of suffering serious harm." Gordon, 888 F.3d at 1124-25. They must also prove that "a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious." Id. Plaintiff must prove Nurses Exum and Bevenue were aware of facts suggesting Plaintiff had an immediate need for nursing assistance while the defendants were in a position to provide it and that placing Plaintiff under observation in the Special Medical Unit presented an obvious risk of an untoward outcome.

Plaintiff first argues she had a "serious medical need." See Doc. No. 180 at 6-7. She elected to take an "omnibus" approach by grouping all the Defendants together for purposes of her analysis of her medical needs. Id. Her approach does not relieve her of her obligation to demonstrate that each Defendant placed her at a substantial risk of harm based upon information available to them at the time of their interactions with Plaintiff. She argues broadly that the process of childbirth at some point in time presents a serious medical need. See, Doc. No. 180 at 6 (noting, "attended births are the generally accepted norm in the United States"). In doing so, she fails to meet her burden of showing Nurses Exum and Bevenue were aware of a serious medical need at the time their decisions were made.

Plaintiff cannot demonstrate Nurses Exum and Bevenue were aware of facts suggesting a change in her condition after she was deemed "stable" and "not in labor" and discharged by

Froedtert obstetric specialists. Doc. No. 177, ¶¶ 36-37, 67. She admitted without qualification that her symptoms "at the time of arrival at the [Special Medical Unit] had not changed from what she had described to the obstetric specialists at Froedtert prior to discharge from the Hospital." Id. at 83. It is therefore undisputed that Nurse Exum's sole encounters with Plaintiff occurred while her symptoms were unchanged from the time of her medical clearance by outside specialists.[4] Id. At that time, she examined Plaintiff and found she was not experiencing contractions and Plaintiff denied having contractions. As such, Nurse Exum's conduct cannot be deemed unreasonable as a matter of law. Cf. Estate of Perry v. Wenzel, 872 F.3d 439, 458 (7th Cir. 2017) ("[T]he law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so.").

Plaintiff's attempt to demonstrate a triable issue as to Nurse Bevenue's alleged knowledge of a change in Plaintiff's condition after she was medically cleared is even feebler. Bevenue did not see Plaintiff prior to the medical emergency. Her knowledge of Plaintiff's admission to the Jail and condition at that time (not in labor, medically cleared, and stable) was derived from Nurse Exum's report to her. Doc. No. 177, ¶ 63. Plaintiff offers no proof information was conveyed to Nurse Bevenue suggesting a change in her condition after arrival in the SMU. Doc. No. 177, ¶ 81. Instead, Plaintiff cites the proximity of the nurses' office to the SMU to suggest that Nurse Bevenue **could** have overheard Plaintiff crying and asking for help in that locked unit. Id. She

---

[4] Asked specifically to admit that Exum had no knowledge of a change in Plaintiff's condition before the birth, Plaintiff objects to the request but offers no affirmative evidence to meet her burden of demonstrating Nurse Exum's alleged knowledge of a change in Plaintiff's condition after her assessment at Froedtert. See Doc. No. 177, ¶ 75 (objecting to Defendants' proposed finding but citing no evidence supporting an inference of Exum's knowledge)). Plaintiff does not propose a finding that Nurse Exum became aware of information after her arrival in the SMU suggesting a change in her condition. See Doc. No. 179, ¶¶ 23-36.

offers no evidence Nurse Bevenue was in the nurses' office the morning of March 10, or that someone in that office could hear anything from an adjacent unit. Id. Her argument lacks any support and inference that Nurse Bevenue knew of a change in Plaintiff's condition. Rather, Bevenue testified she completed a round in the SMU prior to Plaintiff's arrival at the start of her shift at 11:00 p.m. on March 9, 2014. She did not return to the SMU until the medical emergency was called after Plaintiff began to give birth. See Bevenue Dep. at 20:19-22:1 (Exhibit 17).

Plaintiff also suggests Nurse Bevenue was aware Plaintiff was pregnant and had gone to the Hospital to be cleared for admission to the Jail, from which she should have inferred an immediate medical need. Respectfully, the fact that a woman is pregnant and medically-cleared for admission to the Jail by physicians in a Labor and Delivery Department is not evidence of a serious medical need. It is, to the contrary, evidence that the patient has been assessed as stable and appropriate for admission to a correctional facility.

