**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

REBECCA TERRY,

               Plaintiff,                      Case No.:  17-cv-1112-JPS

v.

COUNTY OF MILWAUKEE, et al.

               Defendants.

**INDEX OF UNPUBLISHED AUTHORITIES**
**FOR COUNTY DEFENDANTS' BRIEF IN**
**SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT**

<u>Flores v. Cook County</u>, 2014 WL 1031494 (N.D. Ill. 2014)

<u>Harper v. Dart</u>, 2015 U.S. Dist. LEXIS 142871 (N.D. Ill. 2015)

<u>Jenkins v. City of Kenosha Wis.</u>, 2018 U.S. Dist. LEXIS 152792 (E.D. Wis. Sept. 7, 2018)

<u>Whitehead v. Burnside</u>, 403 Fed. App'x. 401 (11th Cir. 2010)


      Dated this 28th day of September, 2018.

                       **LEIB KNOTT GAYNOR LLC**


                 By: */s/ Douglas S. Knott*
                   Douglas S. Knott, State Bar No.
                   1001600 Cory J. Brewer, State Bar
                   No. 1105913 Attorneys for County
                   Defendants
                   219 N. Milwaukee Street, Suite 710
                   Milwaukee, WI 53202
                   Telephone: (414) 276-2102
                 Fax (414) 276-2140
                   Email <u>dknott@lkglaw.net</u>
                           <u>cbrewer@lkglaw.net</u>



**User Name:** Charles Starnes

**Date and Time:** Friday, September 28, 2018 10:30:00 PM CDT

**Job Number:** 74526175

## Document (1)

1. *Flores v. Sheriff of Cook County, 2014 U.S. Dist. LEXIS 34863*

   **Client/Matter:** Terry - 28.047

   **Search Terms:** Flores v. Cook County

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | urn:hlct:5 | Timeline: Jan 01, 2013 to Dec 31, 2018 |

# *Flores v. Sheriff of Cook County*

United States District Court for the Northern District of Illinois, Eastern Division

March 18, 2014, Decided; March 18, 2014, Filed

No. 10 C 8040

**Reporter**

2014 U.S. Dist. LEXIS 34863 *

JOSE FLORES, Plaintiff, v. SHERIFF OF COOK COUNTY and COOK COUNTY, ILLINOIS, Defendants.

## Core Terms

detainees, bed, shackled, summary judgment motion, escape attempt, hospitalized, deliberate indifference, summary judgment, restrained, pretrial, guarded, leg, medical treatment, medical facility, non-punitive, transported, ambulate, genuine, corrections officer, due process claim, exhibits, walking, pan

**Counsel:** **[*1]** For Jose Flores, Plaintiff: Kenneth N Flaxman, LEAD ATTORNEY, Kenneth N. Flaxman, P.C., Chicago, IL.

For Sheriff of Cook County, Cook County, Illinois, Defendants: Jacqueline B. Carroll, LEAD ATTORNEY, Cook County State's Attorney's Office, Chicago, IL; Kevin Jon Mueller, LEAD ATTORNEY, Woodbury, MN; Michael L. Gallagher, Cook County State's Attorneys Office (50 W), Chicago, IL.

**Judges:** SARA L. ELLIS, United States District Judge.

**Opinion by:** SARA L. ELLIS

## Opinion

### OPINION AND ORDER

Plaintiff Jose Flores brought this civil rights complaint pursuant to *42 U.S.C. § 1983* against Defendants Sheriff of Cook County (the "Sheriff") and Cook County, Illinois (the "County"), alleging that his constitutional rights as a pre-trial detainee were violated by the Sheriff's policy regarding the use of restraints on

detainees while they are at off-site medical facilities.[1] Before the Court is Defendants' motion for summary judgment [68]. Because there is a genuine dispute as to whether the shackling policy is excessive as applied, the Court denies Defendants' motion on Flores' *Fourteenth Amendment* due process claim. However, the Court grants Defendants' motion as to Flores' deliberate indifference to medical needs and *Fourth Amendment* **[*2]** right to dignity claims.

## BACKGROUND[2]

### I. The Sheriff's Restraint Policy for Hospitalized Detainees

The Sheriff maintains a restraint policy with respect to hospitalized detainees "to ensure that the health care needs of hospitalized detainees are met in a humane manner." Def.'s Ex. D at 1. The policy, effective as of October 2008, classifies all detainees transported outside the Cook County Jail (the "Jail") as "high risk." Pursuant to the policy, detainees are never to be left unattended. They are not allowed to leave their hospital bed unless authorized to do so and are to be restrained in a manner that is **[*3]** not to interfere with medical procedures or tests. Specifically, one hand is to be handcuffed to the bed frame, with a reasonable amount of slack provided by the chain so as to allow for arm

---

[1] The County is sued as the statutory indemnitor of the Sheriff.

[2] The facts set forth in this section are derived from the statements of fact submitted by the parties to the extent they comport with *Local Rule 56.1*. They are taken in the light most favorable to Flores, the non-movant. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.

movement. The opposite ankle is also shackled. Any time a detainee is "ambulated, transported or tested," he is to be accompanied by two officers and is still restrained by handcuffs, leg shackles, or some other restraining device. *Id.* at 2. Although detainees are generally to be given bed pans to relieve themselves, the policy also provides that when medically permitted, they will be allowed to use hospital restrooms under guard escort and monitor. Leg shackles may be removed when necessary for medical treatment or therapy.[3]

Superintendent Joseph Brown was previously in charge of the Cook County Department of Corrections ("CCDOC") External Operations Division ("ExOps") and was responsible for the transportation of detainees outside the Jail and the provision of security to outlying hospitals, **[*4]** including John H. Stroger, Jr. Hospital ("Stroger Hospital"). According to Superintendent Brown, in 2009, over 3,500 Jail detainees were scheduled to be transported by ExOps to receive medical treatment at outside hospitals and medical clinics. Less than 30 ExOps officers, however, were assigned to provide security at the three County hospitals and approximately 30 medical clinics where these detainees received treatment.

Over the past fifteen years, there have been more than fifteen escapes or escape attempts by Jail detainees while they were being transported to or from or treated at outside medical facilities. For example, one escape attempt occurred after a detainee was allowed to go to the bathroom unrestrained by handcuffs or shackles. Other escape attempts have been made while detainees have been handcuffed to crutches, restrained in double-locked handcuffs, handcuffed and shackled to a hospital bed, and confined to a wheelchair with a cast on one leg.[4] Some of the detainees that have removed their restraints and attempted to escape have attacked

correctional officers, medical staff, and civilians. The restraint policy for detainees at outside medical facilities is thus based **[*5]** on safety and security concerns as well as to account for the limited number of ExOps officers available to provide security at these outside medical facilities.

## II. Application of the Restraint Policy to Flores

In 1998 and 1999, Flores was arrested on two felony drug charges and released on bond. He failed to appear in court as required, and warrants were thereafter issued for his arrest on both charges. Flores remained at large until January 5, 2009, when he turned himself in to authorities and was processed into the Jail as a pre-trial detainee. At that time, the Jail classified Flores as a medium security prisoner. Soon after entering the Jail, on January 13, 2009, Flores was taken to **[*6]** Stroger Hospital,[5] where he remained until January 17, 2009. Flores was treated for renal failure, lupus, and hypertension. Although Flores testified that his feet were "huge" and "swollen" and that he "couldn't hardly even walk," Def.'s Ex. C 15:21, 24:22-23, his medical records upon admission indicate that he had no leg swelling. Notes from Flores' chart on January 15, 2009 under the "history and physical" section state "DVT [deep vein thrombosis] with ambulating." Pl.'s Ex. 6. In a subsequent "progress note input," it was recorded that, with respect to "DVT prophylaxis," Flores "has been chained to the bed for days and has not been able to ambulate." Pl.'s Ex. 7. Another "progress note input" stated that Flores was "still in distress" and "upset due to cough as well as being handcuffed to bed." Pl.'s Ex. 8. Flores testified that doctors instructed him to walk around but that the correctional officers guarding him did not allow it.