It is undisputed Nurse Bevenue did not receive orders from Dr. Buono requiring more frequent observation in the SMU. Doc. 177, ¶ 80. She therefore relied on her routine, which was to see the patients in the SMU at the beginning of her shift (11 p.m.) and at the end of her shift (after the baby was born). Id., ¶¶ 77-80. The Jail's Pregnancy Management policy provides that "[r]ecommended medications, treatment and follow up will be provided as directed by the practitioner." Knott Suppl. Declaration, Ex. 55 at Armor 329.[5] Nurse Bevenue's reliance on the Jail's established practice for rounding, in the absence of a doctor's order or other information suggesting a need for more frequent rounding, is objectively reasonable as a matter of law.

---

[5] Armor's Pregnancy Management policy was addressed in the County's initial brief (Doc. No. 171 at 38-39 but was inadvertently omitted from the supporting Declaration. (Doct. No. 172). The omission has been rectified. See Knott Suppl. Declaration, Ex. 55, filed herewith.

Gordon, 888 F.3d at 1124-25 (noting defendant must be in a position to appreciate "a high degree of risk involved" in her conduct such that the consequences are "obvious").

This Court recently dismissed claims against officials in Jenkins v. City of Kenosha Wis., 2018 U.S. Dist. LEXIS 152792 (E.D. Wis. September 7, 2018) (Stadtmueller, J.), which closely resemble those brought against Nurses Exum and Bevenue. In that case, the plaintiff was hospitalized after being shot. While recovering a week later, he was arrested and taken by the defendant police officers from the hospital to jail. At the jail, he was placed in a holding cell and informed the defendant booking officers he was in extreme pain and needed medication from the hospital. The booking correctional officers refused to call medical staff and told him that they did not have his medication. Six hours later he was taken to the medical unit for treatment. Jenkins, 2018 U.S. Dist. LEXIS 152792, at *2-3. As to the plaintiff's pretrial detainee denial of medical care claim, this Court noted "[t]he Seventh Circuit describes the claim's elements this way: the pretrial detainee plaintiff must show that the defendants 'acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their [actions],' and the defendants' conduct was objectively unreasonable." Id. at *5 (quoting Miranda v. Cnty. of Lake, 2018 U.S. App. LEXIS 22229, 2018 WL 3796482, at *11 (7th Cir. Aug. 10, 2018)).

> This Court dismissed the claims against the arresting police officers as it was
>
> not alleged that those officers were reckless in deciding to transport Jenkins from the hospital to the Jail (which had a medical unit) or that they had reason to know that, once at the Jail, **the medical staff and other officers would not properly care for Jenkins' injuries. Indeed, the hospital agreed to discharge him to the officers' custody**. In other words, Jenkins has not alleged that the officers acted with purpose, knowledge, or recklessness when considering the consequences of transporting Jenkins from the hospital to the Jail.

Id. (emphasis added). However, the claims against the booking correctional officers were not dismissed. Id. at *5-6. The plaintiff claimed they had allowed him to go without medical treatment

for six hours prior to him being taken to the medical unit and withheld his prescribed pain medication while knowing he was in pain and needed treatment. Id. at *6.

Similar to the arresting officers in Jenkins who were dismissed, Nurses Exum and Bevenue knew that Plaintiff had been released by Froedtert Hospital for return to the Jail, that it had been determined she was not in labor, she did not have contractions on her return, and that Froedtert did not provide any orders for additional treatment or monitoring. They were aware that Dr. Buono – the person responsible for deciding Plaintiff's course of treatment[6] – had ordered Plaintiff's placement on the SMU without any additional monitoring ordered. Doc. No. 177, ¶ 80. Finally, they were aware an officer would be in the SMU mere feet from Plaintiff's cell, could see if an inmate sought medical help, and would performs rounds in the unit. See Exum Dep. at 34:8-14, 36:10-23, 69:20-70:12 (Exhibit 13); Bevenue Dep. at 70:1-7, 75:10-19 (Exhibit 17). Unlike the booking correctional officers who were not dismissed in Jenkins, Nurses Exum and Bevenue did not ignore any complaint of pain or distress from Plaintiff and did not refuse to provide her with any treatment as prescribed by a medical provider. As such, Plaintiff's claim that they denied her medical care fails as a matter of law.