While at Stroger Hospital, Flores **[*7]** was guarded at all times by a CCDOC officer who remained in his hospital room. Flores was also restrained to his hospital bed, with one leg shackled to one side of the bed and the opposite arm shackled to the other side of the bed. Although the shackles prevented him from leaving the bed, he was still able to sit up on the bed and feed himself with his free hand. When he had to urinate or defecate, he was not allowed to leave the bed to go to the bathroom but was instead given a urine-collection

---

[3] A prior version of the policy provided that hospitalized detainees would not be shackled when court order prohibited their use and when a licensed physician prohibited restraint for a valid medical reason.

[4] Although Brown states in his affidavit that the examples he provides of escape attempts are supported by attached police reports, it appears that through inadvertence only certain pages of the police reports were attached to the affidavit. The Court nonetheless considers the specific examples provided by Brown in the affidavit, as he attests that he has personal knowledge of the facts and it is reasonable to conclude that he would have been aware of these escape attempts as Superintendent of ExOps.

---

[5] Stroger Hospital is a 1.2 million square foot, 464 bed hospital. It has a staff of 300 attending physicians and over 400 medical residents and fellows. Its emergency room treats approximately 110,000 patients annually.

device and a bed pan. The restraints were removed for medical procedures as requested by doctors and nurses, which occurred at least two times during Flores' stay at Stroger Hospital. Flores complained only once about his shackles to an unknown female doctor. Although he experienced pain in his ankles from the shackles being tight, Flores agrees that the swelling in his ankles was due to his kidney issues and was not caused by the ankle restraints. Flores does not recall any doctor ordering that his shackles be removed for a medical reason. He did not require medical treatment for any injury caused by being shackled.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is [*8] no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56*. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. *Fed. R. Civ. P. 56* & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id. at 324*; *Insolia v. Philip Morris Inc., 216 F.3d 596, 598 (7th Cir. 2000)*. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp., 200 F.3d 485, 492 (7th Cir. 2000)*, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*.

## ANALYSIS

### I. [*9] Admissibility of Superintendent Brown's Affidavit

Before turning to the merits of the case, the Court must address the parties' dispute over the admissibility of Superintendent Brown's affidavit, which Defendants have submitted in conjunction with their motion for summary judgment. Flores argues that the Court should disregard the affidavit and the accompanying exhibits, as Brown was not disclosed as a witness in Defendants' Rule 26 disclosures and Flores thus has not had an opportunity to depose Brown about the matters set forth in his affidavit. Flores admits, however, that the information included in Brown's affidavit and the exhibits attached thereto were produced by defendants in *Zaborowski v. Dart*, No. 08 C 6946 (N.D. Ill.), a case in which his counsel was also attorney of record.

Defendants do not dispute that Brown was not disclosed as a witness in their Rule 26 disclosures. They nonetheless argue that the affidavit and exhibits are properly before the Court, as the affidavit was invited by Flores' response to their initial motion for summary judgment where Flores challenged Defendants' failure to present factual evidence regarding escapes by hospital detainees. Further, according [*10] to Defendants, Flores cannot claim surprise, as his current counsel was involved in the *Zaborowski* case, in which the same materials were used and for which Brown provided an affidavit. Moreover, Defendants claim Flores cannot argue he has been prejudiced, for he never sought to depose a Rule 30(b)(6) witness, which is essentially the role Brown is playing by providing institutional knowledge on the Sheriff's restraint policy.

Under *Rule 37(e)*, a party that has failed to identify a witness as required by *Rule 26(a)* or *(e)* may not use that witness "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Fed. R. Civ. P. 37(c)(1)*. The determination of whether a *Rule 26(a)* violation is justified or harmless is left to the trial court's discretion. *David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003)*. In determining whether exclusion is warranted, the Court considers: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the [*11] evidence at an earlier date." *Id*.

Having considered these factors, the Court declines to strike Brown's affidavit and the attached exhibits. Defendants' failure to produce the information related to escape attempts and the need for the restraint policy until filing their revised motion for summary judgment cannot be justified. Defendants cannot plausibly claim that they were not aware that they would have to defend the policy as rationally related to a non-punitive purpose. But because the Court denies Defendants'

motion for summary judgment on Flores' *Fourteenth Amendment* due process claim as set forth below, the Court concludes that the late disclosure is harmless. Flores cannot claim surprise, as he himself pointed out in his response to Defendants' initial motion for summary judgment that Defendants had not attempted to defend the policy based on the very evidence they now seek to use. Flores thus should have been prepared to respond to it. But instead of seeking exclusion and at the same time substantively responding to the evidence, Flores has chosen only to pursue the former course at his own peril. One exhibit to the affidavit, the Sheriff's restraint policy, has been the subject **[*12]** of the lawsuit from the beginning of the case and was used by Flores in depositions and is thus not problematic. Counsel for Flores admits that he had access to the documents included in the other exhibit. Any prejudice can be cured by allowing Flores to depose Brown, and thus the Court will reopen discovery for that limited purpose.

## II. *Fourteenth Amendment* Due Process Claim

Flores' claims are against the Sheriff in his official capacity only and thus must be viewed under the framework set forth in *Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*. *See Walker v. Sheahan, 526 F.3d 973, 977 (7th Cir. 2008)* ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself."). The Sheriff may be held liable under *§ 1983* when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell, 436 U.S. at 694*. Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although **[*13]** not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago, 230 F.3d 319, 324 (7th Cir. 2000)*. Flores pursues his claims only through the first avenue of liability, an express policy, and thus the Court need not consider whether liability can be established by the latter two means.

Flores alleges that his due process rights were violated by the Sheriff's restraint policy. "The *Due Process Clause of the Fourteenth Amendment* prohibits the use of bodily restraints in a manner that serves to punish a pre-trial detainee." *May v. Sheahan, 226 F.3d 876, 884 (7th Cir. 2000)*. Although pretrial detainees have "an interest in being free from gratuitously severe restraints and hazards, . . . the detention facility has an interest in protecting the safety of inmates and guards and preventing escapes." *Hart v. Sheahan, 396 F.3d 887, 893 (7th Cir. 2005)*. Thus, the use of physical restraints violates the *Fourteenth Amendment* if "their use is not rationally related to a legitimate non-punitive government **[*14]** purpose or they appear excessive in relation to the purpose they allegedly serve." *May, 226 F.3d at 884*.

The Sheriff argues that the restraint policy is rationally related to the legitimate, non-punitive purpose of maintaining security while detainees are at hospitals outside the Jail. The stated purpose of the policy is to ensure constant visual surveillance of detainees so as to "provid[e] safety for the hospital personnel, citizens of Cook County and the detainee." Def.'s Ex. D at 1. There is undisputed evidence in the record that detainees have attempted to escape while at an outside medical facility or being transported to or from such a facility, even while restrained, and that some of these escape attempts have involved violence. This evidence supports the need for a restraint policy and suggests that such a policy is intended to ensure the safety of those encountering the detainees. Importantly, this need to "maintain[ ] institutional security" has been recognized by the Supreme Court as a goal warranting the "limitation or retraction of the constitutional rights" of pretrial detainees. *Bell v. Wolfish, 441 U.S. 520, 546, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)*; *see also May, 226 F.3d at 884* **[*15]** ("[S]hackling all hospital detainees reduces the risk of a breach of security and thus furthers a legitimate non-punitive government purpose."); *Haslar v. Megerman, 104 F.3d 178, 180 (8th Cir. 1997)* (finding restraint policy constitutional, as it is "eminently reasonable to prevent escape attempts at the outset by restraining hospitalized inmates to their beds"). Flores has not presented any evidence to create a dispute on this issue, nor does the Court find that he could do so, based on Supreme Court and Seventh Circuit precedent. Thus, the Court finds that the restraint policy is rationally related to a non-punitive purpose.