### c. The undisputed evidence demonstrates that Nurses Exum took reasonable measures to abate any risk

Further applying the objective reasonableness standard, Plaintiff must demonstrate that the individual defendants "did not take reasonable available measures to abate [the] risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved." Gordon, 888 F.3d at 1124-25. Plaintiff has conceded Nurse Exum took multiple steps to address Plaintiff's circumstances as she knew it.

---

[6] Nurse Exum testified that doctors and nurse practitioners are responsible for creating treatment plans. See Exum Dep. at 65:3-5 (Exhibit 13).

In their initial brief, the Defendants demonstrated Nurse Exum's reasonableness was beyond credible dispute by (1) the measures she took to personally assess Plaintiff, communicate her findings with Dr. Buono (the Jail's Medical Director), and follow up with the Froedtert providers to obtain additional input; and (2) her reasonable reliance on Dr. Buono's direction as the physician responsible for providing medical orders and direction. Doc. No. 171 at 16-19. In response, Plaintiff concedes the undisputed facts demonstrating Nurse Exum's diligence. Specifically, she concedes Nurse Exum performed her own 20-minute assessment and interview of Plaintiff on her return to the Jail. Doc. No. 177 at ¶¶ 48-53. She concedes Nurse Exum contacted Dr. Buono to discuss Plaintiff's circumstance and followed Dr. Buono's directions in response. Id., ¶¶ 54, 57, 59. Finally, she concedes Nurse Exum testified that she contacted the Froedtert Labor and Delivery Department and spoke to a Froedtert nurse about their assessment of Plaintiff. Id., ¶¶ 59-61. Plaintiff's admissions that Nurse Exum took these measures demonstrates her reasonableness as a matter of law. Cf. Dulany v. Carnahan, 132 F.3d 1234, 1242 (8th Cir. 1997) (noting "care provided must be 'so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.'")

Attempting to undermine Nurse Exum's appropriate reliance on the guidance of a qualified physician, Plaintiff asserts without basis that Nurse Exum misrepresented facts to Dr. Buono. Doc. No. 180 at 12. She contends Nurse Exum falsely reported to Dr. Buono that Plaintiff was told by Froedtert physicians she was **not** in labor. This is an egregious misrepresentation of the record. Nurse Exum did not report to Dr. Buono that **Plaintiff** stated Froedtert physicians informed her that she was not in labor. Dr. Buono testified as follows:

A.    They sent her back because she cleared. She wasn't in labor.
Q.    How do you know that?

| A. | Patient has no contractions. She was seen in the labor and delivery suite. Evaluated by the OB/GYN, and told, "You're not in labor. Come back when you're in labor." |
|----|----|
| Q. | Okay. I follow your logic. I want to make sure I understand.  You're making the assumption if she's at the jail and the jail record says she denies contractions that - |
| A. | No. **The nurse called me** and said, "**They** sent her back. **They** said" -- and I remember this – "'She is not in labor. Come back when you're in labor.'" |

See Buono Dep. at 74:9-24 (Exhibit 14) (emphasis added).  When asked the source of Nurse Exum's comment "she's not in labor", Dr. Buono stated, "I don't know the source of her information." Id. at 75:5-11.  She did not testify Exum reported this as a statement from Plaintiff, as is asserted and there is no support for the claim Nurse Exum provided false information to Dr. Buono.

Plaintiff makes a convoluted argument that Nurse Exum should have treated Plaintiff as if she were in labor because Plaintiff told Nurse Exum that Froedtert staff told Plaintiff that she was currently in labor.  See, *e.g.*, Doc. No. 180 at 10 ("And, critically, Ms. Terry told Exum that she learned at the hospital that she was in labor.").  The argument is preposterous.  Plaintiff would have the Court believe and will apparently argue to a jury, if allowed, that Nurse Exum was obligated to believe Plaintiff and act on her **indisputably false account of the Froedtert physicians' medical conclusion**.  See Doc. No. 177, ¶¶ 36-37 (admitting Defendants' proposed finding of fact that Froedtert physicians determined Plaintiff was not in labor).  Nurse Exum, of course, immediately called the Froedtert staff to confirm that Plaintiff was not in labor, as well as performed her own assessments and called Dr. Buono. Id., ¶¶ 50, 53-54, 59.  It is simply incredible for Plaintiff to argue Exum should have acted on Plaintiff's inaccurate account of her physician's conclusion after confirming it was not true.