Prison administrators are to be "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell, 441 U.S. at 547*. Nonetheless, to comply with due process requirements, the restraint policy may

not be excessive in achieving its non-punitive purpose. *May, 226 F.3d at 884*. In *May*, although decided at the motion to dismiss stage, the court concluded that "shackling an AIDS patient to his or her bed around the clock, despite **[*16]** the continuous presence of a guard" was "plainly excessive in the absence of any indication that the detainee poses some sort of security risk." *226 F.3d at 884*. Similarly, in *Zaborowski*, the court denied summary judgment where, among other issues, the Sheriff's Office admitted that pregnant detainees in a residential program outside of the Jail were unlikely to be a flight risk and were guarded at all times by correctional officers at outside medical facilities. *Zaborowski v. Dart, No. 08 C 6946, 2011 U.S. Dist. LEXIS 146000, 2011 WL 6660999, at *7 (N.D. Ill. Dec. 20, 2011)*.

Here, there is at least a question of whether the restraint policy is excessive as applied. The restraint policy designates all hospital detainees as high risk, regardless of the classification they have been given at the Jail. Superintendent Brown suggests that this blanket designation is necessary, as escape attempts have occurred even when detainees have not appeared to be flight risks. But Flores argues that it is not appropriate in cases such as his, where he was classified by the Jail as a medium security prisoner and had difficulty walking when he was admitted to Stroger Hospital. Further, as in both *May* and *Zaborowski*, the policy provides **[*17]** that the detainee is constantly guarded by a correctional officer, thus suggesting that the restraint policy may be excessive. Because there is a genuine dispute as to whether the restraint policy is excessive, the Court denies Defendants' motion for summary judgment on Flores's due process claim.

## II. Deliberate Indifference Claim

Although Flores' deliberate indifference claim is brought under the *Fourteenth Amendment* because he was a pretrial detainee, he is entitled to the same protection against deliberate indifference that the *Eighth Amendment* affords convicted prisoners. *Williams v. Rodriguez, 509 F.3d 392, 401 (7th Cir. 2007)*. To prevail on this claim, Flores must demonstrate that he had an objectively serious medical need and that the Sheriff knew of and disregarded the substantial risk of harm. *Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d 525, 529 (7th Cir. 2000)*. Because Flores is proceeding against the Sheriff in his official capacity, challenging the restraint policy itself, he must show that the restraint policy created "a risk of serious harm [that]

was so patently obvious that the municipality must have been aware of [a] risk of harm, and, by failing to act **[*18]** to rectify it, sanctioned the harmful conduct." *Smith v. Sangamon County Sheriff's Dep't, 715 F.3d 188, 192 (7th Cir. 2013)* (alterations in original) (quoting *Estate of Novack, 226 F.3d at 530*).

Flores argues that the Sheriff was deliberately indifferent to his medical needs because physicians at Stroger Hospital ordered that he be allowed to ambulate but he was not allowed to do so. The Sheriff disputes whether there was ever an order given requiring that Flores be allowed to ambulate, but that dispute is immaterial. If such an order had been given and not followed, Flores may have a deliberate indifference claim against the correctional officers who did not follow the order. But § 1983 does not allow for claims based on *respondeat superior*, *King v. Kramer, 680 F.3d 1013, 1020 (7th Cir. 2012)*, and Flores has only brought a claim against the Sheriff in his official capacity. The restraint policy allows for leg irons to be removed when required for medical treatment and therapy, so that the shackling does not interfere with a detainee's medical treatment.[6] Therefore, the policy anticipated the need for restraints to be removed for treatment purposes. Thus, even assuming that Flores was **[*19]** ordered to ambulate but was not allowed to do so, the Sheriff cannot be held liable and summary judgment is granted for Defendants on Flores' deliberate indifference claim.

## III. *Fourth Amendment* Right to Dignity Claim

Flores appears to assert a claim that he has a right to dignity protected by the *Fourth Amendment* that was violated by the Sheriff's shackling policy. The Court is unclear as to the contours of this claim, and Flores acknowledges that he did not plead this legal theory in his complaint. Nonetheless, in his response, he contends that the *Fourth Amendment* was violated because he was required to use a bed pan when he was capable of walking to the bathroom and because he remained shackled in bed despite being told by a physician that walking was important to treat his deep vein thrombosis.

Flores cites no case law to support a finding that the

_____

[6] Flores points out that the 2006 policy contained a more explicit exception but cannot deny that the policy in effect when Flores was at Stroger Hospital provided that leg irons would be "removed from the bed frame . . . for medical treatment/therapy." Def.'s Ex. D at 8.

shackling in this case constitutes an actionable seizure. Moreover, **[*20]** the Court has already determined that the Sheriff cannot be held liable for being deliberately indifferent to Flores' need for ambulation under an *Eighth Amendment* analysis. Flores does not provide any argument as to why the analysis would be different under the *Fourth Amendment* and in fact cites to *Eighth Amendment* cases in support of his claim. Although the Court is not convinced that Flores has any claim under the *Fourth Amendment* with respect to the application of the restraints, even if he did, based on the deliberate indifference analysis above, the Sheriff cannot be held liable for a *Fourth Amendment* violation.

Similarly, Flores has not cited, nor has the Court been able to locate, any case law to support the fact that the use of a bed pan and urine collection device in place of a bathroom qualifies as a constitutional violation that would be actionable under the *Fourth Amendment*. Nor does the Court believe that the *Fourth Amendment* is intended to cover such instances, even taking into account the fact that prisoners and pretrial detainees retain certain constitutional protections during their confinement. *See Bell, 441 U.S. at 545*. Even assuming that the use of a bed pan and **[*21]** urine-collection device is a restriction that violates a protected right under the Constitution, the record does not support a finding that their use was unreasonable in this instance. The restraint policy allows detainees to use hospital restroom facilities when medically permitted. There is no evidence in the record that Flores' doctors determined that his restroom use was medically permitted or even that Flores discussed such use with his doctors. Nor has Flores provided evidence to dispute whether the restriction was a reasonable one. Thus, the Court grants Defendants' motion for summary judgment on Flores' *Fourth Amendment* claim.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment [68] is granted in part and denied in part. Summary judgment is granted for Defendants on Flores' deliberate indifference and right to dignity claims. The Court denies summary judgment on Flores' due process claim. Discovery is reopened for the limited purpose of taking Superintendent Joseph Brown's deposition.

Dated: March 18, 2014

/s/ Sara L. Ellis

SARA L. ELLIS

United States District Judge



**User Name:** Charles Starnes
**Date and Time:** Friday, September 28, 2018 9:59:00 PM CDT
**Job Number:** 74525895

## Document (1)

1. *Harper v. Dart, 2015 U.S. Dist. LEXIS 142871*
   **Client/Matter:** Terry - 28.047
   **Search Terms:** 2015 U.S. Dist. LEXIS 142871
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

Ⓐ Neutral
As of: September 29, 2018 2:59 AM Z

# *Harper v. Dart*

United States District Court for the Northern District of Illinois, Eastern Division

October 21, 2015, Decided; October 21, 2015, Filed

No. 14 C 01237

**Reporter**

2015 U.S. Dist. LEXIS 142871 *; 2015 WL 6407577

DARRYL HARPER, Plaintiff, v. THOMAS DART, et al., Defendants.

**Prior History:** *Harper v. Dart, 2015 U.S. Dist. LEXIS 81575 (N.D. Ill., June 24, 2015)*

## Core Terms

municipal, allegations, deprivation, shackling, widespread practice, motion to dismiss, medical care, facilities, inaccessible, disability, bed, factual allegations, detainees, assigned, custom, great difficulty, accommodate, showering, amend, Jail, wheelchair-bound, Infirmary, toileting

**Counsel:** [*1] For Darryl Harper, Plaintiff: Patrick William Morrissey, LEAD ATTORNEY, Thomas G. Morrissey, Ltd., Chicago, IL; Thomas Gerard Morrissey, Thomas G. Morrissey, Chicago, IL.

For Thomas Dart, Sheriff of Cook County, Defendant: Helen Catherine Gibbons, Michael L. Gallagher, LEAD ATTORNEYS, Cook County States Attorney's Office Daley Ctr., Chicago, IL; Michael Jude Sorich, LEAD ATTORNEY, Cook County State's Attorney, Chicago, IL.

For Cook County, Illinois, Defendant: Sandra A. Navarro, LEAD ATTORNEY, Cook County State's Attorney's Office, Chicago, IL; Thomas E. Cargie, LEAD ATTORNEY, Cook County State's Attorney's Office (69W), Chicago, IL.