Plaintiff takes the absurdity a step further.  She and her experts criticize Nurse Exum for "simply disregarding" Plaintiff's report that she had been told she was in labor "without obtaining

the underlying records to determine the significance of Ms. Terry's information." See Doc. No. 180 at 14, fn. 4. Plaintiff criticizes Nurse Exum for allegedly not doing exactly what she, in fact, successfully accomplished. Nurse Exum "determine[d] the significance" of Plaintiff's information by calling the Froedtert nurse. She learned in that call that Froedtert staff determined Plaintiff was not in labor. [7] Doc. No. 177, ¶¶ 59-60. She also requested "the underlying records" be expedited and faxed to the Jail as soon as possible. Id. It is hard to imagine what more Nurse Exum could have done to "determine the significance of Ms. Terry's information" without driving to the Hospital to interview the obstetrician. She indisputably took "reasonable measures to abate [the] risk." Gordon, 888 F.3d at 1124-25.

### d.  Nurse Bevenue did not create any risk to Plaintiff

Nurse Bevenue made no decision related to Plaintiff's medical care while on the SMU and so cannot have been said to have created any risk to her. As discussed above, Nurse Bevenue completed a round in the SMU prior to Plaintiff's arrival and did not return to the SMU until the medical emergency was called after Plaintiff began to give birth. See Bevenue Dep. at 20:19-22:1 (Exhibit 17). Bevenue did not receive orders from Dr. Buono requiring more frequent observation in the SMU. Doc. 177, ¶ 80. She therefore maintained her routine of seeing patients in the SMU at the beginning of her shift (11 p.m.) and at the end of her shift. Id., ¶¶ 77-80. At the time Plaintiff

---

[7] Plaintiff objects to Defendants' proposed findings of fact on grounds that the Froedtert nurses' confirmation to Nurse Exum that Plaintiff was not in labor is allegedly hearsay. (Dkt. No. 177 at ¶ 59). She does not admit or deny the substance of the proposed finding and therefore concedes it for purposes of the motion. Ammons v. Aramark Unif. Servs., 368 F.3d 809, 818 (7th Cir. 2004) (holding that a nonmoving party's response that factual allegations in the moving party's statement of material facts were irrelevant did not excuse the nonmoving party from indicating whether it admitted or denied the allegations; In re Motorola Sec. Litig., 505 F. Supp. 2d 501, 504 n.1 (N.D. Ill. 2007) (treating the lead plaintiff's statement of additional facts as admitted by the defendants, where the defendants objected to the statements on several grounds, but failed to cite to the record in support of a specific denial). In addition, the nurse's statement to Exum is admissible as a non-hearsay statement intended to show the effect on the listener.

was in labor, Bevenue was handing out medications to inmates on another floor. Doc. No. 177, ¶ 109. As such, it cannot be said Nurse Bevenue created any additional risk to Plaintiff where she was unaware of any change to Plaintiff's condition, was aware an officer was stationed in the SMU to relay any request for medical attention from inmates, and there were no orders for her to further monitor Plaintiff.

## 2. Plaintiff has not demonstrated an issue of material fact as to her Count I claims against Officer Wenzel

As discussed above, numerous cases have held that a plaintiff may not create a materially disputed fact about their medical condition where their statements are contradicted by medical records. As such, it is undisputed that Plaintiff was not in labor until after she arrived on the SMU. Defendants' expert, Dr. Dolan, has opined that Plaintiff's labor was precipitous and occurred with a mere handful of pushes. See Dolan Report at 2, 3 (Exhibit 51). This caused her to deliver with very little time for intervention. Id. at 5. Due to her drug use, Plaintiff "was in a relaxed and sedated condition and appears to not have appreciated the signs and symptoms of labor as other laboring mothers would." Id. Given that she delivered so quickly and was anesthetized to her labor pains, the Court need not credit Plaintiff's claims that she yelled and banged on her cell door and/or window to alert Officer Wenzel. As he therefore had no advanced notice of her labor, it cannot be said that Officer Wenzel acted unreasonably and Plaintiff's Fourteenth Amendment claim against him should be dismissed.

## B. Plaintiff Has Not Opposed Dismissal of Her Failure to Intervene Claim – Count III

Plaintiff filed no opposition to the Defendants' request for summary judgment on her failure to intervene claim (Count III) against Defendants Officer Wenzel, Nurse Exum, and Nurse Bevenue. As such, Defendants' request is unopposed and this Court should dismiss her failure to intervene claims with prejudice.