**Judges:** Honorable Edmond E. Chang, United States District Judge.

**Opinion by:** Edmond E. Chang

## Opinion

**Memorandum Opinion and Order**

Darryl Harper is a detainee at the Cook County Jail. He is disabled, wheelchair-bound, and suffers from several chronic illnesses. Harper complained to correctional officers, asking for handicap-accessible housing and adequate medical care. He says his complaints were ignored. Furthermore, Harper alleges that during his stay at Stroger Hospital, which is the primary hospital for the Jail, he was shackled to his hospital bed per a Sheriff's Department policy. [*2] Based on these allegations, Harper sued Sheriff Dart, in his official capacity only, and Cook County under *42 U.S.C. § 1983*; the American with Disabilities Act, *42 U.S.C. § 12132*; and the Rehabilitation Act, *29 U.S.C. § 794*.[1]

Cook County answered, R. 83, but Dart moved to dismiss, R. 84, Mot. Dismiss. Dart argues that Harper has failed to adequately plead any of his claims. The Court agrees in part. Dart's motion to dismiss is granted (though without prejudice, at least for now) as to Harper's *§ 1983* claims for inadequate facilities and medical care, and as to his ADA and Rehabilitation Act claims. But the motion is denied as to Harper's *§ 1983* claim based on Dart's shackling policy.

### I. Background

In considering the motion to dismiss, Harper's factual allegations must be accepted as true. Harper entered the Cook County Jail on March 12, 2013. R. 82, Second Am. Compl. ¶ 5. He must use a wheelchair and he suffers from several chronic medical conditions. *Id.* ¶ 6. Since the time of Harper's intake, correctional staff has been aware that Harper requires special housing to accommodate [*3] his physical limitations and need for regular medical care. *Id.* ¶ 7. Harper repeatedly

---

[1] The Court has subject-matter jurisdiction over these federal claims under *28 U.S.C. § 1331*. Citations to the record are "R." followed by the docket number then the page or paragraph number.

requested accessible living conditions. *Id.* ¶ 8. His requests were ignored and he was assigned to an inaccessible cell. *Id.* For most of Harper's incarceration, he has been assigned to the third floor of Cermak Infirmary. *Id.* ¶ 11. The cell's layout causes Harper "great difficulty" with showering, toileting, and getting into bed. *Id.* ¶ 9. Harper also alleges that he has been injured by deficiencies in the quality of the infirmary's medical care; the deficiencies are supposedly the subject of *United States v. Cook County*, 10 C 2946. *Id.* ¶ 12. Per Harper, the infirmary's inadequate medical care required him to be admitted to Stroger Hospital on several occasions. *Id.* ¶ 13. While at the Hospital, he was, at all times, shackled to his bed per Dart's explicit policy. *Id.* ¶ 14. Requests to remove the shackles were ignored. *Id.* ¶ 15.

## II. Standard

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009)*. *Rule 8(a)(2)* applies to most claims, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. This short and plain statement must "give the defendant **[*4]** fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (alteration in original) (internal quotation marks and citation omitted). And it must "contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Twombly, 550 U.S. at 570*). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*. Factual allegations, but not legal conclusions, are assumed to be true. *Iqbal, 556 U.S. at 678-79*.

## III. Analysis

Relying on Harper's complaint and the parties' briefs, the Court construes Harper as making four claims against Dart and Cook County:

> (1) a *Monell* claim alleging a widespread practice of providing constitutionally inadequate medical care,
>
> (2) a *Monell* claim based on Dart's express policy of

shackling detainees in the hospital,

> (3) a *Monell* claim alleging a widespread practice of assigning wheelchair-bound inmates to constitutionally inadequate, inaccessible housing; and
> (4) claims under the ADA and the Rehabilitation Act (which follow the same analysis, so the Court treats them as one claim for now) also alleging inaccessible facilities.

The Court addresses each in turn.

## A. *Section 1983* Claims

Harper brings three claims under *42 U.S.C. § 1983*. *Section 1983* provides **[*5]** that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights ... secured by the Constitution ... shall be liable to the party injured." To hold a municipality liable, not only must a plaintiff prove the deprivation of an underlying substantive right (*§ 1983* does not supply the substantive right, and instead is only the cause of action to vindicate the right), the plaintiff must show that the deprivation was caused by the municipality's policy or custom, or by a final policymaker for whom the municipality is responsible. Here, Harper's *§ 1983* claims are against Dart in his official capacity as Cook County's Sheriff. R. 99, Minute Entry ("Plaintiff confirmed that there is no claim against Dart in his individual capacity."). Official capacity claims against municipal officials are, in effect, claims against the municipal body itself. *Walker v. Sheahan, 526 F.3d 973, 977 (7th Cir. 2008)* ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself.") (citing *Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991))*. Municipalities, like individuals, are suable "persons" under *§ 1983*. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)* ("We held in *Monell* ... **[*6]** that municipalities and other local governmental bodies are "persons" within the meaning of *§ 1983*.") (citing *Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978))*. Claims against municipalities are often called *Monell* claims. To make out a *Monell* claim—that is to show that a municipal "person" caused a deprivation of the plaintiff's constitutional rights—a plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind

it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau, 506 F.3d 509, 514 (7th Cir. 2007)* (internal quotation marks omitted). That showing, practically speaking, breaks down into three parts.

First, the plaintiff must allege that he or she has suffered the deprivation of a constitutional right. *See 42 U.S.C. § 1983.* (*Section 1983* is only a vehicle to vindicate rights found elsewhere, most often in the United States Constitution; it provides no substantive rights itself.) Second, the plaintiff must allege that the municipality's "official policy or custom," the one the plaintiff believes caused him harm, actually exists. *Estate of Sims, 506 F.3d at 514.* There are three ways to do this: one can allege "(1) an express policy, (2) a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or (3) [] the actions of an individual who possesses the **[*7]** authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 675 (7th Cir. 2012).* The express-policy and individual-action routes are self-explanatory. But to go the widespread-practice route, a plaintiff must allege that the relevant official (in this case Dart) was "deliberately indifferent to the known or obvious consequences" of the alleged widespread practice. *Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 303 (7th Cir. 2009)* (quoting *Gable v. City of Chicago, 296 F.3d 531, 537 (7th Cir. 2002)).* In order for a plaintiff to prevail on a deliberate-indifference claim in this context, the relevant official "must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.* There can be no liability under the widespread practice theory unless the plaintiff shows (and at the pleading stage, adequately alleges) that the official knew of the practice or that it was "so pervasive" that he must have known. *See Phelan v. Cook County, 463 F.3d 773, 790 (7th Cir. 2006).* Finally, once the plaintiff has alleged a deprivation and a custom or a policy, the plaintiff must allege causation: the plaintiff must connect the policy or custom to the constitutional deprivation by alleging that the former was the "moving force" behind the latter. *Estate of Sims, 506 F.3d at 514.*

### 1. Inadequate Medical Care

Dart's motion to dismiss **[*8]** is granted as to Harper's *Monell* claim alleging a widespread practice based on "structural problems in the administration of healthcare at the jail" including inadequate staffing, "assigning the sickest prisoners to the third floor of Cermak Infirmary,"

and the failure to provide "life essential wound care." Second Am. Compl. ¶¶ 11-13; R. 91, Harper's Resp. Br. at 6. The underlying substantive right arises from the *Due Process Clause of the Fourteenth Amendment*, which bans deliberate indifference to the serious medical needs of pretrial detainees. *Pittman v. Cnty. of Madison, 746 F.3d 766, 775 (7th Cir. 2014).* To succeed on a *Monell* claim based on a widespread practice, Harper must allege that the conditions were so persistent and widespread that Dart must have known about them. *Latuszkin v. City of Chicago, 250 F.3d 502, 505 (7th Cir. 2001)*; *Thomas v. Sheahan, 499 F. Supp. 2d 1062, 1094 (N.D. Ill. 2007).*

The Second Amended Complaint falls well short of adequately alleging a widespread-practice claim. Aside from alleging that it was Dart's "widespread practice . . . to assign some of the Jail's sickest prisoners to the third floor of the Cermak Infirmary" and citing—by name only—another case involving the same issues (the prison-institution litigation brought by the United States Justice Department in *United States v. Cook County*), Harper provides no *factual* allegations (as distinct from statements of bare conclusions) **[*9]** to support this claim. Second Am. Compl. ¶ 12. To be sure, it might have been appropriate for Harper to rely on specific factual allegations in the Justice Department complaint, but Harper makes no effort to actually point to any. Only when the specific factual allegations are known can the Court possibly evaluate whether a claim has been stated as a matter of substance (that is, deliberate indifference to serious medical needs) or, more importantly here, as a matter of stating a *Monell* claim. In an adversarial system of litigation, it is not up to the Court to sift through the referenced-lawsuit's filings, of which there are hundreds, looking for factual allegations to support Harper's attempt to plead a claim on this issue.