### C. **Plaintiff Did Not Oppose Dismissal of Her Claims Against Sheriff Schmidt**

Similarly, Plaintiff filed no opposition to the Defendants' request for summary judgment on her claims against Sheriff Schmidt in his individual capacity. As such, Defendants' request is unopposed and this Court should dismiss Plaintiff's individual capacity claim against Schmidt with prejudice.

In addition, Plaintiff's claims against Sheriff Schmidt in his official capacity should also be dismissed. Plaintiff's claims against Sheriff Schmidt in his official capacity are duplicative of the claims brought against Milwaukee County and should be dismissed. The Supreme Court has held that suing municipal or governmental officials in their official capacity under § 1983 is the equivalent of suing the municipality and, thus, duplicative. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Brandon v. Holt, 469 U.S. 464, 471-72 (1985). Plaintiff's claims against Sheriff Schmidt in his official capacity are, in actuality, claims against the County, which is named as a separate Defendant. Thus, naming Sheriff Schmidt in his official capacity is clearly duplicative and unnecessary, and the claims against him in his official capacity should be dismissed.

### D. **Plaintiff's *Monell* Claims Against Milwaukee County Fail**

#### 1. **Plaintiff has failed to demonstrate the existence of a County policy with respect to her healthcare Monell claims or a material issue of fact warranting trial.**

Plaintiff continues to present a moving target for her Monell claims. She now stipulates to dismissal of her claim that the County failed to train its correctional officers on responding to emergencies (Doc. No. 180 at 19), and addresses potential County liability on the other claims in only a cursory fashion. It is not clear, in fact, that she intends to pursue the County for the remaining claims pertaining to Armor healthcare policies and practices. See, Doc. No. 180 at 18 (opposition brief titles section, "**Armor** is not entitled to summary judgment on two of Ms. Terry's

<u>Monell</u> theories"; stating, "Ms. Terry's Amended Complaint alleges **Armor** is liable under the following three theories…") (emphasis added).

Regardless, she cannot establish as a matter of law that County policymakers were aware of a significant problem with Armor's policies or that the policymakers made a conscious choice to continue an unconstitutional practice. <u>See</u> Order of June 4, 2018 (Doc. No. 127) at 10 ("Put differently, Defendants must have had notice of an ongoing problem such that allowing the problem to endure was akin to a conscious choice among alternatives", <u>citing</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989); <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 823 (1985)). Plaintiff alleges nothing more than her own isolated case, which amounts, at most, to negligence. <u>See</u> <u>Daniel v. Cook Cty.</u>, 833 F.3d 728, 734 (7th Cir. 2016) ("The challenge in litigation like this is to distinguish between systemic problems showing official deliberate indifference and occasional lapses that are inevitable even in well-run institutions."). She further fails to demonstrate County culpability or that any such policy inadequacies were a "moving force" and "catalyst" for an injury. <u>See</u> Doc. No. 127 at 11.

### 2. Plaintiff has failed to present credible evidence to support her claim against the County with respect to patients returning to the Jail after specialist care.

Plaintiff contests dismissal of her claim alleging an Armor practice of "admitting inmates back into the jail after being sent to a hospital." Doc. No. 180 at 19. It bears repeating—and Plaintiff did not refute—that if this is a recurrent problem at the Jail it arises from a circumstance in which, by definition, the inmates have been sent to an outside hospital or clinic for specialty care and declared medically stable for admission to the Jail. Plaintiff faces a difficult hurdle in demonstrating that County policymakers made "a conscious choice" to allow inadequate healthcare when the inmates allegedly subjected to the practice have, by definition, had their immediate medical needs addressed by outside providers.

It is undisputed that Plaintiff was given written instructions upon her discharge from Froedtert Hospital and that she brought them to Nurse Exum, who then spoke to Dr. Buono about the "generic orders" and followed Dr. Buono's direction to call the facility to seek more complete documentation. See Doc. No. 177, ¶¶ 38-39, 54, 57, 59. Plaintiff has therefore conceded her claim is not about the **absence** of communication, it is about the **adequacy** of the information. Furthermore, acknowledging that Nurse Exum requested follow up paperwork by telephone before the child was born and provided a fax number to expedite receipt of those records, Plaintiff's claim is reduced to a question of the **timing** of the Jail's receipt of the paperwork. She is describing, at most, an isolated incident of delay. She has not demonstrated a constitutional claim arising from County policy decisions. To allow Plaintiff's claim to proceed would be to impermissibly blur the line between municipal liability and *respondeat superior* liability. See Bd. of Co. Commissioners of Bryan Co. v. Brown, 520 U.S. 397, 407-08 (1997) (noting danger when Monell liability is premised on policies that are not unconstitutional; cautioning the judiciary to "adhere to rigorous requirements of culpability and causation").