### 2. Shackling Claim

Dart's motion to dismiss is denied as to Harper's claim challenging Dart's "explicit policy" of shackling wheelchair-bound detainees in Stroger Hospital. Second Am. Compl. ¶¶ 13-16; Harper's Resp. Br. at 7. To state a claim for unlawful restraint (again, under the *Due Process Clause of the Fourteenth Amendment*), Harper must allege that the use of bodily restraints is not rationally related to a legitimate non-punitive government purpose or that their use appears excessive and objectively **[*10]** unreasonable in relation to the purpose they serve. *Davis v. Wessel, 792 F.3d 793, 800*

(7th Cir. 2015); *see also* May v. Sheahan, 226 F.3d 876, 884 (7th Cir. 2000).[2] Harper alleges that, per an official policy, he was shackled to his hospital bed despite the presence of two armed guards. Second Am. Compl. ¶ 14; Harper's Resp. Br. at 7. This was excessive, he argues, because he is wheelchair-bound and his chronic health conditions make him less dangerous. *Id.* at 11. Those allegations state a claim. Harper's allegations are very close to, if not more serious than those in *May*, which reversed the grant of a motion to dismiss a claim based on the same policy. *226 F.3d at 884*. At this stage of the litigation, the inquiry is limited to the facts in the Second Amended Complaint, which of course does not set forth any facts that would justify always shackling every prisoner to a hospital bed at all times, even though armed guards are present. This claim survives.

### 3. Inaccessible Facilities

Dart's motion to dismiss is granted as to Harper's claim that Dart was deliberately indifferent to a widespread practice at the jail of assigning wheelchair-bound detainees to inaccessible housing. Second Am. Compl. ¶¶ 9-11; Harper's Resp. Br. at 4. This practice, per Harper, deprived him of his constitutional right to "the minimal civilized measure of life's necessities" by "caus[ing] him great difficulty when toileting, showering, and transferring to his assigned bed." Second Am. Compl. ¶ 9. The Second Amended Complaint does not describe what is meant by "great difficulty."

It is of course true that "facilities to wash and use the toilet," among other things, "are among the minimal civilized measure of life's necessities that must be afforded prisoners." *Jaros. v. Ill. Dep't of Corr., 684 F.3d 667, 670-71 (7th Cir. 2012)*. But experiencing "great difficulty" which is how Harper characterizes the use of the facilitites) accessing or using these necessities is not the same as not having them; difficulty is not deprivation, and deprivation is what violates the Constitution. *Id. at 671*. In **[*12]** *Jaros*, the Seventh Circuit distinguished between a disabled inmate's constitutional claim and his claim under the ADA and the Rehabilitation Act. When rejecting the *constitutional* claim for access to showers, the Seventh Circuit went so far as to point out the number of times the inmate showered per month (four times), and that the presence of grab bars would not have made a difference to the amount of pain he experienced because he experienced the same severe pain all the time. *Id.* In the Second Amended Complaint, Harper does not explain what is meant by "great difficulty," which really is just a bare conclusion rather than a *factual* allegation entitled to the presumption of truth. It might very well be that Harper could allege facts to state a claim, and (as discussed below) he may seek leave to amend the complaint again (the dismissal is, for now, without prejudice), but the Second Amended Complaint does not state a claim.

### B. Statutory Claims

Although a much closer question, Dart's motion to dismiss is also granted on the claim that Dart violated Harper's rights under the ADA and the Rehabilitation Act by denying him equal access to washing facilities, toilets, and bedding. Second **[*13]** Am. Compl. ¶ 9. To state a claim under the Rehabilitation Act,[3] Harper "need only allege that (1) he is a qualified person (2) with a disability and (3) [Dart] denied him access to a program or activity because of his disability." *Jaros, 684 F.3d at 671-72* (citing *29 U.S.C. § 705(2)(B)*). One can "deny access" by failing to reasonably accommodate a plaintiff's disability. *Id.* ("Refusing to make reasonable accommodations is tantamount to denying access; although the Rehabilitation Act does not expressly require accommodation, the Supreme Court has located a duty to accommodate in the statute generally.") (internal quotation marks omitted).

---

[2] Restraint claims by pretrial detainees, like Harper's, have traditionally been evaluated under this standard, which originated in *Bell v. Wolfish, 441 U.S. 520, 561, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)* and *Youngberg v. Romeo, 457 U.S. 307, 324, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982)*. But there is an argument that *Kingsley v. Hendrickson, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015)*, which adopted an objective standard for excessive force claims brought by pretrial detainees, *id. at 2470*, may be a better fit. *See Davis, 792 F.3d at 801* ("There was great debate between the parties as to whether *Kingsley* **[*11]** ... controls this [restraint] case."). The parties here have not raised that possibility but should consider whether to do so at the summary judgment stage.

[3] Dart concedes that the analysis under both Acts is materially identical. R. 84, Dart's Br. at 4, n.1 (citing *Jaros, 684 F.3d at 671*). And the two Acts also provide the same relief. *Id. at 671-72*. The only material difference is that the Rehabilitation Act requires the plaintiff to prove that the defendant accepts federal funds. R. 84, Dart's Br. at 4, n.1 (citing *Id. at 671*). Dart rightly concedes this point. *Id.* So, for simplicity's sake, this Court will, as the Seventh Circuit has done, "dispense with the ADA" analysis and focus on the Rehabilitation Act. *Id. at 671-72*.

Harper comes close, but fails, to state a claim under the ADA and the Rehabilitation **[\*14]** Act. It is true that Harper adequately alleges that he is a qualified, disabled person by alleging that he is wheelchair bound. *See* *Wagoner v. Lemmon, 778 F.3d 586, 592 (7th Cir. 2015)* ("Wagoner's paraplegia qualifies as a disability."); *see also* *Jaros, 684 F.3d at 671-72* (prisoner-plaintiff with hip problem qualified due to mobility impairment). But Harper fails to adequately allege *facts* as to a denial of equal access. As in his parallel constitutional claim, all Harper has alleged is "great difficulty" showering, toileting, and getting into bed. Those two words alone do not explain how Harper was denied equal access and are therefore not enough to allow a plausible inference that the failure to give Harper different accommodations denied him access equal to that of other prisoners. To be sure, it would not have taken much to adequately allege a failure to provide equal access. *See* *Jaros, 684 F.3d at 671-72* (reversing order granting motion to dismiss where prisoner explained how inaccessible facilities affected his access to meal and shower facilities). But once again Harper's allegations are just conclusions without facts, which are not enough. As discussed next, the dismissal of the ADA and Rehabilitation Act claims is also without prejudice, but it is up to Harper to seek leave **[\*15]** to amend.

## C. Leave to Amend

Harper's *§ 1983* claims for inadequate medical care and inaccessible facilities, as well as his ADA and Rehabilitation Act claims, are dismissed without prejudice. If Harper wishes to re-plead them, he must file a motion seeking leave to do so. Given the discovery schedule, this motion will be due on or before November 17, 2015. Also, because the Rule 16(b) deadline to amend the pleadings has passed, R. 21 ("any amendments to pleadings ... shall be filed on or before 08/04/2014"), Harper will need to satisfy the "good cause" standard in Rule 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). He must therefore explain why—this late in the game—he deserves a fourth chance at pleading these claims. Perhaps the parties have engaged in enough discovery so that the claims have been made more specific, so leave to amend would be appropriate (and perhaps would be uncontested, at least in part), but Harper must take the initiative to propose a Third Amended Complaint and to explain why leave is justified.