Plaintiff fails to demonstrate the County had notice of any problem of the nature she describes. She attempts to demonstrate the existence of a widespread practice through the testimony of Dr. Buono and Nurse Strehlow, both of whom are Armor employees. See Doc. No. 180 at 19-20. She offers no evidence and does not even attempt to argue that Dr. Buono or Nurse Strehlow communicated a concern to County officials. Nor could the medical monitor's reports be reasonably interpreted as providing notice to the County of the paperwork problem she alleges was persistent, widespread and unconstitutionally dangerous. The reports offer no detail on the alleged instances of factually similar events, as is required for her to establish a triable fact. Harper v. Dart, 2015 U.S. Dist. LEXIS 142871, at *8-9 (N.D. Ill. 2015) (plaintiff seeking to assert Monell

claim based on Justice Department complaint must "rely on specific factual allegations in the []
complaint").  Plaintiff has failed to meet her threshold requirement to demonstrate the existence
of a County-endorsed policy.

Finally, Plaintiff fails to address the significant causation problem in her claim, dismissing
the entire issue as "a prototypical jury question." Doc. No. 180 at 26.  She would have the Court
abandon its obligation to "adhere to rigorous requirements of culpability and causation" and allow
the jury to speculate on the issue. Brown, 520 U.S. at 407-08. The premise of her elaborate
argument is that the Froedtert physicians believed she was in labor or sought to convey critical
recommendations regarding Plaintiff's future care.  Neither is true. Doc. No. 177, ¶¶ 36-37.  She
has not demonstrated how earlier confirmation in writing of the Froedtert findings—Plaintiff was
not in labor, stable and due in one week—would have changed her outcome.  Id., ¶ 67.

### 3. Plaintiff has failed to present credible evidence to support her Monell claim against the County with respect Armor's policy on monitoring pregnant and laboring women.

Plaintiff's discussion of County liability for "a gap" in Jail policy on laboring women is
even more cursory and lacking.  She alleges in the most vague terms that "The Defendants, led by
Armor, had a system in place that was not designed to provide adequate care."  Doc. 180 at 28.
She provides no evidence of other similar instances of poor medical outcomes or other evidence
that County officials were or could have been aware of a widespread unconstitutional practice and
consciously chosen to adopt it as policy.  Plaintiff, in fact, offers less support in her opposition to
summary judgment than she did in her initial Complaint, which the Court deemed insufficient even
at a pleading stage.  See Doc. No. 127 at 14 (noting lack of substantiation, concluding, "Two
incidents of childbirth-related mistreatment within the space of two years would not be enough to
sustain a Monell claim on their own, [] and Terry does not argue otherwise" (internal cite omitted)).

Plaintiff acknowledges, importantly, that "Armor wrote a detailed policy showing how pregnant women at the jail should be cared for." Doc. No. 180 at 29. The policy requires that pregnant patients will be managed by obstetricians or qualified providers and vests responsibility for "[r]ecommended medications, treatments and follow-up" with the medical practitioners. See Knott. Suppl. Decl., Ex. 55 at Armor 329. Plaintiff fails to explain why this "detailed policy" addressing the topic of concern is not sufficient to absolve the County of <u>Monell</u> liability. While she alleges the "detailed policy" was not always followed, she offers no evidence that the County was aware of any alleged omission. She simply cannot meet her burden of demonstrating an "entrenched and well-known" practice to ignore the Pregnancy Management policy such that the County is deemed to have elected to tolerate the practice as a policy choice.