## IV. Conclusion

Dart's motion to dismiss, R. 84, is granted as to Harper's *§ 1983* claims for inadequate medical care and inaccessible facilities and as to Harper's **[\*16]** statutory claims. The motion is denied as to Harper's shackling claim.

/s/ Edmond E. Chang

Honorable Edmond E. Chang

United States District Judge

DATE: October 21, 2015

**End of Document**



**User Name:** Charles Starnes
**Date and Time:** Friday, September 28, 2018 9:58:00 PM CDT
**Job Number:** 74525887

## Document (1)

1. *Jenkins v. City of Kenosha Wis., 2018 U.S. Dist. LEXIS 152792*

   **Client/Matter:** Terry - 28.047
   **Search Terms:** 2018 U.S. Dist. LEXIS 152792
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

## *Jenkins v. City of Kenosha Wis.*

United States District Court for the Eastern District of Wisconsin

September 7, 2018, Decided; September 7, 2018, Filed

Case No. 17-CV-1779-JPS

**Reporter**

2018 U.S. Dist. LEXIS 152792 *

FEEONQUAY JENKINS, Plaintiff, v. CITY OF KENOSHA WISCONSIN, OFFICER WILLIE HAMILTON, POLICE OFFICER JOHN DOE, POLICE CHIEF DANIEL MISKINIS, KENOSHA COUNTY WISCONSIN, SHERIFF DAVID BETH, BOOKING CORRECTIONAL OFFICIAL DOE, SECOND CORRECTIONAL OFFICIAL DOE, KENOSHA COUNTY CORRECTIONAL HEALTH SERVICES MANAGER DENISE, and KENOSHA COUNTY CORRECTIONAL MEDICAL DIRECTOR DR. ADBUL DURRANI, Defendants.

**Prior History:** *Jenkins v. City of Kenosha Wisconsin, 2018 U.S. Dist. LEXIS 94788 (E.D. Wis., June 6, 2018)*

## Core Terms

allegations, amended complaint, pain, medical care, screening, transport, detainee, arrest, custom

**Counsel:** [*1] Feeonquay Jenkins, Plaintiff, Pro se, Kenosha, WI.

**Judges:** J. P. Stadtmueller, United States District Judge.

**Opinion by:** J. P. Stadtmueller

## Opinion

### ORDER

Plaintiff Feeonquay Jenkins ("Jenkins"), who is incarcerated at Kenosha County Jail, proceeds in this matter *pro se.* He filed a complaint alleging that the defendants violated his constitutional rights. (Docket #1). On June 6, 2018, the Court screened Jenkins' complaint pursuant to *28 U.S.C. § 1915A(a).* (Docket #12). The Court identified several deficiencies in

Jenkins' complaint, finding that it failed to state a valid claim for relief as pleaded. *Id.* at 5-7. The Court permitted Jenkins the opportunity to correct those deficiencies and ordered that he file an amended complaint no later than thirty days from entry of that order, meaning on or before July 6, 2018. *Id.* at 7.

On July 5, 2018, Jenkins filed a motion for an extension of time to file an amended complaint. (Docket #13). He asked for sixty additional days to complete that filing. *Id.* He offered no reason for his delinquency, apart from a brief mention of medical records. *Id.* Then, on July 9, 2018, the Court received from Jenkins an amended complaint dated July 3, 2018. (Docket #14). Although the amended complaint was filed beyond the Court's [*2] deadline, the Court will nonetheless accept it in this instance. His motion for an extension of time will be denied as moot. Jenkins is admonished, though, that any failure to comply with a Court order in the future may result in dismissal of his case.

The Court will screen the amended complaint pursuant to *28 U.S.C. § 1915A(a).* All of the standards applicable to screening announced in the Court's original screening order apply here. (Docket #12 at 1-3).

Jenkins' amended complaint is premised on the same operative facts as was his original complaint. Jenkins alleges that on March 27, 2016 he was shot and taken to Froedtert Hospital of Wisconsin. (Docket #14 at 2). About a week later, while Jenkins was still recovering, Kenosha police officers Willie Hamilton ("Hamilton") and John Doe arrived at the Hospital claiming to have a warrant for Jenkins' arrest, and they arrested him. *Id.* at 6. The officers took Jenkins to Kenosha County Jail (the "Jail"). *Id.* at 7. Jenkins complains that the officers did not consider the severity of his injuries when deciding to remove him from the hospital. *Id.*

Once at the Jail, Jenkins was placed in an unsanitary holding cell by defendants Booking Correctional Official Doe and Second Correctional [*3] Official Doe. *Id.* He

told those officers that he was in excruciating pain from his injuries and needed the medication that was sent along with him from the hospital. *Id.* The officers told Jenkins they did not have his medication and they refused to call medical staff to attend to Jenkins' medical needs. *Id.* After six hours, Jenkins was taken to the medical unit. *Id.* He does not describe the care he was given there.

On the night of April 8, 2016, which the Court assumes was Jenkins' first night in the Jail, no one came to check on him. *Id.* at 8. The next morning, a medical staffer came around with medications, and Jenkins told him that he was in pain and needed his bandages changed. *Id.* That person told Jenkins to file a medical request. *Id.* Jenkins then filed a grievance complaining about his pain and the delay of medical treatment therefor. *Id.*

On April 10, 2016, Jenkins' bandages were changed by a nurse at the Jail. *Id.* Jenkins noticed yellow puss and a foul odor during the changing, but the nurse did not mention or attend to those things. *Id.* Jenkins continued to suffer a great deal of pain. *Id.* Later that day, an officer performing his rounds noticed that Jenkins was suffering, saw that **[*4]** the gauze on Jenkins' side was saturated with puss, and called a nurse. *Id.* Jenkins was then transported to Aurora Hospital, examined, and then transferred to Froedtert Hospital, where he learned that he had contracted a staph infection and MRSA. *Id.* Jenkins remained in the hospital for a week for treatment, all the while in pain. *Id.*

Jenkins was then sent back to the Jail, where he was placed in "isolation" in the medical ward. *Id.* He soon posted bond and was released from the Jail. *Id.* at 9.

The Court will examine Jenkins' allegations as they relate to each of the named defendants. First, Jenkins seeks to sue Hamilton and Officer John Doe for violation of his right to adequate medical care by arresting him at the hospital and transporting him to the Jail.

The Supreme Court first recognized an incarcerated person's right to receive adequate medical care in *Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)*, which concerned a convicted prisoner. In that case, the Court concluded that deliberate indifference to a prisoner's serious medical need violates the *Eighth Amendment's* protection against cruel and unusual punishment. *Id. at 104-05.* But a pretrial detainee, unlike a convicted prisoner, is still entitled to the presumption of innocence, and therefore he cannot be punished **[*5]** at all. *Kingsley v. Hendrickson, 135 S. Ct. 2466, 2475, 192 L. Ed. 2d 416 (2015).*

In light of this distinction, the Seventh Circuit recently made clear that a pretrial detainee's medical-care claim arises under the *Fourteenth Amendment* and is subject only to an objective unreasonableness inquiry. *Miranda v. Cnty. of Lake, No. 17-1603, 2018 U.S. App. LEXIS 22229, 2018 WL 3796482, at *11 (7th Cir. Aug. 10, 2018).* The Seventh Circuit describes the claim's elements this way: the pretrial detainee plaintiff must show that the defendants "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their [actions]," and the defendants' conduct was objectively unreasonable. *Id.*

Under this standard, Jenkins' claims against Hamilton and Officer John Doe cannot proceed. Jenkins has not alleged that those officers were reckless in deciding to transport Jenkins from the hospital to the Jail (which had a medical unit) or that they had reason to know that, once at the Jail, the medical staff and other officers would not properly care for Jenkins' injuries. Indeed, the hospital agreed to discharge him to the officers' custody. In other words, Jenkins has not alleged that the officers acted with purpose, knowledge, or recklessness when considering the consequences of transporting Jenkins from the hospital to the Jail.