### E. Plaintiff's *Monell* Claim Related to Shackling Fails

Acknowledging that she did not suffer a physical injury as a result of being restrained and that she did not voice a concern or express discomfort about the restraint to any person until retaining her current counsel (Doc. No. 177, ¶¶ 169, 175-76), Plaintiff nevertheless contends she suffered an unconstitutional injury. She does not even attempt to demonstrate the restraints were used as punishment or arbitrarily, nor does she address the undisputed evidence that she presented a substantial flight risk based upon her history of ignoring lawful orders and bail-jumping. Id., ¶¶ 1-9. Plaintiff believes, apparently, that any detainee that has been restrained in any circumstance is entitled to have a jury determine whether correctional officials judged correctly in applying security restraints. Such a result would be directly contrary to the U.S. Supreme Court's repeated admonition that federal courts defer to correctional officials in the management of their facilities. See Florence v. Bd. of Chosen Freeholders of the County of Burlington, 566 U.S. 318, 322-33 (2012) (holding "courts must defer to the judgment of correctional officials unless the record

contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security."); Block v. Rutherford, 468 U.S. 576, 589 (1984); Bell v. Wolfish, 441 U.S. 520, 546 (1979) ("Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").

### 1. Plaintiff's Due Process claim fails as a matter of law

Plaintiff's primary argument is that the Jail's restraint policy is excessive because, she contends, it is a "blanket policy" that "does not allow for individualized assessment." Doc. No. 180 at 32-33. She concedes, however, that exceptions to the policy were allowed in her own case, and fails to address the discretion allowed under the policy as to whether the patient will be guarded at all. Doc. No. 177, ¶¶ 130-31, 145. More importantly, she fails to address Florence and its impact on this Court's analysis of May v. Sheahan, 226 F.3d 876, 884 (7th Cir. 2000). The Supreme Court in Florence rejected the premise of May that corrections officials must justify their security decisions based on particularized suspicion, an individual's history, charges or presentation. 566 U.S. at 330. Plaintiff's failure to address the Florence decision is significant. Just as the jail officials in Florence were justified in applying their search protocol **to every detainee** without individualized justifications, the County is not required to demonstrate that it performed an individualized assessment of the risk Plaintiff presented. The Court should reject Plaintiff's suggestion that every instance of correctional restraint presents a jury question. More is necessary.

The Fourteenth Amendment protects a pretrial detainee's right to be free from conditions of confinement that are calculated to punish the individual. Bell, 441 U.S. at 535-36. While a plaintiff need not demonstrate that it was the officials' intention to punish, the conditions at issue must be "gratuitously severe" or "brutal" to constitute punishment in a constitutional sense. See

Hart v. Sheahan, 396 F.3d 887, 892 (2005); May, 226 F.3d at 893.  Plaintiff makes no effort to demonstrate the use of restraints in her case were gratuitous or severe.  See Smith v. Dart, 803 F.3d 304, 309-10 (7th Cir. 2015) (holding that Fourteenth Amendment conditions of confinement case requires proof of conditions "objectively serious enough to amount to a constitutional deprivation," such as "the denial of a basic human need.").  She admits she suffered no physical injury and was not denied healthcare.  Plaintiff has failed to address the constitutional threshold for proceeding.[8]

Plaintiff cites her expert's opinion that restraining post-partum inmates poses "dangers to the patient's physical and mental health, including the likelihood that shackles will reduce mobility, increase risks of falls, create undue pressure on the abdomen, and make healing mothers more uncomfortable and in pain." Doc. No. 180 at 31. Plaintiff suffered none of those complications and does not even contend that she did.  See Doc. No. 177, ¶¶ 26, 175-176; see Plaintiff's Statement of Facts, Doc. No. 179.  Asked in an interrogatory to describe the impact of restraints on her, she responded, "Plaintiff's mobility was restrained."  Doc. No. 177 at ¶ 176. Plaintiff cannot claim a constitutional harm based on injuries she did not suffer.

Plaintiff contends application of restraints in her case is excessive because "it can be addressed through other means."  Doc. No. 180 at 30.  She is suggesting that the availability of less restrictive alternatives allows an inference of excessiveness.  That is precisely the argument that the Supreme Court sought to foreclose in Block where it said, "we rejected in Wolfish the suggestion that the existence of less restrictive means for achievement of security objectives is

---

[8] Plaintiff cites three (3) unpublished decisions that allegedly support her right to proceed. The cases are each distinguishable.  For example, in Flores v. Cook County, 2014 WL 1031494 at *6-7 (N.D. Ill. March 18, 2014), a healthcare provider expressed concern in a note that plaintiff had not been allowed to ambulate in contravention of the provider's recommendation and another provider noted plaintiff was "still in distress" and "upset" due to being handcuffed.  None of those facts are present here.

proof of an exaggerated response to security concerns." 468 U.S. at 581. Plaintiff should not be allowed to proceed with that argument, nor does it serve to meet her burden in opposing summary judgment.