The same is not true for Jenkins' claims against **[*6]** Booking Correctional Official Doe and Second Correctional Official Doe. He alleges that they purposely held him for six hours without medical attention and withheld his prescribed pain medication, all the while knowing that he was in pain and needed medical treatment. Given the lenient standard applied at screening, these allegations suffice to state a *Fourteenth Amendment* claim for violation of Jenkins' right to adequate medical care.

Next, Jenkins alleges that Kenosha County (the "County"), Sheriff David Beth ("Beth"), Jail Health Services Manager Denise ("Denise"), and Jail Medical Director Dr. Abdul Durrani ("Durrani") "have a policy and practice of not providing immediate medical care and treatment to individuals brought into their care and custody[]." (Docket #14 at 20). As to Beth, Denise, and Durrani, Jenkins' amended complaint includes no allegations about them whatsoever, apart from his statement implying that because they have supervisory roles, they are responsible for the actions of those they supervise. It is "well-settled that a claim against a state or local agency or its officials may not be premised upon a *respondeat superior* theory." *Rascon v. Hardiman, 803*

F.2d 269, 274 (7th Cir. 1986)* (citing *Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978))*. Further, individual liability under *Section 1983* "requires **[\*7]** personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago, 851 F.3d 649, 657 (7th Cir. 2017)* (quotation omitted). Jenkins makes no such allegations about Beth, Denise, and Durrani, and his claims against them will, therefore, be dismissed.

As to the County, Jenkins' claim could only proceed if he sufficiently alleged the elements of a *Monell* claim. *See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*. *Monell* provides an avenue for relief against a governmental entity for constitutional violations that are caused directly by a policy or custom of the governmental entity. *Id. at 694*. To maintain a *Section 1983* claim against a governmental entity, the plaintiff must first identify a "policy or custom" attributable to governmental policymakers. *Gable v. City of Chicago, 296 F.3d 531, 537 (7th Cir. 2002)* (citing *Monell, 436 U.S. at 691-94*). A "policy or custom" may take one of three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although notice authorized by written law or express [governmental] policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (quotation omitted). The plaintiff must also demonstrate "the requisite causation," which **[\*8]** means that "the policy or custom was the 'moving force' behind [his] constitutional deprivation." *Id.*

Jenkins has not alleged that County has an express policy that compels the mistreatment of injured detainees; indeed, he does not allege that the booking officer defendants acted in accordance with, or contravention of, any policy at all. He also has not alleged that the County has a widespread practice of mistreating injured detainees; he only makes allegations about his individual experience. Finally, he does not allege that any person with final policymaking authority actually caused his injury. His passing references to the sheriff and the Jail's medical staff supervisors do not amount to allegations of affirmative acts on their parts to deprive him of his constitutional rights.

Finally, Jenkins alleges that the City of Kenosha (the "City") and Daniel Miskinis ("Miskinis"), the City's police chief, failed to properly train their officers regarding the arrest of someone with serious injuries. (Docket #14 at

20). But a municipality (or its official sued in his official capacity) cannot be liable under a *Monell* failure-to-train theory when there is no underlying constitutional violation **[\*9]** by a municipal employee. *Sallenger v. City of Springfield, Ill., 630 F.3d 499, 504 (7th Cir. 2010)*. Because Jenkins has not stated a constitutional claim based on his arrest and transport from the hospital to the Jail, he cannot maintain a *Monell* claim against the City or Miskinis.

In sum, the Court finds that Jenkins may proceed only on his claims against Booking Correctional Official Doe and Second Correctional Official Doe for violation of his *Fourteenth Amendment* right to adequate medical care.

To facilitate service of the complaint and identification of the Doe defendants, the Court will leave Sheriff Beth, for the time being, as a defendant in this action. *See Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir. 1981)*. Plaintiff is advised that in the Court's scheduling order, which will be issued after Beth is served, he will be afforded a period of time in which to conduct discovery into the identities of the Doe defendants. He should seek this information from Beth. Failure to amend the complaint to identify the Doe defendants by the deadline set forth in the scheduling order may result in dismissal of this action. Once the Doe defendants are identified, the Court will dismiss Beth as a defendant.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for an extension of time **[\*10]** (Docket #13) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants City of Kenosha Wisconsin, Officer Willie Hamilton, Police Officer John Doe, Police Chief Daniel Miskinis, Kenosha County Wisconsin, Kenosha County Correctional Health Services Manager Denise, and Kenosha County Correctional Medical Director Dr. Abdul Durrani be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint (Docket #14) and this order upon defendant Sheriff David Beth pursuant to *Federal Rule of Civil Procedure 4*. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. *28 U.S.C. § 1921(a)*. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at *28 C.F.R. §§ 0.114(a)(2)*, *(a)(3)*. Although Congress requires the court to order service by the U.S. Marshals Service

precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service;

**IT IS FURTHER ORDERED** that Defendants shall file a responsive pleading to the amended complaint;

**IT IS FURTHER ORDERED** that the agency **[*11]** having custody of Plaintiff shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with *28 U.S.C. § 1915(b)(2).* The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that Plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised **[*12]** that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 7th day of September, 2018.

BY THE COURT:

/s/ J. P. Stadtmueller

J. P. Stadtmueller

U.S. District Judge

**End of Document**

Charles Starnes



**User Name:** Charles Starnes

**Date and Time:** Friday, September 28, 2018 9:58:00 PM CDT

**Job Number:** 74525884

## Document (1)

1. _Whitehead v. Burnside, 403 Fed. Appx. 401_

   **Client/Matter:** Terry - 28.047

   **Search Terms:** 403 Fed. App'x. 401

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

# *Whitehead v. Burnside*

United States Court of Appeals for the Eleventh Circuit

November 17, 2010, Decided; November 17, 2010, Filed

No. 10-11911 Non-Argument Calendar

**Reporter**

403 Fed. Appx. 401 *; 2010 U.S. App. LEXIS 23794 **

DONALD W. WHITEHEAD, Plaintiff-Appellant, versus EDWARD H. BURNSIDE, Defendant-Appellee.

**Notice:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History: [**1]** Appeal from the United States District Court for the Middle District of Georgia. D. C. Docket No. 5:08-cv-00193-CAR.

*Whitehead v. Burnside, 2010 U.S. Dist. LEXIS 29425 (M.D. Ga., Mar. 25, 2010)*

**Disposition:** AFFIRMED.

## Core Terms

summary judgment, surgery, deliberate indifference, records, genuine, medical opinion, prison

## Case Summary

### Procedural Posture

Plaintiff inmate appealed a grant of summary judgment by the United States District Court for the Middle District of Georgia in favor of defendant, a prison medical director, on the inmate's claim of deliberate indifference to a serious medical need in violation of the *Eighth Amendment* brought pursuant to *42 U.S.C.S. § 1983*.

### Overview

The inmate contended that his declaration and a declaration of a doctor supported his theory that the two and one-half week delay between his kneecap injury and his surgery amounted to cruel and unusual punishment. On review, the court affirmed the grant of summary judgment because the inmate failed to present a genuine issue of material fact. Contemporaneous medical records and opinions of the examining medical doctors showed that the inmate's purported evidence was baseless. The examining doctors agreed that immediate surgery was not required, and the inmate's personal belief regarding the severity of his injury was not sufficient to overcome the medical opinions. Thus, the inmate failed to produce evidence to refute the contemporaneous medical records supporting the medical director's actions.

### Outcome

The court affirmed the grant of summary judgment in favor of the medical director.

## LexisNexis® Headnotes

Civil Procedure > Judgments > Summary Judgment > Evidentiary Considerations

Civil Procedure > Appeals > Summary Judgment Review > Standards of Review

Civil Procedure > ... > Summary Judgment > Burdens of Proof > General Overview

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

*HN1*[⤓] **Summary Judgment, Evidentiary Considerations**

An appellate court reviews a district court order granting summary judgment de novo, viewing all of the facts in the record in the light most favorable to the non-moving party. Summary judgment is appropriate where the moving party demonstrates, through pleadings, interrogatories, and admissions on file, together with the

affidavits, if any, that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P 56(c)*. A party moving for summary judgment has the burden of showing that there is no genuine issue of fact. A party opposing a properly submitted motion for summary judgment may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. The court must view the evidence and make all reasonable factual inferences against the non-moving party. Speculation or conjecture from a party cannot create a genuine issue of material fact. A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment.