### 2. Plaintiff's Excessive Force claim fails as a matter of law

Plaintiff fails to respond in any meaningful way to Defendants' argument that no officer knowingly and purposefully used force against her in violation of her constitutional rights. <u>See</u> Doc. No. 172 at 54-55, <u>citing</u> <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2473 (2015). She cites no evidence that force was used, but contends that mere application of handcuffs can constitute unreasonable use of force.

Plaintiff fails to address the cases cited by the County demonstrating that something more than <em>de minimis</em> force must be applied in handcuffing/restraint cases. Doc. No. 172-55; <u>see</u>, <u>e.g.</u>, <u>Crumley v. City of St. Paul, Minn.</u>, 324 F.3d 1003, 1008 (8th Cir. 2003) (stating "for the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries"); <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1352 (11th Cir. 2002) (stating that "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal").

The cases cited by Plaintiff in support of her excessive force claim are not applicable. In <u>Herzog v. Village of Winnetka, Ill.</u>, at issue was the use of force on an arrestee where the officers **<u>lacked any probable cause to arrest</u>**. 309 F.3d 1041, 1043 (7th Cir. 2002) (Therefore we must accept that the arrest was made without probable cause and hence in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures; and that without provocation or excuse Powell shoved the middle-aged female plaintiff to the ground and Colleran refused to loosen the plaintiff's chafing handcuffs, both instances of excessive force...). It is

axiomatic that the use of **any** force to effectuate an arrest which lacked probable cause is unreasonable, and therefore excessive, under the Fourth Amendment.

The arrestee in Warren v. Sakuri, 9 F.Supp.2d 991 (N.D. Ill. 1998), unlike Plaintiff, suffered horrific injuries. While handcuffed to a wall, a lighter in her pocket ignited and caused severe burns which resulted in the amputation of five fingers. Warren, 9 F.Supp.2d at 993. The court noted that the excessive force claim did not turn on the mere use of the handcuffs, but whether "there was no need to handcuff plaintiff in the **manner used by defendants**." Id. at 994.

Holmes v. Hoffman Estates, 511 F.3d 673 (7th Cir. 2077), did not involve a challenge to the use of handcuffs. Rather, the question was whether the officers used excessive force when they applied a wristlock in order to secure the handcuffs and one officer ground his knee on the arrestee's face after he was already in handcuffs. Holmes, 511 F.3d at 686-87. Similarly, Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997) did not involve a challenged use of handcuffs.

In Payne v. Pauley, the court again found that a use of force could be unreasonable if the plaintiff could prove her arrest – during which the force at issue was used – lacked probable cause. 337 F.3d 767, 778-80 (7th Cir. 2003). Notably, the plaintiff claimed she suffered significant injuries arising out of the use of handcuffs. Id. at 775.

As Plaintiff has failed to address the cases cited in the Defendants' initial brief and the cases on which she relied in her response in opposition are not applicable, this Court should grant summary judgment as to her excessive force claim.

IV.     **CONCLUSION**

Based on the foregoing, Defendants Milwaukee County, Acting Sheriff Richard Schmidt, Officer Brian Wenzel, Carolyn Exum, R.N., Morgan Bevenue, R.N., and Margaret Hoover, R.N. respectfully request that this Court enter an Order granting summary judgment in favor of the Defendants and against Plaintiff, *with prejudice*, in accordance with Federal Rule of Civil Procedure 56.


Respectfully submitted,

**LEIB KNOTT GAYNOR LLC**


Dated: <u>September 28, 2018</u>          By: */s/ Douglas S. Knott*
                                                          Douglas S. Knott, State Bar No. 1001600
                                                          Cory J. Brewer, State Bar No. 1105913
                                                          Attorneys for County Defendants
                                                          219 N. Milwaukee Street, Suite 710
                                                          Milwaukee, WI 53202
                                                          Telephone: (414) 276-2102
                                                          Fax: (414) 276-2140
                                                          Email: dknott@lkglaw.net
                                                                      cbrewer@lkglaw.net