Civil
Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Rights Law > ... > Immunity From Liability > Local Officials > Deliberate Indifference

Constitutional Law > Bill of Rights > Fundamental Rights > Cruel & Unusual Punishment

Civil Rights Law > Protection of Rights > Prisoner Rights > Medical Treatment

*HN2*[⬇] **Complaints, Requirements for Complaint**

In order to state a cognizable claim for inadequate medical treatment under the *Eighth Amendment*, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. These acts or omissions must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.

Civil Rights Law > ... > Immunity From Liability > Local Officials > Deliberate Indifference

Constitutional Law > Bill of Rights > Fundamental Rights > Cruel & Unusual Punishment

Evidence > Burdens of Proof > Allocation

Civil Rights Law > Protection of Rights > Prisoner Rights > Medical Treatment

*HN3*[⬇] **Local Officials, Deliberate Indifference**

Deliberate indifference requires a plaintiff to prove three elements: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. The plaintiff shoulders a heavy burden; even conduct that could be characterized as medical malpractice does not necessarily constitute deliberate indifference. A difference in medical opinion does not constitute deliberate indifference so long as the treatment provided is minimally adequate. When a plaintiff alleges that delay in medical treatment shows deliberate indifference, he must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay. Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records.

**Counsel:** For DONALD W. WHITEHEAD, Plaintiff - Appellant: McNeill Stokes, Attorney at Law, ATLANTA, GA.

For EDWARD H. BURNSIDE, Defendant - Appellee: Tina M. Piper, Thurbert E. Baker, Attorney General's Office, ATLANTA, GA.

**Judges:** Before DUBINA, Chief Judge, HULL and ANDERSON, Circuit Judges.

# Opinion

[*402] PER CURIAM:

Appellant Donald W. Whitehead, an inmate at the Men's State Prison ("MSP") in Hardwick, Georgia, appeals the district court's entry of summary judgment as to Hale Edward Burnside, Medical Director for the prison, on his claim of deliberate indifference to a serious medical need in violation of the Constitution of the United States, brought pursuant to *42 U.S.C. § 1983*, and a state cause of action for medical malpractice. [1] On appeal, Whitehead argues that the district court erred by

---

[1] Initially, Whitehead also appealed the magistrate judge's imposition of sanctions in the underlying matter. On August 20, 2010, a panel of this Court dismissed the appeal as to the sanctions order.

adopting the recommendation of the magistrate judge that summary judgment should be granted in favor of Burnside because Whitehead failed to create an issue of fact for trial. The magistrate judge reasoned that Whitehead failed to provide medical evidence to support his claim of deliberate indifference **[**2]** on the part of Burnside. Whitehead contends that his declaration and Dr. William S. Thompson's declaration support his theory that the two and one half week delay between his kneecap injury and surgery amounts to cruel and unusual punishment. After reviewing the record, we conclude that Whitehead has failed to present a genuine issue of material fact to be resolved by a fact-finder. Thus, we affirm the grant of summary judgment.

*HN1*[⬆] We review a district court order granting summary judgment *de novo*, viewing all of the facts in the record in the light most favorable to the non-moving party. *Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1161-62 (11th Cir. 2006)*. Summary judgment is appropriate where the moving party demonstrates, through pleadings, interrogatories, and admissions on file, together with the affidavits, if any, "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P 56(c)*. "A party **[**3]** moving for summary judgment has the burden of showing that there is no genuine issue of fact." *Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990)* (internal quotation marks omitted). "A party opposing a properly submitted motion for summary judgment may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). The court must view the evidence and make all reasonable factual inferences against the non-moving party. *Id.* Speculation or **[*403]** conjecture from a party cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005)*. "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004)*.

*HN2*[⬆] In order to state a cognizable claim for inadequate medical treatment under the *Eighth Amendment*, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)*. These acts or **[**4]** omissions must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)* (quoting *Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986))*.

*HN3*[⬆] Deliberate indifference requires a plaintiff to prove three elements: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)*. The plaintiff shoulders a heavy burden; even conduct that could be characterized as medical malpractice does not necessarily constitute deliberate indifference. *See McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)*. A difference in medical opinion does not constitute deliberate indifference so long as the treatment provided is minimally adequate. *Harris, 941 F.2d at 1504-05*. When a plaintiff alleges that delay in medical treatment shows deliberate indifference, he "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187-88 (11th Cir. 1994)*, **[**5]** *overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n.9, 122 S. Ct. 2508, 2515 n.9, 153 L. Ed. 2d 666 (2002)*. "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." *Id. at 1189*. Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See, e.g., Bennett v. Parker, 898 F.2d 1530 (11th Cir. 1990)*.

We conclude from the record that the district court correctly applied the summary judgment standard, finding that Whitehead failed to demonstrate that there was a genuine issue of material fact as to whether Burnside was deliberately indifferent to Whitehead's broken kneecap. Although Whitehead attempts to overcome summary judgment by offering his own sworn statement and that of Dr. Thompson to support his allegations, the contemporaneous medical records and opinions of the examining medical doctors show that this purported evidence is baseless.

Whitehead's broken kneecap resulted from a prison altercation on October 20, 2006. Whitehead claims in his statement **[**6]** that, after his arrival at the Oconee Regional Hospital, Dr. Salvatore Dellacona requested immediate surgery for his injured knee but was denied permission by Burnside to perform the operation. On the

contrary, Dr. Dellacona provided an affidavit stating that immediate surgery was not required for Whitehead's broken kneecap, and he did not speak with Burnside as Whitehead contends. Prison records indicate that at the time of the incident, Burnside was not present at the prison.

Dr. Dellacona, pursuant to hospital protocal, requested a second opinion from Dr. Steven Niergarth. Niergarth concurred **[*404]** with Dr. Dellacona that immediate surgery was not required. On November 1, 2006, Whitehead was examined by an orthopedic specialists, Dr. Clarence Fossier. Fossier found that the injury did not require immediate surgery and scheduled the operation for a week later. In his sworn statement, Fossier testified that he would have operated immediately if it had been necessary and that any delay in surgery did not result in any long-term detriment to Whitehead.

Whitehead attempts to counter these medical opinions from his treating physicians by producing an affidavit from Dr. Thompson, wherein he states **[**7]** that after reviewing the evidence, he found Burnside deliberately indifferent in delaying treatment for Whitehead. At best, however, Dr. Thompson's affidavit represents a difference of medical opinion between himself and the physicians who treated Whitehead. Furthermore, as Dr. Thompson acknowledges, his affidavit is based in part on Whitehead's statement that Dellacona would have performed surgery immediately had Burnside not intervened. Dellacona's contemporaneous medical records and his affidavit show this contention to be incorrect.

Whitehead's statement is erroneous in other ways as well. Whitehead claims that Burnside refused to look at his knee and told him it would take two to three months to schedule an MRI. Burnside's records, recorded at the time he first saw Whitehead, show otherwise. Burnside clearly notes that Whitehead had fractured his patella, could not extend his leg, and had swelling in his left knee. Burnside requested an urgent consultation by an orthopedist to evaluate the injury, and Whitehead was scheduled for the consultation with Dr. Fossier that lead to his eventual surgery.

The evidence from the record is clear. Whitehead has established, at best, a difference **[**8]** of medical opinion as to the appropriate treatment for his injured knee. His personal belief regarding the severity of his injury is not sufficient to overcome the medical opinions of Drs. Fossier and Dellacona, and he has failed to

produce evidence to refute the contemporaneous medical records supporting Burnside's actions. Therefore, we conclude that the district court properly adopted the magistrate's recommendation and we affirm the district court's grant of summary judgment in favor of Burnside.

**AFFIRMED**.

---

End of Document